IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| | * | Case Nos. 24-12500; 24-12504; 24-12506; 24-12508; 24-12511 (Chapter 11) |
| WARFIELD HISTORIC PROPERTIES, LLC, *et al.*, | * | |
| Debtors. | * | Jointly Administered Under Case No. 24-12500-LSS (Chapter 11) |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| WARFIELD HISTORIC PROPERTIES, LLC, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Adversary No. 25-00042 |
| | * | |
| v. | * | |
| TOWN OF SYKESVILLE, | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ANSWER TO ADVERSARY PROCEEDING COMPLAINT AND COUNTERCLAIM

Defendant, Town of Sykesville (the "Town"), by its undersigned counsel, answers the Adversary Proceeding Complaint ("Complaint") as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

In response to the separately numbered paragraphs in the Complaint, the Town answers:

**JURISDICTION**

1.      Defendant admits that Plaintiffs have filed the Complaint, which is the best evidence of its terms.  The remaining allegations of this paragraph state legal conclusions to which no response is required and to whatever extent a response is required the allegations are denied both factually and legally.

2.      Admitted.

3.      The allegations of this paragraph state legal conclusions to which no response is required.  To the extent an answer is required, Defendant has insufficient information to form a belief as to the truth of the allegations of this paragraph.

4.      The allegations of this paragraph state a legal conclusion to which no response is required.  Further answering, the Town consents to entry of final orders by the United States Bankruptcy Court in this adversary proceeding.

5.      The allegations of this paragraph state a legal conclusion to which no response is required.

**PARTIES**

6.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

7.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

9.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

10.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

11.     Admitted.

### FACTS COMMON TO ALL COUNTS[1]

12.     Defendant admits that Springfield Hospital Center ("SHC") is set on approximately 1,300 acres, and believes it began admitting patients in or around 1896.  Defendant admits the Baltimore Sun published a series of articles with the title, "Maryland's Shame," but denies they have any relevance to this case, are complete hearsay, and are not admissible for any purpose. Defendant lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations regarding the articles published by the Baltimore Sun.  Defendant further denies that the last sentence in paragraph 12 is relevant or admissible for any reason.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 12.

13.     Defendant admits that, at some unknown point in time, the State of Maryland began to consider divestiture of all or part of SHC.  Defendant further denies that anything alleged in paragraph 13 is relevant or admissible for any reason particularly in light of the signed contracts between Plaintiffs and Defendant that govern the parties' relationship, including the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement and the Escrow Agreement.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

---

[1]The unnumbered subheadings in the Complaint do not state allegations that need to be admitted or denied; to the extent they are intended as allegations, Defendant denies same.

14.     Admitted Defendant entered into the Disposition and Development Agreement ("DDA") and the terms and conditions of DDA are stated in the DDA.  Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA. Defendant further denies that anything alleged in paragraph 14 is relevant or admissible for any reason.  Denied that the term "Warfield Project" is defined in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Although the complaint repeatedly uses the term

"Warfield Project," Defendant reasserts this denial and incorporates by reference in response to any allegation in the complaint that refers to the "Warfield Project."  Defendant is without knowledge or information sufficient to admit to deny the allegation in the last sentence of paragraph 14 because the reference to "its many obligations" fails to identify the number of "obligations," the obligations referenced, and/or who has the alleged "many obligations."  In terms of whatever "obligations" exist between Plaintiffs and Defendant, those "obligations" are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

15.    Denied that Plaintiffs have standing to challenge whether the Town did or did not honor any of the terms and conditions of the DDA. Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

5

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA. Defendant is without knowledge or information sufficient to admit or deny the allegation about "water supply condition" because this allegation is vague and unclear in terms of what "condition" is referred to and or allegedly "satisfied."  Denied that "sewer capacity" was granted to the Town in 2015. Defendant further states that the last sentence of paragraph 15 states a legal conclusion to which no response is required.

16.    Denied that Plaintiffs have standing to assert any claim as to what the DDA did or did not require and/or whether the Town did or did not honor any of the terms and conditions of the DDA. Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and

obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.   To whatever extent Plaintiffs are quoting from the DDA, the quote is not a full and complete quote of the terms of the DDA, and the attempt to pull out select terms from the DDA in an effort to modify or negate the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is factually and legally invalid and denied.   Denied that Plaintiffs' reliance on the DDA is factually or legally correct.

17.     Denied that Plaintiffs have standing to assert any claim as to what the DDA did or did not require and/or whether the Town did or did not honor any of the terms and conditions of the DDA. Denied that the quotes in the complaint fully and accurately sets forth the terms of the DDA and the best evidence of the DDA's terms is the actual DDA document. Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged

Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.  Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs select quotations are "Key excerpts from the DDA…."  Denied that Plaintiffs' reliance on the DDA is factually or legally correct or justified.

18.    Denied that Plaintiffs have standing to assert any claim as to what the DDA did or did not require and/or whether the Town did or did not comply with any of its obligations under the DDA. Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect

to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' reliance on the DDA is factually or legally correct. Denied that what the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs is relevant or admissible for any reason. Further denied that anything the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements.

19.     Denied that Plaintiffs have standing to assert any claim as to what the Town did or did not do prior to entering into entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that whatever the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is relevant or admissible for any reason. To whatever extent the allegations in paragraph 19 rely on the DDA, denied that Plaintiffs have standing to assert claims for alleged violations of the DDA prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible, and denied that the DDA has any legal impact on the terms, conditions, and obligations Plaintiffs agreed to and accepted in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties and obligations and the alleged Warfield Project's development are all spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.

20.    Denied that Plaintiffs have standing to assert any claim as to what the DDA did or did not require and/or whether the Town did or did not honor any of the terms and conditions of the DDA. Denied that whatever the Town did or did not do prior to entering into the Purchase and

Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs is relevant or admissible for any reason. Further denied that anything the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements. Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.

Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement

21.     Denied that Plaintiffs have standing to assert any claim as to what the DDA did or did not require and/or whether the Town did or did not honor any of the terms and conditions of the DDA. Denied that whatever the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs is relevant or admissible for any reason.  Denied that anything the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements. Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge of the duties, responsibilities, and obligations agreed upon and stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the

DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.

22.     Denied that Plaintiffs have standing to challenge whether the Town did or did not honor any of the terms and conditions of the DDA.  Denied that Plaintiffs have any standing to challenge the alleged "undue pressure from Carroll County" regarding the Town's alleged honoring of the DDA.  Denied that the Town's motivations for whatever the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs is either relevant or admissible for any reason.  Denied that the Town's motivations for anything the Town did or did not do prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements.  Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement,

the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.

23.    Denied that Plaintiffs have standing to challenge whether the Town did or did not honor any of the terms and conditions of the DDA.  Denied that Plaintiffs have any standing to challenge the alleged "pressure" and/or alleged "power differential," and or the "creditors" of the Town in relation to any allegations related to the DDA.  Denied that whatever the reason or reasons for the Town's actions or inactions prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs, are either relevant or admissible for any reason.  Denied that whatever the reasons for the Town's actions or inactions prior to entering the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements.

Denied that the DDA is relevant or admissible, and denied that the DDA has any legal impact on the obligations Plaintiffs agreed to and accepted in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties and obligations and the alleged Warfield Project's development are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA.

24.    Denied that Plaintiffs have standing to challenge the basis for any alleged "opposition," or whoever or whatever was "instigated" either in whole or in part based on the alleged terms and conditions of the DDA. Denied that plaintiffs can use the alleged reason or rationale for any alleged "opposition," instigation, or alleged "great influence over the Purchase and Sale Agreement and land use negotiations" as grounds for avoiding, modifying, ignoring, or otherwise modifying in any way the duties and obligations that Plaintiffs agreed to in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to challenge the Town's planning and zoning authority prior to Plaintiffs' acceptance and

closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that whatever the reason for the Town's actions or inactions prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs, that those reasons, actions and/or inactions are not relevant or admissible for any reason. Denied that whatever the reasons for the Town's actions or inactions prior to entering into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs can modify, negate, or change in any way the terms and conditions of the aforesaid Agreements. Denied that the DDA is relevant or admissible, and denied that the DDA has any legal impact on the obligations Plaintiffs agreed to and accepted in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties and obligations were spelled out in and governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties and obligations and the alleged Warfield Project's development are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on the DDA and/or based on any actions taken or not taken prior to entering into the foregoing Agreements.

25.     Denied that the Purchase and Sale Agreement identified Roger A. Conley as an investor or the head of a group of investors.  Denied that any allegations not found within the four corners of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Escrow Agreement and the Reversion Agreement, are admissible in evidence or relevant to this action.

26.     Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, Preservation Agreement, the Escrow Agreement and the Reversion Agreement define or use the term "Warfield Project."  Denied that Plaintiffs can alter, modify, or negate the contract terms stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Escrow Agreement and the Reversion Agreement through use of the term "Warfield Project."  Denied that any allegations about the so-called "Warfield Project," which is not defined in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Escrow Agreement and the Reversion Agreement, are relevant or admissible to modify, alter, or negate the contract terms stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Parcels actually identified in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement are "vacant parcels" and further denied that only one parcel has any buildings located on it.

27.     Admitted the closing for the property described in the Purchase and Sale Agreement

and the Amendments to the Purchase and Sale Agreement occurred in June 2018.  Denied that the only document to "close" in June 2018, was the Purchase and Sale Agreement and the Amendments to the Purchase and Sale Agreement.  At the closing in June 2018, Plaintiffs further executed the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the allegations in paragraph 27 fully and accurately describes what happened at the closing in June 2018.  Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, Preservation Agreement, the Escrow Agreement and the Reversion Agreement define or use the term "Warfield Project."  Denied that Plaintiffs can negate the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on what they allegedly paid pursuant to the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

28.    Defendant is without knowledge or information sufficient to form a belief as to the meaning of the legal term "entered into three inter-related agreements," but admitted that at the closing on the Purchase and Sale Agreement, with Amendments to the Purchase and Sale Agreement, Plaintiffs and the Town signed the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

29.    Denied that paragraph 29 fully and accurately describes the Escrow Agreement entered into between Plaintiffs and Defendant.  Denied that the last sentence in paragraph 29 is admissible for any reason, is not relevant, and cannot modify, alter or negate any of the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

30.    Denied that any alleged benefit the Town received from the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement is relevant or admissible, either in whole or in part, as grounds to modify, negate or alter the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs' performance of the obligations Plaintiffs agreed upon and provided for in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement are relevant or admissible for any purpose, and/or denied that Plaintiffs' performance of those obligations can modify, negate, or alter any of the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on their performance of the obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement to somehow modify, negate or change any of the foregoing Agreements.

31.    All payments to the Town were in accordance with the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that Plaintiffs can negate the contract terms they agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on any allegations about "eleventh-hour extraction."  Defendant further denies that this allegation is relevant or admissible when the alleged "eleventh-hour extraction" is

an unfounded attempt to modify a fully integrated contract. Further answering, the closing documents are the best evidence of their terms and any attempt to characterize them inconsistent with such terms, including, but not limited to, characterization of the payments as an "eleventh-hour exaction," is denied.

32.    Denied.

33.    Denied that the alleged "major investments" and "marketing" by the Warfield Collaborative and Plaintiff are admissible or relevant to the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the alleged "pressure being exerted by Carroll County" is relevant or admissible in the "run up to closing in 2018." Denied that Plaintiffs can rely on any "major investments," marketing, or "pressure being exerted by Carroll County" in the "run up to closing in 2018" as grounds for altering, amending or modifying the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could justifiably or reasonably rely on their alleged "major investments," marketing or any "pressure exerted by Carroll County" in the "run up to closing in 2018" to excuse Plaintiffs' performance according to the terms and conditions agreed upon and stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any statements made in the "run up to closing in 2018" are relevant or admissible to modify, alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

34.     The term "Warfield Project" is not defined in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant further denies that Plaintiffs can modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement PSA, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement by allegations about the supposed "Warfield Project" in the Complaint.  Denied that the substantial completeness of "Parkside" and/or the sale prices at "Parkside" and/or when "Parkside" was completely sold out" are relevant to or can modify in any way the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant further denies that Plaintiffs can modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement.  Defendant has not been privy to the closings at Parkside and, therefore, is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.     Denied that any alleged comments by "State officials" can alter, modify or change the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement.  Denied that any comments by "State officials" are relevant or admissible based on the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on "State officials" comments to alter, modify or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion

Agreement, or the Escrow Agreement. The allegations about "State officials" are not identified in sufficient specifics (who, when or where) such that there is no way for Defendant to respond to this vague allegation.  For this reason, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.  Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

36.     Defendant admits that the World Health Organization ("WHO") declared COVID-19 a "Public Health Emergency of International Concern" ("PHEIC"), on or about January 30, 2020, and that the PHEIC and other statements of the WHO are the best evidence of their terms and any attempt to characterize them inconsistent with such terms, including, but not limited to, any use of vague or undefined terms such as "paralyzed business operations" is denied.  Further denied that any statement of the WHO is relevant, admissible, or can be used to negate or modify the obligations of the parties as agreed upon and stated in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

37.     Denied that any allegations by Plaintiffs on the "impact of COVID-19 on the development community" or various "aspects of development" are relevant, admissible, or can be used to negate, alter or modify the obligations agreed upon by the parties in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the

Reversion Agreement, and the Escrow Agreement. Still further, the "development community" is not defined and for this reason Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the "development community" in this paragraph. Defendant's characterization of the impact of COVID-19 as "catastrophic" without specific attribution to a specific individual or entity leaves Defendant without knowledge or information sufficient to admit or deny this allegation in paragraph 37. Defendant is further without knowledge about "Every aspect of development," and, therefore, is without knowledge or information sufficient to admit or deny the allegation in the second sentence of paragraph 37. Defendant is further without knowledge or information about what happened to "all developers," and, therefore, is without knowledge or information sufficient to admit or deny the last sentence in paragraph 37.

38.    The allegation about "Large portions of the workforce" is so vague and unclear that Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations about what some unidentified "development community," some undefined "landlords," in some undefined location "reported" about "vacancy rates." Defendant lacks knowledge or information sufficient to form a belief as to whether some unidentified landlords "have been on the verge of foreclosure and bankruptcy." Defendant has no knowledge or information sufficient to form a belief as to whether some office space markets in some unidentified location "largely disappeared." Denied that Plaintiffs are qualified or competent to opine on the "long-term impact of Covid-19" and for this reason this allegation is denied. Further denied that any allegations by Plaintiffs on the "long-term impact of COVID-19" are relevant, admissible, or can be used to negate or modify the obligations of the parties under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the

23

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

39.     Defendant is without knowledge or information sufficient to form a belief as to whether some unidentified retail uses in some unidentified location have experienced a "similar dynamic."  Denied that the "rise of Amazon and alternative home shopping services" is admissible or relevant to the parties' duties and obligations under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Defendant is without knowledge or information sufficient to form a belief as to whether some retail vacancies at unidentified locations "have been at record high levels."  Defendant is without knowledge or information sufficient to form a belief as to whether some unidentified "shopping centers have closed outright or converted to other uses." Defendant is without knowledge or information sufficient to form a belief as to whether some unidentified "Major financial institutions stopped most of their retail lending for new retail projects."  Denied that any of the allegations in paragraph 39 are relevant, admissible, or legally sufficient to negate or modify the obligations of the parties under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

40.     Denied that job growth in Sykesville is anemic.  Denied that Plaintiffs' opinions about "reasonable hope" or what is "viable" is relevant or admissible to modify or negate the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that any allegations by Plaintiffs about "job growth" are relevant, admissible, or can be used to negate or modify the duties or obligations of the parties under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the

Escrow Agreement.  Defendant is without knowledge or information sufficient to either admit or deny whether job growth "was anemic" because this is not an allegation of fact, but simply Plaintiffs' opinion, which Plaintiffs are not qualified to express.  Defendant is without knowledge or information sufficient to either admit or deny whether "the retail market was saturated prior to Covid-19" because this is not an allegation of fact, but simply Plaintiffs' opinion, which Plaintiffs are not qualified to express.

41.    Defendant lacks sufficient knowledge or information sufficient to admit or deny the allegation about "the collapse of new office and retail construction," which is not specific and not a fact, but Plaintiffs' unqualified opinion.  Defendant is without knowledge or information sufficient to admit or deny the allegation about "workforce housing." Denied that any of the allegations in paragraph 41, either individual or in total, are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

42.    Defendant denies that the "workforce housing shortage is particularly acute in Sykesville and the region," and further denies that such allegation is relevant or admissible for any purpose.  Defendant admits as to the second sentence of this paragraph that in addition to the County's Section 8 Housing Choice Voucher Program, there are two affordable multi-family housing properties in the Town offering a combined 80 units and that the Town had approximately 1,608 housing units as of 2020, but denies that such allegation is relevant or admissible for any purpose.  Defendant admits as to the third sentence of this paragraph that the Schoolhouse Road Community is multifamily housing funded through HUD that offers 26 units that opened in or around 1981, and that Village House Apartments is a senior, income-restricted property that offers

54 units to individuals 62 and older, and opened in or around 1999; Defendant denies the remaining allegations of the third sentence of this paragraph. Defendant states that as to the fourth sentence of this paragraph, the Town's Comprehensive Plan is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied. Defendant further denies that any of the allegations by Plaintiffs in this paragraph are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

43.     Denied, including due to Plaintiffs' failure to develop the property at issue in this lawsuit in accordance with the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs on "affordable housing strategy" or "housing choice" are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

44.     The allegations of this paragraph state legal conclusions about what Plaintiffs believe "State law requires" and as to which no legal response is required. To whatever extent a response is required, the unidentified State law is the best evidence of its terms and conditions, and any attempt to characterize the unidentified law without setting forth the full law can only lead to misunderstanding, misinterpretation, and is inconsistent with the full terms of that unidentified law. Denied that Plaintiffs' opinions about what State law requires are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and the Escrow Agreement.

45.    Defendant admits all but the last sentence in this paragraph.  Denied that Plaintiffs are qualified to opine on what the "State expects" and this allegation is not an allegation of fact, but an opinion as to which Defendant lacks sufficient knowledge or information to either admit or deny.  To whatever extent an answer is required to the last sentence in paragraph 45, that last sentence is denied.  Denied that any allegations by Plaintiffs concerning any "State of Maryland Priority Funding Area" or "Sustainable Community Area designation" are relevant, admissible, or can be used to negate or modify the duties and obligations the parties agreed to in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

46.    Defendant denies the allegation in the first sentence of this paragraph that the most recent federal Census "confirms the lack of affordable housing."  The incomplete references to the 2020 Census and the Town's 2010 Master Plan referenced in the allegations of the second and third sentences of this paragraph are just that incomplete, and the best evidence of the fully stated Census and Master Plan is in the documents.  Plaintiffs' attempts to spin select parts of the documents is inconsistent with the complete documents and, therefore, is denied.  Defendant denies the allegations of the last sentence of this paragraph, including, but not limited to, because Plaintiffs failed to develop the property in accordance with the PSA, amendments to the PSA, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Further denied that any allegations by Plaintiffs about what the federal Census data says or does not say about the alleged lack of affordable housing are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and

the Escrow Agreement.

47.     The 2020 Census and the Town's Master Plan referenced in the allegations in the first two sentences of this paragraph are the best evidence of their terms and the incomplete attempts to characterize certain parts of them is inconsistent with the totality of information available and is denied.  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in the third sentence of this paragraph.  Denied that any allegations by Plaintiffs on federal Census data, percentage of owner occupied housing or renters, or the value of housing units are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement PSA, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

48.     Denied.  Defendant further denies that any allegations by Plaintiffs on the demand for "affordable multi-family housing" are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

49.     Defendant cannot admit or deny the first two sentences in paragraph 49 because they express Plaintiffs' unfounded legal opinions about the "elements of a Sustainable Communities Plan" and what is "supposed to guide State funding to local jurisdictions," without citation to any laws, and without any legal foundation.  To whatever extent an answer is required, Defendant denies that Plaintiffs have fully and accurately stated Maryland law.  Still further, the last sentence in paragraph 49 is denied, *i*ncluding, but not limited to, because Plaintiffs failed to develop the property in accordance with the Purchase and Sale Agreement, amendments to the Purchase and

Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that any allegations by Plaintiffs on the elements of a Sustainable Communities Plan, affordable housing, or any undefined benchmarks, are relevant, admissible, or can be used to negate or modify the duties and obligations agreed to by the parties in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

50.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in this paragraph as to whether there is "also a housing shortage in Carroll County and across the State," and Defendant denies the remaining allegations of this paragraph.  Further denied that any allegations by Plaintiffs concerning any alleged housing shortage in the Town, Carroll County and "across the State" are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

51.     Denied.  Denied that any allegations by Plaintiffs about any alleged housing shortage in Carroll County or about the units that would be expected in the Town are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

52.     The allegations in the first sentence of this paragraph are denied because the 2025 General Assembly regular session has ended and the referenced bill (HB 503) did not pass. Defendant states that as to the second sentence of this paragraph, the proposed HB 503 was the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.

Denied that any allegations by Plaintiffs concerning HB 503 are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on HB 503 when Plaintiffs had actual knowledge of their duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

53.    Denied that the legislation acknowledges anything when the legislation did not pass. Denied that any allegations by Plaintiffs concerning HB 503 or the number of houses for sale "in the [unidentified] region" are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement documents. Denied that Plaintiffs could reasonably or justifiably rely on HB 503 when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

54.    Denied.  Further denied that Plaintiffs performed the obligations required of them under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any allegations by Plaintiffs of their alleged "Herculean efforts" to create a development proposal that would meet market demand or meet the "State's vision," which were not in accordance with the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement are relevant, admissible, or can

serve as a legal or factual basis for modifying any of the foregoing Agreements. Still further, Plaintiffs could not justifiably or reasonably have relied on the "State's vision for the Warfield Project," when Plaintiffs had specifically agreed to the terms and conditions stated in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

55.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Denied that Plaintiffs performed the obligations required of them under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement while they

were apparently engaging in activities not called for under the terms and conditions of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, e.g. conducting feasibility studies, surveyed potential users and partners, met with stakeholders and leading efforts to obtain State financing inconsistent with the foregoing Agreements.   Denied that any allegations by Plaintiffs of their alleged acts not found within the four corners of the contract documents are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on "State financing and other support" when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

56.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.   Denied that Plaintiffs were performing the obligations required of them under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement while they apparently were engaged in the process described in paragraph 56.   Denied that any allegations by Plaintiffs of their alleged acts not found within the four corners of the contract documents are relevant, admissible, or can be used to negate or modify the obligations of the parties in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

57.    Defendant is without knowledge or information sufficient to form a belief as to what

efforts Plaintiffs undertook to obtain State financial support for the enactment of SB 885, but denies the characterization that any such efforts were "unprecedented." Further answering, Defendant states that the referenced SB 885 is the best evidence of its terms and intent, and any attempt to characterize it inconsistent with such terms is denied. Denied that Plaintiffs were performing the obligations required of them under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement while they were apparently engaged in the activities described in paragraph 57. Denied that any allegations by Plaintiffs of alleged acts not found within the four corners of the contract documents are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on State financial support when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

58.    Admitted that the State Department of Housing and Community Development ("DHCD") made a grant announcement, which is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied. Denied, however, that Plaintiffs as of 2022 had performed their obligations as spelled out in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs of their alleged acts not found within the four corners of the contract documents are relevant, admissible, or can be used to negate or modify the obligations of the parties in the Purchase and Sale Agreement, amendments to the

Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the alleged award when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

59.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Denied that any alleged hearsay statement by DHCD is relevant or admissible for any purpose in this action or can be used in any way to negate or modify the duties obligations of the parties as agreed upon in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DHCD when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

60.    Denied, including, but not limited to, because preservation of the historic buildings was a material and integral part of the contracts that Plaintiffs accepted and agreed to as the basis for and grounds for the overall development plan set forth in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph. Denied that Plaintiffs were not aware of their duties and obligations to preserve the historic buildings, including any extensive asbestos and lead abatement, in accordance with the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations concerning incentives are relevant or admissible for any purpose in this action or can be used in any way to negate or modify the duties and obligations of the parties under the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

61. Denied, including, but not limited to, because preservation of the historic buildings was a material and integral part of the contracts that Plaintiffs accepted and agreed to as the basis for and grounds for the overall development plan set forth in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can use the allegation of the need for state and federal support to avoid the duties and obligations Plaintiffs agreed to in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Plaintiffs' unfounded opinions about what is "widely understood" or discussed "ad nauseum with [unidentified] officials" are not allegations of fact and for this reason

no response is required.  Denied that any allegation of what was "widely understood" or discussed "ad nauseum" with unidentified "officials" before the parties entered into the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is relevant or admissible for any purpose in this action.  Denied that whatever is "widely understood" or discussed "ad nauseum" with unidentified "officials" can be used in any way to negate or modify the duties and obligations of the parties agreed upon and set forth in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on the alleged need for state and federal support as grounds for avoiding their duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

62.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Denied that Plaintiffs could reasonably or justifiably rely on hearsay statements by DHCD Secretary Holt when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, which Plaintiffs negotiated for and approved.  Denied that any alleged hearsay statement by any representative of the State or DHCD is relevant or admissible for any purpose in this action or can be used in any way to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DHCD when Plaintiffs had actual

knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on State support to avoid their contractual duties and obligations, particularly when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

63.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Denied that Plaintiffs could reasonably or justifiably rely on hearsay statements about support from the "Wes Moore Administration," particularly when Plaintiffs had actual knowledge that their duties and obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged hearsay statement or any claim of State "support" are relevant or admissible for any purpose in this action or can be used in any way to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DHCD when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

64.     Denied that the Town has actively resisted Plaintiffs' performance of the obligations Plaintiffs agreed to perform in the Purchase and Sale Agreement, the Amendments to the Purchase

and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs of any alleged hearsay statement of any claimed "strong State support" are relevant or admissible as grounds for modifying the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on "strong State support," particularly when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that "strong State support" is legally or factually grounds for altering, modifying or changing the duties and obligations agreed upon by the parties and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. PSA, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

65.    Denied, including, but not limited to, because preservation of the historic buildings was a material and integral part of the contracts that Plaintiffs accepted and agreed to as the basis for and grounds for the overall development plan set forth in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can use the allegation of the need for state and federal support to avoid the duties and

38

obligations Plaintiffs agreed to in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.    Denied that Plaintiffs performed their duties and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs concerning State and Federal support, or "financially impossible," are relevant, admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.    Denied that Plaintiffs' alleged need for "significant State and Federal support" is factually or legally sufficient to alter, amend, negate or modify the duties and obligations of the parties under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

66.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, but apparently, at least according to Plaintiffs, Plaintiffs have invested time and money in the alleged market studies, lender surveys, or feasibility studies listed in paragraph 66 instead of performing the duties, responsibilities and obligations they were required to perform under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that regardless of the amount of money or time invested in any of the alleged market studies, lender surveys, or feasibility studies that such allegations are relevant, admissible, or can be used to negate or modify the obligations of the parties as agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs concerning "State financing" is relevant or admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that Plaintiffs' alleged need for "State financing" is factually or legally sufficient to alter, amend, negate or modify the duties and obligations of the parties under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on "State financing," particularly when Plaintiffs had actual knowledge that their obligations were governed by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

67.    Denied.   Denied that Plaintiffs can avoid their duties and obligations by not performing their obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, and then claim they can rely on something not in the Agreements to make it "successful." Denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can use the allegation of the need for state and federal tax credits to avoid the duties and obligations Plaintiffs agreed to in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

Denied that Plaintiffs performed the duties and obligations required by and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any allegations by Plaintiffs concerning state and federal tax credits, affordable housing tax credits, and/or tax-exempt bond financing, grants, and other incentives are relevant or admissible to amend, alter, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any allegations by Plaintiffs concerning state and federal tax credits, affordable housing tax credits, and/or tax-exempt bond financing, grants, and other incentives can be used to negate or modify the duties and obligations of the parties agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that whether the "Warfield Project [is] financially viable" or what is "feasible" is relevant or admissible for any reason based on the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that whether the "Warfield Project [is] financially viable" or "feasible" is legally or factually grounds to negate or modify the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the state of the unrestored historic buildings depends in whole or in part on the allegations in paragraph 67, but rather is due to Plaintiffs' failure to fulfill their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on the various forms of financing alleged in paragraph 67, because they are inconsistent with the terms and conditions that Plaintiffs agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

68.    Denied.    Denied that Plaintiffs can blame the Town for any alleged "failed stewardship" when Plaintiffs failed to perform the duties and obligations agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that any allegations by Plaintiffs concerning the Town's alleged "failed stewardship," the private market, DHCD, or other State support, or the reasons for any such support, are relevant or admissible for any reason as grounds to modify or negate the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA authorizes or provides a valid legal or factual basis for  modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments

to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on various forms of alleged "support" as alleged in paragraph 68 that are inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town "was unable to attract any significant commercial, industrial or retail investment," because the Town entered into the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement with Plaintiffs, but Plaintiffs failed to perform in accordance with those Agreements. Denied that Plaintiffs could reasonably or justifiably rely on "the State financial support" as alleged in paragraph 68, when Plaintiffs had and have actual knowledge of their duties, responsibilities, and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

69.    Denied that Plaintiffs can avoid their obligations by not performing their duties and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement and then claim due to "economic realities," they are no longer obligated to fulfill their duties and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant presumes paragraph 69 is referring to a zoning text amendment request submitted to the Town in late 2021 by which the "Warfield Companies" sought to alter the Planned Employment Center ("PEC") zoning district to, among other things, include the expansion of

43

principal permitted uses, make changes to the required mix of uses within the zone, and increase the amount of residential density allowed; such request is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.  If Plaintiffs are referring to anything other than the aforesaid zoning text amendment, then Defendant is without sufficient knowledge or information to either admit or deny the allegations in paragraph 69.  The remaining allegations of this paragraph are denied.  Denied that Plaintiffs, at the time they submitted the zoning text amendment, had performed the duties and obligations required of them under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any allegations by Plaintiffs concerning a zoning text amendment or what was sought in the zoning text amendment are relevant or admissible in this action in an effort to negate or modify the duties and obligations of the parties as agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on a zoning text amendment, when Plaintiffs had and have actual knowledge of their duties, responsibilities, and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs could reasonably or justifiably rely on "the State's vision for the property" as alleged in paragraph 69, when Plaintiffs had and have actual knowledge of their duties and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

70.    Denied that Plaintiffs' failure to perform the duties, responsibilities, and obligations they agreed to in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

44

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement can justify or support Plaintiffs' alleged new proposal for new construction and/or market rate-housing and/or senior housing as alleged in paragraph 70. Denied that any allegations by Plaintiffs concerning a zoning text amendment request, presuming that is what paragraph 70 is referring to, are relevant, admissible, or can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. If Plaintiffs are referring to anything other than the aforesaid zoning text amendment, then Defendant is without sufficient knowledge or information to either admit or deny the allegations in paragraph 70. Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on a zoning text amendment and/or the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

71.     Defendant is without knowledge or information sufficient to allow it to admit or deny the allegations of this paragraph concerning Plaintiffs' financing, but denies that Plaintiffs performed the duties, responsibilities and obligations required of them by "identifying and/or securing millions of dollars in financial incentives" for the alleged "Warfield Project" that were not in accordance with the terms and conditions agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs' failure to perform the obligations required of them under the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement justify Plaintiffs' use of financial incentives for the alleged "Warfield Project." Denied that Plaintiffs' time spent "identifying and securing millions of dollars in financial incentives" while not performing Plaintiffs' obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, can excuse Plaintiffs' performance obligations, duties, and responsibilities under the aforesaid Agreements. Denied that the Town failed to act in good faith in accordance with the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied as to any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs concerning alleged financial incentives are relevant,

admissible, or can be used to negate or modify the obligations of the parties in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on a zoning text amendment and/or the DDA when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on "other State policies and directives" when Plaintiffs have and had actual knowledge that their duties, responsibilities and obligations were spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

72. Defendant admits that Plaintiffs' representatives sought to meet with Mayor Link,

at the same time when they were not performing in accordance with their contractual obligations as stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that at the meetings with Mayor Link that Plaintiffs sought to develop a consensus behind a development proposal in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs allegation about "securing financing, meet market demand, and earn a reasonable rate of return for investors" are factually or legally valid excuses for Plaintiffs' failure to perform its duties, responsibilities, and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on "securing financing, meet market demand, and earn a reasonable rate of return for investors" as grounds for not fulfilling their obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Mayor had any duty to meet outside of a public forum. Defendant denies the allegations that Plaintiffs sought to meet with other Town leaders except to the extent that Plaintiffs submitted a zoning text amendment request to alter the PEC zoning, which was properly scheduled for a public hearing. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of this paragraph, which are vague and lack context. Denied that Plaintiffs performed the obligations required of them under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs

concerning an attempt to meet to "develop a consensus" are relevant, admissible, or can be used to negate or modify the duties, responsibilities, and obligations of the parties as set forth in Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

73.    Denied. Denied that Plaintiffs performed the obligations required of them under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that the Town acted in any way that was inconsistent with or not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement,

the Reversion Agreement, and the Escrow Agreement. Denied that "the objective of the Agreements" is a term set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' alleged term "the objective of the Agreements" is relevant or admissible for any reason and denied that Plaintiffs' made up term can serve as a factual or legal basis for altering, modifying or changing the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of the allegations by Plaintiffs in paragraph 73 are factually or legally sufficient to negate or modify the duties, responsibilities, and obligations of the parties under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA authorizes or provides a valid legal or factual basis for modifying or changing the contractually agreed upon terms as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual

knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

74.    Denied.    Denied that Plaintiffs' performance of obligations required under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement can serve to excuse Plaintiffs' failure of performance in accordance with the aforesaid Agreements and cannot serve as grounds for modification of the aforesaid Agreements.    To whatever extent it is alleged or implied the Town failed to act consistently with and in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement those allegations are denied. Denied that any allegations by Plaintiffs concerning amounts Plaintiffs allegedly paid are relevant, admissible, or can be used to negate or modify the obligations of the parties agreed upon under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied any unjust enrichment occurred because Plaintiffs already received a financial benefit far in excess of the $8.2 million paid to the Town as a result of the alleged successful development of Parkside.

75.    Defendant admits Mayor Link preferred not to meet with Plaintiffs' representatives outside of a public forum, but Defendant denies the Mayor had any obligation to have any such meetings outside of a public forum, and denied any such meetings would have been appropriate. Defendant denies that Mayor Link "consistently refused to communicate with the Plaintiffs concerning the Warfield Project," as alleged in the second sentence of this paragraph.    Without

specific dates and specific statements attributed to the Mayor, Defendant is without knowledge or information sufficient to admit or deny the allegation that, "While Mayor Link made many public and private statements against the Plaintiffs, the Plaintiffs' principals, and their efforts with respect to the Warfield Project, and has spoken with many others about the Warfield Project." Denied that Mayor Link has made any public or private statements inconsistent with Plaintiffs' duties, responsibilities and obligation as agreed upon and stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations by Plaintiffs concerning alleged acts or statements of the Mayor about consideration of Plaintiffs' new and different plans for the so-called Warfield Project, which were different from and not agreed to in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, are relevant or admissible, and denied that they can be used to negate or modify the obligations of the parties as agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

76.    Denied. Denied that any comments the Mayor may have made about Plaintiffs' failure to perform the duties and obligations assigned to them and required of them under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement was a

disparagement of either Plaintiffs or the alleged Warfield Project. Denied that Mayor Link took any actions or made any comments inconsistent with the terms and conditions as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged statements by the Mayor can be used to negate or modify Plaintiffs' duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

77. Denied. Denied that Mayor Link took any actions or made any comments inconsistent with the terms and conditions as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that in 2021 Plaintiffs were performing their duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link has ever advocated for any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, while Plaintiffs' have consistently advocated for positions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any actions or comments made by the Mayor that are consistent with the terms and conditions as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement are actionable for any reason. Denied that any allegations by Plaintiffs concerning alleged acts or statements by

the Mayor can be used to negate or modify the duties and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

78.     Denied that any allegations about what transpired in 2013 and 2014 can be admitted for any reason, including, but not limited to, as part of Plaintiffs' misguided effort to modify and/or avoid their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any of the negotiations and/or negotiations sessions leading to the execution of and/or closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement are relevant or admissible for any reason. Denied Plaintiffs can reasonably or justifiably rely on negotiations and/or negotiations sessions prior to the execution of and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any of the negotiations and/or negotiations sessions leading to the execution of and/or closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement can be factually, legally, or legitimately characterized as a "course of dealing" after the terms and conditions were agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Defendant further lacks knowledge or information sufficient to admit or deny whether unidentified meetings, on unidentified dates, with unidentified individuals occurred in 2013 or 2014.  Denied that what was alleged to be "commonplace" in 2013 or 2014, before

execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is relevant or admissible after the execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any meetings with the Town Mayor before execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is relevant or admissible after the execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

79.     Denied that what Plaintiffs believe should be or is "commonplace" is relevant or admissible based on the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that whatever might have been allegedly "commonplace" before execution of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement can in any way make it "commonplace," relevant or admissible after the execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any meetings with the Town Mayor before execution and closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is relevant or admissible after the execution and closing on the Purchase and Sale Agreement, the Amendments

to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Defendant is without knowledge or information sufficient to admit or deny whether "Such meetings" with unidentified people and on unidentified dates are or are not "commonplace."  Denied that Mayor Link had any particular "significant delegated authority" with respect to development projects and denied that Sykesville has a strong mayor form of government.  Denied that "such meetings" are "commonplace," where, as here, Plaintiffs had failed to perform and were continuing to fail to perform the duties and obligations required of them in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any allegations about what Plaintiffs believe is commonplace can change or alter Plaintiffs' duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

80.    Denied, including, but not limited to, because Plaintiffs failed to perform the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions inconsistent with the terms negotiated and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs' allegations about affordable housing projects or residents of such projects excuses Plaintiffs' failure to perform in accordance with the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow

Agreement.  Denied that asking Plaintiffs to perform in accordance with the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is opposition to residential development, affordable housing, or the residents of affordable housing.  Defendant is without knowledge or information sufficient to admit or deny the subparagraphs a-e because the unattributed statements on unidentified dates are impossible to verify without detailed information.  Denied that the Town's request that Plaintiffs perform in accordance with the duties, responsibilities, and obligations set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement constitutes "resistance."

81.    Denied that the Town refused to discuss Plaintiff's performance, or more to the point, non-performance of the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs' failure to perform the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is the result of the Town refusing to discuss the alleged Warfield Project.  Denied that the Town was obligated to provide more than "minimal staff analysis," when Plaintiffs were not performing the duties, responsibilities and obligations agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town took any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link has "made active efforts to impede the Warfield Project" that are inconsistent with the duties, responsibilities and obligations of Plaintiffs under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' allegations in paragraph 81 are relevant or admissible in an effort to modify the duties, responsibilities and obligations set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town was obligated to take any of the actions alleged by Plaintiffs in paragraph 81 based on the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or had any other legal obligation to act inconsistent with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

82.    Denied.  Denied that Mayor Link or the Town took any actions or made any

comments inconsistent with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs were performing their duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the DDA requires Mayor Link or Defendant to take any action alleged whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to Plaintiffs' proposed changes to the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is "opposition to the Warfield Project."  Denied that pursuing the remedies authorized by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based on Plaintiffs' failure to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is an "extraordinary length." Defendant is without knowledge or information sufficient to admit or deny the last clause in

paragraph 82, starting with the words "conducting private…" because the allegations are not sufficiently specific in terms of what was said, who said it, and/or when it was said. Denied that Mayor Link or the Town took any actions inconsistent with Maryland law and/or Local law and denied that actions taken by Mayor Link and the Town in accordance with Maryland law and local law can serve as a factual or legal basis to excuse Plaintiffs' failure to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs performed their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement and, therefore, lack standing to complaint about the consequences of Plaintiffs' failures. Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to pursue defamation claims on behalf of "their principals."

83.    Denied that Mayor Link or the Town took any actions inconsistent with Maryland law and/or Local law and denied that actions taken by Mayor Link and the Town in accordance with Maryland law and local law can serve as a factual or legal basis to excuse Plaintiffs' failure to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant admits the adoption of the referenced ordinance, which is the best evidence of its terms and any attempt to characterize it inconsistent

with its terms, including, but not limited to, the characterization of the departing Planning Commission Chair as "anti-housing," is denied. Denied that Plaintiffs' attempt to characterize the reasons for any actions by the Mayor or the Town is relevant or admissible in an effort to modify or alter the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of the actions alleged in paragraph 83 are inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of the allegations by Plaintiffs in paragraph 83 are factually or legally sufficient to negate or modify the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

84.    Denied that Mayor Link had any contact with contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link attempted to interfere with Plaintiffs' contractors or, in fact, interfered with Plaintiffs' contractors. Defendant admits Mayor Link spoke with a former contractor and asked for information, but denies Mayor Link asked for, expected to receive proprietary or confidential information, or received proprietary or confidential information from that former contractor. Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the

Escrow Agreement.  Denied that it would have been necessary for Mayor Link to contact anyone if Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any of the allegations by Plaintiffs in paragraph 84 are factually or legally sufficient to negate or modify the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

85.    Denied.  Denied that Mayor did or legally could disparage Plaintiffs by any of Plaintiffs' allegations.  Denied that Mayor Link had any contact with any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions that were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or anyone from the Town interfered in any way with Plaintiffs' performance, or again more accurately non-performance, of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of allegations by Plaintiffs in paragraph 85 are factually or legally sufficient to negate or modify the duties, responsibilities and obligations of the parties under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

86.     Denied that asking for performance by Plaintiffs in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement is either "opposition" or a "lack of cooperation" by Mayor Link or Defendant. Denied that the attempt to "amend the Warfield Project's zoning" was in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant denies the allegation of the "ongoing opposition and lack of cooperation from Mayor Link to both Plaintiffs and the Warfield Project," but admits that by letter dated December 13, 2021, the "Warfield Companies" requested an amendment of the PEC zoning district that was approved, included and accepted in the closing on the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. The letter dated December 13, 2021, is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.

87.    Defendant admits that by letter dated December 13, 2021, the "Warfield Companies" requested an amendment of the PEC zoning district to, among other things, increase the amount of residential density allowed; such request is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.  Denied that the "zoning text amendment" was in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the "shift in development density from commercial to residential" was in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that as of the date of submission of the zoning text amendment that Plaintiffs had performed their duties, obligations, and responsibilities in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any legal obligation to modify the Planned Employment Center ("PEC") that was incorporated into and part of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

88.    Denied that the DDA required Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion

Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged "State preference for housing" can alter, modify or change the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement. Denied that any alleged State preference for housing" is relevant or admissible based on the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on an alleged "State preference for housing" to alter, modify or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement.  Denied that any allegations by Plaintiffs concerning alleged financial incentives to the Warfield Project are relevant, admissible, or can be used to negate or modify the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that whatever the alleged petition was based on, that the Town had any obligation to accept the zoning text amendment when it was inconsistent with the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that at the time Plaintiffs submitted the zoning text amendment request that Plaintiffs had performed or were performing in accordance with their duties,

responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement. Denied that "state financial incentives to the Warfield Project" are a term or condition of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement.

89.    Denied. Denied that at the time Plaintiffs submitted the zoning text amendment that Plaintiffs had performed or were performing in accordance with their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement. Denied that Plaintiffs performed their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement, including, but not limited to, restoring the historic properties to a cold dark shell so that they could be marketed commercially. The unsuccessful marking of the Warfield Project, therefore, was not due to the Town, but rather due in large measure to Plaintiffs' failure to fulfill their contractual duties under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, or the Escrow Agreement. Denied that anything was "supported by years of experience," when those years of experience were due to Plaintiffs' failure to perform in accordance with the duties set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs' investments in third party market, fiscal impact, economic impact, land planning, engineering, and architectural studies were reasonable, rationale, or justified, when Plaintiffs had not performed their duties,

responsibilities and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and had not marketed the historic properties as a cold dark shell, because Plaintiffs failed to get them to that point.  Denied that Plaintiffs could not perform their duties, responsibilities, and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and then claim the project was "unsuccessful" and invest money in third party market, fiscal impact, economic impact, land planning, engineering, and architectural studies, without even contacting the Town and/or asking for the Town's input.  Denied that Plaintiffs notified the Town of the third party market, fiscal impact, economic impact, land planning, engineering, and architectural studies, until after they were completed because Plaintiffs had actual knowledge that they had not performed their duties, responsibilities, and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs' purchase of third party market, fiscal impact, economic impact, land planning, engineering, and architectural studies, was in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

90.    The proposed zoning text amendment is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.  Denied that the "Zoning Test

Amendment was in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that under the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement Plaintiffs had any legal right to change the zoning for the parcels mentioned in paragraph 90 or that the Town had any contractual or legal duty to consider any change in zoning mentioned in paragraph 90 to the extent it was inconsistent with the PEC zoning that was included in and part of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that at the time of the zoning text amendment request that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs' zoning text amendment is relevant or admissible to negate or modify the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

91.     Denied that the alleged extensive analysis and efforts associated with the zoning text amendment were in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on

Mayor Link or the Town a duty to discuss or negotiate for zoning different from the zoning agreed upon and set forth in Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Mayor Link or that the Town took any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs were initiating a zoning process unconstrained by prior negotiations and contracts and denied that Plaintiffs' putative failure to understand and appreciate the contracts they had entered into with the Town, including the agreed upon zoning, did not give Plaintiffs the right to seek any zoning they wanted whenever and wherever they wanted and without regard to Plaintiffs' failure to perform in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the Town was obligated to provide any process for the zoning text amendment when Plaintiffs were in default of their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and when the zoning for the property was negotiated for and set forth in the Agreements. Denied that Plaintiffs' allegations in in paragraph 91 are well founded based on the transcripts of meetings of the Town Council and or Planning Commission, which are the best evidence of such meetings and the Town's actions.

92.    Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow

Agreement.  Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty to discuss or negotiate for zoning different from the zoning agreed upon and set forth in Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation in this paragraph because Plaintiffs fail to identify the dates of any meetings or with whom Mayor Link allegedly met.  Denied that Mayor Link's opposition to the zoning text amendment was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the zoning change was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that the Town was obligated to provide any process for the zoning text amendment when Plaintiffs were in default of their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and when the zoning for the property was negotiated for and set forth in the Agreements.  The best evidence of Mayor Link's meetings with business owners and residents are in the recordings and/or transcripts of meetings of the Town Council or Planning

Commission, which are the best evidence of such meetings and the Town's actions.

93.    Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty to discuss or hold public hearings on zoning different from the zoning agreed upon and set forth in Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation in this paragraph because Plaintiffs fail to identify the dates of any meetings or with whom Mayor Link allegedly met. Denied that any alleged comments by Mayor Link concerning the zoning text amendment were inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the zoning change was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any of Mayor Link's alleged communications about a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement is relevant or admissible as grounds to modify or alter the terms and conditions, including but not limited to the zoning agreed upon, in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Defendant admits Mayor Link met with various people about the PEC zone, which included, but was not limited to, the Warfield Project, and expressed opposition to the amendment of the zoning ordinance, including, but not limited to, the fact that Plaintiffs had not performed in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and that the zoning text amendment was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that Mayor Link did anything improper by refusing to meet with Plaintiffs outside of Mayor and Town Council Meetings. Denied that when Plaintiffs submitted the Zoning Text Amendment that Plaintiffs had performed their obligations and duties in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied insofar as the best evidence of any meetings are the recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

94.    Denied that the "formal reports" and "studies" referred to in paragraph 94 were prepared in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that the zoning text amendment was in

accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any statements by Mayor Link could modify or alter the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have any cause or standing to complain about Mayor Link's comments when Plaintiffs voluntarily chose to submit a zoning text amendment that directly contradicted the PEC zoning that Plaintiffs negotiated for, agreed upon, and received from the Town as part of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that as of the time of Mayor Link's alleged comments that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent the allegations are not consistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

95. Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to oppose the zoning text amendment, particularly when the zoning text amendment was different

73

from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that "the proposed changes to shift approved density from commercial uses to residential" was in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Mayor Link had any duty or responsibility under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement not to solicit "negative public testimony regarding the changes to shift approved density commercial uses [per the aforesaid Agreements] to residential."    Defendant is without sufficient knowledge or information to admit or deny the remaining allegations because Plaintiffs provide no specifics about when, where, or the specifics of what Mayor Link allegedly said to anyone.  Denied that Mayor Link only encouraged testimony in opposition to the zoning text amendment or only "solicited" negative testimony.  Denied that the Downtown Sykesville Connection has affiliated business owners.  Denied that as of the dates mentioned in paragraph 95 that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any attendance encouraged by the Mayor with respect to the Zoning Text Amendment is relevant or admissible in order to modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or excuse Plaintiffs' failure to perform their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.    Denied that any of the actions alleged in Paragraph 95 are inconsistent with or evidence of the Town's failure to fulfill any duties, responsibilities, and/or obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

96.    Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to hold public information meetings regarding the zoning text amendment, particularly when the zoning text amendment was different from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the offer to hold a public information meeting with the Mayor and another councilperson was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that as of the dates mentioned in paragraph 96 that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and

the Escrow Agreement.   Denied that any of the allegations in paragraph 96 are inconsistent with any of the Town's duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

97.    Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to hold public information meetings regarding the zoning text amendment, particularly when the zoning text amendment was different from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that any comments by Mayor Link at the public meeting were not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that Mayor Link had any duty or responsibility under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement to use any analysis, projections or conclusions from Plaintiffs' third party studies. Denied that Plaintiffs can complain about the consequences of putting forth a zoning text

amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that as of the date of the meeting referred to in paragraph 97 that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of the allegations in paragraph 97 are inconsistent with any of the Town's duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions. Defendant is without knowledge or information sufficient to form a belief as to the truth of any of the remaining allegations in this paragraph. Denied that any alleged statements by the Mayor at a public information meeting have any legal import with respect to the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

98.     Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to

oppose or build opposition to the zoning text amendment, particularly when the zoning text amendment was different from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that any comments by Mayor Link at the public meeting conflict with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Mayor Link had any duty or responsibility under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement to not invite attendees at a public meeting to attend a Public Town Council hearing.  Denied that Plaintiffs can complain about the consequences of a public hearing in response to Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that as of the date of the meeting referred to in paragraph 98 that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that any of the allegations in paragraph 98 are inconsistent with any of the Town's duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the

Town's actions.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any of the remaining allegations in this paragraph.  Denied that any alleged statements by the Mayor at a public information meeting have any legal import with respect to the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

99.     Denied that the zoning text amendment was in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to oppose or build opposition to the zoning text amendment, particularly when the zoning text amendment was different from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that any alleged opposition by the Mayor or building of opposition by the Mayor to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment,  and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or building of opposition by the Mayor to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale

Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that as of the time referred to in paragraph 99 that Plaintiffs had performed their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any of the allegations in paragraph 99 are inconsistent with any of the Town's duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions. Defendant is without knowledge or information sufficient to form a belief as to the truth of any of the remaining allegations in this paragraph. Denied that any alleged statements by the Mayor, including any opposition by the Mayor, at any public forum are actionable or have any legal import with respect to the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

100.    Denied that the Town treated the zoning text amendment inconsistent with any other similar Town Council matter, including amy matter where the Town had previously entered into definitive contracts that spelled out the specific zoning for the property, as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town's treatment of the zoning text amendment was inconsistent in any way with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement required the Town to give any consideration to the zoning text amendment and/or required the Town to give special treatment to the zoning text amendment.  Denied that the zoning text amendment was consistent with the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied to the extent any of the allegations in paragraph 100 are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

101.    Defendant admits that a Town Council Meeting occurred on or about January 24, 2022, and that after hearing from representatives of Plaintiffs concerning the proposed zoning text amendment, the Town Council approved a motion referring it to the planning commission.  Denied that the Town's referral of the Zoning Text Amendment to the planning commission was inconsistent with any other similar Town Council matter, including a matter where the Town had previously entered into definitive contracts that spelled out a different and specific zoning for the property, as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town's referral of the zoning text amendment to the planning commissions was inconsistent in any way with the Purchase and Sale Agreement, the Amendments

to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement required the Town not to refer the zoning text amendment to the planning commission and/or required the Town to give special treatment to the zoning text amendment.  Denied that the zoning text amendment was consistent with the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that at the time of the referral to the planning commission that Plaintiffs had performed the obligations required of them under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town Council in any way improperly limited the scope of the Planning Commissioner's review and denied the Town denied violated either the Town's Code or State law.  Denied that Plaintiffs have standing in this proceeding to challenge whether the Town Council's alleged actions violated either the Town Code or State law.   Denied to the extent any allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

102.    Paragraph 102 states legal conclusions and opinions as to which no response is required.   Defendant admits, however, that the Mayor and Town Council and the Planning Commission have separate roles in the zoning process as set out by State and local law.  Denied that Plaintiffs' allegations fully and completely state the differences in State and local law.  Denied that Plaintiffs' attempt to pretend as if the zoning text amendment was a new issue subject to de novo review is either legally or factually accurate when the Purchase and Sale Agreement, the

Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement spelled out the specific zoning to be applied to the property and was negotiated and agreed upon by the parties.  Denied that Plaintiffs' attempt to characterize the law is consistent with the laws referenced.  Denied that at the time of the referral to the planning commission that Plaintiffs had performed their obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the request for the zoning text amendment could be considered independent of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town acted in any was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

103.    Denied that the request for the zoning text amendment could be considered independent of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs' analysis of Maryland law is correct contextually, because unlike a novel zoning request, the zoning text amendment sought to change the zoning that was agreed upon by Plaintiffs in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Although Defendant admits that applicable State and local law states the process the Mayor and Town Council is to follow in the zoning process after receiving a report and recommendation from the Planning Commission, State law does not in any way prohibit the Town from considering prior

agreements negotiated with Plaintiffs wherein Plaintiffs agreed to different zoning for the property, specifically the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs had performed their obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and denied that the Town Council was prohibited from considering Plaintiffs' non-performance in connection with the change of zoning requested. Denied that Plaintiffs' attempt to characterize the requirements of Maryland law is full and complete. Denied that the Town took any actions inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.

104.   Denied that Maryland law or the Town Code in any way limits the right of the Mayor and/or Town Council members to appear before the Planning Commission. Denied that any communications with the Planning Commission were inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs had performed their obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement at the time of the Planning Commission Meetings and denied that the Town Council was prohibited from calling attention to the fact that Plaintiffs were not performing in accordance with the Agreements. Denied that the zoning text amendment was a normal or routine matter referred to the Planning Commission, but rather was of a different ilk because of the prior specific agreement on the zoning that was negotiated by the Town with

Plaintiffs and was included in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement, and denied that the Town Council was prohibited from considering Plaintiffs' non-performance in connection with the change of zoning requested. Denied that any statements made by the Mayor or members of the Town Council to the Planning Commissioner are actionable, including, but not limited to, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

105. Denied that any of the actions by the Mayor or Town Council members were inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Defendants have standing to complain about the Mayor or Town Council's conduct at the Planning Commission meetings when Plaintiffs had, prior to those dates, failed to fulfill their obligations under the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the zoning text amendment was consistent with the zoning specifically negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. The remaining allegations of this paragraph are denied. Denied that any statements made by the Mayor or members of the Town Council to the Planning Commissioner are actionable, including, but not

limited to, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied to the extent any allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

106.   Denied that the Open Meetings Compliance Board found the conduct alleged in paragraphs 104 and 105 of the Complaint violated the Open Meeting Act, as Plaintiffs imply with the allegations in paragraph 106. Denied that Plaintiffs have standing to assert any claim for a violation of the Open Meeting Act. Denied that any of the actions by the Mayor or Town Council members were inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Defendants have standing to complain about the Mayor or Town Council's conduct at the Planning Commission meetings when Plaintiffs had, prior to those dates, failed to fulfill their obligations under the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the zoning text amendment was consistent with the zoning specifically negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the violation found by the Open Meeting Compliance Board was legally correct. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

107.   Denied.   Denied that Defendants have standing to complain about the Mayor or Town Council's conduct when Plaintiffs had, prior to the dates alleged, failed to fulfill Plaintiffs' obligations under the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the zoning text amendment was consistent with the zoning specifically negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that the Town had any duty to give any alleged due process to a zoning text amendment that directly conflicted with the zoning that was agreed upon and included in the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement and the aforesaid Agreements specifically did not provide for any right on the part of Plaintiffs to pursue a different form of zoning for the property at issue. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

108.   Admitted that the Planning Commission voted in opposition to the zoning text amendment and that the Town Council set a hearing for May 3, 2022.  Denied that the zoning text amendment was consistent with the zoning specifically negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town acted in any way inconsistently with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement,

and/or the Escrow Agreement, and the aforesaid Agreements specifically did not provide for any right on the part of Plaintiffs to pursue a different form of zoning for the property at issue. Denied that Plaintiffs, at the time alleged, had performed or were performing their obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

109. Defendant admits the allegations of the holding of a meeting except as to the characterizations of the motivations of former Secretary Holt, which Defendant denies, and denied that the motivations of the Secretary are relevant or admissible for any reason. Denied that the Secretary or whomever the Secretary brought with him had any legal authority to change or revise the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the Secretary or whomever the Secretary brought with him had the authority to require the Town to accept the zoning text amendment that was contrary to the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any opinions expressed at the meeting by the Secretary or anyone attending with the Secretary are admissible or relevant to the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs, at the time of the meeting, had performed or were performing their obligations as set forth in the Purchase

and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs could justifiably or reasonably rely on anything said by the Secretary or by whomever the Secretary brought with him to the meeting when Plaintiffs were aware of the actual zoning negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any allegations by Plaintiffs about hearsay statements and opinions expressed by the Secretary or any other representatives of DHCD are relevant, admissible, or can be used to negate or modify the obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that any members of the Town Council or the Mayor took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied to the extent any allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

110.    Denied.  Denied that the Secretary or whomever the Secretary brought with him had any legal authority based on their alleged "strong support for the Warfield Project" to either change or revise the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Secretary or whomever the Secretary brought with him had the authority to require the Town to accept the zoning text amendment that was contrary to the terms and conditions agreed upon in the Purchase and Sale Agreement, the

Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any opinions expressed at the meeting by the Secretary or anyone attending with the Secretary are admissible or relevant to the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs, at the time of the meeting, had performed or were performing their obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs could justifiably or reasonably rely on anything said by the Secretary or whomever the Secretary brought with him said at the meeting when Plaintiffs were aware of the actual zoning negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any allegations by Plaintiffs about hearsay statements and opinions expressed by the Secretary and/or any other representatives of DHCD at the meeting are relevant, admissible, or can be used to negate or modify the obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any members of the Town Council or the Mayor took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the Town had any duty or obligation to consider additional financial and other support from the State in connection with a zoning text amendment that conflicted with the negotiated and agreed upon terms and conditions as set forth in the Purchase and Sale Agreement, the Amendments to

the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the DDA required Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

111.    Defendant admits that there was a discussion of the meeting with former Secretary Holt at the June 21, 2022, Town Council meeting and the request for rezoning was denied, but otherwise denies the characterizations and implications about the meeting, including, but not limited to, because Defendant had a greater degree of discussion prior to exercising its legislative powers.  Denied that the length of the briefing is relevant in any sense because neither the Secretary nor whomever the Secretary brought with him had any legal authority based on their alleged "strong support for the Warfield Project" to either change or revise the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town needed an extensive report because neither the Secretary nor whomever the Secretary brought with him had the authority to require the Town to accept the zoning text

amendment that was contrary to the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any longer report was necessary because any opinions expressed at the meeting by the Secretary or anyone attending with the Secretary are not admissible or relevant to the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that a longer report was necessary because, among other reasons, Plaintiffs, at the time of the meeting, had not performed and were not performing their obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that a longer report was necessary because Plaintiffs could not justifiably or reasonably rely on anything said by the Secretary or whomever the Secretary brought with him said at the meeting because Plaintiffs were aware of the actual zoning negotiated for and agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that a longer report was necessary because any allegations by Plaintiffs about hearsay statements and opinions expressed by the Secretary and/or any other representatives of DHCD at the meeting are not relevant, admissible, and cannot be used to negate or modify the obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that any members of the Town Council or the Mayor took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or

the Escrow Agreement.  Denied that a longer report was necessary because the Town had no duty or obligation to consider additional financial and other support from the State in connection with a zoning text amendment that conflicted with the negotiated and agreed upon terms and conditions as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that a longer report was necessary because, among other things, the DDA did not require Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that a longer report was necessary because Plaintiffs could not reasonably or justifiably rely on the DDA, when Plaintiffs had and have actual knowledge of their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to the extent any allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

112.    Denied that any allegations that the State offered a $15 million tax credit commitment to the "Warfield Project" could be used to alter, modify, or negate Plaintiffs agreed upon duties and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the alleged "prospect of substantial additional State and Federal support" was consistent with the Purchase and Sale Agreement, the Amendments to the Purchase

and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on State tax credits and/or the prospect of substantial additional State and federal support that was not based on the terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. Denied that any of the actions alleged by the Town were inconsistent with the Town's duties and obligations in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions. Denied that Plaintiffs have alleged any arbitrary legislative action and/or a plain abuse of power.

113.   Denied that the zoning text amendment was the legal predicate for Plaintiffs moving forward with the development of the "Warfield Project" according to the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' alleged "ability to move forward with the development of the Warfield Project'" is relevant or admissible to alter or modify the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any obligation to "reasonably address the proposed Zoning text Amendment" that conflicted with the zoning explicitly negotiated, agreed upon and set forth in the Purchase and Sale Agreement, the

Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied Plaintiffs had any alleged "zoning entitlements" based on a zoning text amendment that conflicted with Plaintiffs' duties and obligations as agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on alleged "zoning entitlements" or "financial commitments of the State," when the zoning text amendment conflicted with Plaintiffs' duties and obligations as agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that any hearsay statements about lender financing or State financial commitments are relevant or admissible to modify Plaintiffs' duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can rely on the various allegations in paragraph 113, when, at that time, Plaintiffs had not performed and were not performing the obligations required of them as agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have alleged any arbitrary legislative action and/or a plain abuse of power.

114.   Denied.  Denied that the Town had any obligation to act in good faith toward the zoning text amendment because it directly conflicted with the zoning negotiated, agreed upon and

set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any duty at all to re-negotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any duty or obligation to re-negotiate the planning that was already agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any duty to re-negotiate the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in order to make it "economically feasible" for Plaintiffs. Denied that Plaintiffs had or have any standing to complain about the economic feasibility of the entire project or the alleged "Warfield Project," when Plaintiffs failed to perform their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the duty of good faith and fair dealing required the Town to take any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have alleged any arbitrary legislative action and/or a plain abuse of power.

115.    Defendant denies the allegations in the first sentence of this paragraph. Denied that

the Town had any obligation to "analyze the feasibility or marketability" in connection with the zoning text amendment because the zoning text amendment directly conflicted with the zoning negotiated, agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any duty to determine or consider absorption rates for additional residential development at the Warfield Project because the zoning text amendment directly conflicted with the zoning negotiated, agreed upon and set forth the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any duty to determine or consider "the best use or combination of uses for the Warfield Project," when the Town had already agreed upon the best uses of the Warfield Project and Plaintiffs had agreed to those uses in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied any duty to re-negotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any duty to make any of the remaining determinations alleged in paragraph 115 because they are all inconsistent with the negotiated and agreed upon terms set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any testimony or statements by Mayor Link are relevant or admissible to modify the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2030 Comprehensive Plan

required the Town to renegotiate or change the contract terms already agreed upon with Plaintiffs and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to complain about the entire project or the alleged "Warfield Project," when Plaintiffs failed to perform their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the duty of good faith and fair dealing required the Town to take any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have alleged any arbitrary legislative action and/or a plain abuse of power.

116.    Denied that the Town had any obligation at the time of the zoning text amendment to conduct "any inquiry into whether there was a market for retail at the property, whether there was a market for commercial uses as the property, or whether there was a market for a hotel at the property" because the zoning text amendment directly conflicted with the zoning negotiated, agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any testimony by Mayor Link is relevant or admissible to modify the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow

Agreement.  Denied that the Town had any duty to inquire or evaluate the alleged impact of the Covid-19 pandemic for commercial and retail uses or for lender and equity investor appetite, because the zoning text amendment directly conflicted with the zoning negotiated, agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied the Town had any duty to re-negotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to complain about what the Town did or did not do with respect to the entire project or the alleged "Warfield Project," when Plaintiffs failed to perform their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have alleged any arbitrary legislative action and/or a plain abuse of power.

117.    Defendant admits the Town's 2030 Comprehensive Plan was adopted in June 2021 and states the Comprehensive Plan is the best evidence of its terms.  Denied that Plaintiffs allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan. Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including,

but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan imposed any duty or obligation on the Town to renegotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

118.    As to the first two sentences of this paragraph, the Comprehensive Plan is the best evidence of its terms. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan. Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan imposed any duty or obligation on the Town to renegotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2020 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion

Agreement, and the Escrow Agreement.  Denied as to the allegations concerning the Town's alleged opposition to the "Warfield Project" contradicting "the principles of a form-based zoning policy," and denied that any such allegations are relevant, admissible, or can be used in any way to alter, modify, or negate the duties and obligations set out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

119.    The Comprehensive Plan is the best evidence of its terms. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan. Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2030 Comprehensive Plan imposed any duty or obligation on the Town to renegotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2020 Comprehensive Plan had any impact on the Zoning Test Amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale

Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on any language in the Town's 2030 Comprehensive Plan.

120.    As to the allegations in this paragraph about what is in the Town's 2030 Comprehensive Plan, the actual 2030 Comprehensive Plan is the best evidence of its terms. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan.  Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2030 Comprehensive Plan imposed any duty or obligation on the Town to renegotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2020 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole

or in part on any language in the Town's 2030 Comprehensive Plan.

121.    Denied that the Town has or is doing anything other than asking Plaintiffs to live up to the terms and conditions agreed upon by Plaintiffs, including the agreed upon zoning, as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan. Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan imposed any duty or obligation on the Town to renegotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole

or in part on any language in the Town's 2030 Comprehensive Plan.

122.    Admitted the Comprehensive Plan is the best evidence of its terms. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan.  Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town's 2030 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on any language in the Town's 2030 Comprehensive Plan.

123.    Admitted the Comprehensive Plan is the best evidence of its terms. Denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of the 2030 Comprehensive Plan.  Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan had any impact on the Zoning Test Amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on any language in the Town's 2030 Comprehensive Plan.

124. The first two sentences of this paragraph state legal conclusions to which no response is required. To whatever extent a response may be required, House Bill 1045 is the best evidence of its terms and any attempt to characterize the bill inconsistent with its entire terms is denied. As to the remaining allegations of this paragraph, denied that Plaintiffs' allegations truthfully, accurately and completely report the terms of House Bill 1045 and/or the Town's 2030 Comprehensive Plan. Denied that House Bill 1045 and/or the Town's 2030 Comprehensive Plan are relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under House Bill 1045 and/or the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and

Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that House Bill 1045 or the Town's 2030 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on any language in House Bill 1045 and/or the Town's 2030 Comprehensive Plan.

125.    Denied that Plaintiffs' allegations about "inclusionary housing approach through zoning" is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs' allegation about the "Warfield Project is the last major development opportunity for the Town" is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to assert any claim under the Town's 2030 Comprehensive Plan, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and

Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town's 2030 Comprehensive Plan had any impact on the zoning text amendment, which was contrary to the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on any language in the Town's 2030 Comprehensive Plan.

126.    Defendant is without knowledge or information sufficient to form a speculative belief about what Plaintiffs might have done, particularly when Plaintiffs failed to live up to the terms and conditions they already agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs suffered any damages as a result of any wrongful action of the Town. Denied that the zoning text amendment is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the zoning text amendment, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town had any duty or obligation to accept or agree to the zoning as proposed in the zoning text amendment, when the zoning text amendment

conflicted with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had any right to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement on a going forward basis when Plaintiffs had already accepted and financially benefitted from the foregoing Agreements through the development and sale of Parkside. Denied that the Town had any obligation to renegotiate the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement based in whole or in part on the zoning text amendment or any language in the Town's 2030 Comprehensive Plan. Denied that Plaintiffs can claim damages or shift their financial obligations based on Plaintiffs' failure to follow the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or based on the Town's refusal to agree to a change in zoning (a/k/a the zoning text amendment) that was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

127.    Denied that any alleged available tax credits are relevant or admissible as grounds to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged available tax exempt bond financing is relevant or admissible as grounds to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

Denied that any alleged State grants Plaintiffs alleges would have been available are relevant or admissible as grounds to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the zoning text amendment is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the zoning text amendment, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had any right to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement on a going forward basis when Plaintiffs had already accepted and financially benefitted from the foregoing Agreements through the development and sale of Parkside. Denied that the Town had any duty or obligation to accept or agree to the zoning as proposed in the zoning text amendment, when the zoning text amendment conflicted with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations about what tax credits "would have been available" and if they were available what the amount of those taxes "would have" been, which is speculation. Defendant is without knowledge or information sufficient to form a belief as what Plaintiffs might have received in tax exempt bond financing or State grants.

128.    Denied that Plaintiffs have any unilateral right to declare they can proceed.  Denied that there is any justiciable controversy if Plaintiffs' position is the zoning text amendment is no longer necessary.  Denied that any damages have been suffered if Plaintiffs can simply proceed, as they claim, without the zoning text amendment.  Admitted House Bill 538 was approved by the Governor on April 25, 2024, and that it went into effect on January 1, 2025, and the bill is the best evidence of its terms.  Denied that the Governor's intent is relevant or admissible to modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Court has jurisdiction to adjudicate the legal import of HB 538 on the zoning text amendment and/or the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied Plaintiffs have complied with the requirements of HB 538 for purpose of rezoning and denied that HB 538 provided Plaintiffs with the declaratory judgment authority that is self-proclaimed in paragraph 128.  Denied that HB 538 either alters or amends, or is relevant or admissible to alter or amend, the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. The last sentence in this paragraph is denied in its entirety because it is factually and legally in error.

129.    Denied that the Town had any obligation to allow Plaintiffs access to State grant funds based on the proposed zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged State grants Plaintiffs alleges would have been available are relevant or admissible as grounds to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement,

the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the zoning text amendment is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to assert any claim under the zoning text amendment, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs had any right to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement on a going forward basis when Plaintiffs had already accepted and financially benefitted from the foregoing Agreements through the development and sale of Parkside. Denied that the Town had any duty or obligation to accept or agree to the zoning as proposed in the zoning text amendment, when the zoning text amendment conflicted with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Defendant took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any grants were fully committed by the State in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can claim damages either directly or indirectly based on a zoning text amendment that conflicted with the binding contracts that Plaintiffs entered into,

111

including the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can claim any alleged damages when Plaintiffs' failed to perform their duties and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

130.    Denied that the Town had any obligation to allow Plaintiffs access to State funding from grants based on the proposed zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged State funding grants Plaintiffs alleges would have been available are relevant or admissible as grounds to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the zoning text amendment is relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claim under the zoning text amendment, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and the obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had any right to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement on a going forward basis when Plaintiffs had already

112

accepted and financially benefitted from the foregoing Agreements through the development and sale of Parkside. Denied that the Town had any duty or obligation to accept or agree to the zoning as proposed in the Zoning Text Amendment, when the Zoning Text Amendment conflicted with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Defendant took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any grants were fully committed by the State in accordance with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can claim damages either directly or indirectly based on a zoning text amendment that conflicted with the binding contracts that Plaintiffs entered into, including the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any State grant funds are relevant or admissible to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can claim any alleged damages when Plaintiffs failed to perform their duties and obligations in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged hearsay statements by anyone from or affiliated with DHCD is relevant or admissible for any purpose in this action or can be used in any way to negate or modify the duties and obligations of the parties as agreed upon in the Purchase and Sale

Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any statements by anyone from or affiliated with DHCD about the supposed grants were consistent with the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on any statements by anyone from or affiliated with the DHCD when Plaintiffs had actual knowledge that their duties and obligations were set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any allegations as to what was "widely understood by all parties" is relevant, admissible, or can be used to alter, modify, or negate the duties and obligations in the the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

131.    Defendant admits the allegations of the first sentence of this paragraph and denies the remaining allegations in this paragraph.  Denied that the State grant referenced in paragraph 131 altered or amended the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that paragraph 131 is proof of any wrongdoing by the Town, but rather shows that the Town was willing to accept funding consistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that even after receiving the grant referred to in paragraph 131 that Plaintiffs performed the duties, responsibilities and obligations required of them in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and

Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to extent any allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions.

132.    Defendant denies the allegations of this paragraph except that it admits that DHCD transferred the award to the Town for use on unrelated projects. Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement required the Town to transfer the funds in a tax-efficient manner. Denied that Plaintiffs' allegations about the DCHC Secretary are relevant or admissible to modify or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant is without sufficient knowledge or information sufficient to admit or deny the intentions of the DCHD Secretary, but denied that those intentions are relevant or admissible to modify or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that actions taken by the Town were inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

133.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  Denied that anything DCHD said to Plaintiffs is relevant or admissible to modify or alter to modify or amend the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to Plaintiffs' zoning text amendment, which was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, was in any way inconsistent with such documents.  Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph.  Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

134.    Denied, except as to the extent that it admitted that CFCC withdrew from the arrangement.  Denied that Mayor Link took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any hearsay statements can be admitted to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs had performed or were performing their duties, responsibilities

and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph. Denied that any actions or decisions by the CFCC are relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

135.     Defendant denies the characterization in this paragraph that Plaintiffs were "forced to scramble" to partner with anyone because no such partnership was called for and/or required by any of the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Defendant is without knowledge or information sufficient to admit or deny how the money Grant Funds would have been spent. Denied that the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' allegations concerning grants or hearsay statements by anyone affiliated with RECFM or CFHC are relevant or admissible to alter, amend or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement,

the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

136.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this paragraph.  Plaintiff denies the allegations of the second sentence of this paragraph.  Denied that opposition to Plaintiffs' zoning text amendment, which was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, was opposition to the Warfield Project.  Denied that alleged disparaging of the zoning text amendment was disparaging to the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs' performance of the duties, responsibilities and obligations set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement were conditioned on any grants.  Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged

in this paragraph. Denied that any hearsay statements about any alleged State or federal grants are relevant or admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

137.    Denied and further denied that Plaintiffs' performance of its obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement was conditioned on Plaintiffs obtaining State and/or Federal funding for historic preservation.  Denied that the Town took any action or failed to take any action that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs' failure to obtain State and/or federal funding for historic preservation is relevant or admissible to alter, amend or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to Plaintiffs' zoning text amendment, which was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, was opposition to the Warfield Project.  Denied that the Town had any duty, responsibility or obligation to support Plaintiffs' applications for State and federal funding based on the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the

Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph. Denied that any hearsay statements about any alleged State or federal grants are relevant or admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

138.    Denied.  Denied that the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement required the Town to accede to "Plaintiffs' Proposals." Denied that opposition to Plaintiffs' zoning text amendment, which was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement, was "active opposition" to the Warfield Project. Denied that the Town took any action or failed to take any action that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the alleged "neglect by the Town during the 16 years it controlled the property" is relevant or admissible to alter or amend the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion

Agreement, and the Escrow Agreement.  Denied that the Town had any duty, responsibility or obligation to support Plaintiffs' efforts to obtain funding based on the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement at the time alleged in this paragraph. Denied that any hearsay statements about any alleged State or federal funding are relevant or admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.

139.   As the term "outset of the Warfield project" is undefined, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation of this paragraph.  Further denied that any of Plaintiffs' allegations concerning studies prior to closing are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Further denied that Plaintiffs performed the obligations required of them under the fully integrated

Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

140.   As the first sentence of this paragraph uses the vague and undefined phrase "key providers" and the time period is undefined, Defendant is without knowledge or information sufficient to form a belief as to the allegations. Defendant admits that TischlerBise was contracted with at some point in time to perform a fiscal impact study, but otherwise denies the allegations of the second and third sentences of this paragraph. Denied that any of Plaintiffs' allegations concerning studies prior to closing are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale

Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

141.    Admitted that a report was completed in or around May 2014 and that TischlerBise was paid for the work. Denied that any of Plaintiffs' allegations concerning studies prior to closing are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied as to any allegation of any implied duty or obligation to alter the zoning that

was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

142. Admitted that an updated report was requested, but denied that any of Plaintiffs' allegations concerning studies prior to closing are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied to the extent

there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

143.   The referenced reports are the best evidence of their terms and contents and any attempt to characterize them inconsistent with their terms is denied.  Denied as to any duty or responsibility under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement "to perform any analysis of local market conditions" to evaluate "feasibility of various land uses proposed for the Warfield Project" not found in the contract documents.  Denied that any of Plaintiffs' allegations concerning studies prior to closing are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion

Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

144.    Defendant admits that in or around 2019 a building was sold, but as the term "small" is undefined, it is without knowledge or information sufficient to form a belief as to the remaining allegations of the first sentence of this paragraph. Defendant admits the allegations in the second sentence of this paragraph. Defendant is without knowledge or information sufficient to form a belief as to the allegations of the third sentence of this paragraph. Denied that any of Plaintiffs' allegations concerning the sale of Building H are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated PSA, amendments to the PSA, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the

relationship between the parties. Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

145.    Defendant is without knowledge or information sufficient to form a belief as to the truth of any statements or motives of the Department of Economic Development as alleged in this paragraph. Any grant agreement from the Department of Economic Development would be the best evidence of its terms and any attempt to characterize it inconsistent with such terms is denied. Denied that any of Plaintiffs' allegations concerning the sale of Building H or alleged hearsay statements of the Department of Economic Development are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that any hearsay statements about any alleged State or federal grants are relevant or admissible to alter, amend, or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities,

and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph..  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

146.   Defendant is without knowledge or information sufficient to form a belief as to the truth of any statements of the Department of Economic Development as alleged in this paragraph. The referenced grant agreement is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied.  Denied that any allegations of grants sought or that the Department of Economic Development is alleged to have agreed to provide are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied that any hearsay statements about any alleged State or federal grants are relevant or admissible to alter, amend, or

modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied that any of Plaintiffs' allegations concerning grants or alleged hearsay statements of the Department of Economic Development are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated PSA, amendments to the PSA, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations

that do not exist under the contract documents.

147.    Defendant admits that Sage Policy Group was selected, but otherwise denies the remaining allegations of this paragraph including, but not limited to, any characterizations or implications of wrongdoing.  Denied as to Plaintiffs' allegations including, without limitation, allegations of selecting Sage Policy Group "without telling or consulting with Plaintiffs" and that the Town did not include "the critical analyses of economic impact and market analysis," that the Town took any action or failed to take any action that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  The updated Fiscal Impact report is the best evidence of its terms and any attempt to characterize it inconsistent with its terms is denied. Further denied that any of Plaintiffs' allegations concerning grants or statements or reports of consultants are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

148.    Defendant denies that a report was necessary to correct deficiencies but admits that Plaintiffs obtained one from TischlerBise in 2021.  Denied that any of Plaintiffs' allegations concerning grants or consultants are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

149.    Denied.  Further denied that any of Plaintiffs' allegations concerning reports or costs

are relevant, admissible, or can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed to under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied that Plaintiffs had performed or were performing their duties, responsibilities, and obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties at the time alleged in this paragraph. Denied that any allegations of Plaintiffs concerning reports they obtained not required under the terms and conditions of the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship of the parties can be used to alter, modify, or negate the terms and conditions of the contract documents. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase Agreement, amendments to the Purchase Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Further denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

## COUNT I

**Breach of Contract—Implied Covenant of Good Faith and Fair Dealing**

150.    Defendant incorporates and adopts by reference its responses to the allegations of the preceding paragraphs of the Complaint as though fully set forth herein.

151.    Defendant admits that the Town and a predecessor in interest to certain of the Plaintiffs were subject to the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reservation Agreement, the Escrow Agreement, and a Deed of Trust Note, which are the best evidence of their terms and any attempt to characterize them is denied.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement

that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

152.    The allegations of this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, denied as the term "a duty to cooperate with Plaintiffs so that all parties may obtain the full benefit" is undefined, lacks context, and is not an accurate statement of Maryland law.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

153.    Denied.  Denied as to Plaintiff's inaccurate statement of Maryland law.  Denied as

to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment.   Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.   Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

154.   Denied.   Denied as to Plaintiff's inaccurate statement of Maryland law.   Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority

under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment.  Denied that Plaintiffs have standing to raise any claims under the DDA.  Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement based upon the DDA.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement

that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

155.   Denied.  Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment.  Denied that the Town had any contractual or legal duty to consider any change in zoning mentioned in this paragraph to the extent it was inconsistent with the PEC zoning that was included in and part of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the request for the zoning text amendment could be considered independent of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Town had any duty to determine or consider "any of Plaintiffs' proposals" or "any proposal for the Warfield Project that would be viable, sustainable, and consistent with the DDA," when the Town and

Plaintiffs had agreed to the PEC zoning in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied as to any duty to re-negotiate the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to assert any claims for alleged violation of the Open Meeting Act. Denied as to any allegation of a violation of the Open Meetings Act. Denied to the extent any of the allegations are inconsistent with any recordings or transcripts of meetings of the Town Council or Planning Commission, which are the best evidence of such meetings and the Town's actions. Denied that Plaintiffs have standing to raise any claims under the DDA. Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement based upon the DDA. Denied Defendant

did anything improper by refusing to meet with Plaintiffs outside of Mayor and Town Council meetings and Planning Commission meetings. Denied that when Plaintiffs submitted the zoning text amendment that Plaintiffs had performed their obligations and duties in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the Town had any duty as to the remaining allegations in this paragraph because they are all inconsistent with the negotiated and agreed upon terms set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties and applicable law. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation

Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

156.   Denied.   Denied that opposition to the zoning text amendment was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment.   Denied that Plaintiffs have standing to raise any claims under the DDA.   Denied that the DDA is relevant or admissible as grounds to alter or modify the terms of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied as to any allegation of acting "to prevent any cooperation and to block and prevent the objective of the Warfield Agreements and the DDA" in denying Plaintiffs' proposed zoning text amendment which conflicted with the duties and obligations of the parties as stated in the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that the DDA requires Defendant to take any action whatsoever with respect to Plaintiffs and/or the alleged Warfield Project because Plaintiffs' duties, responsibilities, and obligations for the alleged Warfield Project are spelled out in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs could reasonably or justifiably rely on the DDA when

Plaintiffs had actual knowledge that their duties, responsibilities, and obligations were governed by the terms and conditions stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs can negate or modify the contract terms agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement based upon the DDA. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

    157. Denied. Denied that opposition to the zoning text amendment by Mayor Link or the

Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied as to any claim of unjust enrichment, and denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the

obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

158.    Denied.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Mayor Link or the Town did or legally could disparage Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged disparaging of the zoning text amendment was disparaging to the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment,  and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the

Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.   Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment.   Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.   Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the

Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

159.    Denied.  Denied that Plaintiffs can claim damages or shift their financial obligations based on Plaintiffs' failure to follow the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or based on the Town's refusal to agree to a change in zoning (a/k/a the zoning text amendment) that was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have suffered damages.  Denied that opposition to the zoning text amendment Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied as to any allegations that the Town had a duty to exercise or was exercising discretionary authority under the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement in considering or denying Plaintiffs' proposed zoning text amendment. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the

Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

## COUNT II

### False Light

160.    Defendant incorporates and adopts by reference its responses to the allegations of the preceding paragraphs of the Complaint as though fully set forth herein.

161.    Denied.    Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that Mayor Link has repeatedly made false and defamatory statements as alleged.    Denied that Mayor Link has made any statements inconsistent with Plaintiffs' duties, responsibilities and obligation as

agreed upon and stated in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have standing to pursue defamation claims on behalf of "their principals."  Denied that Mayor Link or the Town did or legally could defame Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment,

and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can

such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

162.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that Mayor Link has repeatedly made false and defamatory statements "about the costs of the Warfield Project" as alleged. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town did or legally could defame Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with

the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied

that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

163.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that Mayor Link has repeatedly made false and defamatory statements as alleged.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town did or legally could defame Plaintiffs by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that

Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or

implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

164.    Denied. Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have stated or could state a defamation claim, and denied that Plaintiffs were defamed, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame Plaintiffs by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the

Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

165.   Denied. Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement imposed on Mayor Link or the Town any duty not to oppose or build opposition to the zoning text amendment, particularly when the zoning text amendment was different from the zoning agreed upon and set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that any comments by Mayor Link at the public meeting conflict with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Mayor Link had any duty or responsibility under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement to not invite attendees at a public meeting to attend a public Town Council hearing. Denied that Plaintiffs have stated or could state a defamation or false light claim, and denied that Plaintiffs were defamed or placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame Plaintiffs or place them in a false light by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or placed in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement

was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale

Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

166. Denied. Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that Mayor Link had any alleged contact with any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the Town took any actions that were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that opposition to the zoning text amendment by

Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed

to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

167.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that the Mayor or the Town had any duty not to use "Town resources" to oppose Plaintiff's proposed zoning text amendment that was inconsistent with the duties and obligations of the parties in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs have stated or could state a defamation or false light claim, and denied that Plaintiffs were defamed placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame Plaintiffs or place them in a false light by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the

Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

168. Denied. Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have

stated or could state a defamation or false light claim, and denied that Plaintiffs were defamed or placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town did or legally could defame our put in a false light Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale

Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

169.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that opposition

to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were defamed or placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame or place in a false light Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged statements concerning the zoning text amendment was defamation or to harm the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Defendant acted with actual malice or intent to cause harm.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the

Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the

Mayor may have made at such meetings.

170.   Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame or place in a false light Plaintiffs by any of Plaintiffs' allegations.  Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment,

and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can

such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

171.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame or place Plaintiffs in a false light by any of Plaintiffs' allegations.  Denied that Defendant knowingly made any false statements. Denied that alleged statements concerning the zoning text amendment was defamation or placed in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments

to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be

used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

172. Denied. Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were defamed or placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could defame or put in a false light Plaintiffs by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or put in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement,

the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

173.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have standing to pursue defamation claims on behalf of "their principals." Denied that Mayor Link or the Town did or legally could defame, place in a false light, or harm Plaintiffs by any of Plaintiffs' allegations. Denied that Defendant acted with actual malice or intent to cause harm. Denied that alleged statements concerning the zoning text amendment was defamation or could place in a false light Plaintiffs or the development as agreed upon and

contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents. Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

174.   Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could place Plaintiffs in a false light by any of

Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or could put in false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights. Denied that Defendant acted with reckless disregard or with the intent to cause harm. Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the

relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.  Denied as to any allegations that are not consistent with any recordings or transcripts of meetings of the Town Council, which are the best evidence of any statements the Mayor may have made at such meetings.

175.   Denied.  Denied that Plaintiffs have stated or could state any alleged claim of false light without specific dates and specific statements attributed to the Mayor.  Denied that Plaintiffs can claim damages or shift their financial obligations based on Plaintiffs' failure to follow the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or based on the Town's refusal to agree to a change in zoning (a/k/a the zoning text amendment) that was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase

and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have suffered any damages as a result of any alleged wrongful act. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs have stated or could state a false light claim, and denied that Plaintiffs were placed in a false light, including, but not limited to, because Plaintiffs failed to perform their duties, responsibilities and obligations under the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town did or legally could claim false light Plaintiffs by any of Plaintiffs' allegations. Denied that alleged statements concerning the zoning text amendment was defamation or could put in a false light Plaintiffs or the development as agreed upon and contemplated by the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Mayor Link or the Town took any actions inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by the Mayor or the Town to the zoning text amendment, which was inconsistent with the Purchase and Sale

Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement was unlawful or could be in bad faith, including, because of the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights.  Denied that any alleged opposition by the Mayor or Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be

used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

## COUNT III

### Tortious Interference with Prospective Advantage

176.   Defendant incorporates and adopts by reference its responses to the allegations of the preceding paragraphs of the Complaint as though fully set forth herein.

177.   Denied.  Denied that Plaintiffs have stated or could state any alleged claim of tortious interference without specific dates and specific statements attributed to the Mayor.  Denied that Mayor Link had any alleged contact with any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions that were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale

Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Mayor Link or the Town did or legally could disparage Plaintiffs or tortiously interfere by any of Plaintiffs' allegations. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

178.   Denied. Denied that Plaintiffs have stated or could state any alleged claim of tortious interference without specific dates and specific statements attributed to the Mayor. Denied that Mayor Link had any alleged contact with any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale

Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions that were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Mayor Link or the Town did or legally could disparage Plaintiffs or tortiously interfere by any of Plaintiffs' allegations.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship

between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

179.   Denied.  Denied that Plaintiffs have stated or could state any alleged claim of tortious interference without specific dates and specific statements attributed to the Mayor.  Denied that Mayor Link had any alleged contact with any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Mayor asked contractors and businesses that had business relationships with Plaintiffs to provide proprietary and confidential information.  Denied that any actions taken by Mayor Link were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that the Town took any actions that were inconsistent with the duties, responsibilities, and obligations of the parties as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that

Mayor Link or the Town did or legally could disparage Plaintiffs or tortiously interfere by any of Plaintiffs' allegations. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

180.    Denied. Denied that Plaintiffs have stated or could state any alleged claim of tortious interference without specific dates and specific statements attributed to the Mayor. Denied that any actions or decisions by the CFCC are relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the CFCC was to

act as a conduit for grant awards under the terms and conditions of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, Preservation Agreement, Reversion Agreement, and Escrow Agreement.  Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that Mayor Link or the Town took any actions in regards to grants or otherwise that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or

implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

181.    Denied.  Denied that Plaintiffs have stated or could state any alleged claim of tortious interference without specific dates and specific statements attributed to the Mayor. Denied that any actions or decisions by the CFCC are relevant or admissible to alter or modify the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that the CFCC was to act as a conduit for grant awards under the terms and conditions of the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, Preservation Agreement, Reversion Agreement, and Escrow Agreement. Denied to whatever extent any of the State and/or Federal funding sought by Plaintiffs was inconsistent with the terms and conditions of the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Mayor Link or the Town took any actions in regards to grants or otherwise that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that opposition to the

zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

182.    Denied.  Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph.  Defendant states that the referenced grant agreements or awards are the best evidence of their terms and any attempt to characterize them inconsistent with their terms is denied.  Denied that any grants or allegations of partnering with CFHC to administer grants is relevant or admissible for any purpose because no such partnership was called for and/or required by any of the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties,

nor can such allegations be used to create obligations that do not exist under the contract documents.

183.    Denied.  Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph.  Denied that any grants or any hearsay statements by CFCC as to the withdrawal of any grants or from any business relationship are relevant or admissible for any purpose because no such business arrangement was called for and/or required by any of the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the

Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

184.   Denied.   Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph.   Denied that any allegations of awareness as to business relationships or prospective business relationships as to "these entities" are relevant or admissible for any purpose because no such business relationship was called for and/or required by any of the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied to the extent any such alleged business relationship or prospective business relationship was premised on the zoning text amendment or was otherwise inconsistent with the terms and conditions in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.   Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.   Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.   Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement

that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

185.   Denied. Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph. Denied that any allegations concerning grants are relevant or admissible for any purpose because no such grants were called for and/or required by any of the terms and conditions set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied to the extent any alleged grants were premised on Plaintiffs' proposed zoning text amendment or which otherwise was inconsistent with the terms and conditions of the Purchase and Sale Agreement, Amendments to the Purchase and Sale Agreement, Preservation Agreement, Reversion Agreement, and Escrow Agreement. Denied that Defendant intentionally or consciously acted in a wrongful manner designed to harm Plaintiffs. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship

between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

186.   Denied. Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph. Denied that Plaintiffs could have a reasonable expectation of any business relationship premised on any zoning text amendment that was inconsistent with the agreed upon terms and conditions in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, Preservation Agreement, Reversion Agreement, and Escrow Agreement. Denied that opposition to the zoning text amendment by the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied the Town took any actions in regards to grants or otherwise that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that any alleged opposition by Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase

and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

187.    Denied. Denied that Plaintiffs have or can state any claim of tortious interference based on the allegations in this paragraph. Denied that Mayor Link had any alleged contact with

any contractors until after Plaintiffs already were not performing their duties, responsibilities, and obligations as set forth in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged contact or any opposition to the zoning text amendment by the Town was unlawful in any way or inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied the Town took any actions in regards to grants or otherwise that was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement.  Denied that any alleged opposition by Town to the zoning text amendment conflicts with any of the express terms and conditions agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement.  Denied that Defendant acted intentionally, willfully, or with the improper purpose of causing damage to Plaintiffs.  Denied that any alleged action of the Town caused harm to the development as set out in the Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, Preservation Agreement, Reversion Agreement, and Escrow Agreement.  Denied that Plaintiffs can complain about the consequences of Plaintiffs putting forth a zoning text amendment that was not in accordance with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied that Plaintiffs performed the obligations required of them under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.

Denied as to any allegation of any implied duty or obligation to alter the zoning that was agreed to by the parties, adopted prior to closing, and accepted at closing, under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties.  Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

188.  Denied.  Denied that Plaintiffs can claim damages or shift their financial obligations based on Plaintiffs' failure to follow the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement or based on the Town's refusal to agree to a change in zoning (a/k/a the zoning text amendment) that was contrary to the zoning agreed upon in the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. denied that Plaintiffs, having already accepted the benefits of the Agreements, including through the successful development of "Parkside," can avoid the burden, consequences and responsibilities for preservation of the historic buildings as spelled out

in the Purchase and Sale Agreement, the amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement. Denied that Plaintiffs have suffered damages as a result of any wrongful act. Denied that opposition to the zoning text amendment by Mayor Link or the Town was inconsistent with the Purchase and Sale Agreement, the Amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and/or the Escrow Agreement. Denied to the extent there is any allegation or implication that the Town failed to act consistently with, or deviated from, the terms and conditions of the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties. Denied that any of Plaintiffs' allegations can be used to negate or modify the obligations of the parties, or the risks assigned, that they agreed upon under the fully integrated Purchase and Sale Agreement, amendments to the Purchase and Sale Agreement, the Preservation Agreement, the Reversion Agreement, and the Escrow Agreement that govern the relationship between the parties, nor can such allegations be used to create obligations that do not exist under the contract documents.

### THIRD DEFENSE – AFFIRMATIVE DEFENSES

1.   Plaintiffs' claims are bared in whole or in part by accord and satisfaction.

2.   Plaintiffs' claims are barred in whole or in part by assumption of the risk.

3.   Plaintiffs' claims are barred in whole or in part by contributory negligence.

4.   Plaintiffs' claims are barred in whole or in part by estoppel.

5.   Plaintiffs' claims are barred in whole or in part by failure of consideration.

6.   Plaintiffs' claims are barred in whole or in part by fraud.

7.   Plaintiffs' claims are barred in whole or in part by the applicable statutes of

limitations.

8.      Plaintiffs' claims are barred in whole or in part by waiver.

9.      Plaintiffs' claims are barred in whole or in part by their own material breach(es) of contract and/or failures of condition precedent.

10.     Plaintiffs' claims are barred in whole or in part on the ground that in the absence of any showing of arbitrary action and plain abuse of power, the legislative body's decision is final.

11.     Plaintiffs' claims are barred in whole or in part because without showing any false statement with actual malice, any alleged statements or actions were protected by the right to Free Speech and Free Association Guaranteed by the U.S. Constitution, as applied to the State through the Fourteenth Amendment, and the Maryland Constitution and Declaration of Rights.

12.     Plaintiffs' claims are barred in whole or in part by governmental immunity.

13.     Plaintiffs' claims are barred in whole or in part by failure to give notice as required by the Maryland Local Government Tort Claims Act, MD. Code Cts. & Jud. Proc. ("MLGTCA") § 5-301 et seq.

14.     Any claim or award may not exceed that allowed by the MLGTCA.

15.     Defendant is not the proximate cause of any claimed injuries.

16.     The alleged injuries, if proven, were the result of superseding and/or intervening causes.

17.     Plaintiffs' claims are or may be barred in whole or in part, by a failure to mitigate damages.

18.     Plaintiff's claims are or may be barred, in whole or in part, or mitigated, by the doctrines of set-off and/or recoupment.

19. Defendant reserves the rights to amend this answer and to raise additional affirmative defenses

WHEREFORE, Defendant, the Town of Sykesville, respectfully requests that the Court dismiss the Complaint, award Defendant its costs, and that the Court grant Defendant such other and further relief as is just.

## COUNTERCLAIM

In accordance with the applicable Federal Bankruptcy Rules and the Local Rules of this Court, Defendant/Counter-Plaintiff, the Town of Sykesville, counterclaims against Plaintiffs/Counter-Defendants, Warfield Historic Properties LLC, and Warfield Historic Quad, LLC, and for reasons states as follows:

1. The Town of Sykesville (the "Town") is a Maryland municipal corporation located in Carroll County, Maryland.

2. Defendants, Warfield Historic Properties LLC and Warfield Historic Quad LLC (collectively "Warfield Historic Entities") are each a limited liability company organized under the laws of the State of Maryland and regularly transacting business and are the owners of property in Carroll County.

3. The Bankruptcy Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §§ 157 & 1334(b). The Town consents to entry of final orders by the United States Bankruptcy Court in this adversary proceeding. Pursuant to Fed. R. Bankr. P. 7008, the case name, case number, Chapter, and the district and division in which the case is pending are all contained in the above case caption.

4. Venue is proper pursuant to 28 U.S.C. § 1409(a).

5.      On April 17, 2014, the Town entered into a Purchase and Sale Agreement and Purchase with Warfield Development Corporation, a Maryland Non-Profit Corporation ("WDC"), the Town and WDC as Seller, and Warfield Collaborative, LLC ("WC"), a Maryland limited liability company, as Purchaser, for the sale and purchase of certain real property located within the Town.

6.      A true and accurate copy of the April 17, 2014, Purchase and Sale Agreement and Purchase is attached as Exhibit A to the Second Amended Complaint (together with exhibits) ("Second Am. Compl.") filed in the case styled *Town of Sykesville v. Warfield Historic Properties, LLC, et al.*, Circuit Court for Carroll County, Case No. C-06-CV-23-000249, a true and correct copy of which was attached as exhibit 1 to the Objection of the Town of Sykesville to Debtors' Motion for an Order Approving and Authorizing Rejection of Reversion Agreement (ECF No. 52). For brevity, the April 17, 2014, Purchase and Sale Agreement and Purchase is hereafter referred to as the "Purchase and Sale Agreement."

7.      During the Purchase and Sale Agreement process, the parties signed twelve (12) amendments to the Purchase and Sale Agreement.  True and correct copies of the twelve (12) amendments to the Purchase and Sale Agreement are attached collectively to the Second Am. Compl. as exhibit B.

8.      Part of the property subject to the purchase and sale was identified in the Purchase and Sale Agreement as Parcel D and it is that Parcel D that is at issue in this counterclaim.  Unlike the other parcels covered in the Purchase and Sale Agreement, Parcel D was subject to a Preservation Agreement, an Escrow Agreement, and a Reversion Agreement.  (Agr. Of Sale ¶ 7(H)(i).)

9.      The Purchase and Sale Agreement further contemplated that Parcel D would be subject to a land condominium regime with each historic building on that parcel individually designated as a condominium unit.  (Agr. Of Sale ¶ 5B(iv).)

10.      The Second Amendment to Purchase and Sale Agreement states that, "In order to effectuate the Parcel D Preservation Agreement, the Parcel D Escrow Agreement (as defined below) and the Reversion Agreement, the parties have agreed that Parcel D shall be subjected to a condominium regime for a 'land condominium' by Condominium Declaration, Condominium Plates, Articles of Incorporation and Bylaws (the Condominium Documents), in form and content mutually acceptable to Seller and Purchaser, with the Town to be the original 'Developer.'" (Second Amendment to Agr. Of Sale ¶ 3, dated 1/28/2015.)

11.      A true and accurate copy of the condominium declaration filed in October 2015 is attached to the Second Am. Compl. as exhibit C.  The condominium declaration attached as exhibit C to the Second Am. Compl. identifies the units at issue in this counterclaim.  (*See, e.g.,* Condominium Declaration, exhibit D thereto, identifying unit numbers, unit floor area, as well as first floor, second floor, and in some instances third floor unit space.)

12.      The Purchase and Sale Agreement further specified that Purchaser had a Preliminary Concept Plan for the property, which included "mixed use development, consistent with modern planning and development practices, providing for an employment center (including office, light industrial, research and development and business incubation space), with a complementary blend of retail space and multi-family and townhome residential units, with the further goal of preservation and adaptive re-use of existing historic buildings and enhancement of the Town's employment base."  (Agr. Of Sale p. 1 & Ex. B to Purchase and Sale Agreement.)

13.   The Purchase and Sale Agreement included a one hundred eighty (180) day inspection period for the Purchaser to conduct "Purchaser's Studies and Reports." (Agr. Of Sale ¶¶ 3A.)  During that time, Purchaser had complete and free access to the Town's records regarding ownership, use, rental and operations of the Property.   (Agr. Of Sale ¶ 3B.)  The inspection period was subsequently extended through to February 28, 2015.  (Second Amendment Agr. Of Sale ¶ 2, dated 1/28/2015.)  The inspection period was extended through June 30, 2015, but as of July 1, 2015, the Purchaser acknowledged the inspection period had expired and the Purchaser had no further right to terminate the Purchase and Sale Agreement under Section 3A.  (Third Amendment Agr. Of Sale ¶ 3, effective July 1, 2015.)

14.   As of June 30, 2016, by the Fifth Amendment to Purchase and Sale Agreement, each side waived any prior claims for breach of the Purchase and Sale Agreement.   (Fifth Amendment Agr. Of Sale ¶ 9.)

15.   The Purchase and Sale Agreement also included a Fiscal Impact Study commissioned to analyze the demands for "Adequate Public Facilities/Services and related fiscal benefits and consequences to the local governments (Town and County) resulting from Purchaser's proposed development of the Property."  (Agr. Of Sale ¶ 3C.)

16.   Under the Purchase and Sale Agreement, WC, as the Purchaser, had the "sole and absolute judgment and discretion" to terminate the Purchase and Sale Agreement if WC determined "the Property is not suitable to Purchaser for Purchaser's purposes for any reason whatsoever…."  (Agr. Of Sale ¶ 3A.)

17.   As a condition to closing, the Purchase and Sale Agreement required the Town to adopt and enact all necessary amendments to the Master Plan and Zoning Ordinance as set forth in the preliminary concept plan attached to the Purchase and Sale Agreement, including all Seller-

approved revisions through the date of closing.  (Agr. Of Sale ¶¶ 5A(ii) & 5B(ii).)  In fact, the Eleventh Amendment of the Purchase and Sale Agreement states "Satisfaction of conditions of PEC Preliminary Plan approval.  Those conditions of PEC Preliminary Plan Approval that are required to be completed prior to the Closing Date shall have been fully satisfied."  (Agr. Of Sale, Eleventh Amendment ¶ 9, effective 12/15/2017.)

18.    As a further condition of closing, the Town had to approve WC's Final Development Plan.  (Agr. Of Sale ¶¶ 5A(iiii) & 5B(iii).)

19.    As a further condition of closing, no governmental body with authority over the "Property" shall have imposed any "moratorium or similar restriction, anticipated moratorium, or prohibition, remaining in effect on the Closing Date, the probable effect of which is to prevent, delay or restrict any approvals or permits which Purchaser needs to be entitled to use the Property as contemplated herein."  (Agr. Of Sale ¶ 5(viii).)

20.    As another condition of closing, the Purchaser required the Town to obtain a Certificate of Satisfaction from the State confirming that the Town had satisfied its payment obligations under the Disposition Agreement with the State.  (Eleventh Amendment to Agr. Of Sale ¶ 14.)

21.    The Purchase and Sale Agreement further specified that at closing "the parties shall execute and deliver the Parcel D Preservation Agreement, the Reversion Agreement and the Parcel D Escrow Agreement, as further referenced in Section 7.H.(ii) below."  (Agr. Of Sale ¶¶ 5 A(xii) & 5B(ix).)

22.    If any of the Purchaser's closing conditions were not satisfied, then WC had the "sole discretion…to terminate this Agreement by written notice to Seller, whereupon the Deposit shall be immediately returned to Purchaser…" (Agr. Of Sale ¶ 5, p. 9.)

23.     In the Eleventh Amendment to the Purchase and Sale Agreement, the fourth recital of the Purchase and Sale Agreement was amended in its entirety to state:

> WHEREAS, Purchaser intends to develop the Property as mixed use development, consistent with modern planning and development practices, providing for an employment center (including office, light industrial, research and development and business incubation space), with a complimentary blend of retail space and residential units, with the further goal of preservation and adaptive re-use of existing historic buildings and enhancement of the Town's employment base…"

(Eleventh Amendment to Agr. Of Sale ¶ 1, effective 12/15/2017.)

24.     The Purchase and Sale Agreement also obligated WC to prepare a Declaration of Covenants, Conditions and Restrictions "imposing architectural, commercial and residential use restrictions on the Property and providing for a property owner's association (the "POA") with annual assessments for the purpose of providing funds for the maintenance of the open space and recreational areas, if any, with the Property…"  (Agr. Of Sale ¶ 5B(iv).)  In addition, Purchaser was responsive for preparing Articles of Incorporation and By-Laws for the POA.  (Agr. Of Sale ¶ 5B(iv).  Finally, Purchaser was responsible for recording or filing the POA papers with the requisite governmental authorities.  (Agr. Of Sale ¶ 5B(iv).)

25.     The Eleventh Amendment to the Purchase and Sale Agreement confirmed, "The Condominium Documents shall be recorded prior to recording of the document terminating the Master Ground Lease, the Deed for the Property, the Assignment of the Developer's Rights, the Deed of Trust, and the Reversion Agreement and prior to all other documents to be executed at Closing."  (Eleventh Amendment to Agr. Of Sale ¶ 21, effective 12/15/2017.)

26.     The Eleventh Amendment to Purchase and Sale Agreement further agreed to allow the Purchaser twenty (20) additional townhouse units to be constructed on Parcel E and F, for a total of one hundred forty-five (145) townhouse units, in exchange for Purchaser depositing

$300,000 into the Buildings F and W Escrow Fund. (Eleventh Amendment to Agr. Of Sale ¶ 31, effective 12/15/2017.)

27.     The Purchase and Sale Agreement spelled out several "additional undertakings" and "post-closing covenants."  (Agr. Of Sale ¶ 7.)  One of the additional undertakings was the Town cooperating with the Seller on certain issues, if there was no cost or expense to the Town, and solely in the Town's capacity as "owner of the Property."   (Agr. Of Sale ¶ 5B(iv). Notwithstanding the "before and after Closing" language, once the Town was no longer the "owner of the Property" after closing, the Town no longer had any role as "owner of the Property."  The fact that Paragraph 7A was not intended to survive closing and apply to the Town as the "former owner of the Property" is confirmed by the fact that unlike other provisions in Paragraph 7 in the Purchase and Sale Agreement, Paragraph 7A, does not state this provision "shall survive closing." (Agr. Of Sale Compare ¶ 7A, with ¶¶ 7 B, E, & H(iii).)

28.     Even if Paragraph 7A had survived closing in some way, and even assuming the Town still had some post-closing role as the former "owner of the Property," which the Town denies, the last sentence in paragraph 7A confirms the Town never committed, in the Town's governmental capacity, to approving, accepting, or adopting any new or different development plan different from the Final Development Plan approved as part of the Purchase and Sale Agreement.  Instead, paragraph 7A of the Purchase and Sale Agreement explicitly states the "Town's cooperation pursuant to this Section…shall be that as an owner of the Property and, further provided in Section 37 of this Agreement, shall not constitute a governmental or regulatory approval or any waiver thereof." (Agr. Of Sale, ¶ 7A.)  Paragraph 37 of the Purchase and Sale Agreement confirms that, "Any consent or approval required of or given by the Town as Seller pursuant to the terms of this Agreement shall not constitute a consent or approval on behalf of the

Town in its governmental capacity or waive any requirement to obtain any and all requisite consents and approvals from all applicable commission, agencies and other public bodies of the Town." (Agr. Of Sale ¶ 37.)

29.    That said, the Town has not refused to perform any post-closing acts in its capacity as the former owner of the Parcel D Property that were at no cost to the Town. The Town, however, had no contractual duty to act as the "former" owner of the Property, regardless of whether it may be at no cost to the Town.

30.    In the Twelfth Amendment to the Purchase and Sale Agreement, Paragraph 7A was amended to add the following last paragraph: "After Closing, Seller agrees to cooperate in good faith with Purchaser to provide any documentation (proposed drafts and/or final versions) or other information reasonably requested by Purchaser in connection with the Leases and contracts. The preceding obligation of Seller shall survive closing." (Twelfth Amendment to Agr. Of Sale, ¶ 4, effective 6/26/2018.) The Town has not refused to provide documentation or other information reasonably requested by the Purchaser in connection with the Leases and contracts.

31.    The Twelfth Amendment to the Purchase and Sale Agreement further made clear that Warfield Historic Quad, LLC, would own Parcel D Condominium Units 1, 2, 3 and 4, and that Warfield Historic Properties, LLC, would own Parcel D Condominium Units 5, 6, 7, 8, 12 and 13. (Twelfth Amendment to Agr. Of Sale, ¶ 13.)

32.    The Purchase and Sale Agreement included a post-closing covenant entitled "Building Preservation," which specifically provided as follows:

      H.    <u>Parcel D.</u>

      (i)    <u>Building Preservation</u>.    After Closing, Purchaser agrees to undertake and complete certain work, including preservation and stabilization work on the historic buildings located on Parcel D, infrastructure development on, in and around Parcel D, and tenant build out within the buildings located on Parcel D

(collectively, the "Parcel D Obligation"). At Closing, Purchaser shall execute and deliver to Seller the "Parcel D Preservation Agreement" in the form attached hereto as Exhibit P pursuant to which Purchaser shall acknowledge and agree to the Parcel D Obligation, and which shall include the description of the work to be performed and the portion(s) of the Parcel D buildings to be completed within three (3), seven (7) and twelve (12) years after Closing. The Parcel D Preservation Agreement shall provide that in the event Purchaser fails to complete such work in accordance with such milestones referenced therein, all of Purchaser's right, title and interest to the buildings that Purchaser has not completed shall revert to Seller. At Closing, the parties shall execute a reversion agreement or other similar agreement providing Seller with such right of reversion (the "Reversion Agreement") in recordable form reasonably satisfactorily to the parties. In order to effectuate the Parcel D Preservation Agreement, the Parcel D Escrow Agreement (as defined below) and the Reversion Agreement, the parties have agreed that Parcel D shall be subjected to a condominium regime for a "land condominium" by Condominium Declaration, Condominium Plats, Articles of Incorporation and Bylaws (the "Condominium. Documents"), in form and content mutually acceptable to Seller and Purchaser, with Purchaser to be the Declarant. The Condominium Documents shall be prepared and recorded at Purchaser's cost and expense. The Condominium Documents shall be recorded after the recording of the Deed for the Property and prior to the Reversion Agreement.

(ii)     Parcel D Escrow Fund.  At Closing, Seller shall deposit One Million Three Hundred Fifty Thousand and No/100 Dollars ($1,350,000.00) of the proceeds from Closing in an escrow account that shall be used for the purpose of restoring, renovating and leasing the Parcel D Buildings, making infrastructure improvements for the benefit of Parcel D (and the Buildings located therein) and as otherwise provided below (the "Parcel D Escrow Fund"). The Parcel D Escrow Fund shall be held by Escrow Agent or such other escrow agent (the "Parcel D Escrow Agent") as may be mutually agreed upon by Seller and Purchaser and shall be placed and held in escrow by the Parcel D Escrow Agent in an interest-bearing account at a federally insured banking institution using Purchaser's Federal Taxpayer ID Number [xx-xxxxxxx]. The Parcel D Escrow Fund shall be supplemented from time to time by payments under the Note as provided in Section 2.B.(iv) of this Agreement. At Closing, Seller, Purchaser and the Parcel D Escrow Agent shall execute and deliver an escrow and disbursement agreement that shall allocate the funds (except for the Public Project Escrow Component, as defined below) among the Parcel D Buildings and provide for the disbursement of funds for work performed on the Parcel D Buildings or with respect to infrastructure improvements within Parcel D in amounts matching amounts expended by Purchaser or its designees up to the amounts allocated for each building (the "Parcel D Escrow Agreement"), in the form attached hereto as Exhibit O. The Parcel D Escrow Agreement shall further provide that any and all funds then remaining in

the Parcel D Escrow Fund shall be paid over and disbursed by Escrow Agent to Seller (1) upon reversion of all or any portion of Parcel D to Seller pursuant to the Reversion Agreement or (2) twelve (12) years after Closing.

       ***

      (iii)   <u>Survival.</u> The obligations of the respective parties contained in this Section 7.H. shall survive Closing.

(Agr. Of Sale ¶ 7H.)

33.     Per the Purchase and Sale Agreement, Purchaser paid $1,350,000 from the purchase price into the Parcel D Escrow Fund at closing.  (Agr. Of Sale ¶ 2B(iii).)  In addition, Purchaser was to execute a $1,000,000 promissory note and purchase money deed of trust in favor of the Town for the benefit of the Parcel D Escrow Fund. (Agr. Of Sale ¶ 2B(iv).)

34.     Also, per the Purchase and Sale Agreement, the Town and County agreed to a tax abatement on the Property.  (Agr. Of Sale ¶ 5(xiii).)

35.     By the Sixth Amendment to the Purchase and Sale Agreement, the Outside Closing Date was extended to July 31, 2017,  (Sixth Amendment to Agr. Of Sale, ¶ 1, dated 6/21/2017.) Ultimately, the Outside Closing Date was extended to September 30, 2018.  (Eleventh Amendment to Agr. Of Sale ¶ 17, effective 12/15/2017.)

36.     At the Closing, on June 26, 2018, five (5) entities under common ownership acquired title to the various parcels compromising the Property, namely, Warfield Center, LLC, Warfield Properties, LLC, Warfield Restorations, LLC, Warfield Historic Quad, LLC, and Warfield Historic Properties, collectively these entities were the successors to WC.

37.     At Closing, defendant Warfield Historic Quad LLC received a deed for four (4) of the Parcel D condominium units, numbered 1 through 4 and generally known as "the Quad, and defendant Warfield Historic Properties LLC received a deed for condominium units 5 through 8, 12, 13 and 14, (collectively the "Historic Structures").

38.     At Closing, defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC executed a Parcel D Preservation Agreement ("Preservation Agreement"), Reversion Agreement and Parcel D Escrow Agreement ("Escrow Agreement").

39.     A true and accurate copy of the Preservation Agreement is attached as exhibit D to the Second Am. Compl.  A true and accurate copy of the Reversion Agreement is attached as exhibit E to the Second Am. Compl.  A true and accurate copy of the Escrow Agreement is attached as exhibit F to the Second Am. Compl.

40.     At Closing, the Town placed $1,100,000 into the Parcel D Distribution Fund.  At Closing, the Purchaser placed $400,000 in the Parcel D Escrow Fund II and another $300,000 into the F & W Escrow Fund.

41.     Counter-Defendants were required to submit one (1) or more Certificate(s) of Completion with a "minimum aggregate distribution from the Parcel D Distribution Fund and Parcel D Escrow Fund II of Five Hundred Twenty-Five Thousand and No/100 Dollars ($525,000.00)" by June 26, 2021.  (Reversion Agreement ¶ 3(a); Preservation Agreement ¶ 7(a)(i).)

42.     Counter-Defendants, Warfield Historic Quad LLC and Warfield Historic Properties, LLC, failed to submit Certificate(s) of Completion, in accordance with the Reversion Agreement and Preservation Agreement, for a "minimum aggregate distribution from the Parcel D Distribution Fund and Parcel D Escrow Fund II of Five Hundred Twenty-Five Thousand and No/100 ($525,000.00)" by June 26, 2021. (Reversion Agreement ¶ 3(a); Preservation Agreement ¶ 7(a)(i).)

43.     Under the terms of the Preservation Agreement Counter-Defendants, Warfield Historic Quad LLC and Warfield Historic Properties, LLC had ninety (90) days beyond June 26,

2021, to take corrective action and cure the deficiency.  (*See* Preservation Agreement ¶ 7(e); Reversion Agreement ¶3(e).)  Counter-Defendants, Warfield Historic Quad LLC and Warfield Historic Properties, LLC, failed to cure the deficiency within ninety (90) days of June 26, 2021.

44.     Even by June 2023, when the complaint was filed in the state court action, two (2) years after the original deadline established in the Preservation and Reversion Agreements, Counter-Defendants, Warfield Historic Quad LLC and Warfield Historic Properties, LLC, had failed to submit Certificate(s) of Completion, in accordance with the Reversion Agreement and Preservation Agreement, for a "minimum aggregate distribution from the Parcel D Distribution Fund and Parcel D Escrow Fund II of Five Hundred Twenty-Five Thousand and No/100 ($525,000.00)." (Reversion Agreement ¶ 3(a); Preservation Agreement ¶ 7(a)(i).)

45.     As of the date of the filing of the original complaint in the state court action in June 2023, so few Certificates of Completion had been submitted by Counter-Defendants, Warfield Historic Quad LLC and Warfield Historic Properties, LLC, that no portion of the Parcel D Distribution Fund had been distributed and only $144,454 of the Parcel D Escrow II funds had been distributed.

46.     One condominium unit, Unit 9, was sold and released from the scope of the Reversion Agreement.  The remaining units are still covered by the Reversion Agreement.

47.     The Reversion Agreement further provides that "in the event the Purchaser fails to complete the Eligible Work in accordance with the milestone timeline set forth in the Preservation Agreement all remaining funds held in escrow pursuant to the Parcel D Escrow Agreement…shall be released and disbursed to" the Town.  (*See* Reversion Agreement pp. 1-2 & ¶ 1; *see also* Escrow Agreement ¶ 7(f).)

48.    The Preservation Agreement, under the headings Parcel D Distribution Fund and Parcel D Escrow Fund similarly explained that the "Purchaser shall Complete the Eligible Work in accordance with the completion schedule provided in Section 7(a) of the Preservation Agreement, which is hereby incorporated by reference in this Agreement. (Preservation Agreement, ¶ 3(a).)

49.    Eligible Work is defined in the Preservation Agreement, and incorporated into the Reversion Agreement, to mean:

> **"Eligible Work"** shall mean any and all work performed, to be determined at Purchaser's sole but reasonable discretion, related to, directly or indirectly, the stabilization, mothballing, preservation, rehabilitation, build-out, construction and/or expansion of a Building, including, without limitation: (i) any work performed on the exterior or interior of a Building whether stopgap or permanent; (ii) site work including, without limitation, soils and materials testing, remediation, demolition, abatement, preparation, clean-up, earthwork, tunneling, boring, jacking, utility work, stormwater management, paving, curb and gutter, sidewalks, trails, retaining walls, landscaping, irrigation, site lighting and hardscaping, whether such work is performed within the boundaries of Parcel D or off-site, so long as such work ultimately benefits and serves Parcel D; (iii) design and engineering, MEP engineering, environmental engineering, traffic engineering, materials testing and building condition assessments (**"Design and Engineering Services"**); and (iv) security.  For the avoidance of doubt, Eligible Work shall not include any and all such work performed prior to the Effective Date.

(*See* Preservation Agreement, ¶ 2(p); *see also* Reversion Agreement, ¶ 2(d).)

50.    On or about May 10, 2023, the Town sent Counter-Defendants the notice contemplated by the Reversion Agreement.  (*See* Reversion Agreement, ¶ 4(a).)  The notice advised Defendants that the Town had elected to have Condominium Units 1 through 4, 5 through 8, 12, 13, and 14 revert to the Town and requested the special warranty deeds called for in the Reversion Agreement.

51.     Counter-Defendants failed to deliver special warranty deeds conveying all of Counter-Defendants right, title, and interest in and to the units, which include the unreleased Buildings, within ten (10) days after receipt of that letter as required by the Reversion Agreement. (Reversion Agreement, ¶ 4(a).)

52.     On November 30, 2023, the Town sent Counter-Defendants an amended notice again advising them that the Town had elected to have Condominium Units 1 through 4, 5 through 8, 12, 13, and 14 (the "Units") revert to the Town and requested the special warranty deeds called for in the Reversion Agreement.

53.     Counter-Defendants again failed to deliver special warranty deeds conveying all of Defendants' right, title, and interest in and to the Units, which include the unreleased Buildings, within ten (10) days after receipt of the letter as required by the Reversion Agreement. (Reversion Agreement, ¶ 4(a).)

54.     Counter-Defendants' failure to deliver the special warranty deeds to the Town for the Units within ten (10) days of either the original or the amended notice constitutes an Event of Default as defined in the Reversion Agreement.  (*See* Reversion Agreement ¶ 8.)

55.     In accordance with section 8 of the Reversion Agreement, the Town "shall be entitled to be reimbursed by Purchaser for all reasonable costs, fees and expenses incurred by the Town to pursue the specific performance action, including, without limitation, reasonable attorney's fees." (*See* Reversion Agreement ¶ 8.)

## COUNT I – SPECIFIC PERFORMANCE

56.     The Town incorporates by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC, failed to complete the Eligible Work in accordance with the completion schedule.  (*See* Reversion Agreement ¶ 4(a); *see also* Preservation Agreement ¶ 7(a) and Reversion Agreement ¶ 3(a).)

58.     Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC, therefore, had ten (10) days after receipt of the Town's written notices, dated May 10, 2023, and November 30, 2023, respectively, listing the Units the Town elected to have revert to the Town, to execute and deliver to the Town a special warranty deed conveying all right, title, and interest in and to the Units, which include the unreleased Buildings, to the Town. (*See* Reversion Agreement ¶ 4(a).)

59.     Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC, failed to deliver a special warranty deed conveying all right title and interest in and to the Units, which include the unreleased Building, to the Town within ten (10) days after receipt of the original or amended notice from the Town. (*See* Reversion Agreement ¶ 4(a).)

60.     Upon the expiration of ten (10) days after receipt of the Town's written notices dated May 10, 2023, and November 30, 2023, the Town had equitable title in and to the Units and, upon the acquisition of such equitable title by the Town, Warfield Historic Quad, LLC, and Warfield Historic Properties, LLC, were left with nothing more than bare legal title in and to such Units.

61.     Counter-Defendants' failure to deliver the special warranty deed within ten (10) days of receipt of the notice and amended notice is an "Event of Default."    (*See* Reversion Agreement ¶ 8.)

62.     As a result of the occurrence of an Event of Default, the Town "shall have the right to enforce the terms of this Agreement by an action for specific performance."  (*See* Reversion Agreement ¶ 8.)

63.     When specific performance is awarded, the Town "shall be entitled to be reimbursed by Purchaser [Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC] for all reasonable costs, fees and expenses incurred by the Town to pursue the specific performance action, including, without limitation, reasonable attorney's fees." (*See* Reversion Agreement ¶ 8.)

64.     Still further, the Escrow Agreement mandates "upon the earlier to occur of (i) reversion of all or any portion of Parcel D to the Town pursuant to the Reversion Agreement between Purchaser and the Town…any and all funds remaining in the Parcel D Escrow Fund I (including any and all accrued interest), Parcel D Escrow Fund II (including any and all accrued interest) and Buildings F and W Escrow Fund (including any and all accrued interest) shall be paid over and disbursed by Escrow Agent to the Town."  (*See* Escrow agreement, ¶ 7(f).)

65.     The Escrow Agent has not paid over any of the funds called for in paragraph 7(f) of the Escrow Agreement.

66.     The Town has performed all applicable conditions precedent necessary for an award of specific performance in accordance with the respective contracts.

WHEREFORE, the Town of Sykesville respectfully requests the Court grant the following relief:

a)     Order Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC, to execute a special warranty deed conveying to the Town all of the Defendants right, title and interest in Condominium Units 1 through 4, 5 through 8, 12, 13, and 14, which

include the Unreleased Buildings, as more fully described in exhibit C to the Second Am. Compl.; and

      b)     In addition or in the alternative to the award of specific performance demanded in the immediately preceding sub-paragraph (a), order an award of damages in favor of the Town and against Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC in such amount as may be justified by the evidence at trial as a result of such Counter-Defendants' failure upon the Town's demand to execute a special warranty deed conveying to the Town all of the Defendants right, title and interest in Condominium Units 1 through 4, 5 through 8, 12, 13, and 14, which include the Unreleased Buildings; and

      c)     Order that all funds remaining in the Parcel D Escrow Fund I (including any and all interest), Parcel D Escrow Fund II (including any and all accrued interest) and Buildings F and W Escrow Fund (including any and all accrued interest) be remitted to the Town; and

      d)     Order Counter-Defendants Warfield Historic Quad LLC and Warfield Historic Properties, LLC, to pay the Town  all reasonable costs, fees and expenses incurred by the Town to pursue this specific performance action, including, without limitation, reasonable attorney's fees; and

      e)     Grant the Town such other and further relief as the nature of the cause and justice may require.

/s/ Bryan D. Bolton
Bryan D. Bolton, (Bar No. 02112)
Bradley J. Swallow, (Bar No. 11250)
Lee B. Rauch, (Bar No. 12135)
Funk & Bolton, P.A.
100 Light Street, Suite 1400
Baltimore, Maryland 21202
410.659.8320 (telephone)
bbolton@fblaw.com
bswallow@fblaw.com
lrauch@fblaw.com

/s/ Elissa D. Levan
Elissa D. Levan, Bar No. 05741
2007 Tidewater Colony Drive
Annapolis, Maryland 21401
443-853-9009 (telephone)
443-853-9203 (facsimile)
Elevan@levanruff.com

*Attorneys for Town of Sykesville*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of April 2025, a copy of the foregoing

Answer to Adversary Proceeding Complaint and Counterclaim was served electronically by the

Court's CM/ECF system on the following:

Timothy F. Maloney, Esquire: tmaloney@jgllaw.com

Alyse L. Prawde, Esquire: APrawde@jgllaw.com

And by first-class mail, postage prepaid, upon:

Timothy F. Maloney, Esquire
Alyse L. Prawde, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Green belt, Maryland 20770

Michael J. Lichtenstein, Esquire
Rebekah F. Paradis, Esquire
Shulman Rogers, P.A.
12505 Park Potomac Avenue
Sixth Floor
Potomac, Maryland 20854

/s/ Bryan D. Bolton_____
Bryan D. Bolton