IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| | * | Case Nos. 24-12500; 24-12504; 24-12506; 24-12508; 24-12511 (Chapter 11) |
| WARFIELD HISTORIC PROPERTIES, LLC, *et al.*, | * | |
| Debtors. | * | Jointly Administered Under Case No. 24-12500-LSS (Chapter 11) |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| WARFIELD HISTORIC PROPERTIES, LLC, *et al.,* | * | |
| | * | |
| Plaintiffs, | * | Adversary No. 25-00042 |
| | * | |
| v. | * | |
| TOWN OF SYKESVILLE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPLY IN FURTHER SUPPORT OF THE TOWN OF SYKEVILLE'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Bryan D. Bolton, (Bar No. 02112)
Bradley J. Swallow, (Bar No. 11250)
Lee B. Rauch, (Bar No. 12135)
Funk & Bolton, P.A.
100 Light Street, Suite 1400
Baltimore, Maryland 21202
410.659.8320 (telephone)
bdbolton@fblaw.com
bswallow@fblaw.com
lrauch@fblaw.com

Elissa D. Levan, Bar No. 05741
2007 Tidewater Colony Drive
Annapolis, Maryland 21401
443-853-9009 (telephone)
443-853-9203 (facsimile)
Elevan@levanruff.com

......                              *Attorneys for Town of Sykesville*

# TABLE OF CONTENTS

A.  Plaintiffs' Arguments Prove No Claim Is Stated For Breach of
the Implied Duty of Good Faith and Fair Dealing And Any Such
Claim is Barred By The Express Contract Terms.......................................1

B.  Plaintiffs' Contract Zoning Concessions Prove No Claim Is
Stated And The Cases Cited By Plaintiffs Support The Town. .................22

C.  Plaintiffs' Claims That The Local Government Tort Claims
Act's Notice Requirements Were Satisfied Are Meritless.  ....................25

D.  As a matter of law and fact, The Town's Denial of Zoning
Text Amendment Was An Exercise of Governmental
Police Power And Plaintiffs Cannot Convert the Town's
Claim Under the Reversion and Preservation Agreements
Into A Tort. ................................................................................................32

CONCLUSION ................................................................................................39

Defendant, Town of Sykesville ("the Town"), by undersigned counsel, in reply to plaintiffs' legally erroneous arguments, and misstatements of the parties' agreements, and in further support of its motion for judgment on the pleadings, states the following:

A. Plaintiffs' Arguments Prove No Claim Is Stated For Breach of the Implied Duty of Good Faith and Fair Dealing And Any Such Claim is Barred By The Express Contract Terms.

In an effort to create a claim for breach of the implied duty of good faith and fair dealing that conflicts with the express contract terms, plaintiffs' opposition omits pertinent contract language from the Agreement of Sale, omits pertinent amendments to the Agreement of Sale, omits amendments to the Disposition and Development Agreement ("DDA"), and misstates the allegations in the complaint. Notably, plaintiffs fail to cite the Court to any provision in the parties' contract documents—as opposed to citing to their allegations—imposing a duty on the Town post-closing to "cooperate" to "fairly consider and approve an application for a Zoning Text Amendment." (Compl. ¶ 154.) This is fatal to their breach of contract claim because the implied duty of good faith and fair dealing ordinarily imposes no affirmative obligations outside the express terms of the contract. Plaintiffs' inaccurate and incomplete characterizations of the appliable contracts cannot create a contractual duty in conflict with the express contract terms. As a matter of law, no claim for breach of contract based on the implied duty of good faith and fair dealing is stated and the motion for judgment on the pleadings should be granted.

Plaintiffs' incomplete and inaccurate contract quotes are part of an effort to avoid the reality that the Town has no duty beyond the contract terms. *See Howard Oaks, Inc. v. Maryland Nat'l. Bank*, 810 F. Supp. 674, 677 (D. Md. 1993). The Town has no duty beyond "the contract itself." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 794 (D. Md. 2002) (citing *Parker v. The Columbia Bank*, 91 Md. App. 346, 366, 604 A.2d 521, 531 (1992)).

1

The incomplete and inaccurate quotes relied upon by plaintiffs directly conflict with the complete and objective contract terms. *Urban Growth Prop. Ltd. P'ship v. One W. Baltimore St. Assocs. LLC, No. 882,* Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. *Spec.* App. Feb. 9, 2017) (citation omitted) (unpublished)*; see Cochran v. Norkunas,* 398 Md. 1, 16, 919 A.2d 700, 709 (2007)*; Huggins v. Huggins & Harrison, Inc.,* 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted)*.*

Plaintiffs attempt to sustain their claims by contradicting the complaint, claiming the complaint does not allege the Town breached the contract by not approving the Zoning Text Amendment.  (Opp. Mem., p. 21.)  The complaint, however, specifically alleges the "Town violated its duty of good faith by failing to cooperate with Plaintiffs in any way to fairly consider *and approve an application for a Zoning Text Amendment proposed by Plaintiffs* that was consistent with the DDA or otherwise advance the Warfield Project."  (Compl. ¶ 154.)  The complaint further alleges damages arising from the failure to approve the Zoning Text Amendment claiming, "Plaintiffs would have developed the Warfield Project for residential uses, including townhouses and multi-rentals….[and] if the Town had approved the Zoning Text Amendment in 2022, Plaintiffs would have been able to sell Warfield Project then and invested that money."  (Compl. ¶ 126.)  Plaintiffs further allege "[i]f the Zoning Text Amendment had been approved and Parcel D developed for residential use, there would have been available tax credits totaling more than $31 million,…and Plaintiffs would have received tax exempt bond financing of at least $20 million and millions of dollars in State Grants."  (Compl. ¶ 126.)  Plaintiffs' complaint, therefore, unquestionably alleges the Town had an obligation to approve the Zoning Text Amendment and that the failure to approve the Zoning Text Amendment caused plaintiffs harm.

Plaintiffs' memorandum, based on an incomplete quote from paragraph 7A of the Agreement of Sale, alleges the Town had a duty to give governmental approval to the proposed Zoning Text Amendment.  (Opp. Mem., at pp. 19-20.)  This argument fails for multiple reasons. The complaint fails to allege the Town violated paragraph 7A of the Agreement of Sale.

Plaintiffs' failure to allege or amend to include an allegation of a violation of paragraph 7A of the Agreement of Sale is no oversight, and their argument of an implied duty tied to this provision is legally baseless, given the express terms in Paragraph 7A.  Paragraph 7A of the Agreement of Sale states in full:

> Cooperation. During the pendency of this Agreement and at all times before and after Closing, Seller agrees to cooperate *(as owner of the Property),* provided there be no cost or expense to Seller in connection therewith, with Purchaser in regard to submissions with respect to all proceedings related to any development plan, site plan, subdivision plan or plat approvals, zoning/master planning, and development, utility company contracts and construction permitting for the Property.  Seller further agrees, provided there be no cost or expense to Seller in connection therewith, to consent to, and to promptly execute, when required *as owner*, such plans, applications, and other requests for governmental approval, and amendments thereto, which may be prepared by or at the direction of Purchaser, incident to Purchaser's proposed development and improvement of the Property. *The foregoing notwithstanding the Town's cooperation pursuant to this Section or as elsewhere provided in this Agreement shall be that as an owner of the Property* and, as further provided in Section 37 of this Agreement, *shall not constitute a governmental or regulatory approval or any waiver thereof.*

(Opp. Mem., Ex. A, pp. 14-15.)  (emphasis added.)

Paragraph 7A of the Agreement of Sale, therefore, explicitly limited the Town's duties to act to where the Town was acting "as owner of the property" and "when required as owner…." (Opp. Mem., Ex. A, pp. 14-15, ¶ 7A.)  This is a critical defect in plaintiffs' argument, as well as the breach of contract claim, because, according to the complaint, plaintiffs became the owners of the Warfield Project in 2018 upon closing.  (Compl. ¶¶ 27-28.)  The complaint fails to allege and could not allege the Town was acting as the "owner of the Property" when the Zoning Text

Amendment was denied in 2022.  (*See, e.g.,* Compl. ¶ 111.)  The missing allegations prove no claim is stated that the Town, as owner of the Warfield Project, violated paragraph 7A of the Agreement of Sale by not approving the Zoning Text Amendment.

Beyond that, the last sentence in Paragraph 7A of the Agreement of Sale, which again was omitted from plaintiffs' memorandum, renders plaintiffs' breach of contract claim meritless.  The final sentence in Paragraph 7A of the Agreement of Sale specifically states that the "Town's cooperation as an Owner of the Property" under "this Section or as elsewhere provided in this Agreement, shall not constitute a governmental or regulatory approval or any waiver thereof." (Opp. Mem., Ex. A, pp. 14-15, ¶ 7A.)  As a matter of contract, therefore, the parties specifically agreed the Town was NOT agreeing to cooperate with plaintiffs for the purpose of "governmental or regulatory approval or any waiver thereof."[1]  (*Id.*)  Plaintiffs, therefore, cannot sustain any argument that the Town had an implied contractual duty to either: (i) cooperate in the governmental or regulatory approval process; or (ii) approve the Zoning Text Amendment (no waiver).  (Opp. Mem., Ex. A, pp. 14-15, ¶ 7A.)  The Town cannot have an implied contractual duty contrary to the express contract terms set forth in paragraph 7A of the Agreement of Sale.  *See Myers v. Kayhoe*, 391 Md. 188, 199-201, 892 A.2d 520 (2006) (rejecting implied obligation to make more than one loan application because implied term was inconsistent with express contract term calling for only one loan application).

---

[1]Such a contract could not stand, as the Town cannot contract away its legislative power. "[G]enerally 'a municipal corporation cannot, by contract, abridge its legislative power'" *Harford County v. Town of Bel Air*, 348 Md. 363, 377 (1998) (quoting *Rittenhouse v. Baltimore*, 25 Md. 336, 347 (1866).  *See also Westminster Water Co. v. Mayor, etc., of Westminster*, 98 Md. 551, 562 (1904) (A contract is unreasonable if it deprives subsequent municipal authorities of their legislative power.); *Lake Roland E. R. Co. v. Mayor, etc., of Baltimore*, 77 Md. 352, 376 (1863) ("Powers are conferred upon municipal corporations for public purposes; and … they cannot without legislative authority, express or implied, be bargained or bartered away.")

Plaintiffs cannot avoid this result by claiming the Town had a duty to "negotiate," when there is no contractual language "to negotiate" cited in the Agreement of Sale and no independent duty to negotiate exists in caselaw.  (*See* Opp. Mem., Ex. A, pp. 14-15, ¶ 7A.)  Since the Town and plaintiffs, in the Agreement of Sale, specifically agreed the Town had no duty to "cooperate" in the governmental approval process, so too the Town had no duty to "negotiate" during the governmental approval process.  (*Id*.)  Moreover, the alleged duty to negotiate for some undefined future change in zoning would be an unenforceable agreement to agree.  *See Advance Telecom Process, LLC v. DSFederal, Inc.*, 224 Md. 164, 119 A.3d 175 (2015) (dismissing breach of contract claim because negotiations to enter into future subcontract was agreement to agree on a future subcontract).

Plaintiffs' argument further fails to account for the specific provisions in the Agreement of Sale that explicitly governed zoning as a condition of closing, which resulted in plaintiffs becoming owners of the Warfield Project in June 2018.  (Compl. ¶¶ 24-27.)  Under Maryland law, these specific contract provisions governing zoning for the Warfield Project control over general contract provisions.  *See Pinnacle Group, LLC v. Kelly*, 235 Md. App. 436, 456-457, 178 A.3d 581 (2018).

Not only was zoning a condition of closing, but the zoning had to be resolved to plaintiffs' "reasonable satisfaction" as a condition to plaintiffs' obligation to close on the Warfield Project.  (*See* Opp. Mem., Ex. A, pp. 7-10.)  If the zoning conditions were not satisfied before closing, for whatever reason, plaintiffs had "sole discretion…to terminate this Agreement…."  (See Opp. Mem. Ex. A, ¶ 5, p. 9.)

Two closing conditions are pertinent here.  First, the Town had to adopt a Zoning Ordinance consistent with the "Preliminary Concept Plan."  Second, the Town had to give final

approval to the Final Development Plan, consistent with the Preliminary Concept Plan.  (*See* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A(ii) & (iii).)  As explained in the Agreement of Sale, the Preliminary Concept Plan was proposed by plaintiffs.  (*See* Opp. Mem., Ex. A, p. 1, recitals.)  If these closing conditions on Property zoning were not satisfied to plaintiffs' reasonable satisfaction, then plaintiffs had no obligation to proceed with the closing on the Warfield Project. (*See* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A & p. 12, ¶ 6 A(i).)  This is critically important because plaintiffs allege the closing on the Agreement of Sale occurred in June 2018.  (*See* Complaint ¶¶ 25-27.)

Plaintiffs' opposition failed to include a complete copy of the Agreement of Sale and the reasons for plaintiffs' failure will become obvious.  There were twelve amendments to the Agreement of Sale.  (A copy of the missing twelve amendments to the Agreement of Sale are attached collectively and filed in support of this motion as Ex. 1.)[2]  The Eleventh Amendment to the Sale Agreement confirmed the Town achieved the pertinent closing conditions to plaintiffs' reasonable satisfaction.  (*See* Ex. 1, Eleventh Amendment to Agreement of Sale.) The Eleventh Amendment specifically confirmed the conditions stated in Sections 5A(ii) (zoning) and 5B(iii) (final development plan) of the Sale Agreement "required to be completed prior to the Closing shall have been fully satisfied." (*Compare* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A(ii) & (iii) *with* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 6, ¶ 9.)

---

[2]Since the amendments are explicitly part of the Agreement of Sale, and plaintiffs attached and purport to rely on the Agreement of Sale in opposition to the motion for judgment on the pleadings, and plaintiffs rely on the Agreement of Sale in the complaint, plaintiffs cannot complain about the consequences of their actions, and the Court's consideration of the amendments.  *See Moore v. RealPage Util. Mgmt. Inc.*, No. 8:20-CV-00927-PX, 2023 WL 2599571, at *1–2 (D. Md. Mar. 22, 2023) (In resolving a motion under Rule 12(c), the Court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are integral to the complaint and authentic.)

Since the Eleventh Amendment to the Agreement of Sale confirms the zoning approved by the Town was to plaintiffs' reasonable satisfaction prior to closing on the Agreement of Sale, plaintiffs have no legal right to different zoning under the terms of the Agreement of Sale. (*Compare* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A(ii) & (iii)) *with* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 6, ¶ 9.)  If plaintiffs were not reasonably satisfied with the zoning for the Warfield Project, and the Town's efforts to accommodate the "Preliminary Concept Plan," then plaintiffs had no obligation to close on the Warfield Project.  (*See* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A & p. 12, ¶ 6 A(i).)  Plaintiffs' complaint, however, specifically alleges plaintiffs closed on the Warfield Project, which by contract proves the zoning ordinance the Town adopted prior to closing was to plaintiff's reasonable satisfaction.  (*See* Compl. ¶¶ 26-27; *see also* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A & p. 12, ¶ 6 A(i).)  Plaintiffs, having received zoning regulations they found acceptable as a condition of their obligation to close on the Warfield Project, and having proceeded to closing on that basis, cannot post-closing on the Warfield Project compel the Town to accept a Zoning Text Amendment changing the contractually agreed upon zoning based on some alleged implied duty of good faith and fair dealing.

Still further, as part of the Eleventh Amendment to the Agreement of Sale, plaintiffs acknowledged receiving approval from the Town Planning Commission of the PEC Preliminary Plan, which was then contractually identified as the "PEC Preliminary Plan Approval."  (*See* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 2, ¶ (d).)  The Eleventh Amendment further confirmed the Town had agreed with the County Commissioners of Carroll County and with the Town's Planning Commission to expedite review for a recorded plat for a residential subdivision containing 145 lots on Parcel E and F. (*See* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 2, ¶ (f).)  Plaintiffs further amended the Agreement of Sale to re-state the fourth recital as follows:

> Purchaser [Plaintiffs] intend to develop the Property as mixed-use development, consistent with modern planning and development practices, providing for an employment center (including office, light industrial, research and development and business incubation space), with a complimentary blend of retail space and residential units, with the further goal of preservation and adaptive re-use of existing historic buildings and enhancement of the Town's employment base.

(*See* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 2, ¶ 1.)

Further, according to the Eleventh Amendment:

> In accordance with **Section 180-134 et seq. of the Town Code of the Town of Sykesville**, on December 5, 2016, Purchaser received approval of the Planning Commission of the Town of Sykesville (the "Planning Commission") of the PEC Preliminary Plan and Pattern Book subject to satisfaction of enumerated conditions. The PEC Preliminary Plan and Pattern Book as approved by the Planning Commission on December 5, 2016 shall hereinafter be referred to collectively as the "PEC Preliminary Plan"; the Planning Commission approval thereof shall hereinafter be referred to as the "PEC Preliminary Plan Approval."

(*See* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 2, ¶ (d).)  (emphasis added.)

Section 180-134 of the Town Code in the Eleventh Amendment is the same provision plaintiffs sought to amend through the Zoning Text Amendment.  (*See* Compl. ¶ 87, alleging Zoning Text Amendment sought to "modify portions of the Planned Employment Center ('PEC') district to allow for a shift in development density from commercial to residential.")  Plaintiffs' allegations track the Town Ordinance, which specifically refers to the same "PEC" and like the complaint refers to this zoning as a "Planned Employment Center District." (The Court can access and see the Town's Code, including the Zoning ordinances, through the web link: https://ecode360.com/SY2024/home.)

Put another way, plaintiffs' Zoning Text Amendment sought to change the zoning plaintiffs found acceptable in the Agreement of Sale.  (*See* Ex. 1, Eleventh Amendment to Agreement of Sale, p. 2, ¶ (d); Compl. ¶ 87 "modify portions of the Planned Employment Center district…."; *see also* Section 180-134 of the Sykesville Town Code.)  As a matter of law, the Town could not

have an implied duty of good faith and fair dealing to re-zone the Property differently from the zoning specifically agreed upon and confirmed in the Eleventh Amendment to the Agreement.

Plaintiffs' reliance on the DDA is equally misplaced.  The provision in the DDA identified and quoted in the complaint states:

> in the event that the Carroll County Public Water Supply becomes sufficient to sustain high-density residential development, the Town shall investigate the feasibility of incorporating residential developments into its plans for [the Warfield Project…[and] [i]f residential development is determined feasible, the Town shall employ reasonable efforts to incorporate residential options into the Project…The State will consider the dedication of additional programmatic resources to [the Warfield Project] upon demonstration by the Town of the intent to incorporate Smart Growth ideals.

(Compl. ¶ 15) (emphasis omitted).  To assist the Court in evaluating this allegation, and the allegations in plaintiffs' opposition with respect to the DDA, a copy of the DDA, and the first and second amendments to the DDA, are attached collectively as Ex. 2 for the Court's convenient reference.[3]

As a threshold matter, the complaint does not allege nor could it allege that this provision in the DDA prevented plaintiffs from performing their obligations to the Town in accordance with the terms and conditions of the Agreement of Sale.  This is a fatal defect because the Supreme Court of Maryland has made clear the implied duty of good faith and fair dealing "simply prohibit[s] one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Polek v. JP Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012) (quoting *Parker v. Columbia Bank*, 91 Md. App. 346, 604 A.2d

---

[3] Based on plaintiff's quoting from the DDA in the complaint, and reliance on the DDA in opposition to the motion for judgment on the pleadings, the Court can consider the DDA.  *See Moore v. RealPage Util. Mgmt. Inc.*, *supra.*

521, 531 (1992)).  For this reason alone, the Town is entitled to judgment on the pleadings with respect to plaintiffs' breach of contract claim based on the DDA.

Even assuming the Court proceeds further, plaintiffs' argument is that the DDA created some new affirmative implied duty of good faith and fair dealing on the part of the Town to cooperate in modifying the existing Agreement of Sale with plaintiffs and to approve a zoning text amendment different from the Zoning Ordinance plaintiffs accepted as part of the Agreement of Sale.[4]  (*See* Compl. ¶¶ 26-27 & ¶¶ 87-111; *see also* Opp. Mem., Ex. A, pp. 7-8, ¶ 5A & p. 12, ¶ 6 A(i); Ex. 1, p. 6, ¶ 9.)  Plaintiffs' argument is legally unprecedented and unfounded.  For this additional reason, the Town is entitled to judgment on the pleadings.

A further defect in plaintiffs' putative reliance on the DDA is that plaintiffs are not third-party beneficiaries of the DDA, but rather are the successors to the Town, and the DDA is now a contract between plaintiffs and the State.  This was made clear in the Second Amendment to the DDA.  At that time, the Town was identified as "the owner of [the]parcel of land…known as the Warfield Complex…" (*See* Second Amendment to DDA, p. 1, second recital, attached as Ex. 2.) The Second Amendment to the DDA anticipated the change in ownership specifying that the "Warfield Collaborative, LLC, the contract purchaser of the Warfield Complex, joins in the execution of this Amendment for the purpose of being bound by the terms and conditions contained herein **if title to all or part of the Warfield Complex is transferred to it**."   (*See* Second Amendment to DDA, p. 6, ¶ 9B(viii), attached as Ex. 2.)  (emphasis added.)

Title to the Warfield Complex was transferred to plaintiffs as anticipated in the Second Amendment to the DDA.  The Complaint specifically alleges the "Warfield Complex…is now

---

[4] A logical impossibility since the DDA provision cited preceded the Agreement of Sale by over ten (10) years.

known as…the 'Warfield Project'…." (Compl. ¶ 14; *see also* Opp. Mem., State Court Counterclaim, p. 2, ¶ 3.) The Complaint further alleges plaintiffs became the owners of the Warfield Project in June 2018, when the Town's interest in the "Warfield Project" was transferred to Plaintiffs. (Compl. ¶ 27.). Since plaintiffs took title to the Warfield Complex in June 2018, per the Second Amendment to the DDA, plaintiffs became the successor owners of the "Warfield Complex" and became bound to the DDA through the Second Amendment to the DDA." (*See* Second Amendment to DDA, p. 6, ¶ 9B(viii), attached as Ex. 2.) As of the closing in June 2018, therefore, plaintiffs were obliged to the State under the terms of DDA, including the Second Amendment to the DDA, in place of the Town, because the Town was no longer the owner of the Warfield Complex. (*See* DDA, including First and Second Amendments attached as Ex. 2.) Plaintiffs, therefore, have no standing to assert claims against the Town based on the express terms of the DDA.[5]

This pleading and legal defect is confirmed in the Agreement of Sale, which specifically and explicitly limited the Town's duty to cooperate when acting "as owner of the Property." (Opp. Mem., Ex. A, pp. 14-15, ¶ 7A.) This express limitation in the Agreement of Sale must be respected and cannot be altered by the DDA because the Agreement of Sale contains an integration clause confirming the Agreement of Sale is the complete agreement. (Opp. Ex. A, p. 28, ¶15.) Under that provision, plaintiffs agreed the Agreement of Sale "shall constitute the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless made in writing and signed by all the parties hereto….The foregoing provisions shall expressly survive the termination of this Agreement." Since the DDA never purports to amend or

---

[5] The Court "may consider [the DDA] in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because plaintiffs do not challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

alter the Agreement of Sale provision limiting the Town's cooperation to in its capacity as owner, plaintiffs cannot amend the Agreement of Sale through the DDA and impose additional duties on the Town beyond those as "owner." *See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 126, 25 A.3d 967, 985 (2011) ("Maryland law generally recognizes the validity and effect of integration clauses.") (citation omitted); *see also Whitney v. Halibut, Inc.,* 235 Md. 517, 526-27, 202 A.2d 629, 632-33 (1964) (a contract concerning an interest in land and thus within the Statute of Frauds cannot be partly in writing and partly in parol.) The Town, of course, was not the "owner" of the Warfield Project at the time the Town considered the Zoning Text Amendment, so the Town had no duty whatsoever to cooperate with or approve plaintiffs' Zoning Text Amendment under the express terms of the Agreement of Sale.

Despite this, plaintiffs claim the DDA can alter the Agreement of Sale by alleging the "petition [for Zoning Text Amendment] was based largely on the provisions of the DDA…." (*See, e.g.,* Compl. ¶ 88.)  Plaintiffs further specifically allege the Town had a "duty" to "approve an application for a Zoning Text Amendment proposed by Plaintiffs that was consistent with the DDA…" (Compl. ¶ 154.)  No Maryland Court, however, has ever found and no legal basis exists for extending the duty of good faith and fair dealing to create an implied duty from one contract (the DDA) to modify a separate and later contract (the Agreement of Sale), particularly when the Agreement of Sale contains an integration clause, a specific provision governing zoning, and confirms no duty to cooperate for governmental or regulatory approvals and no waiver of the approval process.  Plaintiffs' argument for breach of contract based on the implied duty of good faith and fair dealing based on the DDA has absolutely no legal basis whatsoever.

Plaintiffs' allegation of a duty to cooperate based on the DDA to implement a change in zoning further conflicts with the specific zoning agreed to before closing as part of the Agreement

12

of Sale. As previously explained, as a condition of closing, the Zoning Ordinance adopted by the Town had to be to plaintiffs' reasonable satisfaction. (Opp. Mem., Ex. A, pp. 7-8, ¶ 5A(ii).) The Eleventh Amendment to the Agreement of Sale confirms this contractual requirement was satisfied. (See Ex. 1, Eleventh Amendment to Agreement of Sale, p. 6, ¶ 9.) Still further, according to the complaint, the closing on the Warfield Project occurred in 2018. (Compl. ¶¶ 25-27.) Since the closing occurred, and the Zoning Ordinance required by the Agreement of Sale was to plaintiffs' reasonable satisfaction at closing, as a matter of law, the contract requirements were satisfied and plaintiffs cannot use the DDA to alter the express terms of the Agreement of Sale.

Plaintiffs' complaint and argument are further contradicted and disproven by the second amendment to the DDA, which plaintiffs signed, but neglected to mention. The second amendment to the DDA specifically provided that a permitted use of the Warfield Project, without any approval needed from the State, was as a "'Mixed Use – Planned Employment Center' of the Town of Sykesville Zoning Ordinance, as may be amended or superseded from time to time…." (*See* attached Ex. 2, Second Amendment to DDA, entered in 2016 several years prior to plaintiff's consummation of their acquisition, signed by Roger Conley on behalf of plaintiffs.) Under the Second Amendment to the DDA, therefore, the State delegated to the Town the authority to create the "Planned Employment Center" and confirmed that it remained the Town's authority to amend or supersede its "Zoning Ordinance." (*Id*.) Plaintiffs, therefore, not only agreed that the zoning in the Agreement of Sale was to plaintiffs' reasonable satisfaction, but plaintiffs had actual knowledge from the Second Amendment to the DDA, that the Planned Employment Center and related Zoning Ordinance were approved by the State and the State delegated any and all Zoning authority under the DDA to the Town. The State specifically agreed in the Second Amendment to the DDA that the State had no say whatsoever in the Planned Employment Center and related

13

"Zoning Ordinance" by the Town.   (*Id.*) Since the second amendment to the DDA explicitly acknowledged the Town and plaintiffs' plan for the Warfield Project and the Town's zoning authority, including any amendments the Town adopted (or for that matter did not adopt), this specific provision in the amendment to DDA controls and negates any alleged implied duty based on a general provision in a prior iteration of the DDA.  *See Pinnacle Group, LLC v. Kelly*, 235 Md. App. 436, 456-457, 178 A.3d 581 (2018).

Moreover, plaintiffs have no legal predicate for using a prior (2002) provision in the DDA, after signing the second amendment to the DDA (2015) delegating all zoning authority on the Warfield Project to the Town, after closing on the Warfield Project (2018) with a Zoning Ordinance in place to their reasonable satisfaction, to post-hoc claim they have a right to compel the Town to cooperate with and approve their Zoning Text Amendment based on some implied contractual duty of good faith and fair dealing under the DDA.  Plaintiffs could have elected not to close on the Warfield Project if they were dissatisfied with the zoning approved by the Town, but having executed the Eleventh Amendment to the Agreement of Sale, attached as Ex. 1, and proceeded to closing (*see* Compl. ¶ 25-27), plaintiffs cannot complain of the consequences of their decision in the guise of an implied duty of good faith and fair dealing.

The second amendment to the DDA specifically contemplated development consistent with "Planned Employment Center" as provided for in "the Town of Sykesville Zoning Ordinance…" (Ex. 2, Second Amend. To DDA, § 1.D.)  The State specifically agreed this development could proceed "without prior written approval of the Superintendent of Springfield Hospital Complex (SHC) and the Assistant Secretary of the Office of Real Estate."  (*Id.*)  In other words, the State agreed to allow the development in accordance with the Town of Sykesville's Zoning Ordinance, and the Town of Sykesville's Zoning Ordinance was found reasonably acceptable by plaintiffs and

approved as part of the Eleventh Amendment of the Agreement of Sale.  Plaintiffs have no legal predicate for imposing an implied duty on the Town to approve a Zoning Text Amendment different from what was agreed to prior to closing in the Agreement of Sale and in accordance with the Second Amendment to the DDA.

Still further, the Town's obligations under the original DDA terms are not what plaintiffs claim.  According to the DDA, with respect to the question of water sufficiency, it was acknowledged at the time of the original DDA back in 2002 that the water supply was insufficient to permit high density residential development in Carroll County.  (Ex, 2, DDA, ¶ 1B.)  In the event this might change over time, the State and the Town agreed "the Town shall investigate the feasibility of incorporating residential development **into its plans for the Project**…"  The "Project" was defined in the DDA as "[d]evelopment of the Warfield Complex…"  (DDA, ¶ 1A.)

The Town's plans for the Warfield Project were put in place in the Agreement of Sale in 2014 and ultimately confirmed by closing in June 2018.  (Compl. ¶¶ 25-27.)  The plans to develop the Warfield Project were confirmed in the original Agreement of Sale ("Purchaser has proposed a conceptual plan for the development of the Property (the "Preliminary Concept Plan) as mixed use development…") and superseded and replaced in the fourth recital in the Eleventh Amendment to the Agreement of Sale ("Purchaser intends to develop the Property as mixed-use development, consistent with modern planning and development practices, providing for an employment center…with a complementary blend of retail space and residential units…")  (*See* Opp. Mem. Ex. A, p. 1, Fourth Recital; *see also* Eleventh Amendment to Agreement of Sale, p. 2, ¶ 1, attached as Ex. 1.)  Given the complaint alleges that plaintiffs went to closing on the Warfield Project, it is not surprising that the complaint fails to allege the Town failed to consider residential development as

part of "plans for the [Warfield] Project…."  For this reason alone, plaintiffs' allegations by memorandum with respect to the terms of the DDA are deficient as a matter of law.

Plaintiffs cannot cure this defect because they admit that the Town considered residential development as part of "plans for the [Warfield] Project…" by including 145 residential development units in the developments plans for the Warfield Project.  (Compl. ¶ 34.)  Plaintiffs developed and sold those residential units. (Compl. ¶ 34.) No legal basis predicate exists for plaintiffs claiming post-closing on the Agreement of Sale, after the Town already approved 145 residential units as part of the plans for the Warfield Project, that the Town had a new implied contractual obligation that requires the Town to approve <u>more</u> residential development for the Warfield Project, based on DDA provisions that pre-dated closing on the Agreement of Sale.

This is particularly true where plaintiffs not only knew about the DDA, but agreed to amend the DDA as part of the Agreement of Sale process, and specifically amended the DDA in accordance with the Town's existing Zoning Ordinance.  (*See* Second Amendment to DDA, pp. 1-2, attached as Ex. 2.)  No legal predicate exists for implying a duty for the Town to change the Zoning Ordinance that was reasonably satisfactory to plaintiffs to proceed to closing on the Agreement of Sale and was approved by the State in the second amendment to the DDA.  (*See* Opp. Mem. Ex. A, pp. 7-8, ¶ 5A(ii); *see also* Eleventh Amendment to Agreement of Sale, Ex. 1, p. 6, ¶ 9.)

Plaintiffs' argument further ignores that the plans for the Warfield Project were approved by the State in the Second Amendment to the DDA, so any allegation that the plans for the Warfield Project were inconsistent with the original 2002 terms of the DDA is contradicted by the Second Amendment to the DDA.  (*See* Second Amendment to DDA, attached as Ex. 2, pp. 1-2.)  Plaintiffs cannot create an implied duty of good faith and fair dealing based on the 2002 terms of the DDA,

16

when the State specifically agreed to give the Town control of the Zoning Ordinance for the Warfield Project in the Second Amendment to the DDA.  (*Id.*)

Before closing on the Agreement of Sale, and before signing the second amendment to the DDA, plaintiffs might have been able to argue that the "reasonable efforts to design and develop the [Warfield] Project" should include more housing beyond the 145 residential units allowed for the Warfield Project based on the terms and conditions of the DDA.  Once plaintiffs signed the second amendment to the DDA, which specifically allowed for the development contemplated in the Agreement of Sale and authorized by the Town's Planned Employment Center Zoning Ordinance, and the Eleventh Amendment to the Agreement of Sale, which confirmed plaintiffs' zoning requirements were satisfied, and proceeded to closing in June 2018, they have and had no remaining arguments to change the zoning.  (*See* Opp. Mem. Ex. A, pp. 7-8, ¶ 5A(ii); *see also* Eleventh Amendment to Agreement of Sale, Ex. 1, p. 6, ¶ 9; Ex. 2, Second Amendment to DDA, pp. 1-2.)  Indeed, the Town's plans for the Warfield Project were accepted by plaintiffs, including the 145 residential housing units, and plaintiffs have no legal grounds for re-negotiating the residential housing units agreed upon and provided for prior to the closing on the Agreement of Sale.

As a matter of law, plaintiffs are bound by the terms and conditions of the Agreement of Sale.  They have no legal grounds to modify the terms and conditions they accepted as part of the Agreement of Sale, which, as noted, included residential development as part of the plans for the Warfield Project.  The mere fact that plaintiffs now want more residential development does not create any implied contractual obligation on the part of the Town with respect to the "plans for the [Warfield] Project…" that were agreed to with plaintiffs in the Second Amendment to the DDA, and the Eleventh Amendment to the Agreement of Sale, and were conditions of closing that were

satisfied to plaintiffs' reasonable satisfaction as evidence by plaintiffs closing on the property in June 2018.  (*See* Compl. ¶ 25-27; *see also* Opp. Mem., Ex. A, ¶ 5A(ii).)

According to the complaint, the pertinent provision in the DDA required further consideration of residential housing based on changes in the Carroll County water supply.  (Compl. ¶ 15.)  Absent from the complaint, however, is any allegation of a change in water conditions in Carroll County after closing on the Agreement of Sale in 2018.  (Compl. ¶¶ 25-27.)  In fact, the complaint alleges the change in the Carroll County water supply occurred in 2015, years before the closing.  (*See* Compl. ¶ 15.)  This is confirmed in the Second Amendment to the DDA, which recognized the changes in the water situation for the Warfield Project and specifically provided addressed water allocation.   (Ex. 2, DDA, Second Amendment, p. 4, ¶ 9B(i).)

In other words, the changes in the water conditions in Carroll County occurred in 2015, years before closing on the Warfield Project in 2018, were addressed in the Second Amendment to the DDA, and plaintiffs still found the Zoning Ordinance and the 145 housing units allocated to plaintiffs to be reasonably satisfactory, and went to closing.  (*Compare* Compl. ¶ 15 *with* Compl. ¶ 27.)  Plaintiffs have no legal basis for relying on events prior to closing on the Property, which were acceptable to plaintiffs at closing, as grounds to alter or amend the Agreement of Sale after closing.  With no allegation of a change in water conditions in Carroll County post-closing, and plaintiffs' knowledge of the water conditions in Carroll County prior to closing (Compl. ¶ 15), which were also addressed in the Second Amendment to the DDA, no possible factual or legal predicate exists for plaintiffs' argument that a condition of the original DDA somehow magically sprang forth and requires a change in the Agreement of Sale beyond the residential housing allowed by the Agreement of Sale.

18

Allegations of breach of the DDA further ignore the fact that the Town discharged its obligations under the DDA by contract with plaintiffs, as is evident from Second Amendment thereto. (*See* Second Amendment to DDA, attached as Ex. 2.) Plaintiffs cannot fail to discharge their contractual obligations for a "mixed use – 'Planned Employment Center' of the Town of Sykesville Zoning Ordinance…" as stated in the second amendment to the DDA, and as stated in the Agreement of Sale, but then claim the Town breached the DDA. Roger Conley signed the second amendment to the DDA on behalf of plaintiffs' predecessor—Warfield Collaborative, LLC, binding plaintiffs to its terms and making plaintiffs the successors to the Town as owner of the property after the closing in June 2018. (*See* Second Amendment to DDA, attached as Ex. 2, p. 6, ¶ 9B(viii); *see also* Compl. ¶¶ 25-27.)

Plaintiffs' generalized and generic allegation that the complaint "pled that the Town had an implied duty of good faith and fair dealing under the Agreements which required the Town to cooperate with Plaintiffs in order to obtain the full benefit arising out of the Agreements" is deficient as a matter of law. (Opp. Mem p. 21.) This argument is exactly what is wrong with the complaint and why the Town is entitled to judgment on the pleadings.

In Maryland, to state a claim for breach of contract, based on the implied duty of good faith and fair dealing, a complaint "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Polek*, 424 Md. at 362, 36 A.3d at 416 (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.,* 279 Md. 476, 480, 369 A.2d 566, 569 (1977).) (emphasis original). "Conclusory statements and general averments" are legally insufficient. *Polek.*, 424 Md. at 363, 36 A. 3d at 417.

Beyond the lack of specificity, plaintiffs' complaint is not predicated on any failure to receive the benefits of the Agreement but rather predicated on a failure to approve a Zoning Text Amendment that would have altered the Agreement.  The benefit of the Agreement was the right to develop the property under the zoning scheme that plaintiffs accepted as a condition precedent to closing.  Although plaintiffs' memorandum attempts to shoehorn this into a contractual claim, for the reasons already explained, plaintiffs have no valid contractual basis for their allegation of a breach of the implied duty of good faith and fair dealing by failure to grant a Zoning Text Amendment.

Plaintiff's concession that they are not alleging the Town had an obligation to approve the Zoning Text Amendment means they have no claim for breach of contract based on the failure to approve the Zoning Text Amendment.  Plaintiffs cannot appeal the denial of their Zoning Text Amendment in the guise of a claim for breach of contract.  Plaintiffs' allegations about the Town's adherence to some sort of fair consideration of the Zoning Text Amendment, (Compl. ¶ 154), due process (Compl. ¶ 107), state law (Compl. ¶¶ 106, 145, 128), conformance with the Town's comprehensive plan (Compl. ¶¶ 121-123), or consistent with legislative discretion, are not contract questions or claims that can be resolved based on the contract terms. Plaintiffs' claim is limited to contractual duties, not legislative duties and responsibilities, or Town statutory duties and responsibilities. These might be arguments on appeal from denial of the Zoning Text Amendment, but plaintiffs do not dispute they have never filed an appeal from the denial of the Zoning Text Amendment.  Plaintiffs, therefore, are limited to their claim for breach of contract and plaintiffs cannot enforce statutory claims in the guise of contract claims—another form of contract zoning.

The distinction between contract claims and appeals from the denial of a Zoning Text Amendment is not mere semantics.  The legal standard in a de novo contract case is simply whether something is more probable than not true.  *Muhammad v. Prince George's Cnty. Bd. of Educ.*, 246 Md. App. 349, 358, 228 A.3d 1170, 1175 (2020).  A zoning text amendment is quintessentially a legislative act, so the burden of proof required to invalidate it is exceptionally high and plaintiffs presumably know they could not meet it.  "Zoning is a legislative function, and when reviewing the acts of the zoning authorities, the duty of the courts is to decide whether such action was arbitrary, discriminatory or illegal…. . A court cannot substitute its judgment for that of the zoning authorities if their decision is supported by substantial evidence and the issue before them is fairly debatable. …" *Ark Readi-Mix Concrete Corp. v. Smith*, 251 Md. 1, 4 (1968) (internal citations omitted). *See also North v. St. Mary's County*, 99 Md. App. 502, 509 (1993).

Plaintiffs cannot circumvent the legislative appeal process by calling due process, statutory, or legislative claims contractual.  Whether the Town's denial of the Zoning Text Amendment complied with House Bill 1045 (Compl. ¶ 145), with the Town's Comprehensive Plan (Compl. ¶¶ 121-123), with House Bill 538 (Compl. ¶ 128), whether the Town improperly limited the Planning Commission's role (Compl. ¶ 102), or violated the State's Open Meetings law (Compl. ¶¶ 104-106), for example, are not contract questions, but rather legal issues that could be raised on appeal from the Town's denial of the Zoning Text Amendment.  None of this, however, is before the Court by contract.  The complaint fails to allege (and could not allege) plaintiffs appealed the denial of the Zoning Text Amendment.  Simply referring to various statutes in the complaint is legally insufficient to make them part of the contract.  None of the statutes referenced in the complaint, and none of the alleged defects in the zoning process followed by the Town, are properly before the Court based on a breach of contract claim.

21

The allegations of improprieties by the Mayor likewise cannot convert plaintiffs' claims into contractual rights. The Mayor was and is only one of seven votes on the Town Council. *See* Sykesville Town Charter, § C- 3 Number; Selection; Term.[6] As a matter of law, therefore, the Mayor had no greater vote than any other Town council member. (*Id*.) Significantly, the complaint does not allege and could not allege that the Mayor cast a tie-breaking vote against plaintiffs' Zoning Text Amendment. The complaint does not allege and could not allege the Mayor had some sort of veto power or authority over the Warfield Project. (*Id*.) Stated differently, regardless of what the Mayor said or did, if the other six members of the Town Council had voted to approve the Zoning Text Amendment, then plaintiffs' Zoning Text Amendment would have been approved. Plaintiffs simply cannot impute contractual liability to the Town through the Mayor's acts when the harm allegedly suffered is due to a legislative act by the Town Council, and the Mayor was only one vote. Plaintiffs cannot by contract attribute acts by the majority of the Town Council (Compl. ¶ 111) to the Mayor and call it a breach of contract.

B. Plaintiffs' Contract Zoning Concessions Prove No Claim Is Stated And The Cases Cited By Plaintiffs Support The Town.

Plaintiffs' admission that the Town had no obligation under any of the Agreements with plaintiffs to approve the Zoning Text Amendment, establishes, as a matter of law, that no claim is stated for breach of the implied duty of good faith and fair dealing. (Opp. Mem. P. 23.) As the Supreme Court of Maryland has explained, "[a]bsent special circumstances, no new obligations on the parties are imposed, where the contract is silent, by the implied covenant of good faith and fair dealing." *Polek*, 424 Md. at 363, 36 A.3d at 416; *see also Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000). "In other words, the implied duty of good

---

[6] The Town Charter and Code can be accessed at https://ecode360.com/SY2024/home.

faith and fair dealing ensures that one party to a contract does not inhibit the other from performing its obligations, but it does not guarantee any new rights or obligations that do not already exist in the contract." *Kim v. Cedar Realty Trust, Inc.* 116 F. 4th 252, 266 (4th Cir. 2024) (affirming dismissal of breach of contract claim based on implied duty of good faith and fair dealing).  For this reason alone, the Town's motion for judgment on the pleadings should be granted.

Plaintiff's concession that plaintiffs are not alleging the Town had an obligation to approve the Zoning Text Amendment under any of the Agreements destroys plaintiffs' claim for causation of damages for any alleged breach of contract.  Based on plaintiffs' concession, plaintiffs suffered no damages proximately caused by any breach of the Agreements between plaintiffs and the Town.  *See Frey Agric. Prods., Inc. v. Liberty Mut. Ins. Co.*, No. 1:25-CV-00045-JMC, 2025 WL 2402181, at *3 (D. Md. Aug. 19, 2025) ("The elements of a breach of contract claim are (1) a contractual obligation; (2) breach of that obligation; and (3) damages."); *Coley v. Tischer Autopark, Inc.*, 2024 WL 2103430, at *3 (Md. Ct. Spec. App. May 10, 2024), *cert. denied,* 488 Md. 406, 321 A.3d 794 (2024) ("Under both tort and contract law, one claiming damages must prove that tortious act or breach of contract was the proximate cause of the damages claimed.") (citations omitted).

Plaintiffs' putative authorities with respect to contract zoning are not as plaintiffs imply and actually support the Town's motion for judgment on the pleadings.  Plaintiffs quote from and reliance on *Bollech v. Charles Cnty.*, 166 F. Supp. 2d 443 (D. Md. 2001), is misguided because the Court's contract zoning discussion in *Bollech* is dictum, according to the court, which explained, "the court does not, ultimately, have to decide whether the Agreement is illegal contract zoning." (*Id*. at 452-453.)  The Court in *Bollech* further explained there was no enforceable *contract at the time of the change in zoning*.  (*Id*. at 458.)   Plaintiffs are not even complaining about a change in

zoning; they are complaining about the zoning they accepted as a condition precedent to closing on the Agreement of Sale. (*See* Opp. Mem., Ex. A, pp. 7-8, ¶¶ 5(a)(ii).; *see also* Ex. 1, Eleventh Amend. To Agr. Of Sale, p. 6, ¶ 9; Compl. ¶¶ 25-27.)  Finally, the Court in *Bollech* explained that if the Court accepted the developer's argument that any change in zoning was frozen "into perpetuity...the Agreement would be unenforceable as illegal 'contract zoning.'"  (*Id*. at 457.)  Thus, *Bollech* supports the Town because plaintiffs' argument that the Town had some duty to adopt the Zoning Text Amendment is directly analogous to the developer's argument for a freeze on zoning changes in *Bollech*.

Still further, plaintiffs' citation to and reliance on *People's Counsel for Baltimore County v. Beachwood I Limited Partnership*, 107 Md. App. 627, 670 A.2d 484 (1996), is unfounded for at least two reasons.  First, that case involved an appeal from a Zoning Reclassification.  Plaintiffs have never appealed and there was no zoning reclassification by the Town.  Second, as the Court explained in *Bollech*, "[c]ontract zoning was actually a non-issue in Beachwood as the alleged conduct in question involved two separate government agencies (Baltimore County Council and Baltimore County Board of Appeals), one making the contract and the other regulating zoning." *Bollech*, 166 F. Supp. 2d at 453.  Since contract zoning was not even at issue, the case cannot support plaintiffs' contract zoning arguments.

Plaintiffs' reliance on *MCB Realty, LLC v. Mayor of Baltimore*, 192 Md. App. 218, 993 A. 2d 1190 (2010), is perplexing for several reasons.  First, the Court found the zoning text amendment that changed the zoning was legislative action and entitled to a presumption of validity. *Id*. at 234-235.  The Town, of course, must enjoy a similar presumption when it declines to change zoning, as plaintiffs requested in the Zoning Text Amendment, and again if plaintiffs file an appeal of the denial of the re-zoning request.  Second, the Court found no evidence of a contract, so there

was no way to sustain the claim of contract zoning. *Id*. at 242. Plaintiffs by contrast indisputably rely on contracts as the alleged claim for "breach of contract" makes clear. Third, the Court found in favor of the City on all the claims in this case.

Finally, plaintiffs' citation to and reliance on *Mayor & Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 814 A.2d 469 (2002), is particularly perplexing because the Court there recognizes zoning is imbued with a "strong presumption of correctness and validity" in favor of the "motives or wisdom of the legislative body in adopting an original or comprehensive zoning." (*Id*. at 535.) This means the Town's original zoning, which plaintiffs sought to change with the Zoning Text Amendment, is entitled to this presumption of correctness and validity. This again shows why the Court should reject the contention that contract law can substitute for an administrative appeal, which plaintiffs never filed. Not only that, but *Rylyans* was an action for judicial review of a city zoning ordinance, but plaintiffs concede they have not sought judicial review of the Town's denial of the Zoning Text Amendment. Finally, the Court in *Rylans* found there was impermissible contract zoning, which is consistent with the Town's position. (*Id*. at 576.) In sum, the case law all supports the Town and that plaintiffs' breach of contract claim is impermissible contract zoning.

C. Plaintiffs' Claims That The Local Government Tort Claims Act's Notice Requirements Were Satisfied Are Meritless.

Plaintiffs' misguided efforts to salvage their tort claims are fundamentally flawed on at least two levels. First, plaintiffs blur contract and tort law in an effort to confuse the Court and create the factually and legally unfounded argument that the Town was on actual or constructive notice of their claims against the Mayor. Stripped of the contract claim, for the reasons already explained, and with no tort duty to approve the Zoning Text Amendment, plaintiffs have no argument that the Town was on actual or constructive notice of any claims that the Mayor's conduct

was allegedly tortious because in order for the Town to know that, given that plaintiffs never said so until the filing of this complaint, those actions would have had to have <u>been known to the Town</u> <u>*qua* Town, which is not alleged in the complaint</u> and independent of the denial of the Zoning Text Amendment. The notice requirements of LGTCA cannot be satisfied by merely saying certain events were committed by one person (the Mayor) and another entity (the Town) was on actual or constructive notice because the events occurred. Indeed, accepting this argument would nullify the notice requirement in all future LGTCA cases. This is not a case, for example, where a tortious injury and claim were obvious, such that actual or constructive notice might be inferred, as perhaps, for example, when someone falls into a hole dug in a street by municipal employees while the employees left the hole unguarded, and the employees were sued.

Plaintiffs have alleged certain misconduct by Mayor Link and have asserted that the Town is vicariously (indirectly) liable for torts allegedly arising therefrom. (Compl. ¶ 168.) This is precisely the type of tort claim from which the Town has immunity.

As the Supreme Court of Maryland has made clear, the Act represents a "limited waiver" of a local government's governmental immunity. *Solis v. Prince George's County.*, 153 F. Supp. 2d 793, 805-06 (D. Md. 2001). The Court has further explained "the LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." *Williams v. Prince George's County*, 112 Md. App. 526, 554, 685 A.2d 884, 898 (1996) (*quoting Khawaja v. Mayor and City of Rockville*, 90 Md. App. 314, 325-26, 598 A.2d 489 (1991)).

The Local Government Tort Claims Act ("LGTCA" or "the Act"), Md. Code Ann., Cts. & Jud. Proc. Art. ("CJ"), Title 5, Subtitle 3, waives immunity and makes the Town financially responsible, up to the stated cap, for the torts of its employees, but only if, among other things,

26

plaintiffs give the statutorily required notice.  *See* Md. Code Ann., *Cts. & Jud. Proc*. § 5-303.  Thus, the arguments advanced by plaintiffs are legally misguided because the limited waiver of immunity under the LGCTA only applies to claims against employees, while acting within the scope of their employment, and are subject to a statutory damages cap, while the complaint pleads none of these requirements in attempting to state tort claims against the Town.

Plaintiffs' complaint is a deliberate attempt to end run the LGTCA in order to recover damages in excess of the statutory cap, but plaintiffs cannot file a complaint directly against the Town and rely on the Act as grounds for claiming the Town was on actual or constructive notice of their tort claims against a non-party, e.g., the Mayor.  Plaintiffs' direct claims against the Town simply are not within the Act. *See Schifanelli v. Queen Anne's County Bd. Of Comm'rs,* No. CV GLR-20-2906, 2021 WL 3681157, at \*6 (D. Md. Aug. 18, 2021)*, aff'd sub nom. Schifanelli v. Queen Anne's County Bd. of Comm'rs,* No. 21-1942, 2023 WL 3918679 (4th Cir. June 9, 2023) (citation omitted).

The Maryland federal District Court has made clear the LGTCA "does not create liability on the part of the local government—rather, it simply makes the local government financially responsible for certain judgments against its employees." *Schifanelli,* 2021 WL 3681157, at \*6 (citation omitted).  "Accordingly, the LGTCA does not permit a plaintiff to proceed against only the local government in a common law tort suit." *Id.* (citation omitted).

Plaintiffs' complaint fails on several levels under the LGTCA.  The complaint, for example, fails to include the Mayor as a defendant.  *See* Md. Code Ann., *Cts. & Jud. Proc*. § 5-303(b)(1) ("a local government shall be liable for any judgment against its employee for damages….")  The complaint further fails to allege the Mayor was a Town employee, acting within the scope of her employment by the Town, at the time of each and every tortious act.  *See* Md.

Code Ann., *Cts. & Jud. Proc*. § 5-303(b)(1) ("…tortious acts or omissions committed by the employee within the scope of employment with the local government.")  Plaintiffs' complaint further fails to limit the tort damages claimed consistent with the LGTCA, which limits plaintiffs' claims to at most $800,000 (*see* Md. Code Ann., *Cts. & Jud. Proc*. § 5-303(a)(1)).  The complaint seeks over $20,000,000 in tort damages.  (*See* Compl., pp. 37 & 39).  Plaintiffs cannot rely on the LGTCA in an effort to sustain the complaint, when the complaint fails to satisfy the pleading requirements necessary to comply with and state a claim under the LGTCA.

Plaintiffs' failure to allege the Mayor was acting in her capacity as a Town employee and within the scope of her employment for the Town at the time of each and every act is no mere technical defect.  Plaintiffs may be claiming the Mayor's acts were ultra vires, and therefore not within the scope of the LGTCA, which would negate any grounds for suing the Town in tort, but allow plaintiffs to pursue claims beyond the dollar limits imposed by the LGTCA.  *See* Md. Code Ann., *Cts. & Jud. Proc*. § 5-303(a)(1).  Even assuming this may be plaintiffs' intention, it is not pled.  If, on the other hand, plaintiffs are claiming the Mayor was acting within the scope of her employment and as an employee of the Town, then plaintiffs must make these allegations in the complaint and plaintiff's damages claims must be reduced to the maximum available under the LGTCA, or at most $800,000.  Md. Code Ann., *Cts. & Jud. Proc*. § 5-303(a)(1).

The complaint is further deficient because it does not contain even conclusory allegations that the Town was on actual or constructive notice of the tort claims.  In other words, plaintiffs are asking the Court to consider their actual or constructive notice argument de novo on brief. Plaintiffs cannot amend the complaint by memorandum and the Court should not allow them to do so.  Based on the pleadings, the tort claims fail to comply with the notice requirements of the LGTCA and should be dismissed.

Even if the Court considers plaintiffs' actual or constructive knowledge arguments, these arguments are based on a fundamentally erroneous premise—plaintiffs have not sued the Mayor for her acts and statements, which, of course, the Mayor would know about. Rather, plaintiffs have sued the Town, but purport to rely on various acts and statements by the Mayor. Plaintiffs' notice argument skips over the foundational fact that plaintiffs have NEVER alleged the Mayor committed any torts while acting in her capacity as an employee of the Town and that she committed those acts within the scope of her employment. (*See* Compl.; *see also* Opp. Mem., Counterclaim.) Plaintiffs' failure to ever allege the Mayor was acting as an employee of the Town and within the scope of her employment at the time of any alleged torts is fatal to plaintiffs' complaint of actual or constructive notice to the Town. The Town cannot possibly be on notice of tort claims plaintiffs' have **never** advanced. Plaintiffs' complaint is legally deficient under the LGTCA.

Plaintiffs' State Court Counterclaim, attached to plaintiffs' opposition, is completely dispositive of plaintiffs' actual and constructive notice arguments and supports the Town's motion for judgment on the pleadings. The State Court Counterclaim only asserted a claim for breach of contract based on the implied duty of good faith and fair dealing and only against the Town. (*See* Opp. Mem., Doc. 30-2.) Given that plaintiffs affirmatively represented to the Circuit Court (and the Town) that the facts and events alleged only gave rise to a breach of contract claim against the Town, not a tort claim against the Mayor, it is legally impossible for the Town to have been on actual or constructive notice that the Mayor's actions were actually torts allegedly committed by the Mayor as an employee of the Town and within the scope of her employment causing plaintiffs damages. (*Id.*) In other words, the Town had no way of knowing that plaintiffs thought the Mayor's actions were torts, that plaintiffs' thought the Mayor's actions were taken as an employee

29

of the Town, or that plaintiffs' thought the Mayor's actions were within the scope of her employment, when plaintiffs pled none of this. From a legal perspective, the most the State Court Counterclaim put the Town on notice of was that the only claim plaintiffs were asserting against the Town was for breach of contract and that plaintiffs were not asserting any claim against the Mayor.

Plaintiffs' State Court counterclaim is further dispositive of the actual or constructive notice arguments because plaintiffs must be charged with the same actual or constructive knowledge of the tort claims they allege the Town had. This means when plaintiffs filed the State Court Counterclaim for breach of contract in August 2023,[7] plaintiffs had knowledge that they intended to claim the Mayor was acting as an employee of the Town, plaintiffs had knowledge that they intended to claim the Mayor was acting within the scope of her employment, and plaintiffs had knowledge that they intended to claim the Mayor committed various torts. According to the docket filed by plaintiffs, the counterclaim was never amended to assert any tort claims. Thus, the complaint and docket prove, based on plaintiffs' actual and constructive notice arguments, that plaintiffs and their counsel (i) knowingly failed to join the Mayor in the counterclaim, which was necessary in order to assert a claim under the LGTCA; (ii) knowingly failed to allege in the counterclaim that the Mayor was acting as an employee of the Town, again as required by the LGTCA; (iii) knowingly failed to allege the Mayor was acting within the scope of her employment, as required by the LGTCA; (iv) knowingly failed to assert any torts were committed by the Town or the Mayor, again necessary to state a claim under the LGTCA; and (v) knowingly and

_____

[7]According to the docket filed by plaintiffs with their opposition, the counterclaim was not amended prior to plaintiff's March 26, 2024, bankruptcy filings. *See* Maryland Judiciary Case Search, Case no. 25-00042 Doc. 30-3, filed with Opp. Mem.

intentionally sought to deceive the Circuit Court and the Town into believing their only claim against the Town was for breach of contract and they had no tort claims against anyone.

Plaintiffs cannot engage in such a deliberate deception and then seek to benefit from their deception by claiming the Court should find the Town should have seen through their deception and guessed what plaintiffs intended to say, but never said, and somehow charge the Town with actual or constructive knowledge of facts and claims that plaintiffs were knowingly and intentionally concealing from the Town. (*See, e.g.*, Stated Court Counterclaim, State Court Doc. no. 30-2, attached to plaintiffs' opp.)  Based on the undisputed allegations in the State Court Counterclaim, plaintiffs' argument that the Town was on actual or constructive notice of the claims that plaintiffs concealed must fail as a matter of law.   No legal basis exists for imputing knowledge to the Town that is directly contrary to the allegations made by plaintiffs in the counterclaim filed in the Circuit Court for Carroll County, Maryland.   Plaintiffs' actual or constructive notice argument, advanced by memorandum, is defeated by the State Court Counterclaim attached to plaintiffs' memorandum, and the Town remains entitled to judgment on the pleadings.

Plaintiffs' notice argument is also directly contrary to the Court's decision in *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 693 (D. Md. 2004), *aff'd*, 120 F. App'x 465 (4th Cir. 2005).  In that case, the Court explained how the City was **not** on notice of a tort claim:

> Luy does allege that he previously filed "charges of discrimination" with the EEOC (Compl. at ¶ 26), and the defendants note that Luy filed a grievance with the Maryland Commission on Human Relations in October 2002, which the City responded to in July 2003 (Defs.' Mem. at 2). Even assuming these administrative complaints otherwise would meet the requirements for "substantial compliance" with the LGTCA, there is no allegation nor any reason to believe that they would have provided any notice of Luy's claim for *defamation.* While the LGTCA notice requirement may be excused "upon motion and for good cause shown," Md.Code Ann., Cts. & Jud. Proc. § 5–304(c), Luy has not made such a request nor alleged any facts that would establish good cause. Because Luy has not alleged compliance with the notice requirement of the LGTCA, he has failed to state a claim for defamation against the BPD under Maryland law.

31

Plaintiffs are in a similar position here having never alleged the Mayor, while acting as an employee and while acting within the scope of her employment, committed any torts, and, therefore, cannot claim to have met the requirement of "substantial compliance" with the LGTCA. Similarly, as in *Luy*, plaintiffs have not pleaded compliance with the LGTCA and have not filed a motion to excuse compliance on motion for good cause shown. Indeed, without first pleading a claim under the LGTCA, including specific allegations necessary to state a claim under the LGTCA, including that the Mayor was acting as an employee of the Town and her actions were within the scope of her employment at the time of any alleged torts, and reducing their damages claim to the statutory limit, any putative motion by plaintiffs would be premature and legally unfounded. In sum, as in *Luy*, plaintiffs' tort claims against the Town should be dismissed.

Finally, plaintiffs' prejudice argument is legally unfounded. (Opp. Mem., p. 30.) If and when plaintiffs plead a claim under the LGTCA, then plaintiffs can file a motion for good cause shown seeking to allow the Court to entertain this action even though the required notice was not given. *See* Md. Code Ann., *Cts. & Jud. Proc.* § 5-304(d). At this point in the proceedings, the Town has no obligation to plead or prove prejudice. Plaintiffs' prejudice argument is premature. The Town is prepared to address this issue, if and when plaintiffs actually plead a claim under the LGTCA and file the appropriate motion for good cause shown. (*Id*.) Plaintiffs' failure to meet any of these prerequisites means plaintiffs cannot simply shift the burden to the Town to prove prejudice based on their failure to plead any of the requisite elements of notice under the LGTCA.

D.  As a matter of law and fact, The Town's Denial of Zoning Text Amendment Was An Exercise of Governmental Police Power And Plaintiffs Cannot Convert the Town's Claim Under the Reversion and Preservation Agreements Into A Tort.

Plaintiffs do not dispute that the Town is "shielded from tort liability for governmental actions unless the General Assembly has specifically waived the immunity of the municipality."

*Williams v. Prince George's County*, 112 Md. App. 526, 553, 685 A.2d 884, 898 (1996) (citation omitted). Plaintiffs do not dispute that the LGTCA does not waive a local government's "common law immunity in any extent more broad than its duty to indemnify employees….[and] that 'the LGTCA does not waive governmental immunity or otherwise authorize any actions *directly* against local governments....'" *Livesay v. Baltimore County*., 384 Md. 1, 20, 862 A.2d 33, 44 (2004) (citation omitted) (emphasis added); *see also Williams*, 112 Md. App. at 554, 685 A.2d at 898 ("the LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity.") (*quoting Khawaja v. Mayor and City of Rockville*, 90 Md. App. 314, 325-26, 598 A.2d 489 (1991)). Plaintiffs, however, attempt to avoid the Town's immunity in tort by essentially "pleading" by memorandum that the Town's denial of the Zoning Text Amendment can be converted from a governmental exercise of police power into a proprietary act because plaintiffs say so. This argument is procedurally, legally, and factually flawed.

First, plaintiffs' complaint fails to allege that the Town acted in a proprietary capacity in denying the Zoning Text Amendment or received any financial benefit as a result of denial of the Zoning Text Amendment. (*See, e.g.,* Compl. ¶¶ 111-113.) For reasons that will become clear, this is no accident. Second, the Town's denial of the Zoning Text Amendment, as a matter of law, was an exercise of the governmental police power and none of plaintiffs' cases say otherwise. *Casey v. Mayor and City Council of Rockville*, 400 Md. 259, 279, 929 A. 2d 74 (2007) ("adoption and administration of zoning procedures are an exercise of police power delegated to specific individual political subdivisions and municipalities of the State.") Third, denial of the Zoning Text Amendment was not proprietary in any way because plaintiffs have not pled and cannot plead that denial of the Zoning Text Amendment created any legal right or claim by the Town to any part of

plaintiffs' property.  (*See*, Compl.)  Indeed, the complaint makes clear that the denial of the Zoning

Text Amendment left plaintiffs in the same position they were in when they purchased the property

in June 2018.  (*See, e.g.*, Compl. ¶¶ 25-27; *see also* Opp. Mem. Ex. A, pp. 7-8, ¶ 5(a)(ii); Ex. 1,

Eleventh Amendment to Agreement of Sale, p. 6, ¶ 9.)  Fourth, the Town's exercise of its contract

right of reversion, as explained in the counterclaim, is governed by contract (Reversion and

Preservation Agreements) and cannot be converted into a tort.  (ECF no. 14.)  Fifth, Plaintiffs'

"proprietary" argument is flawed for two additional reasons: (i) plaintiffs' failure to perform in

accordance with Preservation Agreement and Reversion Agreement occurred long before the Town

denied the Zoning Text Amendment; and (ii) if the Town fails to prevail on its breach of contract

claim (Reversion and Preservation Agreements), plaintiffs are still not entitled to the Zoning Text

Amendment, by contract they simply retain the disputed properties.  (*Id*.)

The Town is immune from suit in tort for its actions in connection with governmental

functions. Even assuming this rule may be hard to apply in some other cases, it is not hard to apply

here because the Supreme Court has consistently recognized zoning is an exercise of police power.

*See Casey v. Mayor and City Council of Rockville*, 400 Md. 259, 279, 929 A. 2d 74 (2007); *see*

*also Sizemore v. Town of Chesapeake Beach*, 225 Md. App. 631, 655-656, 126 A. 3d 225, 240

(2015) (*quoting Grant v. Mayor and City Council of Baltimore*, 212 Md. 301, 314, 129 A.2d 363

(1957).  Regardless of plaintiffs' attempt to distinguish between governmental and proprietary

functions, the Supreme Court has explained that regardless of any "difficulty and confusion

surrounding the governmental-proprietary distinction, we "have consistently declined to expand

or contract governmental immunity," *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154,

163 (2006)).

Plaintiffs' argument about "propriety" zoning is not only contrary to the Supreme Court of Maryland's decision recognizing zoning as an exercise of police power, but none of the cases cited by plaintiffs either involved zoning or stand for the proposition that zoning is not an exercise of police power.  *See, e.g., Mayor and City Council of Baltimore v. Whalen*, 395 Md. 154, 909 A 2d 683 (2006) (finding City had governmental immunity from tort claim arising from blind pedestrian falling into uncovered pit); *Rios v. Montgomery County*, 386 Md. 104, 872 A. 2d 1 (2005) (dismissing tort action for failure to give notice required by LGTCA and holding Montgomery County had governmental immunity); *Abrams v. City of Rockville*, 88 Md. App. 588, 596 A. 2d 116 (1991) (tort action filed before adoption of LGTCA, but against employees and City, in connection with showing an inappropriate movie to a minor, and finding employees were not public officials so were not entitled to governmental immunity).

The only proprietary function cases cited and relied upon by plaintiffs involved "fees" charged by the municipality.  *See Tadjer v. Montgomery County*, 300 Md. 539, 479 A. 2d 1321 (1984) (tort action for nuisance before adoption of LGTCA focusing on County's operation of landfill and fees charged for landfill may render government actions proprietary); *Austin v. City of Baltimore*, 286 Md. 51, 405 A.2d 255 (1979) (tort action filed against City before adoption of LGTCA, holding City retained governmental immunity, even though fees were paid by campers, including the deceased); *Mayor and City Council of Baltimore v. Blueford*, 173 Md. 267, 195 A. 571 (1937) (tort action before adoption of LGTCA, finding City of Baltimore immune from death claim related to operation of a swimming pool, notwithstanding fee charges for use of pool.) Plaintiffs' complaint fails to allege the Town charged any fees for denial of the Zoning Text Amendment.  Indeed, the complaint does not allege the Town received any benefit from denial of

the Zoning Text Amendment. The Complaint, therefore, provides no factual basis for plaintiffs' argument that the Town's denial of the Zoning Text Amendment was proprietary.

The Town's denial of the Zoning Text Amendment was not proprietary because plaintiffs cannot even allege, and have not alleged, that denial of the Zoning Text Amendment created any legal right by the Town to claim any part of plaintiffs' property. (See, e.g., Compl. ¶¶ 11-113.) Indeed, the complaint does not allege that the denial of the Zoning Text Amendment was proprietary because it resulted in reversion of the Warfield Project to the Town, which is demonstrably not true because plaintiffs allege they are still the owners of the Warfield Project. (*See* Compl. ¶14 & 25-27.) The mere allegation that the Town wanted the Warfield Project to revert to the Town (Compl. ¶ 74) is legally insufficient to convert the Town's governmental act into a proprietary act when the Town is not even alleged to have had any legal right or recourse for reversion as a result of the denial of the Zoning Text Amendment, and when the Town is not even alleged to have asserted such a legal right or claim as a result of the denial of the Zoning Text Amendment. As a matter of law, the Town had no proprietary interest in the denial of the Zoning Text Amendment.

The Town's only claim with respect to certain properties within the Warfield Project, as specifically alleged and explained in its counterclaim, is that plaintiffs had until June 26, 2021, to submit certificates of completion in accordance with the Reversion and Preservation Agreements. (Counterclaim ¶¶ 41-42; Reversion Agreement ¶ 3(a); Preservation Agreement ¶ 7(a)(i).) Plaintiffs had ninety (90) days beyond June 26, 2021, to take corrective action and cure this deficiency. (Counterclaim ¶ 43; Reversion Agreement ¶ 3(e); Preservation Agreement ¶ 7(e).) The Town further alleges plaintiffs failed to cure the defects within ninety (90) days of June 26, 2021. (Counterclaim ¶ 43.)

According to the complaint, the Zoning Text Amendment was not denied until June 21, 2022.  (Compl. ¶ 111.)    Since plaintiffs' obligations under the Reversion and Preservation Agreements were due to be completed almost a full year earlier, the Town's denial of the Zoning Text Amendment could not be proprietary because it had no impact on plaintiffs' prior performance obligations.  Either plaintiffs performed in accordance with the Reversion and Preservation Agreements within ninety (90) days of June 26, 2021, or not.

Moreover, since the Town's right to reversion is governed by contract, based on the terms and conditions of the Reversion Agreement and the Preservation Agreement, as specifically alleged by the Town in the counterclaim, plaintiffs cannot convert the parties' contractual obligations into a tort claim.  *Abt Assocs., Inc. v. Jhpiego Corp.*, 104 F. Supp. 2d 523, 537 (D. Md. 2000) ("Where the essence of a relationship between the parties is contractual in nature and the basis for the claim ... is [defendant's] failure to perform the contract, the cause of action . . . is not available in a tort action but only in an action for breach of contract.") (citing *Baird v. C&P Tel. Co. of Baltimore*, 208 Md. 245, 258-59 (1955)).  If the Town fails to prove its breach of contract claim, then the Town is not entitled to the deeds for certain specified properties within the Warfield Project.  Plaintiffs, however, are still not entitled to the Zoning Text Amendment, which again shows the Town's denial of the Zoning Text Amendment was not proprietary in any way.

Another flaw in the proprietary analysis is that the two torts alleged in the complaint are not based on actions of the Town, but rather the actions of an individual they did not sue.  Even if they could be attributed to the Town, which as explained below they cannot, there is no allegation that the Mayor engaged in them in pursuit of any proprietary function.  For this additional reason, the Town's immunity from the tort claims remains.

Plaintiffs' proprietary argument is further flawed because the actions of the Mayor were not actions of the Town.  Plaintiffs allege various actions by Mayor Link, but never identify any other "Town officials," or any acts committed by other Town officials, other than denial of the Zoning Text Amendment by the Town Council.  (Compl. ¶ 111.)  The actions alleged by Mayor Link, however, were actions of a single individual and simply cannot be attributed to "the Town." The Town's Charter limits the Town to acting through its legislative body, and the Mayor is only one of seven members.  (*See, e.g.,* Charter Article II, § C-3.)  The Mayor, therefore, has no legislative authority to act for the Town and her acts cannot be imputed to the Town.  (*Id.*)

Plaintiff's "proprietary" argument further runs afoul of the Supreme Court of Maryland's decision clearly stating "that the adoption and administration of zoning procedures are an exercise of police power delegated to specific individual political subdivisions and municipalities of the State." *Casey v. Mayor and City Council of Rockville*, 400 Md. 259, 279, 929 A. 2d 74 (2007). Not only is zoning a valid exercise of police power, but the Supreme Court has specifically recognized "the need for the exercise of the police power in zoning for 'the protection of the 'public safety and welfare'…against disease, fire, traffic or lawlessness, [and] it may properly extend 'to the maintenance of conditions under which people may live and work in reasonable comfort and without unnecessary impairment of their physical and mental vigor.''"  *Sizemore v. Town of Chesapeake Beach*, 225 Md. App. 631, 655-656, 126 A. 3d 225, 240 (2015) (*quoting Grant v. Mayor and City Council of Baltimore*, 212 Md. 301, 314, 129 A.2d 363 (1957).

Plaintiffs' argument that zoning is "proprietary" must further fail because plaintiffs have not pled and cannot plead that the Warfield Project is the only property in the Town subject to the PEC (Planned Employment Center) zoning.  (*See* Compl. & Opp. Mem.)  Plaintiffs' complaint is written in such a way as to make it sound like the denial of the zoning was for the Warfield project,

but the complaint is careful not to allege (nor could it allege) that the Warfield Project was/is the only property within the Town subject to PEC zoning.  (*See* Compl. & Opp. Mem.)  Plaintiffs do not allege and could not allege that the existing PEC zoning ordinance is limited to the Warfield Project.  (*See* Section 180-134 of the Town Code of Sykesville.)  These missing allegations are key because it shows the Town's zoning decision clearly was not proprietary, but was, in fact, an exercise in police power because all properties within the Town subject to PEC zoning were affected by the denial of the Zoning Text Amendment, not just the Warfield Project.

Plaintiffs' "proprietary" argument is further misguided because the Town's denial of the Zoning Text Amendment did not deprive plaintiffs of some vested property right. Rather, denial of the Zoning Text Amendment meant plaintiffs' Property was still zoned for the exact same uses as at the time that plaintiffs closed on the purchase of the Property in June 2018.  In other words, plaintiffs are arguing that the Town, notwithstanding its police power, had some affirmative duty to change the zoning, which is contrary to the nature of the Town's police power, and furthermore none of the plaintiffs' cases support this novel legal proposition.  Plaintiffs simply have no colorable argument that somehow the Town had some affirmative tort obligation to approve a change in the zoning.

<u>CONCLUSION</u>

For all the foregoing reasons, the Town's motion for judgment on the pleadings should be granted and all the claims alleged in the Adversary Proceeding Complaint should be dismissed with prejudice, the Town should be granted its reasonable costs, including, but not limited to, attorney's fees, and the Town should be granted such further and other relief as is just and proper.

Respectfully submitted,


/s/ Bryan D. Bolton
Bryan D. Bolton, (Bar No. 02112)
Bradley J. Swallow, (Bar No. 11250)
Lee B. Rauch, (Bar No. 12135)
Funk & Bolton, P.A.
100 Light Street, Suite 1400
Baltimore, Maryland 21202
410.659.8320 (telephone)
bdbolton@fblaw.com
bswallow@fblaw.com
lrauch@fblaw.com


/s/ Elissa D. Levan
Elissa D. Levan, Bar No. 05741
2007 Tidewater Colony Drive
Annapolis, Maryland 21401
443-853-9009 (telephone)
443-853-9203 (facsimile)
Elevan@levanruff.com

*Attorneys for Town of Sykesville*

Dated: January 16, 2026

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16t$^h$ day of January 2026, a copy of Defendant Town of

Sykesville's Reply in Further Support of the Town's Motion for Judgment on the Pleadings was

served electronically by the Court's CM/ECF system on the following:

        Timothy F. Maloney, Esq.-- tmaloney@jgllaw.com
        Alyse Prawde, Esq. -- aprawde@jgllaw.com
        Joseph Greenwald and Laake
        6404 Ivy Lane
        Suite 400
        Greenbelt, MD 20770

        Attorneys for Plaintiffs, Warfield Historic Properties, LLC,
        Warfield Historic Quad, LLC, Warfield Restorations, LLC,
        Warfield Center, LLC, and Warfield Properties, LLC,

                /s/ Lee B. Rauch
                Lee B. Rauch