## FIRST AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS FIRST AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of the 24th day of June, 2014, is by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

A.    By Agreement of Sale and Purchase (the "**Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Agreement) located in Sykesville, Carroll County, Maryland.

B.    It is a condition of Closing under the Agreement that certain amendments to the Town of Sykesville's Master Plan (the "Master Plan") be adopted to clarify and confirm that the Property may be developed as a mixed use community consistent with the Preliminary Concept Plan (as defined in the Agreement) and, further, that certain amendments to the Town of Sykesville's Zoning Ordinance (the "Zoning Ordinance") and other relevant sections of the Code of the Town of Sykesville (the "Town Code") be adopted to be consistent with the provisions of the Master Plan as so amended.

C.    The Town desires to engage a consultant (the "Consultant") to assist the Town in the development and drafting of amendments to the Master Plan, Zoning Ordinance and other relevant sections of the Town Code and to advise and assist in the obtaining of all applicable regulatory and governmental approvals with respect thereto ("Consultant's Work"). Purchaser deems it in its best interest to provide a financial contribution to the Town to facilitate the procurement of the Consultant for such purposes.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Incorporation of Introductory Statement.** The Introductory Statement set forth above is incorporated in this Amendment as a substantive part hereof and not as a mere recital hereto.

2.    **Contribution and Application.** As an additional deposit under the Agreement, Purchaser shall advance and contribute directly to the Town the sum of Twenty Thousand Dollars ($20,000.00) (the "Zoning Consultant Expense Deposit"), within three (3) days after the First Amendment Effective Date (as defined below). Seller shall use the Zoning Consultant Expense Deposit to procure and pay for the services and expenses of the Consultant in providing and performing Consultant's Work. Any portion of the Zoning Consultant Expense Deposit not used for the stated purpose of paying the Consultant shall be (1) applied against the Purchase Price at Closing or (2) promptly refunded to Purchaser upon termination of the Agreement for any reason. That portion of the Zoning Consultant Expense Deposit which is used to pay the Consultant shall be non-refundable and shall not be applicable against the Purchase Price. Upon written request from Purchaser, Seller shall provide copies of any and all invoices submitted by the Consultant regarding Consultant's Work.

3.    **First Amendment Effective Date.** The "First Amendment Effective Date" shall mean the later of the date of Purchaser's or Seller's execution of this Amendment, as indicated below their signatures in this Amendment.

1

## EXHIBIT 1

4.      **Full Force and Effect**.   Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

5.      **Counterparts**.   This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart.  The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

WITNESS or ATTEST:                          SELLER:

                                            TOWN OF SYKESVILLE

_____                     By: _____ (SEAL)
                                            Name:  Ian Shaw
                                            Title:  Mayor
                                            Date:  _____

                                            WARFIELD DEVELOPMENT CORPORATION

_Catherine Rees_                            By: _____ (SEAL)
                                            Name:  James B. Rees
                                            Title:  President
                                            Date:  6/24/14

                                            PURCHASER:

WITNESS or ATTEST:                          WARFIELD COLLABORATIVE, LLC

_____                     By: _____ (SEAL)
                                            Name:  Roger G. Conley
                                            Title:  Member
                                            Date:  _____

G:\wpdata\0007.077NW\First Amendment to Agreement of Sale and Purchase v 2.doc

2

4.    **Full Force and Effect**.    Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

5.    **Counterparts**.    This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

WITNESS or ATTEST:

SELLER:

TOWN OF SYKESVILLE

By: _____ (SEAL)
Name:    Ian Shaw
Title:    Mayor
Date:    6/24/14

WARFIELD DEVELOPMENT CORPORATION

By:_____(SEAL)
Name:    James B. Rees
Title:    President
Date:    _____

PURCHASER:

WITNESS or ATTEST:

WARFIELD COLLABORATIVE, LLC

By: _____(SEAL)
Name:    Roger G. Conley
Title:    Member
Date:    _____

G:\wpdata\0007.077N\First Amendment to Agreement of Sale and Purchase v 2.doc

2

4.    **Full Force and Effect**.    Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

5.    **Counterparts**.    This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**WITNESS or ATTEST:**                         **SELLER:**

                                                **TOWN OF SYKESVILLE**

_____                         By: _____ (SEAL)
                                                Name:  Ian Shaw
                                                Title:   Mayor
                                                Date:   _____

                                                **WARFIELD DEVELOPMENT CORPORATION**

_____                         By: _____ (SEAL)
                                                Name:  James B. Rees
                                                Title:   President
                                                Date:   _____

                                                **PURCHASER:**

**WITNESS or ATTEST:**                         **WARFIELD COLLABORATIVE, LLC**
*Rebecca J. Conley*
                                                By: _____ (SEAL)
                                                Name:  Roger A. Conley
                                                Title:   Member
                                                Date:   *24 June, 2014*

G:\wpdata\0007.077N\First Amendment to Agreement of Sale and Purchase v 2.doc

## SECOND AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS SECOND AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "**Amendment**"), dated as of the 28th day of January, 2015 by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "**Purchaser**").

### INTRODUCTORY STATEMENT

A.    By Agreement of Sale and Purchase (the "**Original Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "**First Amendment**"). The Original Agreement and the First Amendment are hereinafter referred to as the "**Agreement**").

B.    The parties have agreed to further amend the Agreement as provided herein, to (1) extend the Inspection Period and (2) reallocate responsibilities regarding the preparation and recordation of the Condominium Documents.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Incorporation of Introductory Statement**. The Introductory Statement set forth above is incorporated in this Amendment as a substantive part hereof and not as a mere recital hereto.

2.    **Extension of Inspection Period.** The initial term of the Inspection Period is hereby extended through and until 11:59 p.m. on February 28, 2015 without charge. The final three sentences of Section 2.A shall remain in effect, provided however, that the first extension of the Inspection Period pursuant thereto shall commence on March 1, 2015 (if the option to extend is properly exercised as provided in the last three sentences of Section 2.A, including timely payment of the initial Extension Payment).

3.    **Amendment to Section 7.H.**    The last three sentences of Section 7.H of the Agreement shall be deleted in their entirety and the following shall be inserted in place thereof:

> In order to effectuate the Parcel D Preservation Agreement, the Parcel D Escrow Agreement (as defined below) and the Reversion Agreement, the parties have agreed that Parcel D shall be subjected to a condominium regime for a "land condominium" by Condominium Declaration, Condominium Plats, Articles of Incorporation and Bylaws (the "**Condominium Documents**"), in form and content mutually acceptable to Seller and Purchaser, with the Town to be the original "Developer" (in accordance with the Maryland Condominium Act). At Closing the parties shall execute and deliver an Assignment of Developer's Rights (the "**Assignment of Developer's Rights**"), in commercially reasonable form for recordation among the Land Records, which shall assign from the Town to Purchaser all rights as Developer under the Condominium Documents and shall include an indemnity from Purchaser holding Seller harmless from any and all loss or  liability arising out of or in connection with the

1

Condominium Documents and the Town's role as the initial Developer, including reasonable attorney's fees and other costs and expenses of litigation.

The Condominium Documents shall be prepared on behalf of the Town at the Town's cost and expense, subject to reimbursement by Purchaser, and recorded prior to Closing among the Land Records at Purchaser's cost and expense.

The Town and Purchaser have agreed that Morris & Ritchie Associates, Inc. ("**MRA**") shall be retained by the Town to prepare all plats and plans and provide related surveying, engineering and consulting services in connection with preparation of the Condominium Documents ('**MRA's Work**") in accordance with terms of the contract attached hereto and incorporated herein by reference as 2nd Amendment Exhibit 1 (the "**MRA Contract**")

Purchaser deems it in its best interest to provide a financial contribution to the Town to facilitate the procurement of MRA for such purposes. As an additional deposit under the Agreement, Purchaser shall advance and contribute directly to the Town the sum of Five Thousand Dollars ($5,000.00) (the "**MRA Expense Deposit**"), within three (3) days after the Second Amendment Effective Date (as defined below). Seller shall use the MRA Expense Deposit to procure and pay for the services and expenses of MRA in providing and performing MRA's Work. In addition, Purchaser shall reimburse the Town for any and all additional costs and expenses for MRA's Work in excess of the MRA Expense Deposit within ten (10) days of receipt of copies of invoices submitted by MRA regarding MRA's Work (alternatively, Purchaser may, upon receipt of such invoice(s), pay MRA directly and provide the Town with evidence of such payment(s) within ten (10) days from Purchaser's receipt of such invoice(s)). This obligation shall survive Closing or earlier termination of the Agreement. Each payment by Purchaser reimbursing the Town for invoices in excess of the MRA Expense Deposit (or paying MRA directly as provided above) shall be an additional deposit under the Agreement, shall be non-refundable and shall not be applicable against the Purchase Price.

The Condominium Documents shall be recorded after the document terminating the Master Ground Lease (in accordance Section 5.A.(iv)), immediately prior to the recording of the Deed for the Property and prior to the Assignment of Developer's Rights, the Deed of Trust, the Reversion Agreement and other documents to be recorded in connection with Closing.

At Closing, the Town shall assign to Purchaser and Purchaser shall assume the MRA Contract and all continuing rights, privileges, duties and obligations thereunder, pursuant to an Assignment and Assumption of Contract in commercially reasonable form.

4. **Full Force and Effect**.    Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

2

5.      **Counterparts**.  This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year second above written.

**WITNESS or ATTEST:**

**SELLER:**

**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name:   Ian Shaw
Title:   Mayor
Date:   1-28-15

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name:   James B. Rees
Title:   President
Date:   1/29/15

**PURCHASER:**

**WITNESS or ATTEST:**

Rebecca Nunley

**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name:   Roger A. Conley
Title:   Member
Date:   1/26/15

G:\wpdata\0007.077N\Second Amendment to Agreement of Sale and Purchase.doc

3

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT is made as of the day and year written below by and among CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation ("**Escrow Agent**"), by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company ("**Purchaser**").

WHEREAS, by Agreement of Sale and Purchase dated April 17, 2014 (the "Original Agreement"), Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment") and by Third Amendment to Agreement of Sale and Purchase effective as of July 1, 2015 (the "Third Amendment") (the Original Agreement, First Amendment, Second Amendment and Third Amendment are hereinafter collectively referred to as the "Agreement"); and

WHEREAS, Purchaser and Seller have requested Escrow Agent to hold the earnest money deposit as defined in the Agreement (the "**Deposit**") in accordance with the terms and conditions of this escrow agreement; provided, however, to the extent that the provisions of this Escrow Agreement conflict with any provision in the Agreement, such provisions of the Agreement shall prevail and govern for all purposes and in all respects.

NOW THEREFORE, in consideration of the promises and undertakings herein made, and the proposed issuance of a title insurance policy (or policies) by Escrow Agent, it is agreed that:

1. Purchaser and Seller hereby appoint Escrow Agent to hold the Deposit under the Agreement, together with interest, and Escrow Agent hereby acknowledges receipt of said sums to be held according to the terms hereof

2. Escrow Agent is to hold the Deposit in the name of Escrow Agent as custodial agent for Purchaser as follows:

   a. The Deposit shall be invested in one or more separate FDIC insured interest bearing accounts in one or more financial institutions, as may be directed by the Purchaser and Seller, and all interest accruing thereon shall be paid to the party entitled to the Deposit under the terms of the Agreement. Notwithstanding the foregoing, Escrow Agent assumes no responsibility for, nor will Escrow Agent be liable for, any loss accruing that arises solely because the deposit amount in any one escrow account exceeds Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), and the excess amount is not insured by the FDIC.

   b. Investment of the Deposit shall be made only after Purchaser has provided Escrow Agent with an executed W-9 Form stating the Federal Tax Identification Number of the Purchaser. All investments shall be further subject to the rules, regulations, policies and procedures of the depository institution.

3. Escrow Agent shall apply the funds held pursuant hereto according to the terms of the Agreement, subject to such written instructions to the contrary as might be received from both Purchaser and Seller. In the event Escrow Agent receives at any time a written request from one party requesting a disbursement of the amounts held hereunder, which request is not joined in by the other party, Escrow Agent shall not later than ten business days following the receipt of such request, notify the non-requesting party of such request. If Escrow Agent shall not receive a written objection to such request from the non-requesting party within ten business days of notification to that party of the request, Escrow Agent shall be authorized to make the disbursement as requested. If objection is made in writing within the aforesaid period, Escrow Agent shall not make any disbursement but instead shall retain the Deposit until instructed otherwise in writing

jointly by Purchaser and Seller, or, if appropriate, interplead the Deposit in a court of competent jurisdiction.

4. If any dispute arises with respect to this Escrow Agreement, whether such dispute arises between the parties hereto or between the parties hereto and other persons, Escrow Agent is authorized to interplead such disputes in a court of competent jurisdiction. In such case Escrow Agent shall be entitled to costs incurred on account of such action, including attorneys' fees, which costs shall be allocated between the parties equally. Escrow Agent upon interpleading funds pursuant hereto, shall thereafter be relieved of further responsibility.

5. All notices given by any party hereunder shall be in writing and shall be duly given on the first business day after prepaid deposit for overnight delivery by a national overnight courier service. Any such notice is to be addressed to the appropriate party at the address set forth below:

   a. As to Escrow Agent:

   > Chicago Title Insurance Company
   > National Commercial Services
   > Fidelity National Title Insurance Company
   > One South Street, Suite 1250
   > Baltimore, Maryland 21202
   > Attention: Laura Shanks, Vice-President/Underwriter

   b. As to Purchaser:      AS SET FORTH IN THE AGREEMENT

   c. As to Seller:      AS SET FORTH IN THE AGREEMENT

6. The instructions contained herein may not be modified, amended or altered in any way except by a writing signed by Seller, Purchaser and Escrow Agent.

7. This Escrow Agreement is intended solely to supplement and implement the provisions of the Agreement and is not intended to amend in any way the rights or obligations of the parties under the Agreement.

8. This Escrow Agreement shall be construed in accordance with the laws of the State of Maryland.

9. Notwithstanding anything herein to the contrary, this escrow agreement shall be governed by the General Conditions of Escrow attached hereto.

10. This Escrow Agreement may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

Agreed to as of the _____ day of _____, 2015.


WITNESS:                          ESCROW AGENT:

                                  **CHICAGO TITLE INSURANCE COMPANY**, a
                                  Nebraska corporation

_____           By:_____
                                  Name: Laura Shanks
                                  Title:  Vice-President/Underwriter
                                  Date: _____

[SIGNATURES CONTINUED ON NEXT PAGE]

WITNESS:

PURCHASER:
WARFIELD COLLABORATIVE, LLC

By: _____ (SEAL)
Name: Roger A. Conley
Title:   Managing Member

WITNESS:

SELLER:
TOWN OF SYKESVILLE

By: _____ (SEAL)
Name: Ian Shaw
Title:   Mayor

WARFIELD DEVELOPMENT
CORPORATION

By: _____ (SEAL)
Name: James B. Rees
Title:   President

**[SIGNATURES CONTINUED ON NEXT PAGE]**

WITNESS:

PURCHASER:
**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name: Roger A. Conley
Title:  Managing Member

WITNESS:

SELLER:
**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name: Ian Shaw
Title:  Mayor

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name: James B. Rees
Title:  President

[SIGNATURES CONTINUED ON NEXT PAGE]

WITNESS:

PURCHASER:
WARFIELD COLLABORATIVE, LLC

By: _____ (SEAL)
Name: Roger A. Conley
Title:   Managing Member

WITNESS:

SELLER:
TOWN OF SYKESVILLE

By: _____ (SEAL)
Name: Ian Shaw
Title:   Mayor

WARFIELD DEVELOPMENT
CORPORATION

By: _____ (SEAL)
Name: James B. Rees
Title:   President

CHICAGO TITLE INSURANCE COMPANY

General Conditions of Escrow

Except as specifically modified by the written settlement instruction executed by all parties and accepted by the Escrow Agent, these General Conditions of Escrow shall apply to this escrow or settlement, and the property received hereunder.

1. Escrow Agent: Chicago Title Insurance Company is herein referred to as Escrow Agent.

2. Deposit of Funds: All checks, money orders or drafts will be processed for collection in the normal course of business. Escrow Agent may commingle funds received by it in escrow with escrow funds of others, and may, without limitation, deposit such funds in its custodial or escrow accounts with any reputable trust company, bank, savings bank, savings association, or other financial services entity, including any affiliate of Escrow Agent. It is understood that Escrow Agent shall be under no obligation to invest the funds deposited with it on behalf of any depositor, nor shall it be accountable for any earnings or incidental benefit attributable to the funds which may be received by Escrow Agent while it holds such funds. Deposits held by Escrow Agent shall be subject to the provisions of applicable state statutes affecting unclaimed property.

3. Limitations of Liability: Without limitation, Escrow Agent shall not be liable for any loss or damage resulting from the following (Note that this paragraph shall not be construed to limit Escrow Agent's liability for its own negligence.):

    a. The effect of the transaction underlying this escrow or of any element of that transaction, including without limitation, any defect in the real estate or other property that is the subject of that transaction, any failure or delay in the surrender of possession of the property, the rights or obligations of any party in possession of the property, the financial status or insolvency of any other party, and any misrepresentations made by any other party.

    b. Any legal effect, insufficiency, or undesirability of any instrument deposited with or delivered by Escrow Agent or exchanged by the parties hereunder, whether or not Escrow Agent prepared such instrument.

    c. The default, error, action or omission of any other party to the escrow.

    d. Any loss or impairment of funds that have been deposited in escrow while those funds are in the course of collection or while those funds are on deposit in a financial institution if such loss or impairment results from the failure, insolvency or suspension of a financial institution.

    e. Any defects or conditions of title to any property that is the subject of this escrow, provided, however, that this limitation of liability does not limit or affect the liability of Chicago Title Insurance Company under any title insurance policy which it has issued or may issue and that no title insurance liability is created by this agreement.

    f. The expiration of any time limit or other consequences of delay, unless a properly executed settlement instruction, accepted by Escrow Agent has instructed the Escrow Agent to comply with said time limit.

    g. Escrow Agent's compliance with any legal process, subpoena, writs, orders, judgments and decrees of any court whether issued with or without jurisdiction and whether or not subsequently vacated, modified, set aside or reversed.

4. Default, Non-Performance and Disputes: In the event any party to the transaction which is the subject matter of this escrow shall tender any performance after the time when such performance was due, Escrow Agent may nevertheless proceed with its function under this escrow, including without limitation the delivery of documents and the disbursement of funds unless one of the parties to this escrow shall give to the Escrow Agent a written direction to stop the further performance of the Escrow Agent's functions hereunder. Except as otherwise provided herein, in the event of written notice of default, non-performance or dispute is given to the Escrow Agent by any party, Escrow Agent will promptly notify all other parties of such notice. Thereafter, Escrow Agent is entitled to decline to disburse funds or to deliver any instrument or otherwise continue to perform its escrow functions, except on receipt of a mutual agreement of the parties in writing or upon an appropriate order of court.

5. Settlement Statements: Escrow Agent shall prepare settlement statements or otherwise account to the parties for all funds received and disbursed hereunder at the time of final settlement and closing of this escrow. Escrow Agent shall not be liable for the accuracy of information furnished to it by other persons in the normal course of business, or the failure to adjust items not designated in writing. Adjustment items shall be prorated on the basis of a calendar year and a thirty day month. Escrow Agent shall account for adjustments, credits and charges of expense items according to the custom and usage of the community. Signed approval of settlement statements or other accounting of funds shall constitute the authority to Escrow Agent to disburse funds as shown thereon, and deliver instruments held in escrow as set forth in the escrow instruments. Upon completion of the disbursement of funds and delivery of instruments, Escrow Agent shall be released and discharged of its escrow obligations hereunder.

6. Escrow Fees, Charges, Other Expenses and Additional Required Funds: Escrow Agent shall charge for its service hereunder in accordance with its current regular schedule of fees (which includes annual maintenance fees) unless otherwise provided. Unless otherwise directed such fees shall be charged to the Purchaser and seller equally. All fees, charges and expenses are due and payable on or before the settlement date hereof, and such amounts may be retained by Escrow Agent out of any funds held in escrow due to the party from whom such amounts are due and owing.

    Additional amounts which may become due for any reason shall be promptly paid to Escrow Agent by the party owing such amounts. Escrow Agent shall not be required to advance its own funds for any purpose, provided, that any such advance made at its option shall be promptly reimbursed by the party for whom it is advanced, and such optional advance shall not be an admission of liability on the part of Escrow Agent.

7. These conditions of escrow shall apply to and be for the benefit of agents of the Escrow Agent employed by it for services in connection with this escrow.

8. Attorneys' Fees: In the event that litigation is initiated relating to this escrow, the parties hereto agree that Escrow Agent shall be held harmless from any attorney's fees, court costs and expenses relating to that litigation to the extent that litigation does not arise as a result of the Escrow Agent's fault. To that end, the parties hereto agree to indemnify Escrow Agent from all such attorneys' fees, court costs and expenses. To the extent that Escrow Agent holds a fund under the terms of this escrow, the parties agree that the Escrow Agent may charge that fund with any such attorneys' fees, court costs, and expenses as they are incurred by Escrow Agent.

**THIRD AMENDMENT TO AGREEMENT OF SALE AND PURCHASE**

THIS THIRD AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "**Amendment**"), effective as of July 1, 2015 by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "**Purchaser**").

**INTRODUCTORY STATEMENT**

A.      By Agreement of Sale and Purchase (the "**Original Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "**First Amendment**") and by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "**Second Amendment**"). The Original Agreement, First Amendment and Second Amendment are hereinafter referred to as the "**Agreement**".

B.      The parties have agreed to further amend the Agreement as provided herein, to, among other things, (1) replace Home Title Company, Inc. with Chicago Title Insurance Company to serve as Escrow Agent, (2) acknowledge in writing the prior oral agreement to extend the Inspection Period through June 30, 2015 and confirm the expiration of the Inspection Period and continuation of the Agreement in accordance with its terms and (3) amend the prospective Closing Date.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Incorporation of Introductory Statement**. The Introductory Statement set forth above is incorporated in this Amendment as a substantive part hereof and not as a mere recital hereto.

2.      **Replacement of Escrow Agent; Transfer of Deposit**. Home Title Company, Inc. is hereby replaced by Chicago Title Insurance Company as the Escrow Agent; wherever "Home Title Company, Inc. is referenced in the Agreement such reference shall hereinafter mean Chicago Title Insurance Company. The parties acknowledge that as of the date of this Amendment the Initial Deposit has been paid and the Second Deposit is not yet due and payable. Home Title Company, Inc. is authorized and instructed to transfer the Deposit (i.e., the Initial Deposit and all accrued interest) to Chicago Title Insurance Company.

3.      **Acknowledgement of End of Inspection Period**. The parties hereby acknowledge that the Inspection Period had been extended until June 30, 2015 without charge. The final three sentences of Section 3.A of the Agreement are hereby deleted in the entirety, to the end and intent that there shall be no right to extend the Inspection Period beyond June 30, 2015. Purchaser hereby acknowledges and agrees that the Inspection Period has expired and Purchaser has no further right to terminate the Agreement under Section 3.A of the Agreement. The Additional Deposit referred to in Section 2.A.(ii) of the Agreement shall be due and payable to Escrow Agent within ten (10) business days of this Amendment.

4.      **Conditions to Purchaser's Obligations to Close**. The last full paragraph (unnumbered) of Section 5.A is hereby deleted in its entirety.

1

5.    **Conditions to Seller's Obligations to Close.**    The last full paragraph (unnumbered) of Section 5.B is hereby deleted in its entirety.

6.    **Closing.** Section 6.A.(i) of the Agreement is hereby amended in its entirety to read as follows:

Purchaser shall settle and close upon the purchase of the Property (the **"Closing"**) on or before the later of (1) October 30, 2015 or (2) forty-five (45) days after the satisfaction (or waiver in writing, by Purchaser or Seller, as the case may be) of all Purchaser's Closing Conditions and all Seller's Closing Conditions; provided, however, that the Closing shall occur no later than December 31, 2015 (the **"Outside Closing Date"**; the actual date of Closing being hereinafter referred to as the **"Closing Date"**). Notwithstanding the foregoing, the Outside Date of Closing may be further extended by Seller or Purchaser as provided below:

(a)    By written notice to Purchaser given on or before December 20, 2015, Seller shall either (i) notify Purchaser of the satisfaction or waiver by Seller of all Seller's Closing Conditions (**"Seller's Conditions Satisfaction/Waiver Notice"**), and proceed to Closing in accordance with the terms of this Agreement; or (ii) extend the Outside Closing Date (**"Seller's Closing Extension Notice"**) until the earlier of thirty (30) days after Seller delivers the Seller's Conditions Satisfaction/Waiver Notice to Purchaser or March 31, 2016. In the event Seller elects to extend the Outside Closing Date pursuant to item (ii) above and any Seller's Closing Conditions remain unsatisfied as of March 31, 2016, the Seller must elect either option (i) above or terminate this Agreement by written notice to Purchaser, whereupon the Deposit shall be immediately returned to Purchaser and the parties shall thereupon be released from any further liability or obligation to each other except for those that are expressly stated to survive termination of this Agreement. In the event Seller fails to timely deliver the Seller's Conditions Satisfaction/Waiver Notice and also fails to timely deliver Seller's Closing Extension Notice, then such failure shall automatically constitute an election to extend the Outside Closing Date the same as if the Seller's Closing Extension Notice had been timely given. There shall be no extension fees due from Purchaser during the period of any extension by Seller pursuant to this Section.

(b)    In the event Seller has delivered the Seller's Conditions Satisfaction/Waiver Notice to Purchaser on or before December 20, 2015 and all of Purchaser's Closing Conditions have not been either satisfied or waived in writing by Purchaser, then Purchaser shall have the right, in Purchaser's sole discretion, to either (i) waive the time for performance of the unsatisfied Purchaser's Closing Conditions and proceed to Closing in accordance with the terms of this Agreement; (ii) terminate this Agreement by written notice to Seller on or before the Outside Closing Date, whereupon the Deposit shall be immediately

2

returned to Purchaser and the parties shall thereupon be released from any further liability or obligation to each other except for those that are expressly stated to survive termination of this Agreement, or (iii) extend the Outside Closing Date up to three (3) separate times for one calendar month each (the first such calendar month period commencing January 1, 2016 and the last such calendar month period ending March 31, 2016) by written notice to Seller given prior to the expiration of the then current Outside Closing Date and accompanied by payment to Seller of an extension fee of Twenty-Five Thousand and No/100ths Dollars ($25,000.00) for each such calendar month extension. Notwithstanding anything contained herein to the contrary, no extension right under this Section (b) may be exercised if all Purchaser's Closing Conditions have either been satisfied or waived in writing by Purchaser.

(c)      In the event at any time after the extension of the Outside Closing Date pursuant to Section (a) above, Seller shall deliver the Seller's Conditions Satisfaction/Waiver Notice to Purchaser and all of Purchaser's Closing Conditions have not been either satisfied or waived in writing by Purchaser, then within thirty (30) days after receipt of the Seller's Conditions Satisfaction/Waiver Notice, Purchaser shall have the right, at its sole discretion, to either (i) waive the performance of the unsatisfied Purchaser's Closing Conditions and proceed to Closing in accordance with the terms of this Agreement; (ii) terminate this Agreement by written notice to Seller on or before the Outside Closing Date, whereupon the Deposit shall be immediately returned to Purchaser and the parties shall thereupon be released from any further liability or obligation to each other except for those that are expressly stated to survive termination of this Agreement, or (iii) extend the Outside Closing Date up to three (3) separate times for one calendar month each by written notice to Seller (each a **"Purchaser's Extension Notice"**) given prior to the expiration of the then current Outside Closing Date and accompanied by payment to Seller of an extension fee of Twenty-Five Thousand and No/100ths Dollars ($25,000.00) for each such calendar month extension.   The foregoing notwithstanding, no extension of the Outside Closing Date pursuant to this Section (c) shall extend beyond March 31, 2016 (and any purported exercise of an extension which would otherwise extend beyond March 31, 2016 shall automatically reduce to end on March 31, 2016 without reduction of the required extension fee) and no Purchaser's Extension Notice shall be effective if all Purchaser's Closing Conditions have been either satisfied or waived in writing by Purchaser as of the date of such Purchaser's Extension Notice. On or before the Outside Closing Date (except as extended in accordance with the above), Purchaser shall either (i) waive the time for performance of the unsatisfied Purchaser's Closing Conditions and proceed to Closing in accordance with the terms of this

3

Agreement or (ii) terminate this Agreement by written notice to Seller, whereupon the Deposit shall be immediately returned to Purchaser and the parties shall thereupon be released from any further liability or obligation to each other except for those that are expressly stated to survive termination of this Agreement. All extension fees paid pursuant to this Section shall be non-refundable when paid, but shall be applicable against the Purchase Price at Closing.

7.      **Amendment to Section 12.M**.  During the Inspection Period, Purchaser has identified the possible existence of Hazardous Materials in the soils in and around the Storage Building (as shown on the Plat) and the Garage (also known as the Engine House; being the free-standing shed located in the immediate proximity of the Storage Building), the existence of Hazardous Materials stored or deposited within the structures of the Storage Building and Engine House and the possible violation of Environmental Laws as a result thereof (collectively referred to as the "Storage Building Environmental Conditions").  To Seller's Knowledge, the Storage Building Environmental Conditions are attributable to acts and omissions of Seller's predecessors in title.  Prior to Closing, Seller shall remove and dispose of those Hazardous Materials stored or deposited within the Storage Building and Engine House (not including soils) itemized and identified on 3rd Amendment Exhibit 1 attached hereto and incorporated herein by reference in accordance with all Environmental Laws (the "Remediation").  Purchaser shall reimburse Seller for all expenses incurred in connection with the Remediation within ten (10) days of receipt of invoice(s) from the Seller.  In the event Purchaser proceeds to Closing, (a) Purchaser acknowledges and agrees that Purchaser shall accept the Property subject to all Storage Building Environmental Conditions remaining after the Remediation, and shall be responsible for all further costs of remediation to resolve the Storage Building Environmental Conditions in compliance with all applicable Environmental Laws, and (b) Seller acknowledges and agrees to assign to Seller all of its rights, title and interest in, to and under any contracts and agreements in connection with the Remediation.  Purchaser does further hereby agree that it shall have no rights or claim against Seller and does hereby and forever waive and release Seller from any and all claims now or hereafter existing arising out of or in connection with the Storage Building Environmental Conditions.

8.      **Notice to Escrow Agent**.  For the purposes of notices under the Agreement pursuant to Section 16 of the Agreement, all future notices to

(a)      Seller shall remain as in Section 16 of the Agreement.

(b)      Purchaser shall be sent to:            With a copy to:

Warfield Collaborative, LLC            Sudow Kohlhagen LLP
c/o Sudow Kohlhagen LLP            670 Water Street, S.W.
670 Water Street, S.W.            Washington, DC 20024
Washington, DC 20024            Attention: William E. Sudow, Esq.
Attention: Roger Conley

(c)      Escrow Agent shall be sent to:

Chicago Title Insurance Company
National Commercial Services
Fidelity National Title Insurance Company
One South Street, Suite 1250
Baltimore, Maryland 21202

4

Attention: Laura Shanks, Vice-President/Underwriter

9.    **Full Force and Effect**.   Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

10.    **Counterparts and Facsimile**.   This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

IN WITNESS WHEREOF, each party hereto has executed this Amendment under seal, the day and year second above written.

**SELLER:**

WITNESS or ATTEST:                         **TOWN OF SYKESVILLE**

_____                    By: _____ (SEAL)
                                           Name:   Ian Shaw
                                           Title:   Mayor

WITNESS or ATTEST:                         **WARFIELD DEVELOPMENT CORPORATION**

_____                    By: _____ (SEAL)
                                           Name:   James B. Rees
                                           Title:   President

                                           **PURCHASER:**

WITNESS or ATTEST:                         **WARFIELD COLLABORATIVE, LLC**

_____                    By: _____ (SEAL)
                                           Name:   Roger A. Conley
                                           Title:    Managing Member

5

Attention: Laura Shanks, Vice-President/Underwriter

9.    **Full Force and Effect**.  Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

10.    **Counterparts and Facsimile**.  This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart.  The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year second above written.

**SELLER**:

**WITNESS or ATTEST:**            **TOWN OF SYKESVILLE**

_____          By: _____ (SEAL)
                                 Name:  Ian Shaw
                                 Title:   Mayor

**WITNESS or ATTEST:**            **WARFIELD DEVELOPMENT CORPORATION**

_____          By:_____(SEAL)
                                 Name:  James B. Rees
                                 Title:    President

                                 **PURCHASER:**

**WITNESS or ATTEST:**            **WARFIELD COLLABORATIVE, LLC**

_____          By: _____ (SEAL)
                                 Name:   Roger A. Conley
                                 Title:    Managing Member

5

Attention: Laura Shanks, Vice-President/Underwriter

9.    **Full Force and Effect**.  Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

10.    **Counterparts and Facsimile**.  This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart.  The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year second above written.

WITNESS or ATTEST:

_____

SELLER:

TOWN OF SYKESVILLE

By:_____ (SEAL)
Name:  Ian Shaw
Title:  Mayor

WITNESS or ATTEST:

_____

WARFIELD DEVELOPMENT CORPORATION

By:_____(SEAL)
Name:  James B. Rees
Title:  President

PURCHASER:

WITNESS or ATTEST:

_____

WARFIELD COLLABORATIVE, LLC

By:_____ (SEAL)
Name:  Roger A. Conley
Title:  Managing Member

5

THIRD AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

EXHIBIT 1

THE REMEDIATION

Removal, transportation and disposal of:

1. (5) PCB transformers and oil;
2. PCB light ballasts;
3. (4) drums of unknown liquids;
4. (2) Five gallon buckets of unknown liquids;
5. HID/Sodium vapor light bulbs;
6. (100-150) Lead acid batteries/back-up lighting packs;
7. (4) Empty drums;
8. (2) Empty five gallon buckets; and
9. (2) Drums of sand.

## FOURTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS FOURTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "**Amendment**"), effective as of March 31, 2016 by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "**Purchaser**").

### INTRODUCTORY STATEMENT

A.      By Agreement of Sale and Purchase (the "**Original Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "**First Amendment**"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "**Second Amendment**"), and by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "**Third Amendment**"). The Original Agreement, First Amendment, Second Amendment, and Third Amendment are hereinafter referred to as the "**Agreement**").

B.      Purchaser heretofore has elected to extend the Outside Closing Date three (3) separate times for one calendar month each by written notice to Seller and each accompanied by payment of an extension fee of Twenty Five Thousand Dollars ($25,000.00), such that the Outside Closing Date is presently March 31, 2016.

C.      The parties have agreed to amend the Agreement as provided herein, to permit the Purchaser to elect to extend the Outside Closing Date up to three (3) additional times for one month each, such that the Outside Closing Date shall be no later than June 30, 2016 with regard to the satisfaction, waiver, or lack thereof of any or all of Purchaser's Closing Conditions and/or Seller's Closing Conditions.

D.      It is the express intention of the parties that this Amendment shall not abrogate or otherwise modify any rights of the parties to terminate the Agreement for a failure to satisfy any of the Purchaser's Closing Conditions or the Seller's Closing Conditions.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Incorporation of Introductory Statement**. The Introductory Statement set forth above is incorporated in this Amendment as a substantive part hereof and not as a mere recital hereto.

2.      **Closing**. The second sentence of Section 6.A.(i)(c) of the Agreement, the text of which is set forth below, is hereby deleted:

> "The foregoing notwithstanding, no extension of the Outside Closing Date pursuant to this Section (c) shall extend beyond March 31, 2016 (and any purported exercise of an extension which would otherwise extend beyond March 31, 2016 shall automatically reduce to end on March 31, 2016 without reduction of the required extension fee) and no Purchaser's Extension Notice shall be effective if all Purchaser's Closing

1

Conditions have been either satisfied or waived in writing by Purchaser as of the date of such Purchaser's Extension Notice."

3.    **Closing**. The following Section 6.A.(i)(d) is hereby inserted immediately following Section 6.A.(i)(c) of the Agreement:

    (c)    Purchaser may, prior to the Outside Closing Date, elect to extend the Outside Closing Date beyond March 31, 2016 up to three (3) separate times for one calendar month each by providing to Seller a **Purchaser's Extension Notice** accompanied by payment to Seller of an extension fee of Thirty Three Thousand Three Hundred Thirty Three Dollars ($33,333.00). No extension of the Outside Closing Date pursuant to this Section (d) shall extend beyond June 30, 2016 (and any purported exercise of an extension which would otherwise extend beyond June 30, 2016 shall automatically reduce to end on June 30, 2016 without reduction of the required extension fee). All extension fees paid pursuant to this Section (d) shall be non-refundable when paid, but shall be applicable against the Purchase Price at Closing.

4.    **Seller's Payment of Prior Extension Fees**. For purposes of clarity, the parties hereby acknowledge and agree that the three (3) payments previously paid by Purchaser to Seller to extend the Outside Closing Date (Twenty Five Thousand Dollars ($25,000.00) each for the months of January, February and March of 2016; aggregate amount paid for such extensions totaling Seventy Five Thousand Dollars ($75,000.00)), shall be applicable to the Purchase Price at Closing and are and shall remain refundable unless and until all Seller's Closing Conditions and all Purchaser's Closing Conditions have been satisfied or waived by the applicable parties in accordance with the Agreement.

5.    **Full Force and Effect**. Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

6.    **Counterparts and Facsimile**. This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

[Signatures appear on page 3]

2

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

WITNESS or ATTEST:

**SELLER:**

**TOWN OF SYKESVILLE**

By:_____(SEAL)
Name: Ian Shaw
Title:   Mayor

WITNESS or ATTEST:

**WARFIELD DEVELOPMENT CORPORATION**

By:_____(SEAL)
Name:  James B. Rees
Title:   President

**PURCHASER:**

WITNESS or ATTEST:

**WARFIELD COLLABORATIVE, LLC**

By:_____(SEAL)
Name:  Roger A. Conley
Title:   Managing Member

G:\wpdata\0007.077N\Fourth Amendment to Purchase Agreement 032516.doc

3

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

**SELLER:**

**WITNESS or ATTEST:**

**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name:  Ian Shaw
Title:   Mayor

**WITNESS or ATTEST:**

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name:  James B. Rees
Title:   President

**PURCHASER:**

**WITNESS or ATTEST:**

**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name:  Roger A. Conley
Title:   Managing Member

G:\wpdata\0007.077\N\Fourth Amendment to Purchase Agreement 032516.doc

3

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**SELLER:**

WITNESS or ATTEST:                    **TOWN OF SYKESVILLE**

_____            By: _____ (SEAL)
                                      Name:   Ian Shaw
                                      Title:   Mayor

WITNESS or ATTEST:                    **WARFIELD DEVELOPMENT CORPORATION**

_____            By:_____ (SEAL)
                                      Name:   James B. Rees
                                      Title:   President

                                      **PURCHASER:**

WITNESS or ATTEST:                    **WARFIELD COLLABORATIVE, LLC**

_____            By: _____ (SEAL)
                                      Name:   Roger A. Conley
                                      Title:   Managing Member

O:\wpdata\0007.077N\Fourth Amendment to Purchase Agreement 032516.doc

3

## FIFTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS FIFTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), executed as of June 30, 2016 and made effective as of May 31, 2016 by and between THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)    By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment") and by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"). The Original Agreement, First Amendment, Second Amendment, Third Amendment, and Fourth Amendment are hereinafter referred to as the "Agreement").

(b)    Pursuant to the Agreement, Purchaser has made multiple elections to extend the Outside Closing Date through May 31, 2016 accompanied by payments in accordance with the terms of the Agreement. Through May 31, 2016, the aggregate of the Deposit and all extension payments equal a total of One Hundred Ninety One Thousand Six Hundred Sixty Six Dollars ($191,666.00).

(c)    Pursuant to a letter dated June 16, 2015 ("Carroll County Payoff Letter"), Carroll County (as defined in the Agreement) has agreed to accept Nine Hundred Thousand Dollars ($900,000.00) as payment in full of certain Existing Mortgage Debt in accordance with Section 2.B(i) and (ii) of the Agreement. The terms of the Carroll County Payoff Letter are good through December 31, 2017.

(d)    Pursuant to a letter dated June 30, 2015 ("IDACC Payoff Letter"), the IDACC has agreed to accept Three Million Five Hundred Thousand Dollars ($3,500,000.00) as payment in full of the applicable Existing Mortgage Debt in accordance with the Section 2.B(i) and (ii) of the Agreement, provided certain additional interest be paid. The terms of the IDACC Payoff Letter are good through June 30, 2017.

(e)    The parties now desire and agree to amend the Agreement, to increase the Purchase Price, to change the amount of the June, 2016 payment required to extend the Outside Closing Date through June 30, 2016 and to permit the Purchaser to elect to extend the Outside Closing Date up to twelve (12) additional times for one month each, such that the Outside Closing Date shall be no later than June 30, 2017.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.     **Incorporation of Introductory Statement.** The Introductory Statement set forth above is incorporated in this Amendment as a substantive part hereof and not as a mere recital hereto.

2.     **Purchase Price; Amendment to Section 2.A.** The first sentence of Section 2.A of the Agreement shall be revised in its entirety to read as follows: "The purchase price for the Property (the "Purchase Price") is Seven Million Nine Hundred Fifty Thousand and No/100 Dollars ($7,950,000.00), plus

1

or minus the adjustments (as applicable) made in accordance with this Agreement. From and after July 1, 2016 the Purchase Price shall increase by a per diem amount of $313.72 through and until Closing (calculated as 3% per annum on $3,764,567.04 based on a 360 day year; $3,764,567.04 being the amount due from the IDACC to DBED pursuant to the loan from DBED to IDACC related to the Existing Mortgage Debt)."

     3.    **Purchase Price; Amendment to Section 2.B(ii).** The first sentence of Section 2.B(ii) shall be revised in its entirety to read as follows: "(b) Three Million Five Hundred Thousand and No/100 Dollars ($3,500,000.00) plus a per diem amount of $313.72 through and until Closing (calculated as 3% per annum on $3,764,567.04 based on a 360 day year; $3,764,567.04 being the amount due from the IDACC to DBBD pursuant to the loan from DBED to IDACC related to the Existing Mortgage Debt), in cash or by wire transfer to the IDACC as payment in full for the applicable Existing Mortgage Debt; and".

     4.    **Closing.** Section 6.A.(i)(d) of the Agreement is amended in its entirety to read as follows:

          (d) Purchaser may, prior to the Outside Closing Date, elect to extend the Outside Closing Date beyond March 31, 2016 up to three (3) separate times for one calendar month each by providing to Seller a Purchaser's Extension Notice accompanied by payment to Seller of (1) an extension fee of Thirty Three Thousand Three Hundred Thirty Three Dollars ($33,333.00) for each of April and May of 2016 (collectively, the "April and May Extension Payments") and (2) an extension fee of Eight Thousand Three Hundred Thirty Four Dollars ($8,334.00) for June of 2016 (for the extension ending June 30, 2016; the "June 2016 Extension Payment"). All extension fees paid pursuant to this Section (d) shall be non-refundable when paid, but shall be applicable against the Purchase Price at Closing.

     5.    **Closing.** The Agreement is amended to insert the following new Section 6.A.(i)(e) immediately after Section 6.A.(i)(d):

          (e) The Purchaser may elect to extend the Outside Closing date beyond June 30, 2016 up to twelve (12) separate times for one calendar month each by providing to Seller on or before the first day of the month for which the extension applies (i.e., on or before July 1, 2016 and on the first day of each month thereafter for the term of the permitted extensions; such extensions ending June 30, 2017), a Purchaser's Extension Notice accompanied by payment directly to Seller (and not to Escrow Agent) of Five Thousand Dollars ($5,000.00) (each, a "Post-June 2016 Extension Payment"). Each Post-June 2016 Extension Payment, when paid, shall become the sole exclusive property of Seller and shall not be refundable for any reason. For each Post-June 2016 Extension Payment, as and when paid, (1) Two Thousand Five Hundred Dollars ($2,500.00) shall be applicable against the Purchase Price at Closing and (2) the remaining Two Thousand Five Hundred Dollars ($2,500.00) shall not be applicable to the Purchase Price.

     6.    **Effect Upon Deposit and Extension Payments.** Notwithstanding anything contained in the Agreement to the contrary, from and after the date of this Amendment, the Deposit and all extension payments, as and when paid, paid pursuant to Sections 6.A.(i)(d) and 6.A.(i)(e) of the Agreement shall not be refundable for any reason whatsoever.

2

7.    **Disbursement of Escrow Funds.**  To the extent that any part of the Deposit and any extension fee previously paid is now held in escrow by the Escrow Agent, the parties shall direct the Escrow Agent to immediately disburse to Seller the entire amounts that is held by Escrow Agent in escrow pursuant to this Agreement plus all accrued interest thereon, if any.  The parties shall promptly execute any and all documents that Escrow Agent shall require to disburse such funds to Seller.

8.    **Extension of Commissioners' and IDA Payoff Letters.**  The parties hereby acknowledge receipt of copies of the IDACC Payoff Letter and Carroll County Payoff Letter.

9.    **Waiver of All Prior Claims.**  In consideration for the execution and delivery of this Amendment, each party hereby forever waives any and all claims it may have against the other parties arising out of or in connection with any alleged breach of this Agreement arising prior to the date hereof. This Section 7 shall remain in full force and effect notwithstanding the failure of parties to timely obtain the Payoff Extension Confirmations.

10.   **Superseded Prior Drafts of the Fifth Amendment.**  This Amendment shall supersede all prior drafts and versions of the Fifth Amendment to the Agreement as was previously negotiated between the parties (and, in some cases signed by some or all of the parties) and the parties hereto do further agree and confirm that all such prior drafts/versions are null and void and of no force or effect.

11.   **Full Force and Effect.**  Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

12.   **Counterparts and Facsimile.**  This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart.  The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

3

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**WITNESS or ATTEST:**

**SELLER:**

**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name:   Ian Shaw
Title:    Mayor
Date:    June 30, 2016

**WITNESS or ATTEST:**

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name:   James B. Rees
Title:    President
Date: June 30, 2016

**WITNESS or ATTEST:**

**PURCHASER:**

**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name:   Roger A. Conley
Title:    Managing Member
Date: June 30, 2016

G:\wpdata\0007.077N\Fifth Amendment to Purchase Agreement.djh 063016 v2.doc

4

## SIXTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS SIXTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of June 21, 2017 by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)    By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"), and by Fifth Amendment to Agreement of Sale and Purchase dated May 31, 2016 (the "Fifth Amendment"; the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment and Fifth Amendment are hereinafter referred to collectively as the "Agreement").

(b)    Purchaser has previously elected to extend the Outside Closing Date through June 30, 2017 pursuant to the provisions of the Fifth Amendment. The parties now desire and agree to amend the Agreement, to extend the Outside Closing Date through July 31, 2017 without payment of an extension fee.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Extension of Outside Closing Date.** Notwithstanding anything contained in the Agreement to the Contrary, the Outside Closing Date is hereby extended to July 31, 2017. No extension fee of any kind shall be payable in connection with this extension.

2.    **Full Force and Effect.** Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

3.    **Counterparts and Facsimile.** This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

SELLER:

WITNESS or ATTEST:                       TOWN OF SYKESVILLE

                                         By: _____ (SEAL)
                                         Name:  Ian Shaw
                                         Title:   Mayor

WITNESS or ATTEST:                       WARFIELD DEVELOPMENT CORPORATION

                                         By: _____ (SEAL)
                                         Name:  Andrew P. Heck
                                         Title:   President

                                         PURCHASER:

WITNESS or ATTEST:                       WARFIELD COLLABORATIVE, LLC

                                         By: _____ (SEAL)
                                         Name:  Roger A. Conley
                                         Title:   Managing Member

G:\wpdata\0007.077N\Sixth Amendment to Purchase Agreement - Closing Date Extension 062117.docx

## SEVENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS SEVENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of July 31, 2017 by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)    By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"), by Fifth Amendment to Agreement of Sale and Purchase dated May 31, 2016 (the "Fifth Amendment") and by Sixth Amendment to Agreement of Sale and Purchase dated as of June 21, 2016 (the "Sixth Amendment", the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment and Sixth Amendment are hereinafter referred to collectively as the "Agreement").

(b)    Purchaser has previously elected to extend the Outside Closing Date through July 31, 2017 pursuant to the provisions of the Sixth Amendment. The parties now desire and agree to amend the Agreement, to extend the Outside Closing Date through August 31, 2017 without payment of an extension fee.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Extension of Outside Closing Date**. Notwithstanding anything contained in the Agreement to the contrary, the Outside Closing Date is hereby extended to August 31, 2017. No extension fee of any kind shall be payable in connection with this extension.

2.    **Full Force and Effect**.    Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

3.    **Counterparts and Facsimile**.    This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

### [SIGNATURES APPEAR ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each party hereto has executed this Amendment under seal, the day and year first above written.

**SELLER:**

WITNESS or ATTEST:                    TOWN OF SYKESVILLE

_____              By: _____ (SEAL)
                                     Name:  Ian Shew
                                     Title:   Mayor

WITNESS or ATTEST:                   WARFIELD DEVELOPMENT CORPORATION

                                     By: _____ (SEAL)
                                     Name:  Andrew P. Heck
                                     Title:   President

                                     **PURCHASER:**

WITNESS or ATTEST:                   WARFIELD COLLABORATIVE, LLC

                                     By: _____ (SEAL)
                                     Name:  Roger A. Conley
                                     Title:   Managing Member

G:\wpdata\0007.077N\Sixth Amendment to Purchase Agreement - Closing Date Extension 071417.docx

## EIGHTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS EIGHTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of August 31, 2017 by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)     By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"), by Fifth Amendment to Agreement of Sale and Purchase dated May 31, 2016 (the "Fifth Amendment"), by Sixth Amendment to Agreement of Sale and Purchase dated as of June 21, 2016 (the "Sixth Amendment") and by Seventh Amendment dated as of July 31, 2017 (the "Seventh Amendment", the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment and Seventh Amendment are hereinafter referred to collectively as the "Agreement").

(b)     Purchaser has previously elected to extend the Outside Closing Date through August 31, 2017 pursuant to the provisions of the Seventh Amendment. The parties now desire and agree to amend the Agreement to extend the Outside Closing Date through September 30, 2017 without payment of an extension fee.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.     **Extension of Outside Closing Date.**  Notwithstanding anything contained in the Agreement to the contrary, the Outside Closing Date is hereby extended to September 30, 2017. No extension fee of any kind shall be payable in connection with this extension.

2.     **Full Force and Effect.**  Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

3.     **Counterparts and Facsimile.**  This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

    **IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**WITNESS or ATTEST:**

**SELLER:**

**TOWN OF SYKESVILLE**

By:_____(SEAL)
Name:  Ian Shaw
Title:   Mayor

**WITNESS or ATTEST:**

**WARFIELD DEVELOPMENT CORPORATION**

By:_____(SEAL)
Name:  Andrew P. Heck
Title:   President

**PURCHASER:**

**WITNESS or ATTEST:**

**WARFIELD COLLABORATIVE, LLC**

By: _____(SEAL)
Name:  Roger A. Conley
Title:   Managing Member

G:\wpdata\0007.077N\Seventh Amendment to Purchase Agreement - Closing Date Extension 0822917.docx

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

SELLER:

WITNESS or ATTEST:

TOWN OF SYKESVILLE

_____

By: _____ (SEAL)
Name:  Ian Shaw
Title:   Mayor

WITNESS or ATTEST:

WARFIELD DEVELOPMENT CORPORATION

_____

By:_____(SEAL)
Name:  Andrew P. Heck
Title:   President

PURCHASER:

WITNESS or ATTEST:

WARFIELD COLLABORATIVE, LLC

By: _____(SEAL)
Name:   Roger A. Conley
Title:    Managing Member

G:\wpdata\0007.077N\Seventh Amendment to Purchase Agreement - Closing Date Extension 0822917.docx

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

SELLER:

WITNESS or ATTEST:                    TOWN OF SYKESVILLE

_____              By: _____ (SEAL)
                                     Name:   Ian Shaw
                                     Title:   Mayor

WITNESS or ATTEST:                    WARFIELD DEVELOPMENT CORPORATION

                                     By: _____ (SEAL)
                                     Name:   Andrew P. Heck
                                     Title:   President

                                     PURCHASER:

WITNESS or ATTEST:                    WARFIELD COLLABORATIVE, LLC

_____              By: _____ (SEAL)
                                     Name:   Roger A. Conley
                                     Title:   Managing Member

G:\wpdata\0007.077\N\Seventh Amendment to Purchase Agreement - Closing Date Extension 0822917.docx

## NINTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS NINTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of September 30, 2017 by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)     By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"), by Fifth Amendment to Agreement of Sale and Purchase dated May 31, 2016 (the "Fifth Amendment"), by Sixth Amendment to Agreement of Sale and Purchase dated as of June 21, 2016 (the "Sixth Amendment"), by Seventh Amendment dated as of July 31. 2017 (the "Seventh Amendment") and by Eighth Amendment dated as of August 31, 2017 (the "Eighth Amendment"; the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment and Eighth Amendment are hereinafter referred to collectively as the "Agreement").

(b)     Purchaser has previously elected to extend the Outside Closing Date through September 30, 2017 pursuant to the provisions of the Seventh Amendment. The parties now desire and agree to amend the Agreement to extend the Outside Closing Date through November 30, 2017 without payment of an extension fee.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.     **Extension of Outside Closing Date**.   Notwithstanding anything contained in the Agreement to the contrary, the Outside Closing Date is hereby extended through and including November 30, 2017. No extension fee of any kind shall be payable in connection with this extension.

2.     **Full Force and Effect**.     Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

3.     **Counterparts and Facsimile**.   This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

### [SIGNATURES APPEAR ON FOLLOWING PAGE]

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

WITNESS or ATTEST:

**SELLER:**

**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name: Ian Shaw
Title:  Mayor

WITNESS or ATTEST:

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name: Andrew P. Heck
Title:  President

**PURCHASER:**

WITNESS or ATTEST:

**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name: Roger A. Conley
Title:  Managing Member

G:\wpdata\0007.077N\Ninth Amendment to Purchase Agreement - Closing Date Extension. v2

## TENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS TENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "Amendment"), dated as of November 30, 2017 by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "Town") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("WDC") (the Town and WDC being hereinafter collectively referred to as "Seller") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "Purchaser").

### INTRODUCTORY STATEMENT

(a)    By Agreement of Sale and Purchase (the "Original Agreement") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "First Amendment"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "Second Amendment"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "Third Amendment"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "Fourth Amendment"), by Fifth Amendment to Agreement of Sale and Purchase dated May 31, 2016 (the "Fifth Amendment"), by Sixth Amendment to Agreement of Sale and Purchase dated as of June 21, 2016 (the "Sixth Amendment"), by Seventh Amendment dated as of July 31. 2017 (the "Seventh Amendment"), by Eighth Amendment dated as of August 31, 2017 (the "Eighth Amendment"), and Ninth Amendment dated as of September 30, 2017 (the "Ninth Amendment"; the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment, and Ninth Amendment are hereinafter referred to collectively as the "Agreement").

(b)    The parties previously agreed to extend the Outside Closing Date through November 30, 2017 pursuant to the provisions of the Ninth Amendment. The parties now desire and agree to amend the Agreement to extend the Outside Closing Date through December 15, 2017 without payment of an extension fee.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    **Extension of Outside Closing Date.**    Notwithstanding anything contained in the Agreement to the contrary, the Outside Closing Date is hereby extended through and including December 15, 2017. No extension fee of any kind shall be payable in connection with this extension.

2.    **Full Force and Effect.**    Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.

3.    **Counterparts and Facsimile.**    This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, each party hereto has executed this Amendment under seal, the day and year first above written.

**SELLER:**

**WITNESS or ATTEST:**                    **TOWN OF SYKESVILLE**

_____                    By: _____ (SEAL)
                                            Name:  Ian Shaw
                                            Title:   Mayor

**WITNESS or ATTEST:**                    **WARFIELD DEVELOPMENT CORPORATION**

_Mya Brozek_                                By: _____ (SEAL)
                                            Name:  Andrew P. Heck
                                            Title:   President

                                           **PURCHASER:**

**WITNESS or ATTEST:**                    **WARFIELD COLLABORATIVE, LLC**

_____                    By: _____ (SEAL)
                                            Name:  Roger A. Conley
                                            Title:   Managing Member

G:\wpdata\0007.077N\Tenth Amendment to Purchase Agreement - Closing Date Extension aja.docx

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

|                         | SELLER:                              |
|-------------------------|--------------------------------------|

**WITNESS or ATTEST:**                 **TOWN OF SYKESVILLE**

_____

By: _____ (SEAL)
Name:  Ian Shaw
Title:   Mayor

**WITNESS or ATTEST:**                 **WARFIELD DEVELOPMENT CORPORATION**

_____

By: _____ (SEAL)
Name:  Andrew P. Heck
Title:   President

**PURCHASER:**

**WITNESS or ATTEST:**                 **WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name:  Roger A. Conley
Title:   Managing Member

G:\wpdata\0007.077N\Tenth Amendment to Purchase Agreement – Closing Date Extension ajc.docx

## ELEVENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS ELEVENTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "**Amendment**"), effective as of December 15, 2017 (the "**Amendment Effective Date**") by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "**Purchaser**").

## INTRODUCTORY STATEMENT

(a)      By Agreement of Sale and Purchase (the "**Original Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland.  The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "**First Amendment**"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "**Second Amendment**"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "**Third Amendment**"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "**Fourth Amendment**"), by Fifth Amendment to Agreement of Sale and Purchase executed as of June 30, 2016 but having an effective date of May 31, 2016 (the "**Fifth Amendment**"), by Sixth Amendment to Agreement of Sale and Purchase dated June 21, 2017 (the "**Sixth Amendment**"), by Seventh Amendment to Agreement of Sale and Purchase dated July 31, 2017 (the "**Seventh Amendment**"), by Eighth Amendment to Agreement of Sale and Purchase dated August 31, 2017 (the "**Eighth Amendment**"), by Ninth Amendment to Agreement of Sale and Purchase dated September 30, 2017 (the "**Ninth Amendment**"), and by Tenth Amendment to Agreement of Sale and Purchase dated as of November 30, 2017 (the "**Tenth Amendment**"); the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment, Ninth Amendment and Tenth Amendment are hereinafter referred to collectively as the "**Agreement**").

(b)      Pursuant to the Agreement, Purchaser has made multiple elections to extend the Outside Closing Date through December 15, 2017 accompanied by payments in accordance with the terms of the Agreement.  As of the Amendment Effective Date, the aggregate amount of the Deposit and all extension payments is Two Hundred Sixty Thousand Dollars ($260,077.74), consisting of $50,077.74 as the Deposit (inclusive of $77.74 in interest accrued on the Deposit prior to disbursement from escrow) and $210,000 in extension fees (the "**Extension Fees**").  The Deposit of $50,077.74 is non-refundable; of the Extension Fees, $135,000 is non-refundable and $75,000 is refundable in accordance with the terms of the Agreement. The Deposit of $50,077.74 and $180,000 of the Extension Fees are applicable against the Purchase Price and $30,000 of the Extension Fees is not applicable against the Purchase Price.

(c)      Pursuant to a Loan Modification Agreement dated November 29, 2017 (the "**Loan Modification Agreement**"), by and among the Industrial Development Authority of Carroll County, the County Commissioners of Carroll County and the Town, (i) the IDACC has agreed to accept Three Million Seven Hundred Sixty Four Thousand Five Hundred Sixty Seven and 04/100ths Dollars ($3,764,567.04) as payment in full of the applicable Existing Mortgage

1

Debt due to the IDACC in accordance with <u>Section 2.B(i)</u> and <u>(ii)</u> of the Agreement if paid by no later than September 30, 2018 and (ii) the County Commissioners of Carroll County have agreed to accept Nine Hundred Thousand Dollars ($900,000.00) as payment in full of the applicable Existing Mortgage Debt due to the County Commissioners of Carroll County in accordance with <u>Section 2.B(i)</u> and <u>(ii)</u> of the Agreement.

(d)    In accordance with Section 180-134 et seq. of the Town Code of the Town of Sykesville, on December 5, 2016 Purchaser received approval of the Planning Commission of the Town of Sykesville (the "**Planning Commission**") of the PEC Preliminary Plan and Pattern Book subject to satisfaction of enumerated conditions. The PEC Preliminary Plan and Pattern Book as approved by the Planning Commission on December 5, 2016 shall hereinafter be referred to collectively as the "**PEC Preliminary Plan**"; the Planning Commission approval thereof shall hereinafter be referred to as the "**PEC Preliminary Plan Approval**".

(e)    The preliminary subdivision plan for Parcel E and Parcel F was approved by the Planning Commission on August 7, 2017 (the "**Preliminary Subdivision Plan**").

(f)    Pursuant to Memorandum of Agreement dated as of October 4, 2017, by and between The County Commissioners of Carroll County (the "**County**"), the Town, and the Town's Planning Commission (the "**Planning Review MOU**"), the parties thereto established a cooperative working partnership among the County, Town and Town's Planning Commission to expedite the Town's planning and subdivision review process of the Project, to conclude upon recordation of the record plat for a residential subdivision containing 145 lots on Parcel E and Parcel F. The Planning Review MOU provides, in part, for the Town to pay the County for customary costs and fees for reviews that are rendered above and beyond the County's "ordinary Plan review timelines".

(g)    The parties now desire and agree to amend the Agreement to permit the Purchaser to elect to extend the Outside Closing Date, such that the Outside Closing Date shall be no later than September 30, 2018 and to make such other and further amendments to the Agreement as set forth in this Amendment.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    <u>Recitals</u>. The fourth recital of the Agreement shall be amended in its entirety to state the following:

> **WHEREAS,** Purchaser intends to develop the Property as mixed-use development, consistent with modern planning and development practices, providing for an employment center (including office, light industrial, research and development and business incubation space), with a complementary blend of retail space and residential units, with the further goal of preservation and adaptive re-use of existing historic buildings and enhancement of the Town's employment base; and

2

2.  **Parcel I Option**.  The parties acknowledge and agree that the Parcel I Option referenced in Section 1.J of the Agreement was not timely exercised by Purchaser and that Parcel I shall not be included in the Property to be sold and transferred under the Agreement.

3.  **Purchase Price; Amendment to Section 2.A**.  The first sentence of Section 2.A of the Agreement shall be revised in its entirety to read as follows: "The purchase price for the Property (the **"Purchase Price"**) is Eight Million Two Hundred Fourteen Thousand Five Hundred Sixty Seven and 04/100 Dollars ($8,214,567.04), plus or minus the adjustments (as applicable) made in accordance with this Agreement."

4.  **Amendment to Section 2.B.(i)**.  In the first sentence of Section 2.B.(i) of the Agreement, "One Million Ninety Seven Thousand and No/100ths Dollars ($1,097,000.00)" shall be deleted and replaced by "One Million Ninety Seven Thousand Six Hundred Eighty Dollars ($1,097,680.00).

5.  **Amendment of Section 2.B.(ii)**.  Section 2.B.(ii) of the Agreement shall be amended in its entirety to read as follows:

(ii)  Debt Payments and Resolution of Monetary Obligations Under Disposition Agreement.  At Closing, the proceeds from the Purchase Price shall first be distributed to satisfy the Existing Mortgage Debt as follows: (a) Nine Hundred Thousand and No/100 Dollars ($900,000.00) in cash or by wire transfer to Carroll County as payment in full for the applicable Existing Mortgage Debt; (b) Three Million Seven Hundred Sixty Four Thousand Five Hundred Sixty Seven and 04/100ths Dollars ($3,764,567.04), in cash or by wire transfer to the IDACC as payment in full for the applicable Existing Mortgage Debt; and (c) One Hundred Thirty Four Thousand Seven Hundred Ninety and No/100ths Dollars ($134,790.00), in cash or by wire transfer to the Town Council of the Town of Sykesville as payment in full for the applicable Existing Mortgage Debt (the amounts referenced in (a), (b) and (c) above are collectively hereinafter referred to as the **"Debt Payments"**).  The receipt of the Debt Payments shall result in the release of the Property from the liens of the existing Deeds of Trust and the full release and discharge of WDC and the Town (in the event and to the extent of any liability on the part of WDC and the Town for such Existing Mortgage Debt) from such indebtedness. In addition, at Closing, Five Hundred Thousand and No/100ths Dollars ($500,000.00) of the remaining proceeds from the Purchase Price shall be distributed to satisfy in full any and all monetary obligations to the State's Community Trust Fund (the **"CTF Obligation"**) as set forth in and under that certain Disposition Agreement dated November __, 2002, and recorded among the Land Records in Liber 3176, Page 252, et seq., as amended by that certain Amendment to Disposition and Development Agreement and Deeds and Release of Right of

3

Reversion dated November 8, 2005 and recorded among the Land Records in Book 4704, Page 197, as further amended by that certain Second Amendment to Disposition and Development Agreement dated November 19, 2015 and recorded among the Land Records in Book 8202, Page 1 (collectively, the "**Disposition Agreement**"). In the event the amount of the CTF Obligation is reduced or refunded and such reduction or refund occurs (x) prior to Closing, then the parties shall each receive a Closing adjustment in an amount equal to (i) Seventy Percent (70%) of such reduction or refund to Purchaser and (ii) Thirty Percent (30%) of such reduction or refund to the Town, and (y) after the Closing, then the parties shall each receive a refund in cash or by wire transfer in an amount equal to (i) Seventy Percent (70%) of such refund to Purchaser and (ii) Thirty Percent (30%) of such refund to the Town. Seller shall be liable for any shortfall between the proceeds from the Purchase Price and the sum of the Debt Payments and CTF Obligation, and Purchaser shall have no responsibility for any deficiency payments with respect thereof.

6.    **Amendment to Section 2.B.(iv)**. The last six (6) sentences of <u>Section 2.B.(iv)</u> of the Agreement shall be deleted and replaced in their entirety with the following:

[...] Interest shall accrue until maturity at which point the entire unpaid principal and all accrued interest then outstanding shall be due and payable. The Deed of Trust shall secure repayment of the Note and shall impose and constitute a lien on the entire Property. Notwithstanding, Purchaser shall be entitled to repay the Note in part and shall be entitled to release portions of the Property from the lien of the Deed of Trust upon partial conversion of the Note to cash and the deposit of such cash into the Parcel D Escrow Fund in the amounts as more fully set forth in <u>an</u> exhibit to be incorporated in the Deed of Trust ("**Release Exhibit**"). Upon Purchaser's partial or full conversion of the Note, in accordance with the Parcel D Escrow Agreement, Seller shall execute and deliver a partial or full release of the lien of the Deed of Trust (as the case may be), in accordance with the terms and conditions of the Deed of Trust. All conversions under the Note shall be paid directly into the Parcel D Escrow Fund and shall thereafter be subject to disbursement in accordance with the terms of the Parcel D Escrow Agreement (as defined in <u>Section 7.H.(ii)</u> below). The Escrow Agent under the Parcel D Escrow Agreement shall deliver written confirmation of receipt of all such payments together with such other reasonable information and documentation as requested by the Town regarding the same. In the event of a partial assignment of this Agreement by Purchaser or the sale, assignment or transfer of all or a portion of the Property by Purchaser, then that portion of the Property which is the subject of such sale, assignment or transfer, as applicable, shall not be subject to or shall be released from, as

4

applicable, the Deed of Trust as part of the property encumbered and secured thereby, the principal amount of the Note shall be reduced by the amount of the partial release sum due for such portion of the Property as set forth in the Release Exhibit and such amount shall be due and payable upon the closing of the sale of the Parcel (or a portion thereof) and shall be deposited into the Parcel D Escrow Account. The parties acknowledge and agree that the amounts of principal and interest to be paid under the Note and Deed of Trust to procure partial release(s) of Parcels or property from the operation and effect of the Deed of Trust have not been finalized and agreed upon as of the date of this Amendment. It shall be a condition of Closing for both Seller and Purchaser that a mutually agreeable Release Exhibit for such partial release payments be agreed upon and made a part of the Deed of Trust.

7.    **Amendment to Section 3.C**. The last sentence of Section 3.C. of the Agreement shall be amended in its entirety to read as follows: "Seller shall reimburse Purchaser in the amount of Fifteen Thousand Dollars ($15,000.00), representing fifty percent (50%) of the cost and expense of the Fiscal Impact Study, and said amount shall be reimbursed as a credit against the Purchase Price at Closing."

8.    **Title**. Section 4 of the Agreement shall be amended to include the following paragraph after the end of the last paragraph:

It shall be a condition of Closing for both Seller and Purchaser that an amendment to the FCPMA (as herein defined) acceptable to Seller and Purchaser (and, as applicable, Purchaser's contract purchaser, designee or assignee for Parcel E and Parcel F) be executed prior to Closing pursuant to which  Purchaser shall undertake and be responsible for all necessary work under the FCPMA and Seller shall be release from all obligations under the FCPMA. Notwithstanding anything contained in this Agreement to the contrary, the Property shall be conveyed subject to the terms, covenants and conditions in that certain Forest Conservation Plan and Maintenance Agreement dated August 11, 2009, recorded among the Land Records in Liber 5958 Page 162 (the "**FCPMA**") as amended, which shall be deemed a Permitted Exception under this Agreement, and Purchaser shall perform all remaining work necessary to comply with the requirements under the FCPMA or as outlined in the Forest Conservation Plan and such other documents referenced therein. Purchaser shall have the right to assign such rights and obligations under the FCPMA to its contract purchaser, designee or assignee. The Town shall (a) grant such reasonable rights of entry in, on, across and through the Warfield Park Parcel and temporary easements as may be necessary for Purchaser to perform all such work (including plantings and maintenance) as may be required under the FCPMA, and (b) provide reasonable assistance to and cooperation with Purchaser (provided the same

5

shall be without cost or expense to the Town) in obtaining all amendments, assignments, approvals, consents, easements and other agreements necessary to implement the FCPMA. The foregoing notwithstanding, any future amendment or modification of the FCPMA affecting the Warfield Park Parcel related to the expansion of the existing storm water pond located on Parcel G into Parcel D-1 and, if necessary into the Warfield Park Parcel, all as anticipated in accordance with <u>Section 5.A.(xvii)</u> below), shall be subject to the Town's and Purchaser's mutual agreement.

9.    <u>**Amendment to Sections 5.A.(ii) and 5.B.(ii)**</u>.  <u>Sections 5.A.(ii)</u> and <u>5.B.(ii)</u> of the Agreement shall each be amended in their entirety to read as follows:

<u>Satisfaction of Conditions of PEC Preliminary Plan Approval</u>. Those conditions of PEC Preliminary Plan Approval that are required to be completed prior to the Closing Date shall have been fully satisfied.

10.    <u>**Amendment to Section 5.A.(iii)**</u>.  Section 5.A.(iii) of the Agreement shall be amended in its entirety to read as follows:

<u>Parcel E and Parcel F Subdivision</u>.  Final engineering, including, without limitation, the final subdivision plan and final stormwater management plan, and plats for each of Parcel E and Parcel F consistent with the PEC Preliminary Plan, including the satisfaction of those conditions thereof that are required to be completed prior to the Closing Date, shall have been approved by the Town and all other applicable governmental entities and agencies and recorded among the Land Records.  For the avoidance of doubt, the completion, execution, delivery and if applicable, recordation of all public works agreements, bonding agreements and easements as required pursuant to this Agreement or by Town or County regulation, policy or accepted practice in connection with the development of Parcel E and Parcel F shall each be considered conditions that are required to be completed prior to the Closing Date.

11.    <u>**Amendment to Section 5.B.(iv)**</u>.  The first sentence of <u>Section 5.B.(iv)</u> of the Agreement shall be amended as follows: "Seller's" shall be amended to state "the Town's".

12.    <u>**Amendment to Section 5.A.(xi)**</u>.  Section 5.A.(xi) of the Agreement shall be amended in its entirety to read as follows:

<u>Historic District Commission Approval</u>.  As required by applicable law, Seller shall obtain the final, non-appealable approval (without condition; or if given with conditions, then with satisfaction of all such conditions) of the Historic District Commission of the Town of Sykesville (the "**HDC**") and, to the extent required by

6

applicable law, rule, ordinance, regulation of any applicable
governmental authority or body or pursuant to agreements binding
upon the Town and/or WDC, final, non-appealable approval
(without condition; or if given with conditions, then with
satisfaction of all such conditions) of the Maryland Historical Trust
("**MHT**"), for each of the PEC Preliminary Plan, the final
subdivision plan for Parcel E and Parcel F, the final stormwater
management plan, and the plats for Parcel E and Parcel F.

13.    **Amendment to Section 5.A.(xiii)**.  Section 5.A.(xiii) of the Agreement shall be
amended in its entirety to read as follows:

(xiii) Town PILOT Agreement.  The Mayor and Town Council of
the Town of Sykesville shall have duly authorized and approved
Town's entry into a separate written agreement to accept payment
in lieu of Town real property taxes (the "**PILOT Agreement**"),
which agreement shall be based on the form of Agreement for
Payment in Lieu of Taxes that is attached as Exhibit A to Town
Resolution 2015-09 (the "**2015 PILOT Resolution**"; which 2015
PILOT Resolution and authority has expired by its terms and will
require re-enactment or amendment), and shall be subject to the
following revisions: (1) Unit 10 (as identified and referenced in
both Exhibit D of that certain Condominium Declaration dated
October 22, 2015 and recorded among the Land Records of Carroll
County, as amended, and those certain plats entitled
"Condominium Plat One of Four" through and including
"Condominium Plat Four of Four, Warfield Land Condominium,
Inc." recorded among the Land Records in Plat Book No. 54, pages
66 through 69) shall no longer be considered PILOT Eligible
Property under the PILOT Agreement; (2) Parcels A, B and C as
shown on the Plat shall be PILOT Eligible Property (including any
separate lot and tax parcels subdivided therefrom) until the earlier
to occur of two (2) years from the effective date of the PILOT
Agreement or issuance of a use and occupancy permit for
improvements on such Parcel or subdivided lot and tax parcel; and
(3) Parcel H as shown on the Plat (including any separate lot and
tax parcels subdivided therefrom) shall be PILOT Eligible Property
until the earlier to occur of five (5) years from the effective date of
the PILOT Agreement or issuance of a use and occupancy permit
for improvements on such Parcel H or subdivided lot and tax
parcel. It is understood by the parties hereto that the inclusion of
this Purchaser's condition in this Agreement shall not constitute or
evidence the Town's approval, agreement or acceptance of the
PILOT Agreement provided for herein, and that the Town shall not
be bound by and obligated under any such PILOT Agreement until
the full and final execution of a separate written PILOT Agreement
following appropriate motion, consideration, approval and
authorization of the PILOT Agreement by affirmative vote of the

7

Mayor and Town Council of the Town of Sykesville acting in their official capacity in accordance with applicable law. It is understood by Purchaser that the Mayor of the Town has been delegated the authority to amend this Agreement but has does not have the authority to separately bind the Mayor and Town Council to approval of the PILOT Agreement; therefore, Seller makes no representation or warranty that the PILOT Agreement referenced above will be duly authorized and approved by the Town following appropriate legislative processes.

14.     **Amendment to Section 5.A.(xvi) and Deletion of Section 5.B.(xi)**.  Section 5.B.(xi) is hereby deleted and Section 5.A.(xvi) shall be amended in its entirety to read as follows:

A Certificate of Satisfaction duly executed, acknowledged and delivered by the State in the form attached hereto as **Exhibit R**, or such other instrument reasonably acceptable to Purchaser that is duly executed, acknowledged and delivered by the State (the "**CTF Release**"), which shall acknowledge that the Town's monetary obligations under the Disposition Agreement have been fully paid, satisfied and discharged. Such CTF Release shall be in recordable form and recorded against the Property at Closing.

15.     **Storm Water and Grading Easements**. Section 5.A.(xvii) of the Agreement shall be amended in its entirety to read as follows:

(xvii)  Warfield Park Parcel Easements. The Town shall have agreed in writing to grant such temporary and permanent easements in, over, under, across, through and upon the Warfield Park Parcel as are reasonably necessary for (a) Purchaser to establish proper grades and to eliminate retaining walls along the eastern border of Parcel E and Parcel F and the Warfield Park Parcel for the purpose of creating a transition between the Property and the Warfield Park Parcel in accordance with the final subdivision plan and final stormwater management plan for Parcel E and Parcel F, and (b) Purchaser to expand the existing storm water pond located on Parcel G onto Parcel D-1 and the Warfield Park Parcel in accordance with the PEC Preliminary Plan (subject to the further limitations of this Agreement) in accordance with all laws, rules, ordinances or regulations of any applicable governmental authority or body. In the event the existing storm water management system located on Parcel G is expanded into the Warfield Park Parcel then, as provided in Section 7.D of this Agreement, the POA shall be responsible for maintenance of such expanded stormwater pond and related facilities as may lie within the Warfield Park Parcel. All easements to be granted herein shall be in commercially reasonable form. The foregoing notwithstanding, the above provisions of this subsection shall not

8

include the right to construct and maintain a stormwater management pond within the Warfield Park Parcel for the benefit of Parcel E and Parcel F, unless separately agreed to by Seller under terms and conditions acceptable to Seller in its sole and absolute discretion.

16. **Amendment to Section 5.B.(ix)**. In Section 5.B.(ix) of the Agreement, the words "the Condominium Documents" shall be deleted.

17. **Closing**. The Agreement is amended to insert the following new Section 6.A.(i)(f) immediately after Section 6.A.(i)(e):

(f) The Outside Closing Date shall be extended without additional fee or charge to September 30, 2018. In the event Purchaser desires to close prior to such date, then Purchaser shall provide Seller with written notice of the Closing Date at least thirty (30) days' prior to such desired Closing Date.

For the avoidance of any doubt, the section reference for Section 6.A.(i)(d) added pursuant to the Fourth Amendment shall be corrected to "(d)" instead of "(c)".

18. **Amendment to Section 6.C.(iii)**. Section 6.C.(iii) of the Agreement shall be amended in its entirety to read as follows:

The Tower Agreement, Parcel D Preservation Agreement, the Reversion Agreement, and the Parcel D Escrow Agreement; and

19. **Storm Water Management Facilities**. Section 7.D. of the Agreement shall be amended in its entirety to read as follows:

Storm Water Management Facilities. Parcel G as shown on the Plat is subject to a Declaration of Drainage Facility Easements dated August 11, 2009 and recorded among the aforesaid Land Records in Liber 5958, Page 184 et seq. and a storm water management pond has been constructed upon and within Parcel G (the "**Storm Water Management Facility 1**"). Purchaser shall have the right to expand Storm Water Management Facility 1 to Parcel D-1 and into the Warfield Park Parcel as necessary to accommodate development of any or all of Parcels A, B, C, D or H in accordance with the PEC Preliminary Plan (provided Purchaser shall first deliver to the Town a plan showing the location of such area of expansion into the Warfield Park Parcel, which plan shall be subject to Town's approval not to be unreasonably withheld). Purchaser further agrees to exercise commercially reasonable efforts to ensure the size of the expanded Storm Water Management Facility 1 will be minimized to allow for other complementary uses (i.e. overflow parking or park features) and to minimize intrusion into and use of the Warfield Park Parcel.

9

Storm Water Facility 1, bio-swales, pervious paving and all other stormwater management devices and facilities for the Property are collectively referred to in this Agreement as the "**Storm Water Management Facilities**". This agreement given by the Town as owner of the Warfield Park Parcel and does not abrogate or eliminate any responsibility of Purchaser to satisfy any and all applicable Town, County, State, Federal regulatory requirements with respect to the Storm Water Management Facilities; provided, however, in the event of any conflict between the Town's regulatory requirements and that of the County, State and/or Federal regulatory requirements, the latter shall control in all events and circumstances. Purchaser shall impose and include within the Declaration of Covenants, Conditions and Restrictions, the obligation for the POA, at the POA's sole cost and expense, to maintain, repair and/or replace the Storm Water Management Facilities.

20.    **Amendment to Section 7.E**.  Section 7.E. of the Agreement is hereby deleted in its entirety.

21.    **Amendment to Section 7.H(i)**.  The next to the last paragraph in Section 7.H(i) of the Agreement (appearing in Section 3 of the Second Amendment, which for clarity purposes is an amendment to Section H(i)) shall be deleted in its entirety and replaced with the following:

The Condominium Documents shall be recorded prior to recording of the document terminating the Master Ground Lease, the Deed for the Property, the Assignment of Developer's Rights, the Deed of Trust, and the Reversion Agreement and prior to all other documents to be executed at Closing.

22.    **Amendment to Section 7.H(ii)**.  The following sentences shall be added to the end of Section 7.H(ii) of the Agreement to read as follows:

The Parcel D Escrow Agreement, Preservation Agreement, Deed of Trust and/or Note shall further provide that as a condition of the sale and/or release of each Parcel from the lien of the Deed of Trust, the amount of the release price for such Parcel(s) shall be converted to cash and deposited into the Parcel D Escrow Fund, which shall be disbursed to Purchaser for work performed on the Parcel D Buildings or with respect to infrastructure improvements within Parcel D in accordance with the terms and conditions of the Parcel D Escrow Agreement. The disbursement of funds to the Purchaser from the Parcel D Escrow Agreement shall be made, first, from the Parcel D Escrow Fund, until exhausted, and then, by a dollar for dollar reduction in the Note.

23.    **Amendment to Section 9**.  The last sentence of Section 9 of the Agreement shall be deleted and replaced in its entirety with the following:

Seller represents and warrants that, except with regard to incident report numbers 37463 and 37464 reported by Seller to its carrier on January 20, 2013 and January 30, 2013, respectively, for door damage and copper pipe theft (for which no full claim has been processed and no insurance proceeds received), no insurance claims have been filed and no insurance proceeds have been received by Seller in connection with the Property since the Effective Date.  In the event that Seller should receive any payments for damage to the Property or condemnation due to events occurring from and after the Effective Date of this Agreement and prior to Closing, if Purchaser elects to proceed to Closing, the Purchase Price shall be reduced by any amount so received by Seller for condemnation as for any damage occurring to the Property or other casualty prior to Closing.  Notwithstanding the foregoing or anything to the contrary otherwise contained in this Agreement, Purchaser acknowledges and agrees that to the extent damage, loss or diminution of value occurs by reason of theft or vandalism to the Property from and after the Effective Date of the Agreement, Seller's sole obligation shall be, upon Purchaser's request, make commercially reasonable efforts to process any appropriate claim.  Purchaser shall cooperate in good faith with Seller in making such claim (including claims related to incident report number 37463 and 37464) and shall provide all information reasonably available to Seller (a) as is reasonably necessary to provide to Seller's insurers and (b) to Purchaser, in each case, in connection with any and all such claims.  Seller shall have no liability to Purchaser if coverage is not provided under Seller's insurances for such damage, loss or diminution of value by reason of theft or vandalism to the Property (including for incident reports 37463 and 37464) for any reason whatsoever.  In the event any insurance proceeds are not received prior to Closing, Seller shall assign all right, title and interest to such proceeds to Purchaser, and Seller agrees to execute an assignment at or prior to Closing of any and all such proceeds.

24.    **Amendment to Section 11**.  The Agreement is amended to insert the following new Section 11.D. immediately after Section 11.C:

D.    Right of Entry.  Seller hereby agrees that Purchaser may grant the right to enter the Property to Prospects prior to Closing in accordance with the terms and conditions of that certain Right of Entry Agreement, the form of which is attached hereto as **Exhibit S.**

25.    **Amendment to Section 13**.  The last sentence of Section 13 of the Agreement shall be deleted and replaced in its entirety with the following:

11

FOR THE PURPOSES OF THIS AGREEMENT, "PURCHASER'S KNOWLEDGE" SHALL MEAN THE ACTUAL KNOWLEDGE OF ROGER CONLEY, A MEMBER OF PURCHASER AND OF NO OTHER OFFICER, DIRECTOR, MEMBER, EMPLOYEE OR AGENT OF PURCHASER.

26.     **Amendment to Section 34**.  Section 34 of the Agreement shall be deleted and replaced in its entirety with the following:

During the term of this Agreement, Seller and Purchaser shall each maintain as confidential any and all materials obtained about the other concerning the Property and shall not disclose any such information to any third party except (i) to Seller's and Purchaser's respective partners, employees, agents, permitted assignees, property consultants, Mayor, Town Manager, Town Council members, accountants, attorneys, and lenders and each of their respective attorneys, employees and agents; (ii) as required by applicable law, including (with respect to the Town and WDC) the Maryland Public Information Act or any court of competent jurisdiction; or (iii) for any information which is otherwise a matter of public record or available from any source not restricted by or subject to a confidentiality agreement; or (iv) in the case of Purchaser, Purchaser's brokers, prospective purchasers or tenants of the Property (each one a "**Prospect**," and more than one the "**Prospects**"), including such Prospects' employees, agents, representatives, contractors, subcontractors, attorneys, consultants, lenders, banks, equity partners, partners and joint venture partners.

27.     **Exhibit C; Paragraph 8**,     Paragraph 8 of **Exhibit C** to the Agreement, shall be deleted and replaced in its entirety with the following:

The Declaration of Covenants, Conditions and Restrictions shall further provide that except if and to the extent that the Town, the County or any other governmental entity affirmatively and in writing undertakes the obligation to do so, the POA shall at its expense (a) maintain any and all grass or other landscaped areas (including planting and replantings, as applicable) within any median, shoulder or other portion of any Dedicated Roadway, (b) remove snow and ice from, keep clear of accumulated dirt and debris, and maintain, repair and replace all sidewalks and trails located within any median, shoulder or other portion of any Dedicated Roadway located within or directly adjacent to Parcels E/F and also including sidewalks (i) located along the north side of Springfield Avenue west of Town Park Drive to the crosswalk (to be constructed) leading across to the south side Springfield Avenue), (ii) located on the east side of Town Park Drive from Parcels E/F continuing to the round-about on Springfield Avenue and along the round-about to the crosswalk on the west side (to be

12

constructed) of Warfield Avenue and (iii) located along the existing sidewalk on the east side of Warfield Avenue from the crosswalk (to be constructed) to another crosswalk (to be constructed) south of the Nexion Building (a/k/a KB Warfield Building) driveway entrance (with respect to (i) – (iii) above, as shown on "Warfield Phase 1, Final Plan Additional Sidewalk Maintenance" attached hereto as **Exhibit T**), (c) operate, maintain, repair and replace any sprinkler system serving such areas and (d) provide, maintain, repair and replace as necessary and cause to be lighted during all periods of darkness, electrical street lighting standards at the entrances to the Warfield Commerce and Cultural Center and along each Dedicated Roadway. All costs of maintenance, repair and replacement incurred by the POA pursuant to this Section shall constitute expenses included in the Assessments.

28.    **Exhibit C; Paragraph 12**. Paragraph 12 of **Exhibit C** to the Agreement is hereby deleted in its entirety. Purchaser shall construct parking for the Warfield Park Parcel on Warfield Avenue, as shown on the Preliminary Subdivision Plan, which shall be completed prior to the issuance of the first certificate of occupancy for the townhouses on Parcel E and Parcel F.

29.    **Exhibit C; Additional Paragraph 14**. An additional Paragraph 14 shall be added to **Exhibit C** to the Agreement to read as follows:

The Declaration of Covenants, Conditions and Restrictions shall further prohibit residential townhome use on Parcel A, Parcel B, Parcel C or Parcel H as shown on the Plat without the written approval of the Mayor and Town Council of the Town, which approval may be withheld in the sole and absolute discretion of the Mayor and Town Council. Any such approval by the Mayor and Town Council shall be solely to satisfy the conditions imposed by such restrictive covenant and shall not constitute regulatory approval or any waiver of such regulatory approval (and all applicable governmental regulatory and review processes related to such proposed development and use, including but not limited to Town Planning Commission and HDC review and County agency review, shall apply). The restrictions set forth above shall be solely to the benefit of the Town and enforceable by the Town only, and not by members of the Association, and this restriction may be amended, waived or released by written agreement between the Town and Purchaser in recordable form. As used herein, references to "residential townhome" or "residential townhouse" shall mean a single-family building consisting of two (2) or more stories that is situated on an individual lot and connected by one or more common sidewalls to another residential townhome that is situated on an adjacent, but individual lot.

30.  **Effect Upon Deposit and Extension Payments**.  Notwithstanding anything contained in the Agreement to the contrary, from and after the Amendment Effective Date, the Deposit and all extension payments, as and when paid pursuant to Sections 6.A(i)(d) and 6.A.(i)(e) of the Agreement shall not be refundable for any reason whatsoever.

31.  **Buildings F and W**.  Notwithstanding anything to the contrary contained in this Agreement, in the Parcel D Escrow Agreement, or such other agreements in connection with the Parcel D Escrow Fund, but subject to the approval of twenty (20) additional townhouse units permitted to be constructed on Parcel E and Parcel F, for a total of 145 townhouse units permitted to be constructed on Parcel E and Parcel F, as consideration for such approval, at Closing, Purchaser agrees to deposit up to a maximum amount of Three Hundred Thousand and No/100 Dollars ($300,000.00) (the "**Buildings F and W Escrow Fund**") in a separate escrow account that shall be used to pay for any hard and soft costs, subject to the limitations set forth below, incurred by Purchaser after the Amendment Effective Date in connection with or related to the buildings and/or site improvements, including, without limitation, parking and infrastructure, for Buildings F and W (the "**Buildings F and W Permitted Expenses**"), and which amount shall be determined as provided below in this Section.  Notwithstanding anything to the contrary set forth above, (a) the Buildings F and W Escrow Fund shall not be used to pay more than Fifty Thousand and No/100 Dollars ($50,000.00) for soft costs (such that any soft costs related to Building F and/or Building W in excess of Fifty Thousand and No/100 Dollars ($50,000.00) in the aggregate shall not be includable within "Building F and W Permitted Expenses"), and (b) any work paid for with funds advanced from the Buildings F and W Escrow Fund for Building F and W Permitted Expenses shall not qualify as amounts expended by Purchaser for a matching disbursement from the Parcel D Escrow Fund.  The Buildings F and W Escrow Fund shall be held by Escrow Agent or such other escrow agent (the "**Buildings F and W Escrow Agent**") as may be mutually agreed upon by the Town and Purchaser and shall be placed and held in escrow by the Buildings F and W Escrow Agent in an interest-bearing account at a federally insured banking institution using Purchaser's Federal Taxpayer ID number identified in Section 7.H(ii) of the Agreement.

The amount of the Buildings F and W Escrow Fund shall be equal to Three Hundred Thousand and No/100 Dollars ($300,000.00) less all Buildings F and W Permitted Expenses incurred by Purchaser after the Amendment Effective Date and prior to the Closing Date as approved and confirmed by the Architect in accordance with the next succeeding sentence.  At or immediately prior to Closing, Purchaser shall submit copies of invoices and other supporting information to the Town for all Buildings F and W Permitted Expenses expended incurred by Purchaser from and after the Amendment Effective Date and prior to the Closing date together with the written approval of the Architect (as defined below) of such invoice and Architect's written confirmation to the Town that all such expenses qualify as Buildings F and W Permitted Expenses.

After the Closing Date, Purchaser shall submit a draw request together with copies of invoices and other supporting information to the Architect (as defined below) for all Buildings F and W Permitted Expenses with a copy to the Town and upon the Architect's approval of such invoice and Architect's written confirmation to the Town that all expenses included within the draw request qualify as Buildings F and W Permitted Expenses, the Town shall authorize the Buildings F and W Escrow Agent to, at Purchaser's direction, reimburse Purchaser or pay the invoicing party for such amounts from the Buildings F and W Escrow Fund within ten (10) days

14

after the Buildings F and W Escrow Agent receives the Town's authorization and the Purchaser's directions, whichever is later.

As used herein, "Architect" shall mean the architect or licensed professional engineer, engineering or construction consulting firm providing engineering and/or architectural services to Purchaser and selected by Purchaser or Purchaser's lender, and who or which is experienced in the design and operation in the State of Maryland of structures similar to Buildings F and W. The parties hereto agree that the decision of the Architect shall be conclusive, non-appealable and binding on the parties except to the extent that there is a disagreement as to whether an expense falls within the definition of Buildings F and W Permitted Expenses. In the event Town objects to a requested payment or reimbursement because such costs and expenses do not fall within the definition of Buildings F and W Permitted Expenses, the parties shall select a separate independent architect, engineer, or other inspector party (the "**Independent Architect**") to resolve the dispute (at the joint expense of the parties) solely as to whether such costs and expenses fall within the definition of Buildings F and W Permitted Expense and the decision of such separate party shall be conclusive, non-appealable and binding on the parties. Within five (5) business days of its receipt of the Independent Architect's written decision, the Town shall authorize the Escrow Agent to pay the Buildings F and W Permitted Expenses that the Independent Architect has approved, if any, in accordance with Purchaser's directions as described above.

32.     **Reimbursement of Application Fees for Tax Credit Application for Building W**. The parties acknowledge that the Historic Tax Credits for Building W referenced in Section 39 of the Agreement have expired. However, because Historic Tax Credits were awarded for Building W and application and review fees and charges paid by Seller in connection therewith in the amount of Twenty Six Thousand Dollars ($26,000.00), the MHT has indicated that it may consider granting a waiver of all or some of future application and review fees and charges for a reapplication or new application by Purchaser for Historic Tax Credits for Building W. In the event Purchaser receives such a waiver of fees and charges from MHT within seven (7) years of the date of Closing, then Purchaser agrees to promptly reimburse Seller (by payment to the Town) for the amount of fees and charges so waived up to an amount not to exceed Twenty Six Thousand Dollars ($26,000.00). The provisions of this Section shall survive Closing.

33.     **Non-Circumvention**. In connection with the sale of the Property pursuant to the terms hereof (the "**Transaction**"), Seller covenants and agrees that neither (i) the Mayor and Town Council of the Town of Sykesville (the "**Mayor and Town Council**") or (ii) the Board of Directors of WDC (the "**WDC Board**") shall via adopted motion or other duly approved action of such body corporate solicit, directly or indirectly through intermediaries, any third party for the purpose of the sale or lease of all or any part of the Property or any interest therein (a "**Solicitation**"), and (b) Seller shall submit and/or direct to Purchaser all communications of third parties regarding those parties' interest in acquiring by sale or lease all or any part of the Property or any interest therein. The obligations under this Section 33 shall terminate and be of no further force or effect upon the earlier of the date on which the Agreement is terminated or upon Purchaser's default under this Agreement which default has continued beyond all applicable cure periods. Nothing herein shall prohibit Seller or any representative of Seller from conducting investigations, studies, conducting interviews and otherwise gathering information of any and all kind and nature whatsoever or from communicating with other persons in the regular course of business regarding the Property or from planning or discussing internally among

themselves, including with the Mayor and Town Council and/or with the WDC Board, regarding matters involving the Property (including but not limited to sale and disposition of the Property), provided such actions and activities do not constitute a Solicitation.  Communications with Seller's lenders having liens on all or part of the Property and negotiation, documentation and execution of modifications and amendments to loan documents and of any other agreements between the Seller (or either of them) and such lenders regarding the Property, including but not limited to the Loan Modification Agreement, shall not be deemed a Solicitation.

34.  **Seller Expenses**.  Purchaser shall be responsible for payment of all sums due from Town to the County under the Planning Review MOU, including but not limited to all customary costs and fees for reviews that are rendered by County above and beyond the County's ordinary Plan review timelines.  Payments shall be due to the County within 30 days after Purchaser's receipt of invoice and shall bear interest at twelve per cent (12%) per annum if not timely paid.  In addition, Purchaser shall be responsible for payment to Seller's legal counsel for fees and services rendered to Seller in connection with the Transaction.  Notwithstanding anything contained in the Agreement to the contrary, Seller shall be solely responsible for the payment to Seller's legal counsel for fees and services rendered to Seller in connection with the Transaction prior to February 27, 2013 (being the date of acceptance by the Town of Purchaser's Letter of Intent date February 25, 2013), and Seller confirms to Purchaser that Purchaser is not responsible for payment of any of Seller's legal fees other than those previously paid, those currently shown as remaining open and unpaid under Rosen Hoover P.A.'s Account Number 0007.077N and those fees for future services related to the Transaction through Closing (including post closing services related to consummation of closing and post-closing obligations of the parties pursuant to the Agreement) as may be invoiced in the future under Rosen Hoover P.A.'s Account Number 0007.077N.  As of the Amendment Effective Date, based solely upon information provided by Rosen Hoover P/A. to Seller, Seller acknowledges and confirms that Purchaser has been invoiced for all such fees as of December 31, 2017, and that all invoices issued prior to and including September 30, 2017 have been paid in full.

35.  **Closing Assistance from Carroll County Economic Development.**  Carroll County Economic Development Office has offered to pay Nine Thousand Dollars ($9,000.00) per month for each month that the Closing on the Property occurs before September 30, 2018.  Upon receipt of such funds, whether paid to Seller, Purchaser or to the Escrow Agent for contribution to closing costs, these funds shall be credited to Purchaser at Closing.

36.  **Cooperation**.  Seller agrees to cooperate in good faith with Purchaser at no cost or expense to Seller (a) in connection with Purchaser's sale, transfer, assignment and/or disposition of Parcel E and Parcel F either by partial assignment of this Agreement to Purchaser's designated assignee ("**Purchaser's Designee**") or by deed designation to Purchaser's Designee, which shall be determined by Purchaser in its sole and absolute discretion, and (b) to minimize transfer taxes, recordation taxes and any and all other government levied taxes and fees in connection with the sale and conveyance of the Property, and/or a portion of the Property thereof to Purchaser's Designee to be paid by Purchaser and/or Purchaser's Designee.  The obligations of Seller under this Section shall be conditioned upon the concurrent and simultaneous closing(s) of (d) the sale and transfer of Parcels E and F as provided above and (e) the sale and transfer under the terms of the Agreement of the remainder of the Property from Seller to Purchaser.

16

37.     **Introductory Statement**. The Introductory Statement is incorporated herein by reference as a substantive part of this Amendment.

38.     **Full Force and Effect**.  Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified.  Purchaser and Seller each hereby ratify and affirm the Agreement, as amended and modified through and including this Amendment, and all of its or the other's, as applicable, respective rights, agreements, obligations, priorities, reservations, promises and waivers as made and agreed and contained therein, all of which shall remain in full force and effect.

39.     **Counterparts and Facsimile**.      This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart.  The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**[SIGNATURES ON NEXT PAGE]**

17

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

SELLER:

WITNESS or ATTEST:

TOWN OF SYKESVILLE

By: _____ 2/12/18 (SEAL)
Name: Ian Shaw
Title:   Mayor

_____

WITNESS or ATTEST:

WARFIELD DEVELOPMENT
CORPORATION

_____

By:_____(SEAL)
Name: Andrew Heck
Title:   President

PURCHASER:

WITNESS or ATTEST:

WARFIELD COLLABORATIVE, LLC

_____

By: _____(SEAL)
Name: Roger A. Conley
Title:   Managing Member

**IN WITNESS WHEREOF,** each party hereto has executed this Amendment under seal, the day and year first above written.

SELLER:

WITNESS or ATTEST:

TOWN OF SYKESVILLE

By: _____ (SEAL)
Name: Ian Shaw
Title: Mayor

WITNESS or ATTEST:

WARFIELD DEVELOPMENT
CORPORATION

By: _____ (SEAL)
Name: Andrew Heck
Title: President

PURCHASER:

WITNESS or ATTEST:

WARFIELD COLLABORATIVE, LLC

By: _____ (SEAL)
Name: Roger A. Conley
Title: Managing Member

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**SELLER:**

WITNESS or ATTEST:                          **TOWN OF SYKESVILLE**

_____                   By: _____ (SEAL)
                                            Name: Ian Shaw
                                            Title:  Mayor

WITNESS or ATTEST:                          **WARFIELD DEVELOPMENT CORPORATION**

_____                   By:_____ (SEAL)
                                            Name: Andrew Heck
                                            Title:  President

                                            **PURCHASER:**

WITNESS or ATTEST:                          **WARFIELD COLLABORATIVE, LLC**

                                            By: _____ (SEAL)
                                            Name: Roger A. Conley
                                            Title:  Managing Member

## EXHIBIT R TO THE AMENDMENT

## CERTIFICATE OF SATISFACTION

(see attached)

## CERTIFICATE OF SATISFACTION

THIS CERTIFICATE OF SATISFACTION is dated as of this _____ day of _____, 2018 by the State of Maryland (the "STATE") to the use of the Maryland Department of Health formerly known as the Department of Health and Mental Hygiene ("MDH"), and the State of Maryland to the use of the Department of General Services ("DGS"), (the above agencies are sometimes hereinafter collectively referred to as the "AGENCIES").

WHEREAS, the STATE, MDH, DGS, and the Town of Sykesville, a municipal corporation (the "TOWN"), entered into a Disposition and Development Agreement, which was recorded on December 23, 2002 among the Land Records of Carroll County, Maryland in Book No. 3176, page 252 (the "Original Disposition Agreement"), as amended in the Amendment to Disposition and Development Agreement and Deeds dated November 8, 2005 and recorded among the aforesaid Land Records in Book 4704, page 197 (the "First Amendment"), and in a Second Amendment to Disposition and Development Agreement dated November 19, 2015 and recorded among the aforesaid Land Records in Book 8202, page 1 (the "Second Amendment", together with the Original Disposition Agreement and First Amendment, hereinafter collectively referred to as the "Disposition Agreement"); and

WHEREAS, the Original Disposition Agreement subjected the real property described in detail therein (the "Warfield Complex) to various terms and conditions, including certain monetary payment obligations by the TOWN to the STATE's Community Trust Fund (the "Payment Obligations");

WHEREAS, the terms and conditions of the Original Disposition Agreement were modified by the First Amendment and Second Amendment, including the Payment Obligations, which was amended in its entirety to eliminate all Payment Obligations, except that, upon the transfer of title to all or a portion of the Warfield Complex by the TOWN, the TOWN shall pay the STATE's Community Trust Fund the amount of $500,000.00; and

NOW THEREFORE, the STATE to the use of the AGENCIES does hereby acknowledge and confirm that the TOWN's payment obligations to the STATE pursuant to the Disposition Agreement in the amount of $500,000.00 has been fully paid, satisfied and discharged as of the date hereof.

**IN WITNESS WHEREOF,** the undersigned have caused these presents to be executed as of the date first above written.

WITNESS:                                    THE STATE OF MARYLAND to the use of the
                                            Maryland Department of Health


_____              By:_____(SEAL)
Date:                                       Name:

WITNESS:                                    THE STATE OF MARYLAND to the use of the
                                            Department of General Services


_____            By:_____(SEAL)
Date:                                       Name:

STATE OF MARYLAND, CITY OF BALTIMORE, to wit:

    I HEREBY CERTIFY that on this _____ day of _____, 2018, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is ascribed to the within instrument, who signed the same in my presence, acknowledged herself to be the _____ of the STATE OF MARYLAND TO THE USE OF THE MARYLAND DEPARTMENT OF HEALTH and in such capacity, executed the foregoing instrument for the purposes therein contained as the act and deed of the State of Maryland to the use of the Maryland Department of Health.

    Witness my hand and Notarial Seal.


                                            _____
                                            Notary Public
                                            My Commission expires _____

STATE OF MARYLAND, CITY OF BALTIMORE, to wit:

    I HEREBY CERTIFY that on this _____ day of _____, 2018, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is ascribed to the within instrument, who signed the same in my presence, acknowledged herself to be the _____ of the STATE OF MARYLAND TO THE USE OF THE DEPARTMENT OF GENERAL SERVICES and in such capacity, executed the foregoing instrument for the purposes therein contained as the act and deed of the State of Maryland to the use of the Department of General Services.

    Witness my hand and Notarial Seal.


                                            _____
                                            Notary Public
My Commission expires _____

G:\wpdata\0007.077N\Certificate of Satisfaction - Disposition Agreement 011218.doc

## EXHIBIT S TO THE AMENDMENT

## RIGHT OF ENTRY AGREEMENT

(see attached)

## RIGHT OF ENTRY AGREEMENT

**THIS RIGHT OF ENTRY AGREEMENT** (this "**Agreement**") is made and entered into this _____ day of _____, 201__ by and between **THE TOWN OF SYKESVILLE,** a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and **WARFIELD DEVELOPMENT CORPORATION,** a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and **WARFIELD COLLABORATIVE, LLC,** a Maryland limited liability company ("**Purchaser**").

**WHEREAS,** Seller and Purchaser have entered into an Agreement of Sale and Purchase dated April 17, 2014, as amended from time to time (the "Purchase Agreement"), which concerns land located in Carroll County, Maryland, which is more particularly described in the Purchase Agreement and is described therein as the Property. The meaning of the "Property" herein shall have the same meaning as ascribed to it in the Purchase Agreement, and except as otherwise expressly set forth herein, any capitalized terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement; and

**WHEREAS,** pursuant to Section 34 of the Purchase Agreement, Seller and Purchaser agreed that Purchaser would use and disclose information it obtains about the Property solely in connection with its purchase evaluation, and Seller and Purchaser agreed to each maintain as confidential any and all materials obtained about the other, and, in the case of information concerning the Property, Purchaser agreed not to disclose any such information to any third party; and

**WHEREAS,** pursuant to Section 11 of the Purchase Agreement, the right to entry on the Property was restricted, such that only Purchaser and its employees, agents, contractors and subcontractors were entitled to enter the Property prior to Closing, and while thereon were entitled to make surveys and appraisals, take measurements, test borings, other tests of surface and subsurface conditions and soil tests, make structural and engineering studies, and inspect the Property, all at Purchaser's sole cost and expense; and

**WHEREAS,** in anticipation of Closing and furtherance of the development and marketing of the Property Purchaser desires to disclose information to its prospective purchasers and tenants for the Property (more specifically defined below as its Prospects) and to allow such persons and their representatives onto the Property, and Purchaser has requested Seller to allow such entry; and Seller is agreeable to allowing such persons designated by Purchaser to receive information about the Property and to have the right of entry onto the Property, subject to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** for and in consideration of the mutual promises of the parties as set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1.     **Confidentiality, Non-Disclosure and Return of Documents**.  Seller and Purchaser agree to hereby amend the Confidentiality provisions of the Purchase Agreement to permit Purchaser to disclose information to Purchaser's brokers, prospective purchasers or tenants of the Property (each one a "Prospect," and more than one the "Prospects"), including such Prospects' employees, agents, representatives, contractors, subcontractors, attorneys, consultants, lenders, banks, equity partners, partners and joint venture partners.  Accordingly, Seller and Purchaser hereby agree that an additional exception to the Confidentiality requirement of Section 34 of the Purchase Agreement will be that, effective upon the date of this Agreement, in the case of Purchaser a fourth exception to disclosure of information Purchaser obtains about the Property shall be the Prospects. Thus, Purchaser may after the

date of this Agreement disclose information about the Property to its Prospects subject to the conditions of this Agreement and any further amendment of the Purchase Agreement.

a.    Prior to Purchaser's disclosure of any information about the Property to a Prospect, Purchaser shall first obtain the Prospect's written agreement to keep the information confidential, by obtaining Prospect's signed Right of Entry & Confidentiality Agreement ("Prospect's Entry Agreement"), as provided below. Prospect's agreement not to disclose any information to any third party, shall provide exceptions for disclosure (i) to such Prospect's respective employees, agents, representatives, contractors, subcontractors, permitted assignees, property consultants, attorneys lenders, banks, equity partners, partners and joint venture partners; (ii) as required by applicable law or any court of competent jurisdiction; and (iii) of any information that is otherwise a matter of public record or available from any source not restricted by or subject to a confidentiality agreement. Purchaser shall provide a copy of each Prospect's signed Prospect's Entry Agreement to Seller prior to providing any information to the Prospect.

b.    The Prospect's Entry Agreement shall include Prospect's agreement to: (i) maintain all information received regarding the Property, whether received verbally or by paper or electronic copy or in any other form or manner, as confidential; and (ii) deliver to Purchaser and Seller copies of any and all of Prospect's Studies and Reports, including any and all other third party reports generated for or at the direction of Prospect, about the Property; provided, however, Prospect shall not be obligated to deliver any part of such item that contains any proprietary information about or concerning Prospect or Prospect's operations, businesses and/or services, or any and all analyses, compilations, studies or other documents or information derived from proprietary information by Prospect, its affiliates, agents or representatives.

2.    **Right of Entry**. Seller hereby agrees that Purchaser may grant the right to enter the Property to Prospects prior to Closing, subject to the further provisions of this Agreement. While on the Property, Prospects may view, inspect, photograph, measure, survey and make appraisals and may make structural and engineering studies. In the event that Prospects wish to make test borings, other tests of surface and subsurface conditions or soil tests, or other invasive tests upon the Property, they may do so only upon the prior, written, express permission and authorization of Seller. All such inspection and activities shall be at Purchaser's or Prospect's sole cost and expense, without any cost or expense shared by Seller. Prior to allowing any Prospect entry upon the Property, Purchaser shall provide a copy of each such Prospect's signed Prospect's Entry Agreement to Seller.

a.    Purchaser agrees that if it exercises its right under the provisions of this Section to allow Prospects to enter the Property, Purchaser shall require its Prospects to first agree in writing to keep the Property free and clear of any and all liens or claims resulting therefrom.

b.    Upon termination of the Purchase Agreement or this Agreement for any reason whatsoever, to the extent the Property has been damaged in any respect by reason of or as a result of Prospect's exercise of its rights under this Section, then Prospect shall promptly restore the Property to substantially the same condition as existed as of the date of such Prospect's Entry Agreement. The provisions of this Section 2.b shall survive Closing or the earlier termination of the Purchase Agreement, this Agreement or each Prospect's Entry Agreement.

c.    If upon termination of the Purchase Agreement or any Prospect's Entry Agreement for any reason whatsoever, to the extent the Property has been damaged in any respect by reason of or as a result of Prospect's entry upon the Property pursuant to Prospect's Entry Agreement and

2

Prospect has failed to promptly restore the Property to substantially the same condition as existed as of the date of such Prospect's Entry Agreement as required by Section 2.b above, then Purchaser shall be fully liable and responsible to promptly restore the Property to the extent that its Prospect was required to do. The provisions of this Section 2.c shall survive termination of the Purchase Agreement, this Agreement or any Prospect's Entry Agreement.

3. **Indemnity**. Before allowing any Prospects to enter the Property, Purchaser shall provide Seller with such Prospect's written agreement, as provided in Prospect's Entry Agreement, to indemnify, defend and hold harmless Seller and Purchaser, and their elected officials, officers, directors, employees, partners and members from any claim, loss, injury, liability, damage or expense, including reasonable attorneys' fees and costs, arising out of (i) Prospect's entry upon the Property pursuant to Section 2.a of this Agreement, (ii) a breach by Prospect of its obligation to restore the Property, if such restoration is required under the terms of Prospect's agreement with Purchaser, and (iii) any lien, claim or levy, or governmental imposed fine and/or penalty, including without limitation mechanic's, materialman's and judgment liens, filed or pending against any portion of the Property, or title thereto, by a contractor or subcontractor authorized by Prospect and having a claim against or through Prospect. The provisions of this Section 3 shall survive Closing or the earlier termination of the Purchase Agreement, this Agreement or any Prospect's Entry Agreement.

4. **Insurance. Prior to allowing any Prospect to enter upon the Property, Purchaser shall determine whether Prospect's activity on the Property will be limited such that such Prospect will be a guest and/or invitee covered under Purchaser's policy of insurance, or whether such Prospect's more extensive activity to do testing, investigation or other due diligence requires Prospect to provide proof of its own insurance coverage.** Each Prospect that Purchaser requires to obtain its own insurance coverage shall obtain, at Prospect's sole cost and expense, and provide to Purchaser, who shall provide to Seller, evidence, reasonably acceptable to Seller, that Prospect and its consultants performing such investigations have adequate liability insurance coverage in an amount of at least One Million and No/100 Dollars ($1,000,000.00), per occurrence and in the aggregate, comprehensive general liability insurance, with a contractual liability endorsement that insures the Prospect's indemnity obligations hereunder and that names Seller and Purchaser as additional insureds thereunder. Prior to entering upon the Property, each Prospect required to have its own insurance also shall provide evidence reasonably satisfactory to Seller that Prospect has and maintains workers' compensation insurance coverage for its employees as prescribed by the State of Maryland. Copies of such Prospect's insurance policies, or certificates evidencing such policies, shall be provided by Prospect to Purchaser, and by Purchaser to Seller, prior to Prospect undertaking any inspection, testing or investigation under any Prospect's Entry Agreement. All such insurance coverage shall be maintained by Prospect throughout the term of Prospect's Entry Agreement.

a. Failure to provide such copies of policies or insurance certificates shall not relieve Prospect or their agents and contractors of their obligation to obtain and keep in force the insurance coverages required by this Agreement. The insurance required hereby may be maintained by means of a policy or polices of blanket insurance so long as the provisions of this Agreement are fully satisfied and the required amounts are specifically allocated to the Property without possibility of diminution because of occurrences or other properties. All policies of insurance required to be carried by Prospect pursuant to this Section 4 shall provide that the policies shall not be subject to cancellation, termination or change except after thirty (30) days prior written notice to Seller and Purchaser. Prospect shall provide evidence of all renewals of the aforesaid Prospect's insurance policies in a form satisfactory to Seller and Purchaser at least thirty (30) days prior to the effective date of such renewals.

IN WITNESS WHEREOF, the parties hereto have executed and sealed this Agreement on the dates hereinafter indicated.

3

[SIGNATURES ON FOLLOWING PAGE]

**SELLER:**
**TOWN OF SYKESVILLE**

WITNESS or ATTEST:

_____

By: _____ (SEAL)
Name: Ian Shaw
Title: Mayor
Date: 2/12/18

WITNESS or ATTEST:

_____

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name: Andrew Heck
Title: President
Date: _____

WITNESS or ATTEST:

_____

**PURCHASER:**
**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name: _____ (Print)
Title: _____
Date: _____

### PROSPECT'S RIGHT OF ENTRY & CONFIDENTIALITY AGREEMENT
("Prospect's Entry Agreement")

_____ ("Prospect") hereby agrees to be bound to, abide by and adhere to all of the duties and obligations of Prospect and other applicable provisions of the above Right of Entry Agreement, as more specifically described above. Any capitalized terms herein shall have the meanings ascribed to them in the above Right of Entry Agreement. Prospect agrees to keep the Property free and clear of any and all liens or claims resulting from its activity on the Property. Prospect agrees to indemnify, defend and hold harmless Seller and Purchaser and restore the Property, all as described more specifically in the above Right of Entry Agreement. If required to do so by Purchaser as indicated here: ____ Required, ____ Not Required, Prospect shall maintain and provide proof of insurance coverage as specified in the above Right of Entry Agreement.

Further, except as more specifically described in the above Right of Entry Agreement, Prospect agrees: (i) to maintain all information received regarding the Property, whether received verbally or by paper or electronic copy or in any other form or manner, as confidential; (ii) to obtain from each of its employees, agents, representatives, contractors, subcontractors, permitted assignees, property consultants attorneys, lenders, banks, equity partners, partners, and joint venture partners who have access to the information, their agreement to maintain the confidentiality of the information; and (iii) to deliver to Purchaser and Seller copies of any and all of Prospect's studies and reports and any and all other third party reports generated for or at the direction of Prospect.

**PROSPECT**

WITNESS or ATTEST:

_____

_____ (Print)

BY: _____ (SEAL)
Name: _____ (Print)

4

WITNESS or ATTEST:

SELLER:
TOWN OF SYKESVILLE

By: _____ (SEAL)
Name: Ian Shaw
Title: Mayor
Date: _____

WITNESS or ATTEST:

WARFIELD DEVELOPMENT CORPORATION

By: _____ (SEAL)
Name: Andrew Heck
Title: President
Date: _____Feb. 12, 2018_____

WITNESS or ATTEST:

PURCHASER:
WARFIELD COLLABORATIVE, LLC

By: _____ (SEAL)
Name: _____ (Print)
Title: _____
Date: _____

## PROSPECT'S RIGHT OF ENTRY & CONFIDENTIALITY AGREEMENT
("Prospect's Entry Agreement")

_____ ("Prospect") hereby agrees to be bound to, abide by and adhere to all of the duties and obligations of Prospect and other applicable provisions of the above Right of Entry Agreement, as more specifically described above. Any capitalized terms herein shall have the meanings ascribed to them in the above Right of Entry Agreement. Prospect agrees to keep the Property free and clear of any and all liens or claims resulting from its activity on the Property. Prospect agrees to indemnify, defend and hold harmless Seller and Purchaser and restore the Property, all as described more specifically in the above Right of Entry Agreement. If required to do so by Purchaser as indicated here: ____ Required, ____ Not Required, Prospect shall maintain and provide proof of insurance coverage as specified in the above Right of Entry Agreement.

Further, except as more specifically described in the above Right of Entry Agreement, Prospect agrees: (i) to maintain all information received regarding the Property, whether received verbally or by paper or electronic copy or in any other form or manner, as confidential; (ii) to obtain from each of its employees, agents, representatives, contractors, subcontractors, permitted assignees, property consultants attorneys, lenders, banks, equity partners, partners, and joint venture partners who have access to the information, their agreement to maintain the confidentiality of the information; and (iii) to deliver to Purchaser and Seller copies of any and all of Prospect's studies and reports and any and all other third party reports generated for or at the direction of Prospect.

### PROSPECT

WITNESS or ATTEST:

_____ (Print)

BY: _____ (SEAL)
Name: _____ (Print)
Title: _____

Date: _____

4

[SIGNATURES ON FOLLOWING PAGE]

**WITNESS or ATTEST:**

SELLER:
**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name: Ian Shaw
Title:  Mayor
Date: _____

_____

**WITNESS or ATTEST:**

**WARFIELD DEVELOPMENT CORPORATION**

By: _____ (SEAL)
Name:  Andrew Heck
Title:  President
Date: _____

_____

**WITNESS or ATTEST:**

*Rebecca Romley*

PURCHASER:
**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name:  *Roger A. Conley* (Print)
Title:  *Managing Member, Warfield Collaborative LLC*
Date:  *2/12/18*

## PROSPECT'S RIGHT OF ENTRY & CONFIDENTIALITY AGREEMENT
("Prospect's Entry Agreement")

_____ ("Prospect") hereby agrees to be bound to, abide by and adhere to all of the duties and obligations of Prospect and other applicable provisions of the above Right of Entry Agreement, as more specifically described above. Any capitalized terms herein shall have the meanings ascribed to them in the above Right of Entry Agreement. Prospect agrees to keep the Property free and clear of any and all liens or claims resulting from its activity on the Property. Prospect agrees to indemnify, defend and hold harmless Seller and Purchaser and restore the Property, all as described more specifically in the above Right of Entry Agreement. If required to do so by Purchaser as indicated here: ____ Required, ____ Not Required, Prospect shall maintain and provide proof of insurance coverage as specified in the above Right of Entry Agreement.

Further, except as more specifically described in the above Right of Entry Agreement, Prospect agrees: (i) to maintain all information received regarding the Property, whether received verbally or by paper or electronic copy or in any other form or manner, as confidential; (ii) to obtain from each of its employees, agents, representatives, contractors, subcontractors, permitted assignees, property consultants attorneys, lenders, banks, equity partners, partners, and joint venture partners who have access to the information, their agreement to maintain the confidentiality of the information; and (iii) to deliver to Purchaser and Seller copies of any and all of Prospect's studies and reports and any and all other third party reports generated for or at the direction of Prospect.

**PROSPECT**

**WITNESS or ATTEST:**

_____ (Print)

_____

BY: _____ (SEAL)
Name: _____ (Print)

4

EXHIBIT T TO THE AMENDMENT

## WARFIELD PHASE 1, FINAL PLAN ADDITIONAL SIDEWALK MAINTENANCE

(see attached)

0007.077N\Warfield-11[th] Amendment to Purchase Agreement.djh 020918



**MRA**

MORRIS & RITCHIE ASSOCIATES
1414 KEY HIGHWAY SUITE 201P
BALTIMORE MD 21230

date: 2/9/18
scale: none

# EXHIBIT T

WARFIELD PHASE 1: FINAL PLAN
ADDITIONAL SIDEWALK
MAINTENANCE

POND

EXISTING TRAIL EXTENSION
TO BE MAINTAINED BY THE
TOWN OF SYKESVILLE

FOREST
CONSERVATION
EASEMENT NO. 1

PARCEL
E/F

PARCEL
D

PROPOSED SIDEWALK TO
BE MAINTAINED BY HOA

SPRINGFIELD
AVE

EX. SIDEWALK TO BE
MAINTAINED BY POA

EX. R/W
(WIDTH VARIES)

PARCEL
C

PROP. CURB
AND GUTTER

PROP. COMMERCIAL
OFFICE
19,000± S.F.

PARCEL
A/B

WARFIELD AVE.

SPRINGFIELD
AVENUE

## TWELFTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE

THIS TWELFTH AMENDMENT TO AGREEMENT OF SALE AND PURCHASE (this "**Amendment**"), dated as of June 26th, 2018 (the "**Amendment Effective Date**") by and among THE TOWN OF SYKESVILLE, a municipal corporation organized and existing under the laws of the State of Maryland (the "**Town**") and WARFIELD DEVELOPMENT CORPORATION, a Maryland non-profit corporation ("**WDC**") (the Town and WDC being hereinafter collectively referred to as "**Seller**") and WARFIELD COLLABORATIVE, LLC, a Maryland limited liability company (the "**Purchaser**").

### INTRODUCTORY STATEMENT

(a)  By Agreement of Sale and Purchase (the "**Original Agreement**") dated April 17, 2014, Seller agreed to sell and Purchaser agreed to purchase the Property (as more fully described in the Original Agreement) located in Sykesville, Carroll County, Maryland. The Original Agreement was amended by First Amendment to Agreement of Sale and Purchase dated June 24, 2014 (the "**First Amendment**"), by Second Amendment to Agreement of Sale and Purchase dated January 28, 2015 (the "**Second Amendment**"), by Third Amendment to Agreement of Sale and Purchase dated July 1, 2015 (the "**Third Amendment**"), by Fourth Amendment to Agreement of Sale and Purchase dated March 31, 2016 (the "**Fourth Amendment**"), by Fifth Amendment to Agreement of Sale and Purchase executed as of June 30, 2016 but having an effective date of May 31, 2016 (the "**Fifth Amendment**"), by Sixth Amendment to Agreement of Sale and Purchase dated June 21, 2017 (the "**Sixth Amendment**"), by Seventh Amendment to Agreement of Sale and Purchase dated July 31, 2017 (the "**Seventh Amendment**"), by Eighth Amendment to Agreement of Sale and Purchase dated August 31, 2017 (the "**Eighth Amendment**"), by Ninth Amendment to Agreement of Sale and Purchase dated September 30, 2017 (the "**Ninth Amendment**"), by Tenth Amendment to Agreement of Sale and Purchase dated as of November 30, 2017 (the "**Tenth Amendment**"), and by Eleventh Amendment to Agreement of Sale and Purchase having an effective date of December 15, 2017 (the "**Eleventh Amendment**"); the Original Agreement, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment, Ninth Amendment, Tenth Amendment and Eleventh Amendment are hereinafter referred to collectively as the "**Agreement**").

(b)  The parties now desire and agree to amend the terms and conditions in connection with the Water Tower in Section 5.B.(vii) of the Agreement and to make such other and further amendments to the Agreement as set forth in this Amendment.

NOW, THEREFORE, in consideration of the covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.  **Amendment to Section 2.B.(iv).** Section 6 of the Eleventh Amendment shall be deleted and replaced in their entirety with the following:

> [...] Interest shall accrue until maturity at which point the entire unpaid principal and all accrued interest then outstanding shall be due and payable. The Deed of Trust shall secure repayment of the

1

Note and shall impose and constitute a lien on Parcel A, Parcel B, Parcel C, Parcel D, Parcel D-1, Parcel G, and Parcel H. Notwithstanding, Purchaser shall be entitled to repay the Note in part and shall be entitled to release portions of the applicable Parcel(s), condominium unit(s) or other property from the lien of the Deed of Trust upon partial conversion of the Note to cash and the deposit of such cash into the Parcel D Escrow Fund in the amounts as more fully set forth in an exhibit to be incorporated in the Deed of Trust ("**Release Exhibit**"). Upon Purchaser's partial or full conversion of the Note, in accordance with the Parcel D Escrow Agreement, Seller shall execute and deliver a partial or full release of the lien of the Deed of Trust (as the case may be), in accordance with the terms and conditions of the Deed of Trust. All conversions under the Note shall be paid directly into the Parcel D Escrow Fund and shall thereafter be subject to disbursement in accordance with the terms of the Parcel D Escrow Agreement (as defined in Section 7.H.(ii) below). The Escrow Agent under the Parcel D Escrow Agreement shall deliver written confirmation of receipt of all such payments together with such other reasonable information and documentation as requested by the Town regarding the same. It shall be a condition of Closing for both Seller and Purchaser that a mutually agreeable Release Exhibit for the partial release payments for each Parcel and condominium unit be agreed upon and made a part of the Deed of Trust.

2.    **Amendment to Section 5.B.(vii).** Section 5.B.(vii) of the Agreement shall be deleted and replaced in its entirety with the following:

(vii)    _Tower Agreement._ At Closing, the parties shall execute and deliver for recording an easement or other agreement (such easement or other agreement being hereinafter referred to as the "**Tower Agreement**") in recordable form pursuant to which, for a period of thirty (30) years, the Town and Purchaser agree to divide any net revenues derived from (a) the use of the water tower on Parcel H (the "**Water Tower**") as a cell tower or (b) a new cell tower that is constructed on Parcel H within ten (10) years of the Closing Date, in either case, in the following manner: seventy-five percent (75%) of such net revenues to the Town and twenty-five percent (25%) of such net revenues to Purchaser, until such time as the Town has received Two Hundred Thousand and No/100 Dollars ($200,000.00) in net revenues; and thereafter, the Town and Purchaser shall divide any net revenues equally. For the purpose of the preceding sentence, "net revenues" shall mean all revenues received less all costs of maintenance for the cell tower (not including, however, capital costs). Notwithstanding anything contained in this Agreement to the contrary, Purchaser shall have the right, but not the obligation, to demolish and remove the Water Tower from Parcel H (the "**Water Tower Demolition**") at

Purchaser's sole cost and expense at any time after the Closing Date. Purchaser shall pay to the Town the Put Option Payment (as defined below) within ninety (90) days of completion of the Water Tower Demolition. In the event the Water Tower Demolition occurs and a new cell tower is constructed on Parcel H within ten (10) years from the Closing Date, then (c) the thirty year term of Tower Agreement shall be extended by the additional period from the Closing Date to the date of completion of the new cell tower period and (d) the net revenues of the new cell tower shall be divided between the Town and Purchaser as provided above (and the Put Option Payment previously paid shall be credited against sums due to the Town until the credit is fully exhausted). In the event of the Water Tower Demolition and no new cell tower has been constructed on Parcel H within ten (10) years from the Closing Date, then upon the passage of ten (10) years from the Closing Date, the Tower Agreement shall automatically terminate and the parties shall thereafter be released from any further liability or obligation to each other under the Tower Agreement except for those that are expressly stated to survive termination of the Tower Agreement.

The Tower Agreement shall further provide that between the period beginning on the date which is three (3) years after the Closing Date and expiring on the date which is seven (7) years after the Closing Date, and further provided Seller has not previously received payment under the preceding paragraph as a result of the Water Tower Demolition, Seller shall have the right to exercise a put option to sell its entire interest of the Tower Agreement (the "**Put Option**") to Purchaser for a price equal to the difference between One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) and the total net revenues actually received by Seller pursuant to the Tower Agreement (such difference, the "**Put Option Payment**"). Upon Seller's exercise of the Put Option in accordance with this Section, Purchaser shall have ninety (90) days from the date Purchaser receives written notice of the Put Option from Seller to make the Put Option Payment. Upon payment by Purchaser of the Put Option Payment, Seller shall have no further rights to net revenues under the Tower Agreement, and the parties shall thereupon be released from any further liability or obligation to each other except for those that are expressly stated to survive termination of the Tower Agreement.

As used in this Section 5.B.(vii), "Parcel H" shall mean the lands comprising "Parcel H" on the Closing Date, and, for the avoidance of doubt, shall not mean or be expanded to include any additional land that may be consolidated, merged, or added to Parcel H in the future.

3

3.   **Assignment of Integrace Easement**.  The Agreement is amended to insert the following new Section 6.B.(xvi) after Section 6.B.(xv):

(xvi)   An Assignment of the Deed of Easement dated as of December 5, 2017 by and among Integrace, Inc., the Town and Purchaser that was recorded among the Land Records on December 28, 2017 in Liber 8891 at Folio 401, whereby the Town assigns all of its right, title and interest under such Deed of Easement to Parkside at Warfield, L.C., a Maryland limited liability company.

4.   **Cooperation**.  Section 7.A. of the Agreement shall be amended to include the following paragraph after the end of the last paragraph:

After Closing, Seller agrees to cooperate in good faith with Purchaser to provide any documentation (proposed drafts and/or final versions) or other information reasonably requested by Purchaser in connection with the Leases and Contracts.   The preceding obligation of Seller shall survive Closing.

5.   **Waiver of Seller's Rights under Section 7.B.**  Section 7.B. of the Agreement is hereby deleted in its entirety.

6.   **Storm Water Management Facilities**.  Section 7.D. of the Agreement shall be amended to include the following paragraph after the end of the last paragraph:

In furtherance of rights granted and the agreements set forth in Sections 5.A.(xvii) and 7.D. as to Purchaser's right to expand Storm Water Management Facility 1 and to construct the Storm Water Management Facilities, the Town agrees to promptly grant and deliver such temporary and permanent easements in, over, under, across, through and upon the Warfield Park Parcel as Purchaser may reasonably request.  The preceding obligation of the Town shall survive Closing.

7.   **Public Project Escrow Component**.  The second paragraph of Section 7.H.(ii) is hereby deleted and replaced in its entirety with the following:

Notwithstanding anything to the contrary provided in this Agreement, Purchaser hereby agrees that Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) (the "**Public Project Escrow Component**") of the Parcel D Escrow Fund shall paid and distributed to the Town, for use in connection with public projects as the Town, in the Town's sole and absolute discretion, determines will, directly or indirectly, benefit and/or enhance Purchaser's proposed development for the Property, within or with regard to the following: (a) the Warfield Park Parcel as shown on the Plat, (b) the Town's Millard Cooper Park, (c) the Town's

4

Gatehouse Museum located next to Millard Cooper Park, (d) the "Girl's Shelter Property" situated immediately next to the Millard Cooper Park and the Gatehouse Museum, (e) certain property containing approximately 2.5112 acres directly adjoining Millard Cooper Park owned by Episcopal Ministries to the Aging, Inc. (or an affiliate thereof) which the Town has the option to ground lease for recreational uses (pursuant to Memorandum of Understanding executed in connection with the Route 32/Springfield Avenue Intersection Project), and/or (f) the streetscape (including road improvements, storm water management facilities, street trees and plantings and other enhancements) along any or all of Main Street, Springfield Avenue and at the intersection of Springfield Avenue and Central Avenue.

The Parcel D Escrow Agreement, Preservation Agreement, Deed of Trust and/or Note shall further provide that as a condition of the sale and/or release of the affected Parcel from the lien of the Deed of Trust, the amount of the release price for such Parcel(s) shall be converted to cash and deposited into the Parcel D Escrow Fund, which shall be disbursed to Purchaser for work performed on the Parcel D Buildings or with respect to infrastructure improvements within Parcel D in accordance with the terms and conditions of the Parcel D Escrow Agreement. The disbursement of funds to the Purchaser from the Parcel D Escrow Agreement shall be made, first, from the Parcel D Escrow Fund, until exhausted, and then, by a dollar for dollar reduction in the Note.

8.    **Exhibit N (Form of Promissory Note)**.  Exhibit N to the Agreement is hereby deleted and replaced in its entirety with the Exhibit N attached to this Amendment.

9.    **Exhibit O (Form of Purchase Money Deed of Trust)**.  Exhibit O to the Agreement is hereby deleted and replaced in its entirety with the Exhibit O attached to this Amendment.

10.    **Exhibit P (Form of Preservation Agreement)**.  Exhibit P to the Agreement is hereby deleted and replaced in its entirety with the Exhibit P attached to this Amendment.

11.    **Exhibit Q (Form of Parcel D Escrow Agreement)**.  Exhibit Q to the Agreement is hereby deleted and replaced in its entirety with the Exhibit Q attached to this Amendment.

12.    **Parcel D Escrow Fund II**.  Notwithstanding anything to the contrary contained in this Agreement, in the event of a partial assignment of this Agreement by Purchaser as to Parcel E and Parcel F, then Parcel E and Parcel F shall not be subject to the lien of the Deed of Trust in exchange for an aggregate payment by Purchaser of $400,000.00, which shall be due and payable upon the closing of the sale of Parcel E and Parcel F and shall be deposited with the Escrow Agent in a separate escrow account that shall be used to pay for any hard and soft costs, subject to the limitations set forth below, incurred by Purchaser after the Amendment Effective Date in connection with or related to Parcel D (the "**Parcel D Escrow Account II**"). The Parcel

D Escrow Account II shall not be used to pay more than One Hundred Thousand and No/100 Dollars ($100,000.00) for soft costs, and any work paid for with funds advanced from the Parcel D Escrow Account II shall qualify as amounts expended by Purchaser for a matching disbursement from the Parcel D Escrow Fund only. The Parcel D Escrow Fund II shall be held by Escrow Agent or such other escrow agent as may be mutually agreed upon by the Town and Purchaser and shall be placed and held in escrow in an interest-bearing account at a federally insured banking institution using Purchaser's (or if assigned, Purchaser's assignee's) applicable Federal Taxpayer ID number.

13.    **Assignment**. Seller hereby consents to the partial assignment of this Agreement by Purchaser of the following Parcels or condominium unit to each of the following parties and approves of the following allocations of the Purchase Price to be paid at Closing by each party:

| Assignee | Parcel or Condominium Unit | Purchase Price Allocation |
|---|---|---|
| Warfield Center, LLC, a Maryland limited liability company | Parcel A and Parcel B | $1,115,404.38 |
| Warfield Properties, LLC, a Maryland limited liability company | Parcel C and Parcel H | $240,950.05 |
| Warfield Restorations, LLC, a Maryland limited liability company | Parcel D, Condominium Units 9, 10 and 11 | $703,283.32 |
| Warfield Historic Quad, LLC, a Maryland limited liability company | Parcel D, Condominium Units 1, 2, 3 and 4 | $10.00 |
| Warfield Historic Properties, LLC, a Maryland limited liability company | Parcel D, Condominium Units 5, 6, 7, 8, 12, 13 and 14, the common elements and Future Phase; Parcel D-1 and Parcel G | $10.00 |
| Parkside at Warfield, L.C., a Maryland limited liability company | Parcel E and Parcel F | $6,154,909.29 |

14.    **Buildings F and W Historic Tax Credits.**    Section 32 of the Eleventh Amendment is deleted and replaced in its entirety with the following:

The parties acknowledge that the Historic Tax Credits for Building W referenced in Section 39 of the Agreement have expired.  However, because Historic Tax Credits were awarded for Building W and application and review fees and charges were paid by Seller in connection therewith in the amount of Twenty Six Thousand Dollars ($26,000.00), MHT has indicated that it may consider granting a waiver of all or some of future application and review fees and charges for a reapplication or new application by Purchaser for Historic Tax Credits for Building W.  In the event Purchaser or its assignee receives such a waiver of fees and charges from MHT within one (1) year of the date of Closing, then Purchaser or its assignee agrees to promptly reimburse Seller (by payment

to the Town) for the amount of fees and charges so waived up to an amount not to exceed Twenty Six Thousand Dollars ($26,000.00). The Town shall deliver to Purchaser or its assignee all plans, budget, and other materials submitted to MHT in support of its application for the Building W Historic Tax Credits within thirty (30) days after the Closing Date, which shall be a condition precedent to Purchaser's obligation to reimburse Seller under this Section 32. The parties further acknowledge and affirm that there are Historic Tax Credits that were awarded for Building F, which have not yet expired. Seller shall assign all its right, title, and interest in the Historic Tax Credits for Building F to Purchaser's assignee, Warfield Historic Properties, LLC at Closing. The parties acknowledge that Purchaser paid all application and review fees and charges associated with the Building F Historic Tax Credits and, therefore, Seller shall not be entitled to any additional payment for Seller's assignment of the Building F Historic Tax Credits to Purchaser or its assignee. The provisions of this Section shall survive Closing.

15. **Early Closing Credit.** The Carroll County Economic Development Office ("CCEDO") has offered to pay $9,000.00 per month (not to exceed $36,000.00) for each month that Closing takes place before September 30, 2018 (the "CCEDO Credit"). The parties agree and acknowledge that the CCEDO Credit shall be paid to the benefit of the Purchaser or its assignee. Therefore, in the event that the CCEDO Credit is paid by the CCEDO to Seller after Closing, Seller, upon receipt of the CCEDO Credit, shall pay to Purchaser or its assignee an amount equal to the CCEDO Credit. In the event that CCEDO pays the CCEDO Credit to Seller at or before Closing, the CCEDO Credit shall be retained by Seller and credited to the Purchase Price at Closing.

16. **Introductory Statement.** The Introductory Statement is incorporated herein by reference as a substantive part of this Amendment.

17. **Full Force and Effect.** Except as amended herein, the Agreement shall, upon full execution, be in full force and effect as amended by this Amendment and no other covenants, terms and conditions are amended or modified. Purchaser and Seller each hereby ratify and affirm the Agreement, as amended and modified through and including this Amendment, and all of its or the other's, as applicable, respective rights, agreements, obligations, priorities, reservations, promises and waivers as made and agreed and contained therein, all of which shall remain in full force and effect.

18. **Counterparts and Facsimile.** This Amendment may be executed in counterparts and as so executed shall constitute one instrument binding on all parties, notwithstanding the fact that all parties have not signed the original or same counterpart. The parties agree that copies of signatures sent via electronic mail or facsimile transmission shall be treated as having the same legal force and effect as original signatures.

**[SIGNATURES ON NEXT PAGE]**

**IN WITNESS WHEREOF**, each party hereto has executed this Amendment under seal, the day and year first above written.

**WITNESS or ATTEST:**

**WITNESS or ATTEST:**

**WITNESS or ATTEST:**

**SELLER:**

**TOWN OF SYKESVILLE**

By: _____ (SEAL)
Name: Ian Shaw
Title:  Mayor

**WARFIELD DEVELOPMENT
CORPORATION**

By: _____ (SEAL)
Name: Andrew Heck
Title:  President

**PURCHASER:**

**WARFIELD COLLABORATIVE, LLC**

By: _____ (SEAL)
Name: Roger A. Conley
Title:  President