BOOK3 1 7 6 PAGE0 2 5 2

538264

## DISPOSITION AND DEVELOPMENT AGREEMENT

### DATED NOVEMBER        , 2002

### BY AND BETWEEN

### STATE OF MARYLAND ("STATE"),

### TO THE USE OF THE DEPARTMENT OF HEALTH AND MENTAL HYGIENE ("DHMH"),

### AND THE STATE OF MARYLAND TO THE USE OF THE DEPARTMENT OF GENERAL SERVICES ("DGS"),

### AND

### THE TOWN OF SYKESVILLE (THE "TOWN")

THR FD CURE $      0.00
RECORDING FEE      0.00
TOTAL              0.00
Res#CR02 Rcpt#999999
LWS  CHC Blk#4643
Dec 23, 2002  12:17 PM

**AFTER RECORDING RETURN TO:**
Dennis J. Hoover, Esquire
Siskind, Grady, Rosen, Hoover & Levin, P.A.
1100 Mercantile Bank and Trust Building
2 Hopkins Plaza
Baltimore, Maryland   21201
(410) 539-6606



# EXHIBIT 2

ST001129

BOOK3176 PAGEO258

## DISPOSITION AND DEVELOPMENT AGREEMENT

THIS DISPOSITION AND DEVELOPMENT AGREEMENT ("Agreement") made this _____ day of November, 2002, by and between the State of Maryland (as the "STATE") to the use of the Department of Health and Mental Hygiene ("DHMH") and the State of Maryland to the use of the Department of General Services ("DGS")(the above agencies sometimes being referred to collectively herein as the "AGENCIES"), and the Town of Sykesville ("the TOWN"):

WHEREAS, the State of Maryland through DHMH owns and operates State of Maryland to the use of the Springfield Hospital Center ("SHC"), an in-patient psychiatric facility dedicated to the treatment of individuals with mental disorders, which has been in existence since the 1890's;

WHEREAS, although SHC remains in operation at the time of this Agreement and shall remain in use as an in-patient psychiatric facility, the patient population has diminished substantially as a result of advancements in therapy and the expansion of community-based services;

WHEREAS, DHMH recognized that SHC was no longer using a substantial portion of the SHC campus and DHMH sought to declare that property, comprising approximately one hundred thirty eight (138) acres (the "Surplus Land"), excess to its needs and surplus to the needs of the STATE in the contemplation that productive use could be made thereof and that proceeds from the sale, lease or other use or disposition thereof would be placed in the Community Trust Fund to assist individuals with mental disabilities live in community-based settings;

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0253. Printed 04/18/2011. Online 09/23/2005.

ST001130

BOOK3 I 7 6 PAGE0 2 5 4

WHEREAS, on December 17, 1997, Item 32 – RP, the Maryland Board of Public Works (hereinafter "BPW") approved DHMH's declaration that the Surplus Land was excess to its needs and surplus to the needs of the STATE and provided that the TOWN should annex the same subject to the Maryland Department of Planning's Clearinghouse recommendation that: the TOWN, in cooperation with the AGENCIES, develop the Surplus Land for economic development purposes, negotiate an agreement to share any proceeds of the sale or lease of the Surplus Land, preserve and protect the historic nature of the property, and follow management practices to protect the growth and propagation of trout in the Piney Run Stream that bisects the Surplus Land;

WHEREAS, on August 4, 1999, the BPW approved a Letter of Intent between DHMH and the TOWN, providing that the Surplus Land would be transferred to the TOWN pursuant to a Disposition and Development Agreement addressing all of the conditions set forth in Item 32-RP;

WHEREAS, prior to such transfer, it was determined that approximately forty-two (42) acres of the Surplus Land was required by State of Maryland to the use of the Department of Public Safety and Correctional Services ("DPSCS") for use as a Public Safety Training Center, Academic, and Administrative Facility (the "State Police Training Facility") and, in contemplation of these changes, the BPW authorized, on April 5, 2000, as Item 4-GM, the payment to the TOWN by DPSCS of funds for previously performed surveying, engineering and site preparation work;

WHEREAS, on December 13, 2000, Item 17-RP, the BPW approved the transfer to the TOWN of the 96.6-acre balance of the Surplus Land (such balance and residue to be so transferred being hereinafter referred to as "the Warfield Complex") subject to the

CR CIRCUIT COURT (Land Records) [MSA CE 58-3163] LWS 3176, p. 0254. Printed 04/18/2011. Online 09/23/2005.

2

ST001131

BOOK3 1 7 6 PAGEO 2 5 5

STATE's right of reversion if (1) a Disposition and Development Agreement (addressing conditions enumerated in Item 17-RP and in the prior Letter of Intent) was not completed within eighteen (18) months (the "State's First Reversion Right") and (2) the TOWN failed to illustrate economic feasibility of its proposed development project within five (5) years (the "State's Second Reversion Right");

WHEREAS, the Warfield Complex , being all that property described in **Exhibit A** attached hereto and made a part hereof, was transferred to the TOWN from the STATE subject to the aforesaid reversionary interests by Deed dated July 11, 2001, and recorded among the Land Records of Carroll County in Book 2610, Page 0696 ("the DHMH Deed");

WHEREAS, on June 5, 2002, the BPW approved the extension of the completion of the Disposition and Development Agreement;

WHEREAS, in compliance with the DHMH Deed's provision requiring completion of a Disposition and Development Agreement, the TOWN and the AGENCIES shall address in this Agreement those issues to include, but not be limited to, separation of and payment for utilities, design and installation of the water and sewer systems, study of the traffic patterns and impact of additional traffic upon SHC and other users of the Warfield Complex, plans to ensure sufficient parking and discourage usage of SHC parking, type of development compatible with the continued existence of the hospital, preservation of historically significant buildings and features, allowed uses of revenue and distribution of revenues, provisions for reciprocal easements, preservation of Piney Run, inclusion of covenants to protect existing uses, plans for development in

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0255. Printed 04/18/2011. Online 09/23/2005.

3

ST001132

BOOK9 1 7 6 PAGE0 2 5 6

accordance with Smart Growth standards, and all other items deemed appropriate by the parties;

NOW, THEREFORE, the parties agree as follows:

## 1. DEVELOPMENT TERMS

A. The Warfield Complex shall be developed by the TOWN principally as an employment center/office park including public use/recreation areas consistent with open space (collectively the "Intended Use"). Residential and service retail uses may be incorporated at the discretion of the TOWN. Development of the Warfield Complex shall be referred to herein as "the Project".

B. The TOWN shall use reasonable efforts to design and develop the Project in accordance with the Smart Neighborhood Protocols attached as **Exhibit B**, as the same may be applicable to the Intended Use. The Project shall be guided by and exemplify the tenets of Smart Growth, as applicable within the scope of the Intended Use. In accordance with the foregoing, the Project shall: provide pedestrian access throughout the property; encourage use of public transportation (to the extent, and when and as, available) and ridesharing to access the property; incorporate mixed but compatible uses; retain areas for open space and recreation; and, revitalize existing historic structures. The Special Secretary of the Governor's Office of Smart Growth at 6 St. Paul Street, Ste. 2204, Baltimore, MD 21202 and the Secretary of the Maryland Department of Planning, 301 W. Preston Street, Baltimore, \MD 21201 will be available for consultation and recommendations regarding such matters as development plans and designs that promote and enhance Smart Growth without preventing the development of the Project for the Intended Use. The STATE and the TOWN acknowledge that existing conditions regarding the insufficiency of the Carroll County Public Water Supply at the time of execution of this Agreement inhibit inclusion of high-density residential development in the Project. In the event that the Carroll County Public Water Supply becomes sufficient to sustain high-density residential development, the TOWN shall investigate the feasibility of incorporating residential development into its plans for the Project (including absorption, marketability, highest and best use of the land, availability of adequate infrastructure facilities and public services, and compatibility with the Project as then constituted). If residential development is determined feasible, the Town shall employ reasonable efforts to incorporate residential options into the Project. The STATE acknowledges that the Project has been designated as a Community Legacy Neighborhood by the Department of Housing and Community Development. The STATE will consider the dedication of additional programmatic resources to the Project upon demonstration by the TOWN of the intent to incorporate and implement Smart Growth ideals.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0256. Printed 04/18/2011. Online 09/23/2005.

4

ST001133

BOOK3 1 7 6 PAGE0'2'5·7

C. The Project shall not be developed in any way that is materially detrimental to the function of SHC as a facility providing: in-patient psychiatric treatment; in-patient psychiatric treatment for court-ordered residents; residential drug and alcohol treatment; assisted living for psychiatric patients; out-patient services for psychiatric patients; community mental health programs; those programs which are ancillary to the above-referenced services; and other functions agreed to by the AGENCIES. The Parties hereby acknowledge and agree that the Intended Use is not a violation of this covenant. Similarly, the Town, its successors and assigns, acknowledge and agree that the above described functions and uses of the SHC are not inconsistent with the Intended Use. Nothing herein shall abrogate or deny a lessee or grantee rights to participate in or be heard at public hearings regarding a material change in the functions of SHC. The TOWN shall ensure that all ground leases, leases, deeds, and any and all other instruments conveying an interest in real property or a right to use all or any portion of the Warfield Complex shall contain the following disclosure of the existence of SHC and covenant with respect to its continued operation, in bold print of at least 12-point type, for so long as SHC remains an operating hospital center providing all or any of the services described above:

> The real property, which is the subject of this instrument (the "Property"), was formerly a part of Springfield Hospital Center ("SHC") and remains in the immediate proximity of SHC. SHC, in existence since approximately 1890, is an in-patient treatment facility for psychiatric patients. SHC is dedicated to providing its clients with the proper respect, treatment, and security. As a component of SHC's philosophy, patients are afforded the maximum amount of freedom reasonable for each person's personal circumstances. Lessee [or Grantee, or other appropriate appellation, as the case may be] hereby acknowledges that SHC's patients, clients, users, and tenants are and shall be entitled to the quiet enjoyment of the SHC property. Lessee [or Grantee, or other appropriate appellation, as the case may be], by acceptance of this instrument, hereby covenants and agrees that it (1) shall not interfere with the continuing functions of SHC, (2) shall not seek to require the sale, alienation or other disposition of SHC or the SHC property, (3) shall not seek separation of SHC from the surrounding community by requesting or requiring any constructed boundaries or restrictions to be imposed upon SHC or the SHC property and (4) shall incorporate this covenant in any subsequent conveyance of the Property, it being intended that this covenant run with and bind

CR CIRCUIT COURT (Land Records) [MSA CE 58-3163] LWS 3176, p. 0257. Printed 04/18/2011. Online 08/23/2005.

5

ST001134

BOOK3178 PAGE0258

upon the land for the benefit of SHC, its successors and assigns.

D. The following uses, considered non-conforming uses, shall not be permitted by the TOWN without the prior written approval, as hereinafter provided, of DGS' or its successor, which approval may be withheld at the discretion of the DGS: cell towers and other similar communications towers; large retail establishments (those occupying in excess of 30,000 square feet); large entertainment or recreation complexes including, but not limited to, theater multiplexes, concert facilities, skating rinks and similar large-scale facilities that produce increased traffic, greater demands on parking, and are inconsistent with the Intended Use.

E. Failure to properly obtain the STATE's approval for disallowed uses shall result in the STATE availing itself of remedies as set forth in the Remedies provision of Paragraph 10 below.

F. Approvals for non-conforming uses shall be in writing and shall be obtained by sending a written request, certified mail, return receipt requested, to the Assistant Secretary of Real Estate, Department of General Services in accordance with the Notice provisions of Paragraph 11. The letter shall clearly state the nature of the request, shall refer specifically to the sections and paragraphs of this Agreement pursuant to which the request is made, and, if different than that provided in the Notice provisions of Paragraph 11, shall set forth the name, title and address of the person to whom DGS shall respond. DGS shall respond in writing to the request within sixty (60) days of receipt of such request. Failure to so respond within the aforementioned time shall be deemed denial, unless otherwise agreed by DGS.

G. The TOWN shall provide to DGS copies of all studies, tests, reports, audits, and all similar documentation (to be broadly interpreted) (hereafter referred to herein as "the Studies") obtained, commissioned, or received by the TOWN with respect to the Project. This shall include, but not be limited to, environmental, historical, archeological, financial, feasibility and similar studies. The Studies shall be provided to DGS, c/o the Assistant Secretary of Real Estate, at the address set forth below in Paragraph 11, within thirty (30) days of their receipt by the TOWN.

H. The TOWN may transfer the Warfield Complex by deed or ground lease to the Warfield Development Corporation (the "Development Corporation"), which shall be bound by all the provisions hereof as though it had been an original party to this Agreement. Further, The TOWN or the Development Corporation may lease or sublease, by ground lease or conventional lease, all or any part of the Warfield Complex subject to the terms of this Agreement.

I. The TOWN may, in its sole discretion, structure the Project in such a manner as to create and establish, by recorded declaration of covenants or otherwise,

CR CIRCUIT COURT (Land Records) [MSA CE 58-3163] LWS 3176, p. 0268. Printed 04/18/2011. Online 09/23/2005.

6

ST001135

BOOK3 176 PAGE0 259

assessments against property owners, ground lessees, and/or tenants within the Warfield Complex for the payment of common area maintenance charges and similar charges related to the costs of upkeep and maintenance of common areas within the Warfield Complex not dedicated as a public street or park or other public improvement intended to be maintained by the TOWN in the exercise of its governmental authority. Such common area charges may include, by way of illustration and not in limitation, such costs related to common areas as those for landscaping (including lawn mowing, tree trimming and plantings), plowing and repair and maintenance of internal roads, parking areas and other paved areas, plowing, repair and maintenance of sidewalks and maintenance of open spaces.

J.   Pursuant to the DHMH Deed, the Warfield Complex shall revert to the STATE on December 13, 2005, in the event that the TOWN shall fail to demonstrate economic feasibility for the Project. For the purposes of said reversion, economic feasibility shall be defined as all of the following: (1) providing to the STATE a plan in accordance with the recommendations of the feasibility studies performed by TEDCO and any other entity from whom a study has been obtained; and, (2) providing a detailed pro-forma that (i) sets forth the anticipated infrastructure costs, planned uses, rental income, operating expenses, and debt structure, (ii) demonstrates that the projected rental income will be sufficient to develop the Project in accordance with the plans, (iii) enumerates financially viable lessees who have executed leases for at least two (2) buildings (or parcels of land), and, (iv) provides Letters of Intent or Memoranda of Understanding from financially viable prospective lessees for at least two (2) additional buildings (or parcels of land). Amended pro-forma shall be submitted bi-annually. In the event that the TOWN has made substantial progress toward demonstrating economic feasibility but has failed to satisfy certain enumerated elements, the TOWN may make a written request for extension of the reversion to the Assistant Secretary of Real Estate, in accordance with Paragraph 11 herein. In the event the Assistant Secretary, in consultation with DHMH, determines that an extension of the reversion would be in the interest of the parties, DGS shall request a reasonable extension from the BPW. Any BPW-approved extension to the reversion shall be set forth in an Amendment to this document, executed with the same formalities hereof (requiring the signatures of appropriate representatives of the TOWN, DGS, DHMH, and BPW only), and recorded among the Land Records of Carroll County, Maryland. Upon the request of the TOWN to the Assistant Secretary of Real Estate, in accordance with Paragraph 11 herein, by written document in recordable form, from time to time the STATE shall release portions of the Warfield Complex from the operation and effect of the above reversion provided the TOWN can demonstrate: (1) the economic feasibility of the proposed development of such portion of the Warfield Complex; (2) the existence of a bona fide, financially sound and executed lease and that lessees' development plans are in concert with the Intended Use; and consistent with this Agreement; and (3) that such development will have no material adverse impact upon the value of the balance of the remainder of the Warfield Complex, assuming the property is developed for the Intended Use.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0259. Printed 04/18/2011. Online 09/23/2005.

7

ST001136

BOOK3 1 7 6 PAGE0 2 6 0

## 2. PARKING

A. The TOWN shall include in its site plans, and shall require its lessees, transferees, successors and assigns to include in their plans, sufficient parking to satisfy the needs of its users consistent with commercially reasonable development standards. However, there shall not be in excess of four (4) parking spaces per net usable thousand square feet.

B. The TOWN shall provide two (2) signs of standard highway design or otherwise compatible with signage used by the STATE along the internal roads of SHC for the purpose of preventing the use of SHC parking by Project patrons by providing information and directional arrows regarding Warfield Complex road circulation. In the event that it is determined by SHC, acting in good faith, that users of the Warfield Complex are parking in SHC parking areas or in areas where parking is otherwise prohibited (such as grassy areas or fire lanes), SHC shall advise the TOWN and the Assistant Secretary of Real Estate. The TOWN shall act promptly to post additional signs and/or employ other reasonable methods, to continue to prevent use of SHC spaces and to ensure the safety of SHC clients. The parties acknowledge that costs to enforce the parking prohibition are expenses of the Project

C. The TOWN shall provide its parking plans to the SHC Superintendent at: Administration Building, 6655 Sykesville Road, Sykesville, MD 21784 and to the Assistant Secretary for Real Estate, as provided in Paragraph 11 below, for review and approval. Both the Superintendent and the Assistant Secretary shall respond in writing within ninety (90) days of receipt of the plans. The written response shall be sent to the requesting party. Approval may be withheld only in the event that the STATE reasonably believes there is insufficient parking to accommodate the prospective Project users thereby encouraging use of SHC parking. Any changes to the parking plans, whether instituted by the TOWN or its lessees, transferees, grantees, etc., shall be subject to the same review as aforesaid. In the event no written objections are raised by the Superintendent or Assistant Secretary of Real Estate within the aforesaid approval period, the plans shall be deemed approved. In the event that written objections are raised, the Superintendent of SHC, the Assistant Secretary of Real Estate, and a representative of The TOWN shall meet to reach consensus on the parking plan and means to discourage use of SHC facilities. The parties shall use their best efforts to achieve an agreement in the interest of the profitability of the Project with minimal impact upon SHC. Notwithstanding any such approval (deemed or otherwise) (1) the plans as prepared and submitted for review shall not affect the property rights of the State, DHMH or SHC with regard to any lands owned by them or any easements benefiting lands owned by them without obtaining all requisite written consents and (2) the Town, its grantees, lessees, successors and assigns shall comply with all applicable laws, rules and regulations with regard to the aforegoing plans and the improvements to be constructed and shall obtain all requisite governmental approvals in connection therewith.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0260. Printed 04/18/2011. Online 09/23/2005.

8

ST001137

BOOK3 1 7 6 PAGE0 2 6 ł

3. **ACCOMODATION OF TRAFFIC**

A. The TOWN shall develop a plan or plans for new roads to be built within the Warfield Complex and improvements to be made to existing roads. To the extent possible, the new roads shall be planned to promote contained traffic circulation within the Project and shall not substantially increase traffic on the SHC property (excepting, in each case, any planned improvements for Buttercup Road south of 4th Street). All plans shall make provision, consistent with commercially reasonable construction and development standards, practices and procedures, for pedestrian safety.

B. The TOWN shall submit its road plans to the SHC administration at: Superintendent, Administration Building, 6655 Sykesville Road, Sykesville, MD 21784 and to the Assistant Secretary for the Office of Real Estate, as provided in Paragraph 11 below, for review and approval. Both the Superintendent and the Assistant Secretary shall respond in writing within ninety (90) days of receipt of the plans. In the event that the STATE reasonably believes that plans fail to provide for contained traffic circulation within the Project (except for the use of Buttercup Road) or fails to make provision consistent with commercially reasonable construction and development standards, practices and procedures, for pedestrian safety, the State shall deny approval of the plans. In the event that no written objections are raised by the Superintendent or Assistant Superintendent of Real Estate within the aforesaid approval period, the plans shall be deemed approved. In the event that written objections are raised, the Superintendent of SHC, the Assistant Secretary of the Office of Real Estate, and a representative of the TOWN shall meet to reach consensus on the road plans. The parties shall use their best efforts to achieve an agreement in the interest of the profitability of the Project with no material adverse impact, financial or otherwise, on SHC. Notwithstanding any such approval (deemed or otherwise) (1) the plans as prepared and submitted for review shall not affect the property rights of the State, DHMH or SHC with regard to any lands owned by them or any easements benefiting lands owned by them without obtaining all requisite written consents and (2) the Town, its grantees, lessees, successors and assigns shall comply with all applicable laws, rules and regulations with regard to the aforegoing plans and the improvements to be constructed and shall obtain all requisite governmental approvals in connection therewith.

C. All material changes to the road plan(s) shall be further subject to review by the Superintendent of SHC and the Assistant Secretary of the Office of Real Estate. Amended plans shall be submitted as soon as practical after their design is determined and considered and approved or objected to in accordance with the provisions of Paragraphs 3A and B above.

D. The TOWN shall assume maintenance and repair responsibilities for all roads within the Warfield Complex other than Buttercup Road.    The STATE shall

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0261. Printed 04/18/2011. Online 09/23/2005.

9

ST001138

BOOK3176 PAGE0262

continue to maintain and repair Buttercup Road to the extent that funds are appropriated by the Legislature. Any required improvements or repairs to Buttercup Road in conjunction with the Project shall be made at the TOWN's sole cost and expense only after the STATE's approval of the road plan and compliant with all other State requirements for such improvements as provided above and shall be made in accordance with the TOWN's standards for construction of its public roads. If the AGENCIES agree to any road improvements to be performed on Buttercup Road by any party other than the TOWN, the same shall be completed pursuant to a public works agreement and secured by a payment and performance bond and subsequent maintenance bond to the benefit of both the TOWN and the STATE, all in accordance with the practice, procedures and requirements for the same under the laws of the Town of Sykesville.

E. SHC and DHMH shall prohibit left turns made from Second Street onto Maryland Route 32 by placement of appropriate signage.

4. **DISTRIBUTION OF PROCEEDS**

   A. The TOWN shall use commercially reasonable efforts to generate income from development of the Warfield Complex, provided that nothing herein shall be deemed to require the TOWN to expend tax revenues, incur debt or pledge its full faith and credit to secure funding to pay for the costs of development of the Project. The agreements herein are premised upon the desire of both the STATE and the TOWN to realize proceeds from the Project itself, not including tax revenues. The TOWN shall have a fiduciary duty to the STATE as though the STATE were its partner in the development of the Project.

   B. The STATE shall reserve the right, at its sole discretion to review audited financial statements of the Project. The TOWN shall cause to have prepared annual audit statements of the Project by an approved, independent auditing party. The annual audit report shall be submitted within ninety (90) days of the close of each fiscal year, herein defined as January 1 to December 31 of each year commencing on the first January 1 following the execution of this Agreement.

   C. The STATE shall reserve the right, at its sole discretion, to review the revenues and liabilities as set forth in annual audit reports for reasonableness. If the STATE determines any part of the audit report to be unreasonable, the STATE and the TOWN shall make their best effort to resolve the claim or dispute. If the best efforts of the parties do not result in satisfaction of the parties, either party may request the Secretary of the Board of Public Works to determine the reasonableness of each Party's claim.

   D. The following terms shall apply to determine distributions as provided in Paragraph 4E below:

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3178, p. 0262. Printed 04/18/2011. Online 08/23/2005.

10

ST001139

BOOK3176 PAGE0269

"Cash Flow" means, with respect to any fiscal period, (i) all cash funds derived from the Project during such period (including, but not limited to, rents, interest earned on any Project funds, insurance proceeds from any casualty that are not used to (a) rebuild or (b) to demolish, remove debris and restore the grounds and excess cash reserves deemed distributable by the TOWN; but excluding any revenue from taxes or payments in lieu of taxes), less (ii) all cash disbursed in the operation and maintenance of the Project during such period (including, but not limited to, cash used to pay Operating Expenses, fees, commissions, debt service and scheduled loan repayments for Qualified Debt Obligations, improvements, repairs, replacements, contingencies, reserves (including additions to the Deferred Development Reserve) and anticipated obligations) except to the extent any. such disbursement is made out of reserves set aside for such purpose.

"Deferred Development Reserve" means the reserve established by the TOWN to provide funds for future development of the Project, which is to be funded from Cash Flow each year during the Development Period by an amount that reflects what is commercially reasonable in light of the scope of the Project and planned future development

"Development Period" means the period of time from the date of this Agreement until December 31, 2016.

"Operating Expenses" means commercially reasonable cash expenses incurred in the ordinary course of business, including, without limitation, advertising and promotional, management, salary, utility, accounting, legal, travel and telephone expenses, and cost of goods, materials and administrative services used by or for the Project.

"Qualified Debt Obligations" means all debt obligations, the proceeds of which are used for commercially reasonable capital improvements in connection with the Project and commercially reasonable repair and replacement thereof.

E. Distributions of Cash Flow shall be made as follows:

> First: Seventy-Five percent (75%) to DHMH, for the benefit of the Community Trust Fund, and Twenty-Five percent (25%) to the TOWN, until an aggregate of One Million Dollars ($1,000,000.00) has been distributed;

> Second: to the balance, if any, shall be distributed, fifty percent (50%) to DHMH, for the benefit of the Community Trust Fund, and Fifty percent (50%) to the TOWN.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0263. Printed 04/18/2011. Online 09/23/2005.

11

ST001140

BOOK3 1 7 6 PAGEO 2 6 4

5. **AGREEMENT TO CREATE AND GRANT HISTORIC EASEMENT AND COVENANTS**

A. The TOWN does hereby covenant and agree that it shall not convey, transfer, dispose of, lease, mortgage or lien all or any part of the Warfield Complex until recordation of an easement to the Maryland Historical Trust ("the Trust") or a designated trustee or beneficiary, creating and imposing an easement on the Warfield Complex for historic preservation and  conservation purposes (the "Easement"), in form and content satisfactory to the Trust.  The TOWN, its successors and assigns, shall ensure that the restrictions contained in the Easement will be inserted, verbatim or by express reference, in any subsequent deed or other legal instrument by which ownership or a possessory interest in the Warfield Complex, or any part thereof, is divested or conveyed.

B. The Trust will hold the Easement exclusively for conservation purposes, i.e., it shall not transfer the Easement whether or not for consideration.  However, subject to the provisions of any applicable federal law, the Trust may assign or transfer its interest in the Easement to a governmental unit or organization qualifying at the time of the transfer as an eligible donee of the Easement under any pertinent provision of federal law.

C. Notwithstanding anything contained in the preceding Paragraphs 5A and 5B to the contrary, the Easement shall provide that  (1) the Trust shall have no right to review, approve or deny the renovation or demolition of the Lane Building or the construction of new building structures on the portion of the Warfield Complex located North of Cooper Drive and North and East of Main Street, so long as such renovation or construction complies and is in conformity with architectural guidelines and landscape standards approved by the Trust (such architectural guidelines and landscape standards to be developed by the Town and submitted to the Trust and/or Director for approval, which approval shall not be unreasonably withheld); and (2) the Trust shall have no review, approval or denial rights with respect to the Interior of any building within the Warfield Complex with respect to limited specific features of the Interior having substantial historic, aesthetic, and/or cultural character  to be listed and identified in the Easement (the "Historic Interior Features").  The term "Interior" means the interior surface of the interior space of the Improvements within the Warfield Complex, including the architectural style, general design and arrangement, the color, the kind and texture of the building materials and the type and style of all windows, doors, light fixtures, signs and other similar interior features.

6. **WAIVER OF CLAIMS AND ENVIRONMENTAL CLAIMS RELEASE**

A. The TOWN, by acceptance of this Agreement, hereby expressly covenants (which covenant shall run with the land for itself, its grantees, lessees, successors and assigns) and agrees with STATE and AGENCIES, that the TOWN and its grantees, lessees, successors and assigns (i) hereby waive, relinquish and release any and all claims, actions, suits and proceedings they may have against STATE

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] I.WS 3176, p. 0264. Printed 04/18/2011. Online 09/23/2005.

12

ST001141

BOOK3 I 7 6 PAGE0 2 6 5

arising out of the condition of the Warfield Complex or relating to any Environmental Contamination (as defined below) associated with the Warfield Complex and existing as of the date hereof, (ii) shall require all new construction and building restoration(s) to be in accordance with all applicable laws, rules and regulations. In no event shall DHMH or SHC be responsible for any costs associated with such construction and building restoration(s). The TOWN, by acceptance of this Agreement, hereby expressly covenants (which covenant shall run with the land for itself, its grantees, lessees, successors and assigns) and agrees with the STATE and AGENCIES, that the TOWN and its grantees, lessees, successors and assigns hereby waive, relinquish and release any and all claims, actions, suits and proceedings they may have or may in the future have against the STATE arising out of the use, occupancy, conduct, operation or management of the Warfield Complex or the Project by the TOWN, its grantees, lessees, successors and assigns except with regards to the duties, if any, of the STATE and its AGENCIES under this Agreement or any subsequent written agreements between the parties.

B. For purposes of this release, "Environmental Contamination" shall include the presence of any of the following: (1) any "hazardous substance" as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act, and the rules and regulations promulgated pursuant thereto, as amended from time to time, (2) any material or substance that is listed in the United State's Department of Transportation Hazardous Materials Table (49 C.F.R. 172.101), and (3) any contaminant, oil, petroleum, product or by-product, radioactive material, toxic substance, hazardous waste, or other material, the presence or handling of which is now or hereafter becomes prohibited, penalized, or regulated by any federal, STATE, or local agency, authority, or governmental unit.

7. **RECIPROCAL EASEMENTS.** The parties will negotiate and enter into easements and cross-easements, without further consideration due from the party to be benefited by such easement, to be located on the Project, SHC, and/or the State Police Training Facility properties (as the case may be) for the construction, maintenance, repair and replacement of utilities limited to electric, gas, water, sewer and communications lines (the "Utilities"), subject to the following conditions:

      (i)     The easements shall include reasonable rights of ingress, egress and temporary construction.

      (ii)    All such easements will be limited to subsurface Utilities, excepting only that those existing aboveground electric utility lines in use as of the date hereof may continue to be used, maintained, improved, repaired and replaced.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0265. Printed 04/18/2011. Online 09/23/2005.

13

ST001142

BOOK3 1 7 6 PAGE0 2 6 6

(iii)    All such easements must directly benefit the Project, SHC and/or State Police Training Facility properties (as the case may be) and will not inure to the benefit of any third parties.

(iv)    The easements will include covenants (1) not to disturb or interfere with existing and proposed improvements, paving or utilities located on either property, (2) requiring restoration of all disturbed areas including landscaping, (3) to comply with all applicable Town of Sykesville and Carroll County building codes, design criteria and other laws and regulations (notwithstanding and excluding any laws providing exempt status for either of the parties with respect to such compliance) and (4) maintaining pedestrian and vehicular access during construction.

(v)    Unless otherwise agreed to by the parties in writing, the easement shall limit construction methods for electric, gas and communications under existing roads, driveways and other improvements to boring and not trenching.

(vi)    The easements will be limited to locations (1) within existing and proposed vehicular and pedestrian rights of way, to include for the purposes hereof within fifteen (15) feet of paved roadbeds and sidewalk areas except to the extent such areas are otherwise improved by existing permanent structures and (2) provided it is not economically feasible for construction of Utilities lines as set forth in (1) above, within those areas in the Warfield Complex where Utilities lines are existing as of the date hereof (whether or not a written easement has been previously prepared and recorded for such Utilities lines). The parties will provide and update development plans upon request identifying proposed improvements that will limit the areas burdened by the easements. The party to be benefited will submit a written request for the easement to the other party accompanied by a draft of the proposed easement together with a metes and bounds of the proposed easement and a plat/survey depicting the same. The easement will be reviewed and comments issued within forty-five (45) days in accordance with the above requirements. Approval for easement requests which will substantially conform with existing and proposed improvement plans will not be unreasonably withheld. Approval for easement plans which do not comport with existing and proposed improvement plans will be subject to the sole discretion of the burdened party.

(vii)    As to any grant by the TOWN of any easement on the Warfield Complex, including but not limited to easements benefiting third parties, the STATE agrees that such grant shall not require the further signature or agreement of the STATE by reason of any reversionary interest it might have hereunder or under the DHMH Deed to the TOWN, it being acknowledged and agreed that such consent and agreement is not required and that the TOWN has full authority to so encumber and burden the Warfield Complex

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0266. Printed 04/18/2011. Online 09/23/2005.

14

ST001143

BOOK3 1 7 6 PAGE0 2 6 7

and the reversionary interest of the STATE, if any, without further agreement of the STATE.

8. **CONSERVATION COVENANTS**

A. The TOWN shall maintain a vegetative buffer strip (the "Buffer Strip") to protect the ecological integrity of Piney Run. The Buffer Strip shall be a minimum width of Fifty (50) feet from each bank of Piney Run, or to the property line of the Warfield Complex if less than Fifty (50) feet from any point of Piney Run.

B. The following activities are prohibited in the Buffer Strip:

(i)     cutting and removal of timber, except for non-native, dead, diseased or infested trees;

(ii)    planting or introducing any vegetation not indigenous to the watershed of Piney Run;

(iii)   burning, mowing, grazing, livestock access, plowing, or tilling, except for non-native, dead, diseased or infested trees;

(iv)    storage of manure, compost, pesticides, herbicides, or fertilizers;

(v)     vehicular access to the general public; and,

(vi)    placement or construction of any structures (it being understood that nature trails and recreational walking paths shall not be deemed "structures" for the purposes hereof).

C. The following activities are not prohibited by this paragraph:

(i)     with the approval of the State of Maryland's Department of Natural Resources ("DNR"), management practices to protect rare, threatened and endangered species; and

(ii)    with the approval of DNR, use of pesticides, fertilizers and herbicides necessary to maintain natural ecological systems and processes.

D. Right of Inspection. The STATE, acting by and through DNR, and their respective employees and agents have the right, with reasonable notice to the TOWN, to enter the Warfield Complex at reasonable times for the purpose of inspecting the property to determine whether the TOWN is complying with the terms of this covenant.

E. Duration and Nature of Covenant: This covenant shall be perpetual in duration and runs with and bind upon the land as an incorporeal property interest

CR CIRCUIT COURT (Land Records) [MSA CE 58-3163] LWS 3176, p. 0267. Printed 04/18/2011. Online 09/23/2005.

15

ST001144

BOOK3 1 76 PAGE0263

enforceable by DNR, its successors and assigns with respect to the Warfield Complex and against the TOWN, its successors, transferees and assigns.

F. Effect of Failure to Enforce. No failure on the part of the STATE to enforce any term or provision hereof shall discharge or invalidate such term or any other term hereof or affect the right of the STATE to enforce the same in the event of a subsequent breach or default.

G. Changes Approved by DNR. Notwithstanding anything to the contrary aforesaid, upon petition by the TOWN, the Secretary of the DNR may approve in writing some construction and those changes to this covenant (such as storm water management drainage, the installation of pathways, minor deviations from the aforesaid language, etc.) if the Secretary determines that said changes have no impact or minimal impact upon preservation of the stream and the purposes for the imposition of this covenant. The Secretary shall consider the Project's goals, but he or she may determine the level to which the conservation goals may be compromised.

9. **UTILITIES**    The TOWN shall provide for utilities for the Warfield Complex under the following terms:

A. Electrical Service. The TOWN shall negotiate for the installation, upgrades, maintenance, and repair of electrical service independent of the SHC, and the TOWN shall pay, at its sole cost and expense, for all such expenses associated with the Project. The TOWN shall ensure that it and its lessees, etc. are billed directly for all such expenses.

B. Water and Sewer Service.

(i)    Water will continue to be made available to the Warfield Complex pursuant to the Special Public Utilities Agreement of October 1992. In the event a new water allocation agreement is negotiated between the STATE and the County Commissioners of Carroll County, the STATE shall negotiate in good faith for the inclusion of a water allocation for the Warfield Complex to meet the demands of the Project.

(ii)    In the event the STATE elects to construct its own water service system, then the STATE of Maryland to the use of the Maryland Environmental Services ("MES") shall consult with the TOWN and shall design and construct new main line water service and distribution system for the Project for potable water. The TOWN shall, at its sole cost and expense, provide for a main water meter and for all secondary water distribution on and within the Project.

(iii)    The STATE or its designee MES assumes responsibility to ensure that water and sewer service is provided to the Warfield Complex and shall

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0268. Printed 04/18/2011. Online 09/23/2005.

16

ST001145

BOOK3176 PAGE0269

ensure that the cost to the TOWN of the water and treatment shall not exceed that which would be paid by the TOWN if the service were to be provided to the TOWN by Carroll County. The TOWN shall make payment to the STATE in accordance with industry practice. The Project shall connect to the SHC sewer system. MES shall upgrade the primary sewer pipe

C.  Gas Service. In the event the Town desires to provide natural gas service to the Warfield Company then the TOWN shall (i) negotiate for such service independent of SHC, and (ii) the Town shall bear all costs, at its sole cost and expense, for the installation of such natural gas service to the Warfield Complex.

## 10. REMEDIES

Upon any breach of the terms of this Agreement by the TOWN, its Lessees, successors, or assigns, the STATE may, after reasonable notice to the TOWN, exercise any or all of the following remedies:

(i)  institute suits to enjoin any breach or enforce any covenant by ex parte, temporary, and/or permanent injunction either prohibitive or mandatory; and,

(ii)  require that the Warfield Complex be restored promptly to the condition required by this Agreement.

The STATE's remedies shall be cumulative and shall be in addition to any other rights and remedies available to STATE at law or equity.

## 11. NOTICE

A.  Whenever notice is to be provided, an approval is required to be obtained, or a request is made to the STATE, the Statement, notice, plans, requests, and/or studies shall be in writing and mailed certified mail, return receipt requested, to:

Assistant Secretary for the Office of Real Estate
Department of General Services
300 W. Preston Street, 6th Floor
Baltimore, MD 21201

And to:

Chief Executive Officer
Springfield Hospital Center
Administration Building
6655 Sykesville Road
Sykesville, Maryland 21784

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0269. Printed 04/18/2011. Online 09/23/2005.

17

ST001146

BOOK3176 PAGE270

B. Whenever notice is to be provided, an approval is required to be obtained, or a request is made to the TOWN, the Statement shall be in writing and mailed certified mail, return receipt requested, to:

> Mayor and Town Manager
> The Town of Sykesville
> 7545 Main Street
> Sykesville, Maryland   21784

## 12. MISCELLANEOUS

A. Any titles of the several parts, and sections of this Agreement are inserted for convenience of reference only and shall not be considered in construing or interpreting any of its provisions.

B. This covenant and agreement shall be deemed to be a restrictive covenant and agreement that establishes a reversionary interest in the STATE and runs with the land, such that the STATE and the TOWN , their grantees, lessees, successors, and assigns, and any subsequent owner or possessor of all or any portion of the said parcel of land shall, by taking such ownership or possession, be bound by and deemed to have likewise waived, relinquished, and released any and all such claims, actions, suits, and proceedings.

C. Nothing contained in this Agreement shall be construed to confer upon any person or entity not a party to this Agreement the rights of a third party beneficiary or the right to enforce this\Agreement, except as may be otherwise specifically provided for herein. This Agreement is solely for the benefit of the parties to this Agreement. This Agreement shall not be deemed to create an equitable servitude or any equitable or legal benefits in or for the benefit of persons not parties to this Agreement.

D. Subject to the terms and conditions of this Agreement, the TOWN and the STATE shall have the right to enforce this Agreement and to seek any and all remedies available in law or in equity.

E. This Agreement shall be amended, if at all, only by writing between the parties and recorded among the Land Records of Carroll County.

F. Nothing contained in this Agreement is intended to create or will be construed in any manner or under any circumstances whatsoever as creating or establishing the relationship of co-partners or a joint venture between the STATE and the TOWN. Neither shall this Agreement establish either party as the agent or representative of the other party for any purpose or in any manner whatsoever.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0270. Printed 04/18/2011. Online 09/23/2005.

18

ST001147

BOOK3 1 7 6 PAGE0 2 7 1

G. This Agreement will bind upon and inure to the benefit of the parties hereto and their respective lessees, transferees, successors and assigns, as permitted hereunder.

H. <u>Construction of this Agreement</u>

(i)    Any and all **EXHIBITS** referenced in this Agreement are made part of this Agreement by incorporation as if fully set forth herein.

(ii)    The definitions of any and all terms set forth in the above Recitals are incorporated in and made part of this Agreement as it fully set forth herein.

(iii)    No delay or omission by either of the parties in exercising any right or power accruing upon any non-compliance or failure of performance by the other party of any of the provisions of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by either of the parties hereto of any of the obligations of the other party under this Agreement shall not be construed to be a waiver of any subsequent breach of such obligation or a waiver of any breach of any other term, covenant or condition of this Agreement.

I. <u>Satisfaction of Condition.</u> Execution of this Agreement satisfies the condition in the DHMH Deed requiring completion of a Disposition and Development Agreement (to the end and intent that the State's First Reversion Right is hereby terminated, released, null and void).

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed and delivered, the day and year first written above.

Witness/Attest:                                TOWN OF SYKESVILLE

_____            By: _____
                                                        Jonathan Herman, Mayor

APPROVED AS TO FORM AND LEGAL
SUFFICIENCY THIS _8th_ DAY OF
NOVEMBER, 2002

_____
DENNIS J. HOOVER, TOWN ATTORNEY
FOR THE TOWN OF SYKESVILLE

CR CIRCUIT COURT (Land Records) [MSA CE 56-3168] LWS 3176, p. 0271. Printed 04/18/2011. Online 09/23/2005.

ST001148

BOOK3 I 7 6 PAGE 0 2 7 2

Witness/Attest:

STATE of Maryland to the Use of the
Department of Health and Mental
Hygiene

By: _____

Dr.    Georges    Benjamin,    M.D.,
Secretary

Witness/Attest:

STATE of Maryland to the Use of
Department of General Services

By: _____

Peta N. Richkus, Secretary

BOARD OF PUBLIC WORKS

Parris N. Glendening, Governor

Sheila MacDonald, Executive Secretary
Board of Public Works of the
State of Maryland

17 RP
12-13-00

William Donald Schaefer, Comptroller

Nancy Kopp, Treasurer

THIS AGREEMENT IS APPROVED as to Form and Legal Sufficiency (subject to
execution by the above-designated, duly authorized, administrative officials).*

THIS  13th  DAY OF  November ,2002

By: _____

David R. Morgan, Assistant Attorney General
Maryland Department of Health and Mental Hygiene

*Approval of this Agreement as to form and legal sufficiency does not constitute approval of, or
concurrence in, the business judgment of any party hereto concerning the costs, benefits, and material risks,
whether anticipated or not, that may result from transacting business (i) in reliance on representations made
by another person in connection with the subject matter of this Agreement, and (ii) pursuant to the
substantive recitals, terms and conditions of this Agreement. The scope of this review and approval for
form and legal sufficiency is limited solely to this typeset document and does not extend to amendments or
modifications hereto unless such amendments/modifications are reduced to writing, dated, and signed by
legal counsel for the State of Maryland.

ST001149

BOOK3176 PAGE0273

Execution of the above Agreement was authorized and approved by the Board of Public Works at a meeting held on the 13th day of December, 2000, Item 17 RP. This Agreement is APPROVED FOR FORM AND LEGAL SUFFICIENCY FOR THE STATE OF MARYLAND, THIS _18th_ DAY OF _May_, 2002

_John Thornton_
John Thornton, Principal Counsel
Department of General Services

STATE OF _Maryland_, COUNTY OF _Carroll_, to wit:

I HEREBY CERTIFY that on this _8th_ day of _November_, 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared JONATHAN HERMAN, known to me (or satisfactorily proven) to be the Mayor of The Town of Sykesville and that such officer, being authorized to do so, executed the foregoing Agreement for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

My Commission Expires: _3-01-05_
[NOTARIAL SEAL]

STATE OF _Md_, COUNTY OF _Balto City_, to wit:

I HEREBY CERTIFY that on this _3rd_ day of _Dec._, 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared DR. GEORGES BENJAMIN, M.D., known to me (or satisfactorily proven) to be the Secretary of The Department of Health and Mental Hygiene and that such officer, being authorized to do so, executed the foregoing Agreement for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Charles J. Fleig_
Notary Public

My Commission Expires: _5/24/03_
[NOTARIAL SEAL]

ST001150

BOOK3176 PAGE0274

STATE OF _Maryland_ , COUNTY OF _Baltimore City_ , to wit:

I HEREBY CERTIFY that on this _18th_ day of _November_, 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared PETA N. RICHKUS known to me (or satisfactorily proven) to be the Secretary of the Department of General Services being authorized to do so, executed the foregoing and annexed instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Pamela A. Bethea_
NOTARY PAMELA Notary Public
PUBLIC STATE OF MARYLAND
My Commission Expires Commission Expires October 1, 2005
[NOTARIAL SEAL]

STATE OF _Maryland_ , COUNTY OF _Anne Arundel_ to wit:

I HEREBY CERTIFY that on this _27_ day of _November_, 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared PARRIS N. GLENDENING, known to me (or satisfactorily proven) to be the person set forth herein, who acknowledged himself to be the Governor of the STATE of Maryland and that holding such capacity, being authorized so to do, executed the foregoing Agreement for the purposes therein contained by himself in the foregoing capacity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Marion Boscher_
Marion Boscher
NOTARY PUBLIC
Anne Arundel County, Maryland
My Commission Expires 12/01/03
My Commission Expires:
[NOTARIAL SEAL]

STATE OF _Maryland_ , COUNTY OF _Anne Arundel_ , to wit:

I HEREBY CERTIFY that on this _27_ day of _November_, 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared WILLIAM DONALD SCHAEFER, known to me (or satisfactorily proven) to be the person set forth herein, who acknowledged himself to be the Comptroller of the STATE of Maryland and that holding such capacity, being authorized so to do, executed the foregoing Agreement for the purposes therein contained, by himself in the foregoing capacity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Marion Boscher_
Marion Boscher
NOTARY PUBLIC
My Commission Expires:   NOTARY PUBLIC
[NOTARIAL SEAL]   Anne Arundel County, Maryland
My Commission Expires 12/01/03

ST001151

BOOK3 1 7 6 PAGE0 2 7 5

STATE OF _Maryland_ , COUNTY OF _Anne Arundel_ , to wit:

I HEREBY CERTIFY that on this 27ᵀʰ day of _November_ , 2002, before me, a Notary Public in and for the STATE and County aforesaid, personally appeared NANCY KOPP, known to me (or satisfactorily proven) to be the person set forth herein, who acknowledged himself to be the Treasurer of the STATE of Maryland and that holding such capacity, being authorized so to do, executed the foregoing Agreement for the purposes therein contained, by himself in the foregoing capacity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

Marion Boscher
My Commission Expires NOTARY PUBLIC
[NOTARIAL SEAL Anne Arundel County, Maryland
My Commission Expires 12/01/03

## ATTORNEY'S CERTIFICATION

I HEREBY CERTIFY that the foregoing instrument was prepared by me or under my supervision, and that I am an attorney duly licensed to practice before the Court of Appeals of Maryland.

Dennis J. Hoover

ST001152

BOOK3176 PAGE0276

## EXHIBIT A

### LEGAL DESCRIPTION OF WARFIELD COMPLEX



CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0276. Printed 04/18/2011. Online 09/23/2005.

ST001153

Dec 03 01 03:43p

BOOK3 1 7 6 PAGEO 2.7.7.    BOOK2 6 1 0 PAGE0 7 0 0

**Carroll Land Services, Inc.**
437 East Main Street
Westminster, MD  21157-5539
(410) 876-2017  (410) 848-1790
FAX (410) 876-0009

**CLSI**

RECEIVED
TOWN OF SYKESVILLE
OFFICE OF TOWN MANAGER

MAY 2 3 2000

May 05, 2000

Metes and Bounds Description
SOUTHERN TRACT OUTLINE
WARFIELD COMPLEX, SYKESVILLE

Description of a 96.6058 acre parcel of land located along and east of Maryland Route No. 32 in the 5th Election District of Carroll County, Maryland and being more particularly described as follows to wit:

Beginning for the same at the beginning of Annexation Resolution No. 1998-02, Warfield Complex, Town of Sykesville, as recorded on the 19th of April, 2000 among the Land Records of Carroll County in Book 41, Page 108; thence running with said annexation the 26 following lines:

1. South 60 degrees 57 minutes 00 seconds West, 340.00 feet to a steel pin and plastic cap inscribed "Prop. Mark C.L.S. #258"; thence,

2. South 74 degrees 24 minutes 30 seconds West, 575.09 feet to a point; thence crossing Maryland Route No. 32,

3. South 74 degrees 24 minutes 30 seconds West, 371.20 feet to a point on the west right-of-way of Rte No. 32; thence with said right-of-way,

4. South 70 degrees 52 minutes 10 seconds West, 139.23 feet to a point; thence,

5. North 44 degrees 57 minutes 26 seconds West, 215.48 feet to a point; thence,

6. North 85 degrees 35 minutes 12 seconds West, 107.68 feet to a point; thence,

7. South 52 degrees 16 minutes 52 seconds West, 150.85 feet to a point; thence,

8. South 46 degrees 11 minutes 34 seconds West, 50.00 feet to a point; thence,

9. North 43 degrees 48 minutes 26 seconds West, 50.00 feet to a point; thence,

10. North 46 degrees 11 minutes 34 seconds East, 100.00 feet to a point; thence,

11. North 30 degrees 33 minutes 02 seconds East, 103.85 feet to a point; thence,

12. North 16 degrees 11 minutes 32 seconds West, 141.79 feet to a point; thence,

13. North 44 degrees 57 minutes 26 seconds West, 100.00 feet to a point; thence,

EXHIBIT A

ST001154

Deq 03 01 03:44p

**BOOK3 176 PAGE0278**
BOOK2610 PAGE0701

*Carroll Land Services, Inc.* 

439 East Main Street
Westminster, MD 21157-5539
(410) 876-2017  (410) 848-1790
FAX (410) 876-0009

14. North 58 degrees 59 minutes 37 seconds West, 103.08 feet to a point; thence,

15. North 54 degrees 25 minutes 12 seconds West, 119.62 feet to a point; thence leaving said right-of-way and crossing said Route No. 32,

16. North 21 degrees 59 minutes 48 seconds East, 98.52 feet to a point; thence,

17. North 17 degrees 54 minutes 20 seconds East, 330.00 feet to a point; thence,

18. North 21 degrees 54 minutes 20 seconds East, 1105.50 feet to a point; thence,

19. North 15 degrees 32 minutes 50 seconds West, 377.85 feet to a point; thence,

20. North 25 degrees 28 minutes 40 seconds West, 132.00 feet to a point; thence,

21. North 41 degrees 10 minutes 20 seconds West, 123.40 feet to a point; thence,

22. North 53 degrees 19 minutes 50 seconds West, 156.41 feet to a point; thence,

23. North 22 degrees 50 minutes 10 seconds West, 37.95 feet to a point; thence,

24. North 73 degrees 20 minutes 39 seconds West, 68.45 feet to a point; thence,

25. North 58 degrees 46 minutes 55 seconds West, 2.87 feet to a point on the east right-of-way line of Maryland Route No. 32; thence with a portion of said right-of-way,

26. North 31 degrees 13 minutes 05 seconds East, 74.44 feet to a point; thence running for 15 new lines of division through said annexation,

27. South 80 degrees 34 minutes 45 seconds East, 45.80 feet to a point; thence,

28. North 83 degrees 50 minutes 40 seconds East, 182.91 feet to a point; thence,

29. North 70 degrees 53 minutes 51 seconds East, 111.42 feet to a point; thence,

30. South 88 degrees 56 minutes 16 seconds East, 257.93 feet to a point; thence,

31. North 71 degrees 04 minutes 24 seconds East, 138.29 feet to a point; thence,

32. North 57 degrees 08 minutes 44 seconds East, 113.93 feet to a point; thence,

33. South 60 degrees 01 minutes 23 seconds East, 143.25 feet to a point; thence,

34. South 33 degrees 43 minutes 27 seconds East, 164.05 feet to a point; thence,

ST001155

Dec 03 01 03:44p

BOOK3 1 7 6 PAGE 2 7 9
BOOK2 6 1 0 PAGE 7 0 2

*Carroll Land Services, Inc.*

**CLSI**

439 East Main Street
Westminster, MD 21157-5539
(410) 876-2017  (410) 848-1790
FAX (410) 876-0009

35. South 18 degrees 22 minutes 53 seconds East, 144.01 feet to a point; thence,

36. South 43 degrees 45 minutes 27 seconds East, 209.21 feet to a point; thence,

37. South 66 degrees 48 minutes 20 seconds East, 142.63 feet to a point; thence,

38. South 84 degrees 52 minutes 29 seconds East, 288.20 feet to a point; thence,

39. South 58 degrees 11 minutes 05 seconds East, 96.99 feet to a point; thence,

40. South 54 degrees 44 minutes 28 seconds East, 112.40 feet to a point; thence,

41. South 65 degrees 05 minutes 41 seconds East, 95.68 feet to a point in the center of Butter Cup Road at the end of the 54th line of said annexation; thence running with said road,

42. South 18 degrees 23 minutes 39 seconds West, 268.80 feet to a point; thence,

43. South 09 degrees 00 minutes 50 seconds West, 364.65 feet to a point; thence,

44. by a tangent curved line to the left, southeast, having a radius of 785.00 feet, an arc length of 313.18 feet and being subtended by a chord bearing South 02 degrees 24 minutes 55 seconds East, 311.10 feet to a point of compound curvature; thence,

45. by a tangent curved line to the left, southeast, having a radius of 450.00 feet, an arc length of 239.85 feet and being subtended by a chord bearing South 29 degrees 06 minutes 50 seconds East, 237.02 feet to a point of reverse curvature; thence,

46. by a tangent curved line to the right, southeast, having a radius of 660.54 feet, an arc length of 198.71 feet and being subtended by a chord bearing South 35 degrees 45 minutes 54 seconds East, 197.96 feet to a point; thence,

47. South 27 degrees 08 minutes 49 seconds East, 490.13 feet to a point; thence leaving said road,

48. South 90 degrees 00 minutes 00 seconds West, 408.05 feet to the point of beginning and containing 96.6058 acres of land more or less.

Being part of Annexation Resolution No. 1998-02, Warfield Complex, Town of Sykesville, as recorded on the 19th of April, 2000 among the Land Records of Carroll County in Book 41, Page 108.

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0279. Printed 04/18/2011. Online 09/23/2005.

ST001156

BOOK3176 PAGE 280

## EXHIBIT B

### Smart Neighborhoods Protocols

### Section 1: INTENT

The purpose of the smart neighborhood overlay is to encourage development that provides for a diverse mix and efficient arrangement of land uses and housing types. The smart neighborhood overlay establishes flexible procedures and standards for comprehensively planned communities on vacant land within priority funding areas.

### Section 2: SIZE and LOCATION REQUIREMENTS

A.　Size. Smart neighborhoods shall be sufficient in size to support an integrated, mixed-use community consistent with the intent of this ordinance, generally between 20 and 200 acres.

B.　Location. The Smart Neighborhood Overlay may be applied to any tract of land that is:

1. Located within a Priority Funding Area;

2. Served by public water and sewer, or scheduled for such service on or before the time when the development makes such service necessary; or,

3. Whether or not served by public water and sewer, serves some overriding Smart Growth purpose such as adding diverse uses to an existing neighborhood or Priority Funding Area, potentially or actually reducing automobile usage by creating employment centers near residential developments or vice versa, co-locating services to encourage one-stop shopping.

### Section 3: PERMITTED USES

A.　Uses permitted by right (throughout the designated smart neighborhood zone).

1. All commercial, employment, civic, and residential uses permitted by right in the underlying zones, except that commercial uses should limit drive-through facilities.

2. Residential uses that contribute to housing type diversity, including condominiums, duplexes, multi-family, retirement, townhouses.

3. One accessory dwelling unit per lot, for rental or gratis occupancy, with separate access and full kitchen.

ST001157

4. Home occupations, if clearly incidental and secondary to the use of the dwelling for living purposes and conducted entirely within that dwelling.

5. Commercial and employment/office uses that contribute to the development of a full-service community, including general offices, medical offices, office support services, retail, restaurants, hotels, bars, service stations, personal services.

6. Civic uses that contribute to the development of a full-service community, including public and private educational facilities, parks and recreational facilities, cultural facilities, places of worship or assembly, hospitals, post offices, police stations, fire stations, government buildings, community halls.

B.    Uses permitted by special exception.

Light industrial uses that contribute to the development of a full-service community and contribute to the employment base.

### Section 4: GENERAL DEVELOPMENT STANDARDS

A.    **Mix of uses and land use allocations**

The smart neighborhood development shall include some mix of commercial, office/employment, civic, recreational, and residential uses.

B.    **Mix of housing types**

If residential is included in the development block, the smart neighborhood development shall seek to provide a mix of housing types within blocks and should integrate different income levels into the design of, and distributed throughout, the community.

C.    **Density**

The density should be maximized to reduce the costs of providing services and to encourage the growth of a neighborhood as a community.

D.    **Compatibility with surrounding area**

1. The smart neighborhood shall ensure the connectivity of pedestrian and vehicular networks, natural systems, and open space networks with adjacent communities, existing and future.

1. The smart neighborhood shall contribute to unmet commercial, housing, civic, and open space needs in nearby neighborhoods.

ST001158

BOOK3 176 PAGE0 282

### E.  Open Space

The smart neighborhood shall incorporate public open space to meet residents' recreational needs, stormwater management requirements, and environmental protection goals through a variety of parks, greens, squares, playgrounds, plazas, greenbelts, preserves, and water infiltration areas. The development shall make the maximum feasible use of existing natural systems and features.

### F.  Landscaping

The smart neighborhood shall include landscaping to soften and accentuate the built environment, enhance the streetscape, form public spaces, provide shade and reduce glare, improve the quality of the natural environment, reduce visual blight and noise, break up impervious surface of parking lots. The development plan shall make maximum feasible use of the existing natural systems and features.

### G.  Access and Circulation

The smart neighborhood shall ideally include pedestrian and vehicular connections to existing or planned transit, adjacent communities, and other off-site destinations.

RCVD 06 DEC23'02 12:29

CR CIRCUIT COURT (Land Records) [MSA CE 56-3163] LWS 3176, p. 0282. Printed 04/18/2011, Online 09/23/2005.

ST001159

ST001160

BOOK 1 7 0 4 PAGE 0 1 9 7 1

Carroll County Commissioners
RECORDATION TAX
AMT: 0
DATE: 12-16-05
INITIALS: KH-CE-107287

AMENDMENT TO DISPOSITION AND DEVELOPMENT AGREEMENT AND DEEDS
AND
RELEASE OF RIGHT OF REVERSION

008716   CARROLL CO

THIS AMENDMENT TO DISPOSITION AND DEVELOPMENT AGREEMENT AND DEEDS AND RELEASE OF RIGHT OF REVERSION ("Amendment and Release") made this 8th day of November, 2005 by and between the State of Maryland (the "State") to the use of the Department of Health and Mental Hygiene ("DHMH") and the State of Maryland to the use of the Department of General Service ("DGS"), parties of the first part (hereinafter referred to as "Grantors") and the Town of Sykesville ("Town") party of the second part (hereinafter referred to as "Grantee").

The actual monetary consideration paid or to be paid is Zero Dollars ($0.00).

WHEREAS, the Town is the owner of a parcel of land containing 96.6058 acres, more or less, known as the "Warfield Complex" by Deed dated July 11, 2001 and recorded among the Land Records of Carroll County, Maryland, in Book No. 2610, page 696 (the "Original Deed") and by Deed dated June 25, 2003 and recorded among the aforesaid Land Records in Book No. 3562, page 465 ("Confirmatory Deed"); and

WHEREAS, the State, DHMH, DGS and the Town entered into a Disposition and Development Agreement which was recorded on December 23, 2002 among the aforesaid Land Records in Liber No. 3176, folio 252 ("Disposition Agreement" ) which subjected the Warfield Complex to various terms and conditions; and

WHEREAS, the Original Deed, the Confirmatory Deed and the Disposition Agreement contain rights of reversion of title to the State of Maryland, which rights are more fully set forth in these documents; and

WHEREAS, the Grantors acknowledge that the Grantee has fulfilled all of the conditions in the Original Deed and the Confirmatory Deed and those conditions in Section 1J of the Disposition Agreement to entitle it to a release of the State's right of reversion for a portion of the Warfield Complex; and

WHEREAS, to encourage economic development for the remainder of the Warfield Complex, the Grantors have agreed to amend the Original Deed, the Confirmatory Deed and the Disposition Agreement by deleting the State's right of reversion as set forth in each and by releasing the entire 96.6058 from the effect of same, wherefore these presents are executed.

Amendments to the Original Deed, the Confirmatory Deed and Disposition Agreement

WITNESSETH: that in consideration of the sum of Ten Dollars ($10.00), the receipt and sufficiency of which are hereby acknowledged, the Grantors do hereby:

ST001161

BOOK 1 7 4 PAGE 0 1 9 8 1

a. Amend the Original Deed recorded in Liber 2610, folio 696 by deleting, in its entirety, the following text:

"Subject to the following:

1. The condition that the property shall revert to the State automatically without any further action by either party if the parties do not execute and record a Disposition and Development Agreement ("Agreement") by June 14, 2002, or extend the date of the aforesaid reversion by written instrument recorded among the Land Records of Carroll County. The recordation of the Agreement on or before the aforesaid date shall constitute satisfaction of the condition, thereby avoiding and terminating the reversion set forth in this paragraph 1.

2. The condition that the property shall revert to the State on December 13, 2005, in the event that the Grantee shall fail to demonstrate economic feasibility for its proposed development plans. In the event that economic feasibility is demonstrated to the reasonable satisfaction of the Grantor, Grantor shall record a Release of Reversionary Interest, thereby avoiding and terminating the reversion set forth in this paragraph 2."

b. Amend the Confirmatory Deed recorded in Liber 3562, folio 465 by deleting, in its entirety, the following text:

"Subject to the condition that the property shall revert to the State on December 13, 2005 in the event that the Grantee shall fail to demonstrate economic feasibility for its proposed development plans. In the event that economic feasibility is demonstrated to the reasonable satisfaction of the Grantor, Grantor shall record a Release of Reversionary Interest, thereby avoiding and terminating the reversion set forth in this paragraph."

and adding at the end of the following text the words "and any amendments thereto":

"Subject Also to the terms, conditions and provisions of a Disposition and Development Agreement recorded among the Land Records of Carroll County, Maryland in Liber No. 3176, folio 253."

so it reads:

"Subject Also to the terms, conditions and provisions of a Disposition and Development Agreement recorded among the Land Records of Carroll County, Maryland in Liber No. 3176, folio 253 and any amendments thereto."

c. Amend the Disposition and Development Agreement recorded in Liber 3176, folio 252 by deleting, in its entirety, the following text:

ST001162

BOOK 4 1 0 4 PAGE 0 1 9 9 1

1. J.  Pursuant to the DHMH Deed, the Warfield Complex shall revert to the STATE on December 13, 2005, in the event that the TOWN shall fail to demonstrate economic feasibility for the Project. For the purposes of said reversion, economic feasibility shall be defined as all of the following: (1) providing to the STATE a plan in accordance with the recommendations of the feasibility studies performed by TEDCO and any other entity from whom a study has been obtained; and, (2) providing a detailed pro-forma that (i) sets forth the anticipated infrastructure costs, planned uses, rental income, operating expenses and debt structure, (ii) demonstrates that the projected rental income will be sufficient to develop the Project in accordance with the plans, (iii) enumerates financially viable lessees who have executed leases for at least two (2) buildings (or parcels of land) and (iv) provides Letters of Intent or Memoranda of Understanding from financially viable prospective lessees for at least two (2) additional buildings (or parcels of land). Amended pro-forma shall be submitted bi-annually.  In the event that the TOWN has made substantial progress toward demonstrating economic feasibility but has failed to satisfy certain enumerated elements, the TOWN  may make a written request for extension of the reversion to the Assistant Secretary of Real Estate, in accordance with Paragraph 11 herein. In the event the Assistant Secretary, in consultation with DHMH, determines that an extension of the reversion would be in the interest of the parties, DGS shall request a reasonable extension from the BPW.  Any BPW approved extension to the reversion shall be set forth in an Amendment to this document executed with the same formalities hereof (requiring the signatures of appropriate representatives of the TOWN, DGS, DHMH and BPW only), and recorded among the Land Records of Carroll County, Maryland. Upon the request of the TOWN to the Assistant Secretary of Real Estate in accordance with Paragraph 11 herein, by written document in recordable form, from time to time, the STATE shall release portions of the Warfield Complex from the operation and effect of the above reversion provided the TOWN can demonstrate: (1) economic feasibility of the proposed development of such portion of the Warfield Complex; and (2) the existence of a bona fide, financially sound and executed lease and that lessees' development plans are in concert with the Intended Use, and consistent with this Agreement; and (3) that such development will have no material adverse impact upon the value of the balance of the remainder of the Warfield Complex, assuming the property is developed for the Intended Use."

IT IS UNDERSTOOD AND AGREED by the parties hereto that, except as provided herein, all other terms, conditions, restrictions and easements as set forth in the Original Deed, the Confirmatory Deed and the Disposition Agreement shall remain in full force and effect as to the entire 96.6058 acre parcel of land known as the Warfield Complex, described in Exhibit "A".

### Release of Right of Reversion in the Original Deed,
### Confirmatory Deed and Development Agreement

WITNESSETH: that in consideration of the sum of Ten Dollars ($10.00), the receipt and sufficiency of which are hereby acknowledged, the Grantors do hereby release and relinquish forever

ST001163

BOOK 4 7 0 4 PAGE 0 2 0 0 1

unto the Grantee, its successors and assigns the rights of reversion reserved by the Grantors in the Original Deed, the Confirmatory Deed and Section 1J of the Disposition Agreement pertaining to the 96.6058 acres of land, more or less, known as the Warfield Complex which is described in Exhibit "A" which is attached hereto and made a part hereof to the end and intent that such rights of reversion may be forever merged and extinguished, all as of the date of this Amendment and Release.

IT IS UNDERSTOOD AND AGREED by the parties hereto that, except as provided herein, all other terms, conditions, restrictions and easements as set forth in the Original Deed, the Confirmatory Deed and the Disposition Agreement shall remain in full force and effect as to the entire 96.6058 acre parcel of land known as the Warfield Complex, described in Exhibit "A".

IN WITNESS WHEREOF, the parties have caused this Amendment and Release to be executed the day and year first above written.

WITNESS/ATTEST:                          Town of Sykesville

By: _____ (SEAL)
                                         Jonathan Herman, Mayor

Approved as to form and legal
sufficiency this 30th day of
September, 2005.

Dennis Hoover, Town Attorney
for the Town of Sykesville

4

**ST001164**

BOOK 4 7 0 4 PAGE 0 2 0 1 1

State of Maryland to the use of the
Department of Health and Mental Hygiene

By: _____(SEAL)
Name: S. Anthony McCann, Secretary

State of Maryland to the use of the
Department of General Services

By: _____(SEAL)
Boyd K. Rutherford, Secretary

Michelle M. Parrish

Approved for form and
legal sufficiency.

Martha A. Delea
Assistant Attorney General

Approved by the Board of Public Works at a
meeting held on _September 21_, 2005
as Item No. _16-RP_.

STATE OF MARYLAND
BOARD OF PUBLIC WORKS

By: _____
Robert L. Ehrlich, Jr., Governor

By: _____(SEAL)
William Donald Schaefer, Comptroller

Sheila C. McDonald
Executive Secretary

By: _Nancy K Kopp_ (SEAL)
Nancy K. Kopp, Treasurer

5

ST001165

BOOK 7 0 4 PAGE 0 2 0 2 1

STATE OF MARYLAND
COUNTY OF _CARROLL_, TO WIT:

I HEREBY CERTIFY, that on this _30+h_ day of _SEPTEMBER_ 2005, before me the undersigned Notary Public of the State of Maryland personally appeared Jonathan Herman, known to me (or satisfactorily proven) to be the Mayor of The Town of Sykesville and that such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

WITNESS MY hand and Notarial Seal.

_____
Notary Public

My Commission Expires: _10/01/2005_

STATE OF MARYLAND
COUNTY OF _BALTIMORE_, TO WIT:
City

I HEREBY CERTIFY, that on this _17th_ day of _October_, 2005, before me the undersigned Notary Public of the State of Maryland personally appeared S. Anthony McCann, who acknowledged himself to be the Secretary of the Department of Health and Mental Hygiene of the State of Maryland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal.

Thomas Kravitz, Notary Public
City of Baltimore
State of Maryland
My Commission Expires Apr. 1, 2007

_____
Notary Public

My Commission Expires: _April 1, 2007_

6

ST001166

BOOK 1 7 0 4 PAGE 0 2 0 3 1

STATE OF MARYLAND
COUNTY OF _Baltimore_ , TO WIT:

I HEREBY CERTIFY, that on this _26th_ day of _October_ , 2005, before me the undersigned Notary Public of the State of Maryland personally appeared Boyd K. Rutherford, who acknowledged himself to be the Secretary of the Department of General Services of the State of Maryland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal.

_Julie A. Hoard_
Notary Public

My Commission Expires: _03/21/07_


STATE OF MARYLAND
COUNTY OF _Anne Arundel_ , TO WIT:

I HEREBY CERTIFY, that on this _8_ day of _Nov_ , 2005, before me the undersigned Notary Public of the State of Maryland personally appeared

Robert L. Ehrlich, Jr., Governor of the State of Maryland,
Nancy K. Kopp, Treasurer of the State of Maryland, and
William Donald Schaefer, Comptroller of the State of Maryland,

who acknowledged themselves as constituting the Board of Public Works of Maryland, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, who signed the same in my presence, and acknowledged that they executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal.

_Maura Boschert_
Notary Public

My Commission Expires: _____

DEED Exhibited this 15th Day
of Dec 20 05 Test
Stamp Not Required.
_Robert M. Beck_
Collector

7

**ST001167**

BOOK 4   0 4 PAGE 0 2 0 4 1

*Carroll Land Services, Inc.*

439 East Main Street
Westminster, MD 21157-5539
(410) 876-2017  (410) 848-1790
FAX (410) 876-0009

**C L S I**

Exhibit "A"

May 05, 2000

Metes and Bounds Description
SOUTHERN TRACT OUTLINE
WARFIELD COMPLEX, SYKESVILLE

Description of a 96.6058 acre parcel of land located along and east of Maryland Route No. 32 in the 5th Election District of Carroll County, Maryland and being more particularly described as follows to wit:

Beginning for the same at the beginning of Annexation Resolution No. 1998-02, Warfield Complex, Town of Sykesville, as recorded on the 19th of April, 2000 among the Land Records of Carroll County in Book 41, Page 108; thence running with said annexation the 26 following lines:

1. South 60 degrees 57 minutes 00 seconds West, 340.00 feet to a steel pin and plastic cap inscribed "Prop. Mark C.L.S #258"; thence,

2. South 74 degrees 24 minutes 30 seconds West, 575.09 feet to a point; thence crossing Maryland Route No. 32,

3. South 74 degrees 24 minutes 30 seconds West, 371.20 feet to a point on the west right-of-way of Rte No. 32; thence with said right-of-way,

4. South 70 degrees 52 minutes 10 seconds West, 139.23 feet to a point; thence,

5. North 44 degrees 57 minutes 26 seconds West, 215.48 feet to a point; thence,

6. North 85 degrees 35 minutes 12 seconds West, 107.68 feet to a point; thence,

7. South 52 degrees 16 minutes 52 seconds West, 150.85 feet to a point; thence,

8. South 46 degrees 11 minutes 34 seconds West, 50.00 feet to a point; thence,

9. North 43 degrees 48 minutes 26 seconds West, 50.00 feet to a point; thence,

10. North 46 degrees 11 minutes 34 seconds East, 100.00 feet to a point; thence,

11. North 30 degrees 33 minutes 02 seconds East, 103.85 feet to a point; thence,

12. North 16 degrees 11 minutes 32 seconds West, 141.79 feet to a point; thence,

13. North 44 degrees 57 minutes 26 seconds West, 100.00 feet to a point; thence,

ST001168

BOOK 4 7 0 4 PAGE 0 2 0 5 1

*Carroll Land Services, Inc.*  

439 East Main Street
Westminster, MD 21157-5539
(410) 876-2017  (410) 848-1790
FAX (410) 876-0009

14. North 58 degrees 59 minutes 37 seconds West, 103.08 feet to a point; thence,

15. North 54 degrees 25 minutes 12 seconds West, 119.62 feet to a point; thence leaving said right-of-way and crossing said Route No. 32,

16. North 21 degrees 59 minutes 48 seconds East, 98.52 feet to a point; thence,

17. North 17 degrees 54 minutes 20 seconds East, 330.00 feet to a point; thence,

18. North 21 degrees 54 minutes 20 seconds East, 1105.50 feet to a point; thence,

19. North 15 degrees 32 minutes 50 seconds West, 377.85 feet to a point; thence,

20. North 25 degrees 28 minutes 40 seconds West, 132.00 feet to a point; thence,

21. North 41 degrees 10 minutes 20 seconds West, 123.40 feet to a point; thence,

22. North 53 degrees 19 minutes 50 seconds West, 156.41 feet to a point; thence,

23. North 22 degrees 50 minutes 10 seconds West, 37.95 feet to a point; thence,

24. North 73 degrees 20 minutes 39 seconds West, 68.45 feet to a point; thence,

25. North 58 degrees 46 minutes 55 seconds West, 2.87 feet to a point on the east right-of-way line of Maryland Route No. 32; thence with a portion of said right-of-way,

26. North 31 degrees 13 minutes 05 seconds East, 74.44 feet to a point; thence running for 15 new lines of division through said annexation,

27. South 80 degrees 34 minutes 45 seconds East, 45.80 feet to a point; thence,

28. North 83 degrees 50 minutes 40 seconds East, 182.91 feet to a point; thence,

29. North 70 degrees 53 minutes 51 seconds East, 111.42 feet to a point; thence,

30. South 88 degrees 56 minutes 16 seconds East, 257.93 feet to a point; thence,

31. North 71 degrees 04 minutes 24 seconds East, 138.29 feet to a point; thence,

32. North 57 degrees 08 minutes 44 seconds East, 113.93 feet to a point; thence,

33. South 60 degrees 01 minutes 23 seconds East, 143.25 feet to a point; thence,

34. South 33 degrees 43 minutes 27 seconds East, 164.05 feet to a point; thence,

ST001169

BOOK 4 7 0 4 PAGE 0 2 0 6 1

*Carroll Land Services, Inc.*

*439 East Main Street*
*Westminster, MD 21157-5539*
*(410) 876-2017  (410) 848-1790*
*FAX (410) 876-0009*



35. South 18 degrees 22 minutes 53 seconds East, 144.01 feet to a point; thence,

36. South 43 degrees 45 minutes 27 seconds East, 209.21 feet to a point; thence,

37. South 66 degrees 48 minutes 20 seconds East, 142.63 feet to a point; thence.

38. South 84 degrees 52 minutes 29 seconds East, 288.20 feet to a point; thence,

39. South 58 degrees 11 minutes 05 seconds East, 96.99 feet to a point; thence,

40. South 54 degrees 44 minutes 28 seconds East, 112.40 feet to a point; thence,

41. South 65 degrees 05 minutes 41 seconds East, 95.68 feet to a point in the center of Butter Cup Road at the end of the 54th line of said annexation; thence running with said road,

42. South 18 degrees 23 minutes 39 seconds West, 268.80 feet to a point; thence,

43. South 09 degrees 00 minutes 50 seconds West, 364.65 feet to a point; thence,

44. by a tangent curved line to the left, southeast, having a radius of 785.00 feet, an arc length of 313.18 feet and being subtended by a chord bearing South 02 degrees 24 minutes 55 seconds East, 311.10 feet to a point of compound curvature; thence,

45. by a tangent curved line to the left, southeast, having a radius of 450.00 feet, an arc length of 239.85 feet and being subtended by a chord bearing South 29 degrees 06 minutes 50 seconds East, 237.02 feet to a point of reverse curvature; thence,

46. by a tangent curved line to the right, southeast, having a radius of 660.54 feet, an arc length of 198.71 feet and being subtended by a chord bearing South 35 degrees 45 minutes 54 seconds East, 197.96 feet to a point; thence,

47. South 27 degrees 08 minutes 49 seconds East, 490.13 feet to a point; thence leaving said road,

48. South 90 degrees 00 minutes 00 seconds West, 408.05 feet to the point of beginning and containing 96.6058 acres of land more or less

Being part of Annexation Resolution No. 1998-02, Warfield Complex, Town of Sykesville, as recorded on the 19th of April, 2000 among the Land Records of Carroll County in Book 41, Page 108.



ST001170

Return to:
Chicago Title Insurance Company
One South Street, Suite 1250
Baltimore, Maryland 21202
File No. 15-0053-CH

~~8201~~    ~~505~~        8202    001

SECOND AMENDMENT
TO
DISPOSITION AND DEVELOPMENT AGREEMENT

THIS SECOND AMENDMENT TO DISPOSITION AND DEVELOPMENT AGREEMENT ("Amendment") made this 19th day of October 2015 by and between the State of Maryland (the "STATE") to the use of the Department of Health and Mental Hygiene ("DHMH") and the State of Maryland to the use of the Department of General Service ("DGS"), (the above agencies are sometimes hereinafter collectively referred to as the "AGENCIES") and the Town of Sykesville (the "TOWN").

WHEREAS, the TOWN is the owner of a parcel of land containing 96.6058 acres, more or less, known as the "Warfield Complex" by Deed dated July 11, 2001 and recorded among the Land Records of Carroll County, Maryland, in Book No. 2610, page 696 (the "Original Deed") and by Deed dated June 25, 2003 and recorded among the aforesaid Land Records in Book No 3562, page 465 ("Confirmatory Deed"); and

WHEREAS, the STATE, DHMH, DGS and the TOWN entered into a Disposition and Development Agreement, which was recorded on December 23, 2002 among the aforesaid Land Records in Book No. 3176, page 252 which subjected the Warfield Complex to various terms and conditions, as amended in the Amendment to Disposition and Development Agreement and Deeds dated November 8, 2005 and recorded among the aforesaid Land Records in Book 4704, page 197 (hereinafter collectively referred to as the "Disposition Agreement"); and

WHEREAS, to encourage economic development for the Warfield Complex, the parties hereto have agreed to amend the Disposition Agreement by amending certain provisions regarding uses, proceeds, and infrastructure as set forth herein, wherefore these presents are executed.

NOW, THEREFORE in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to amend the Disposition Agreement as follows:

a.    Section 1. DEVELOPMENT TERMS

Section 1.D is hereby deleted in its entirety. In its place the following shall be substituted.

"Section 1.D. The following uses shall be permitted at the Warfield Complex without prior written approval of the Superintendent of Springfield Hospital Complex ("SHC") and the Assistant Secretary of the Office of Real Estate:

2nd Amendment DDA Rev. 10.19.15                    1

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0001, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001171

8202   002

8-20T    50T

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0002, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

a.  Permitted Uses and Conditional Uses as permitted in the "Mixed Use – Planned Employment Center" of the Town of Sykesville Zoning Ordinance, as may be amended or superseded from time to time; and

b.  Non-conforming Uses as permitted in the Town of Sykesville Zoning Ordinance, as may be amended from time to time."

Sections 1.E and 1.F are hereby deleted in their entirety.

b.  Section 2. PARKING

Section 2A is hereby modified by deleting the last sentence in its entirety.  In its place the following shall be substituted:

"However, the number of parking spaces shall not exceed that allowed by the applicable zoning ordinance, or as may be approved by variance approved in accordance with the Code of the Town of Sykesville (the "Town Code")."

c.  Section 3. ACCOMMODATION OF TRAFFIC

Sections 3.A. and 3.B are hereby deleted in their entirety.   In their place the following shall be substituted:

"3A.  New roads and existing roads in the Warfield Complex (except the Perimeter Roads, hereinafter defined)  are hereinafter referred to as the "Internal Roads".  Main Street and Buttercup Road located south of 4th Street and other roads located on the perimeter of the Warfield Complex are hereinafter referred to as a "Perimeter Road". To the extent possible, the  Internal Roads in the Warfield Complex shall be planned to promote contained traffic circulation therein and planned with the purpose of avoiding substantial increased traffic on the SHC property (excepting, in each case, any planned improvements to the Perimeter Roads) and all plans for both the Internal and Perimeter Roads shall make provision, consistent with commercially reasonable construction and development standards, practices and procedures for pedestrian safety. All plans and any amendments for both the Internal Roads and the Perimeter Roads  shall be subject to review by the Superintendent of SHC (also known as the Chief Executive Officer of SHC) and the Assistant Secretary of the Office of Real Estate and submitted as provided in Paragraph 11 of the Disposition Agreement, for review and approval.  The Superintendent and the Assistant Secretary shall respond in writing within   (a) forty-five (45) days of receipt of the plans for Internal Roads; and (b) ninety (90) days of receipt of the plans for Perimeter Roads. In the event that the STATE reasonably believes that such plans for the Internal Road(s) fail to provide for contained traffic circulation within the Warfield Complex, or with respect to both the Internal Roads and Perimeter Roads fail to make provision consistent with

2nd Amendment DDA Rev. 10.19.15                  2

ST001172

8202    003

commercially reasonable construction and development standards, practices and procedures for pedestrian safety, the STATE shall provide written objections to the plan itemizing the reasons for such objection. In the event that the Superintendent or Assistant Secretary raises no written objections within the aforesaid approval periods, the plans shall be deemed approved. In the event that written objections are raised within such approval periods concerning Internal Roads and/or Perimeter Roads, the Superintendent of SHC, the Assistant Secretary of the Office of Real Estate, representatives of the owner of the Project and the TOWN shall meet within thirty (30) days of the date of the STATE's written objections to endeavor in good faith to reach consensus on the road plans. If no consensus can be obtained for the Internal Road(s) the TOWN shall have the sole authority to make the final decision and determination with respect to the Internal Road(s) plans and the adoption and approval thereof. If no consensus can be obtained with respect to planned improvements to the Perimeter Road(s), the Superintendent of SHC, the Assistant Secretary of the Office of Real Estate, on behalf of the STATE, shall have the right to deny approval of the Perimeter Road(s) plans. The parties shall use their best efforts to achieve an agreement in the interest of the profitability of the Project with no material adverse impact, financial or otherwise, on SHC. Notwithstanding any such approval (deemed or otherwise) (1) the plans as prepared and submitted for review shall not affect the property rights of the STATE, DHMH, or SHC with regard to any lands owned by them or any easements benefiting lands owned by them without obtaining all requisite written consents and (2) the owner of the Project, its grantees, lessees, successors and assigns shall comply with all applicable laws, rules and regulations with regard to the foregoing plans and the improvements to be constructed and shall obtain all requisite governmental approvals in connection therewith."

Sections 3 C, D and E shall be renumbered and/or lettered as appropriate.

The first sentence of former Section 3.D (now Section 3.C), as a result of renumbering pursuant to the preceding sentence, shall be deleted.

d.    Section 4. DISTRIBUTION OF PROCEEDS

Sections 4 A, B, C, D and E are hereby deleted in their entirety. In their place the following shall be added:

"Section 4. Upon the transfer of title to all or a portion of the Warfield Complex by the TOWN, the TOWN shall pay the STATE's Community Trust Fund the amount of $500,000. This amount shall be paid at the time of closing on the transfer by the TOWN of the title to the Project."

e.    Section 9. UTILITIES

2nd Amendment DDA Rev. 10.19.15                                3

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0003, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001173

8202    004

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0004, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

Section 9 B (i) is hereby deleted in its entirety and is replaced by the following:

"Section 9 B (i) – Water Allocation:

The Special Public Utilities Agreement of 1992 (the "1992 Agreement") between the STATE and the County has been amended by that certain Amendment to Special Public Utilities Agreement dated August 26, 2015, so as to enable the County to provide for a water allocation for the Project. Accordingly, the STATE has no further obligation to provide a water allocation for the Warfield Complex.

Section 9B(ii) is deleted in its entirety and is replaced by the following:

" Section 9B(ii) – Water and Sewer Service to the Warfield Complex and the Maintenance of Associated Infrastructure Located Therein:

"The STATE's obligation to provide any water and sewer service and maintain any associated distribution system(s) shall terminate at such time as (a) the TOWN transfers all or a portion of the 96 acre parcel, sometimes referred to in this Agreement as the Warfield Complex, to a purchaser or (b) the ownership or control of such water and sewer infrastructure is transferred to the County, which ever shall first occur. The STATE shall have no obligation to provide up-grades or improvements to the existing water and sewer system(s) to satisfy county requirements."

The term "sewer" as used in Section 9B (ii), (iii) and (iv) shall include wastewater.

Section 9B (iii) is deleted in its entirety and is replaced by the following:

"Section 9B(iii) – Wastewater Allocation:

"The TOWN acknowledges that as a result of that certain Amendment to Contract Between Maryland Environmental Service and the County Commissioners of Carroll County, Maryland Concerning the Transfer of Wastewater Capacity Associated with the Warfield Complex dated August 26, 2015, the STATE shall have no further obligation to provide sewer capacity directly for the Warfield Complex.

Sections are added to Section 9B which shall read as follows:

"Section 9B(iv) – Alterations to the Water and Sewer Infrastructure on the Warfield Complex:

2nd Amendment DDA Rev. 10.19.15                    4

ST001174

8202   005

The TOWN agrees, and shall require that any purchaser of the Warfield Complex agree, that it will not alter any portion of the water and sewer infrastructure located on the Warfield Complex which serves the Warfield Complex and the DHMH property without obtaining the prior written approval of Maryland Environmental Service and Carroll County.

"Section 9B(v) – Substation Parcel

"The TOWN agrees to convey by special warranty deed with covenants against encumbrances and further assurances to DHMH for no monetary or other consideration fee simple title to Parcel I, shown on the plat entitled Warfield Commerce and Cultural Center which plat is recorded among the plat records of Carroll County in Plat Book DBS No. 51, pages 187-202 (the "Plat") together with the improvements located thereon, and also together with access to the Substation Parcel using Main Street, Buttercup Road, Warfield Avenue and other public roads located in the Warfield Complex for access to said Parcel I.

Also together with the following easements needed to send electric power from the Substation Parcel over portions of the Warfield Complex to various locations on the STATE's property, located adjacent to the Warfield Complex.

a. An easement 25 feet wide, all or part of which is on the Warfield Park Parcel, located along the western, northern and northeastern property lines of Parcel I, said easement shall be measured from the exterior of the existing retaining wall for the reconstruction, repair and maintenance of the substation facilities and retaining wall all located on Parcel I together with ingress and egress thereto over the Warfield Park Parcel shown on the Plat.

b. Easements each 35 feet wide (measured 15 feet from either side of the 5 foot wide conduit located therein) for electric and telephone facilities and appurtenances extending from Parcel I to manholes numbered 1, located in or near the area where Warfield Avenue, Main Street and Buttercup Road intersect and (1) extending in a southerly direction from manholes numbered 1 to manholes numbered 38 and extending in an easterly direction from manholes numbered 38 to the end of the Town's property and (2) extending in a northerly direction from manholes numbered 1 to manholes numbered 2 or the end of the Town's property which ever shall first occur. The easements shall follow the route of the existing facilities electric and telephone facilities and appurtenances.

c. Easements each 20 feet wide around (1) each of the manholes numbered 1 and 38 and around manholes numbered 2 if located in the Warfield Complex and (2)

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0005, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001175

8202   0006

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0006, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

each of the concrete pads at manholes numbered 38. Each easement shall be measured from the edge of each manhole or concrete pad, as appropriate.

d. Metes and bounds descriptions for the Easements shall be prepared by the Town at its sole cost and expense and subject to approval of DHMH.

Said easements shall be subject to terms and conditions mutually agreeable to the parties to said Easement Agreement, which approval shall not be unreasonably withheld. Said Deed of conveyance and easements shall be recorded in the aforesaid Land Records prior to or simultaneously with the transfer of all or a portion of the Warfield Complex to any third party."

"Section 9B(vi) – Water Tower Parcel and Water Tower

"The TOWN owns the water tower and related appurtenances located on portions of the Warfield Complex and in the past gave the STATE verbal permission to use same. It is understood and agreed by the parties hereto that the STATE's right and obligation to utilize, operate, maintain, repair, decommission, drain and demolish the water tower and appurtenances located on the Warfield Complex and any obligations (financial or otherwise) with regard to same shall terminate as of the date of this Agreement. The TOWN shall coordinate with the Maryland Environmental Service any actions it may take to decommission or demolish the water tank. Neither the TOWN nor any subsequent purchaser of the Warfield Complex shall utilize the water tower for the purpose of providing water to any portion of the Warfield Complex without the express approval of the Maryland Environmental Service, which approval shall not be unreasonably withheld or delayed. The Town shall ensure that the demolition of the water tower does not adversely affect the water supply infrastructure serving the SHC."

9B (vii) - The documents prepared pursuant to Section 9 Utilities are subject to Maryland Board of Public Works approval, if required.

9B (viii) - Warfield Collaborative, LLC, the contract purchaser of the Warfield Complex, joins in the execution of this Amendment for the purpose of being bound by the terms and conditions contained herein if title to all or part of the Warfield Complex is transferred to it.

Warfield Development Corporation ("WDC"), ground lessee of the Warfield Complex pursuant to that certain Master Ground Lease dated January 27, 2005 by and between the TOWN and WDC recorded in Liber 4299, folio 182, joins in the execution of this Amendment for the purpose of being bound by the terms and conditions contained herein.

2nd Amendment DDA Rev. 10.19.15                    6

**ST001176**

8202   007

The TOWN, Warfield Collaborative, LLC and the Warfield Development Corporation each warrants and represents to the STATE, the DHMH and DGS that the following are all of the entities that have an interest in all or a part of the Warfield Complex.

Industrial Development Authority of Carroll County and County Commissioners of Carroll County being all of the lenders of the TOWN, Warfield Collaborative, LLC and Warfield Development Corporation join in the execution of this Amendment for the purpose of subordinating their rights in all or part of the Warfield Complex to the terms and conditions of the Disposition Agreement recorded in Liber No. Liber No. 3176, folio 252 and all amendments to it.

The Disposition Agreement, including the terms, conditions and provisions of this Amendment, will be binding upon and inure to the benefit of the parties hereto and their respective lessees, transferees, successors and assigns, as permitted hereunder.

All other terms and conditions of the Disposition Agreement, as amended, shall remain in full force and effect.

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall collectively constitute one and the same document; provided that neither party will be bound to this Agreement unless and until all of the parties have executed a counterpart.

IN WITNESS WHEREOF, the parties have caused this Amendment to be duly executed and delivered, the day and year first written above.

Witness/Attest:                                    TOWN OF SYKESVILLE

By:_____(Seal)
                                                    Ian Shaw, Mayor

                                                    Warfield Development Corporation

By:_____(Seal)
                                                    James B. Rees, President

2nd Amendment DDA                    7

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0007, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001177

8202    008

The TOWN, Warfield Collaborative, LLC and the Warfield Development Corporation each warrants and represents to the STATE, the DHMH and DGS that the following are all of the entities that have an interest in all or a part of the Warfield Complex.

Industrial Development Authority of Carroll County and County Commissioners of Carroll County being all of the lenders of the TOWN, Warfield Collaborative, LLC and Warfield Development Corporation join in the execution of this Amendment for the purpose of subordinating their rights in all or part of the Warfield Complex to the terms and conditions of the Disposition Agreement recorded in Liber No. Liber No. 3176, folio 252 and all amendments to it.

The Disposition Agreement, including the terms, conditions and provisions of this Amendment, will be binding upon and inure to the benefit of the parties hereto and their respective lessees, transferees, successors and assigns, as permitted hereunder.

All other terms and conditions of the Disposition Agreement, as amended, shall remain in full force and effect.

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall collectively constitute one and the same document; provided that neither party will be bound to this Agreement unless and until all of the parties have executed a counterpart.

IN WITNESS WHEREOF, the parties have caused this Amendment to be duly executed and delivered, the day and year first written above.

Witness/Attest:                         TOWN OF SYKESVILLE

_____         By:_____(Seal)
                                         Ian Shaw, Mayor

                                         Warfield Development Corporation

_____         By:_____(Seal)
                                         James B. Rees, President

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0008, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

**ST001178**

8202    0009

Witness/Attest

Warfield Collaborative, LLC

By:_____(Seal)
    Roger Conley, Manager

_____

Industrial Development Authority of
Carroll County

_____

By:_____
    Robert T. Scott, Chairman

County Commissioners of Carroll County

_____

By:_____
    J. Douglas Howard, President

APPROVED AS TO FORM AND LEGAL
SUFFICIENCY THIS ____DAY OF
_____, 2015

_____
DENNIS J. HOOVER, TOWN ATTORNEY
FOR THE TOWN OF SYKESVILLE

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0009, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001179

8202   0010

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0010, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

Witness/Attest



_____

_____

_____

APPROVED AS TO FORM AND LEGAL
SUFFICIENCY THIS ____ DAY OF
_____, 2015

_____
DENNIS J. HOOVER, TOWN ATTORNEY
FOR THE TOWN OF SYKESVILLE

Warfield Collaborative, LLC

By:_____(Seal)
   Roger Conley, Manager

Industrial Development Authority of
Carroll County

By:_____
   _____

County Commissioners of Carroll County

By:_____
   _____

2nd Amendment DDA                    8

ST001180

8202    011·

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0011, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

Witness/Attest

Warfield Collaborative, LLC

By:_____(Seal)
      Roger Conley, Manager

Industrial Development Authority of
Carroll County

By: _____
      Robert T. Scott, Chairman

County Commissioners of Carroll County

By:_____
      J. Douglas Howard, President

APPROVED AS TO FORM AND LEGAL
SUFFICIENCY THIS ____ DAY OF
_____, 2015

_____
DENNIS J. HOOVER, TOWN ATTORNEY
FOR THE TOWN OF SYKESVILLE

2nd Amendment DDA                    8

**ST001181**

8202   012

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0012, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

Witness/Attest

Warfield Collaborative, LLC

By:_____(Seal)
    Roger Conley, Manager

_____

Industrial Development Authority of
Carroll County

By:_____
    Robert T. Scott, Chairman

_____

County Commissioners of Carroll County

By:_____
    J. Douglas Howard, President

APPROVED AS TO FORM AND LEGAL
SUFFICIENCY THIS **20th** DAY OF
**October**, 2015

_____
DENNIS J. HOOVER, TOWN ATTORNEY
FOR THE TOWN OF SYKESVILLE

REVIEWED BY:
COUNTY ATTORNEY'S OFFICE FOR
CARROLL COUNTY
DATE:  10-16-15

2nd Amendment DDA

8

**ST001182**

8202   013

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0013, MSA_CE56_8191._Date available 01/26/2016. Printed 05/01/2017.

Witness/Attest:

_Diane R Washington_

Witness/Attest:

_Kendy Scott-Napier_

_Sheila C. McDonald_
Sheila C. McDonald
Executive Secretary

State of Maryland to the use of the
Department of Health and Mental Hygiene

By: _____
Van T. Mitchell, Secretary

State of Maryland to the use of the
Department of General Services

By: _C. Gail Bassette_
C. Gail Bassette, Secretary

State of Maryland
Board of Public Works

_____
Lawrence J. Hogan, Jr., Governor

_Nancy K Kopp_
Nancy K. Kopp, Treasurer

_Peter Franchot_
Peter Franchot, Comptroller

Approved as to form and legal
Sufficiency this 3rd day of Nov, 2015
_Martha Dilla_
ASSISTANT ATTORNEY GENERAL

Approved by the Board of Public Works
at a meeting held on **10/21**, 2015
as Item No. **11-RP**, DGS.

2nd Amendment DDA Rev. 10.19.15                    9

ST001183

8202  014·

STATE OF MARYLAND
COUNTY OF _Carroll_ , TO WIT:

I HEREBY CERTIFY, that on this _20th_ day of _October_, 2015, before me the undersigned notary Public of the State of Maryland personally appeared Ian Shaw, known to me (or satisfactorily proven) to be the Mayor of the Town of Sykesville and that as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

WITNESS MY hand and Notarial Seal

JANICE M. PERRAULT
Notary Public
Carroll County
Maryland
My Commission Expires Apr 9, 2017

_Janice M. Perrault_
Notary Public
My Commission Expires: _April 9, 2017_

STATE OF MARYLAND
COUNTY OF _Baltimore_, TO WIT:

I HEREBY CERTIFY, that on this _5 th_ day of _November_, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared Van T. Mitchell, who acknowledged himself to be the Secretary of the Department of Health and Mental Hygiene of the State of Maryland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_Irene Catherine Thompson_
Notary Public
My Commission Expires: _04/01/2016_

2nd Amendment DDA Rev. 10.19.15                    10

ST001184

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0014, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

8202  015

STATE OF MARYLAND
~~CITY~~
~~COUNTY~~ OF BAltimore, TO WIT:

I HEREBY CERTIFY, that on this 12th day of November, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared C. Gail Bassette, who acknowledged herself to be the Secretary of the Department of General Services of the State of Maryland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_Katie E. Crawford_
Notary Public
My Commission Expires: 6/24/17

STATE OF MARYLAND
COUNTY OF Anne Arundel, TO WIT:

I HEREBY CERTIFY, that on this 19th day of November, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared _____

Lawrence J. Hogan, Jr. , Governor of the State of Maryland
Nancy K. Kopp, Treasurer of the State of Maryland
Peter Franchot, Comptroller of the State of Maryland

who acknowledged themselves as constituting the Board of Public Works of Maryland, known to me (or satisfactorily proven) to be the persons whose name are subscribed to the within instrument, who signed same in my presence, and acknowledged that they executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_Lisak Grg_
Notary Public
My Commission Expires: _____

LISA K. GRIGSBY
Notary Public
Anne Arundel County
Maryland
My Commission Expires Nov 21, 2018

2nd Amendment DDA Rev. 10.19.15            11

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0015, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001185

8202   u l b

STATE OF MARYLAND

COUNTY OF Montgomery TO WIT:

I HEREBY CERTIFY, that on this 16th day of October, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared Rory Cooley who acknowledged himself/herself to be the manager of the Warfield Collaborative, LLC, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

Notary Public

My Commission Expires:

YUEN AGUILAR
Notary Public-Maryland
Montgomery County
My Commission Expires
December 16, 2019

STATE OF MARYLAND

COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared _____, who acknowledged himself/herself to be the              of the Warfield Development Corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: _____

STATE OF MARYLAND

2nd Amendment DDA

12

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0016, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

ST001186

STATE OF MARYLAND                         8202   01ᴵ

COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this *19ᵗ⁄₁* day of *OcTobor*, 2015, before me the
undersigned Notary Public of the State of Maryland personally appeared Roger Conley, who
acknowledged himself to be the Manager of the Warfield Collaborative, LLC, known to me (or
satisfactorily proven) to be the person whose name is subscribed to the within instrument and
acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: _____

STATE OF MARYLAND

COUNTY OF *CARROll*, TO WIT:

I HEREBY CERTIFY, that on this *19ᵗʰ* day of *October*, 2015, before me the
undersigned Notary Public of the State of Maryland personally appeared James B. Rees, who
acknowledged himself to be the President of the Warfield Development Corporation, known to
me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument
and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires *April 9, 2017*

JANICE M. PERRAULT
Notary Public
Carroll County
Maryland
My Commission Expires Apr 9, 2017

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0017, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

LR - Government
Instrument
Agency Name: town of
sykesville
Instrument List:
Agreement / Easement
Describe Other:
Reference/Control #:
======
Total:         0.00
03/15/2016  11:22
#5448940 CC0502 CC06-PS
Carroll
County/CC05.02.01
Register 01

**ST001187**

8202    018

COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared C. Gail Bassette, who acknowledged herself to be the Secretary of the Department of General Services of the State of Maryland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: _____

STATE OF MARYLAND

COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared _____

Lawrence J. Hogan, Jr., Governor of the State of Maryland
Nancy K. Kopp, Treasurer of the State of Maryland
Peter Franchot, Comptroller of the State of Maryland

who acknowledged themselves as constituting the Board of Public Works of Maryland, known to me (or satisfactorily proven) to be the persons whose name are subscribed to the within instrument, who signed same in my presence, and acknowledged that they executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: _____

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0018, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

**ST001188**

8202    0019

STATE OF MARYLAND

COUNTY OF *Carroll* , TO WIT:

I HEREBY CERTIFY, that on this **20** day of **OCT** , 2015, before me the undersigned Notary Public of the State of Maryland personally acknowledged Robert T. Scott, who acknowledged himself to be the Chairman of the Industrial Development Authority of Carroll County, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal



Notary Public

My Commission Expires: **7-11-17**

STATE OF MARYLAND

COUNTY OF _____ , TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____ , 2015, before me the undersigned Notary Public of the State of Maryland personally appeared J. Douglas Howard, who acknowledged himself to be the President of the County Commissioners of Carroll County, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____

Notary Public

My Commission Expires: _____



CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0019, MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

2nd Amendment DDA

13

**ST001189**

8202  020

CARROLL COUNTY CIRCUIT COURT (Land Records) DBS 8202, p. 0020. MSA_CE56_8191. Date available 01/26/2016. Printed 05/01/2017.

STATE OF MARYLAND

COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared Robert T. Scott, who acknowledged himself to be the Chairman of the Industrial Development Authority of Carroll County, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: _____

STATE OF MARYLAND

COUNTY OF Carroll, TO WIT:

I HEREBY CERTIFY, that on this 20th day of October, 2015, before me the undersigned Notary Public of the State of Maryland personally appeared J. Douglas Howard, who acknowledged himself to be the President of the County Commissioners of Carroll County, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

WITNESS MY hand and Notarial Seal

_____
Notary Public
My Commission Expires: 12/5/16

2nd Amendment DDA Rev. 10.19.15                    13

**ST001190**

**State of Maryland Land Instrument Intake Sheet**

☐ Baltimore City    ☒ County: CARROLL

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only.*
*(Type or Print in Black Ink Only - All Copies Must Be Legible)*

8202  021

| | |
|---|---|
| **Type(s) of Instruments** | ( ☐ Check Box If Addendum Intake Form is Attached.)<br>[ ] Deed  [ ] Mortgage  [ ] Deed of Trust  [ ] Lease<br>[1] Other: Second Amendment to Disposition & Development Agreement |
| **Conveyance Type** (Check Box) | ☐ Improved Sale  ☐ Unimproved Sale  ☐ Multiple Accounts  ☐ Not an Arms-length<br>Arms-Length [1]    Arms-Length [2]    Arms-Length [3]    Sale [9] |
| **Tax Exemptions** (if Applicable)<br>Cite or Explain Authority | Recordation<br>State Transfer<br>County Transfer |

| | | |
|---|---|---|
| **Consideration Amount** | | **Finance Office Use Only** |

| | **Consideration and Tax Calculations** | | |
|---|---|---|---|
| | Purchase Price/Consideration | | **Transfer and Recordation Tax Consideration** |
| | Any New Mortgage | | Transfer Tax Consideration |
| | Balance of Existing Mortgage | | X ( ) % = |
| | Other: | | Less Exemption Amount – |
| | | | Total Transfer Tax |
| | Other: | | Recordation Tax Consideration |
| | | | X ( ) per $500 = |
| | Full Cash Value | | TOTAL DUE |

| **Fees** | **Amount of Fees** | **Doc.1** | **Doc. 2** | **Agent:** |
|---|---|---|---|---|
| | Recording Charge | 75.00 | | |
| | Surcharge | 40.00 | | **Tax Bill:** |
| | State Recordation Tax | | | |
| | State Transfer Tax | | | **C.B. Credit:** |
| | County Transfer Tax | | | |
| | Other | | | **Ag. Tax/Other:** |
| | Other | | | |

| | **District** | **Property Tax ID No. (1)** | **Grantor Liber/Folio** | **Map** | **Parcel No.** | **Var. LOG** ☐ (5) |
|---|---|---|---|---|---|---|
| **Description of Property**<br>SDAT requires submission of all applicable information.<br>A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | 05 | 05-1-147484; 05-1-147492 | 3562/465 | 78 | 689 | |
| | **Subdivision Name** | **Lot 3(a)** | **Block(3b)** | **Sect/AR(3c)** | **Plat Ref.** | **SqFt/Acreage(4)** |
| | **Location / Address of Property Being Conveyed (2)** | | | | | |
| | **Other Property Identifiers (if applicable)**<br>05-1-147506; 05-1-109787; 05-1-147514; 05-1-147522; 05-1-147530;<br>05-1-147549; 05-1-147557; 05-1-147565 | | | **Water Meter Account No.** | | |
| | Residential ☐ or Non-Residential ☒    Fee simple ☒ or Ground Rent ☐ Amount:<br>Partial Conveyance? ☐ Yes ☐ No    Description/Amt. of SqFt/Acreage Transferred:<br>If Partial Conveyance, List Improvements Conveyed: | | | | | |

| | **Doc.1 - Grantor(s) Name(s)** | **Doc. 2 - Grantor(s) Names(s)** |
|---|---|---|
| **Transferred From** | the State of Maryland to the use of the Department<br>of Health and Mental Hygiene | |
| | **Doc. 1 Owner(s) of Record, if different from Grantor(s)** | **Doc. 2 Owner(s) of Record, if different from Grantor(s)** |

| | **Doc. 1 - Grantee(s) Name(s)** | **Doc. 2 - Grantee(s) Name(s)** |
|---|---|---|
| **Transferred To** | the State of Maryland to the use of the Department<br>of General Services and The Town of Sykesville | |
| | **New Owner's (Grantee) Mailing Address** | |

| | **Doc. 1 - Additional Names to be Indexed (Optional)** | **Doc. 2-Additional Names to be Indexed (Optional)** |
|---|---|---|
| **Other Names to be Indexed** | | |

| | **Instrument Submitted By or Contact Person** | ☒ Return to Contact Person |
|---|---|---|
| **Contact/Mail Information** | Name:  Nathalie Olivares | |
| | Firm:  Chicago Title Insurance Company | ☐ Hold for Pickup |
| | Address: 1 South Street, Suite 1250, Baltimore, MD 21202 | |
| | Phone:  410-230-9570 | ☐ Return Address Provided |

IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER

| | | |
|---|---|---|
| **Assessment Information** | ☐ Yes  ☐ No  Will the property being conveyed be the grantee's principal residence?<br>☐ Yes  ☐ No  Does transfer include personal property? If yes, identify:<br>☐ Yes  ☐ No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). | |

**Assessment Use Only - Do Not Write Below This Line**

| ☐ Terminal Verification | ☐ Agricultural Verification | ☐ Whole | ☐ Part | ☐ Tran. Process Verification |
|---|---|---|---|---|
| Transfer Number: | Date Received: | Deed Reference: | | Assigned Property No.: |

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ.Cd. |
| Total | | | Town Cd. | Ex.St. | Ex.Cd. | |

REMARKS:

ST00119